UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

KENYON B. FITZGERALD, JR.                    :
PETER SCOVILLE WELLS, SIDNEY SILLER,         07 Civ. 6851 (BSJ) (DCF)
and DISABLED AMERICAN VETERANS               :
DEPARTMENT OF NEW YORK INC.,
                                             :
                Plaintiffs,
                                             :
-against-
                                             :
WADE F. B. THOMPSON, ELIHU ROSE,
ARIE L. KOPELMAN, STEPHEN LASH,              :   **NOTICE OF MOTION**
EDWARD KLEIN, REBECCA ROBERTSON,
KIRSTEN REOCH, CHARLES GARGANO,              :
WILLIAM SHERMAN, CAROL BERENS,
JOHN DOE, MARY ROE and SEVENTH               :
REGIMENT ARMORY CONSERVANCY, INC.,
                                             :
                Defendants.
                                             :

------------------------------------X

PLEASE TAKE NOTICE that upon the complaint in this action,

and the exhibits annexed thereto and incorporated therein, the

annexed declaration of Joel Graber, an Assistant Attorney

General, dated October 4, 2007, and the exhibits annexed thereto,

and the memorandum of law, October 4, 2007, submitted herewith,

the undersigned will move this Court, before the Honorable

Barbara S. Jones, on a date to be determined by the Court, at the

Daniel Patrick Moynihan United States Courthouse, 500 Pearl

Street, New York, New York, for an order and judgment, pursuant

to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of

Civil Procedure, dismissing the complaint in this action, on the

grounds that plaintiffs lack standing to maintain this action,

that the complaint fails to state a cause of action as against

defendants Carol Berens and William Sherman, and that this Court

lacks personal jurisdiction over defendant Sherman, and granting

such other and further relief as the Court may deem just and

proper.

Dated:     New York, New York
           October 4, 2007

                              ANDREW M. CUOMO
                              Attorney General of the
                                State of New York
                              **Attorney for State Defendants
                                Berens and Sherman**

                              By:

                              _____
                              JOEL GRABER (JG-3337)
                              Assistant Attorney General
                              Special Litigation Counsel
                              120 Broadway - 24th Floor
                              New York, NY 10271-0332
                              (212) 416-8645
                              FAX (212) 416-6009
                              joel.graber@oag.state.ny.us

TO:

CLERK OF THE COURT

WHITNEY NORTH SEYMOUR, JR.
**Attorney for Plaintiff**
425 Lexington Ave., Room 1721
New York, NY 10017

LEWIS R. CLAYTON, ESQ.
PAUL WEISS RIFKIN WHARTON
    & GARRISON LLP
**Attorneys for Seventh Regiment Armory
    Conservancy Defendants**
1285 Avenue of the Americas
New York, NY 10019

-2-

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

KENYON B. FITZGERALD, JR.              :
PETER SCOVILLE WELLS, SIDNEY SILLER,        07 Civ. 6851 (BSJ) (DCF)
and DISABLED AMERICAN VETERANS         :
DEPARTMENT OF NEW YORK INC.,

                                       :
          Plaintiffs,

                                       :
-against-

                                       :
WADE F. B. THOMPSON, ELIHU ROSE,
ARIE L. KOPELMAN, STEPHEN LASH,        :    DECLARATION
EDWARD KLEIN, REBECCA ROBERTSON,
KIRSTEN REOCH, CHARLES GARGANO,        :
WILLIAM SHERMAN, CAROL BERENS,
JOHN DOE, MARY ROE and SEVENTH   :
REGIMENT ARMORY CONSERVANCY, INC.,

                                       :
          Defendants.

                                       :
------------------------------------X
```

JOEL GRABER, under penalty of perjury, declares:

1.    I am an Assistant Attorney General, of counsel to
ANDREW M. CUOMO, Attorney General of the State of New York,
attorney for defendants William Sherman and Carol Berens ("State
defendants"), and I am respectfully submitting this declaration
in support of State defendants' motion for an order and judgment,
pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal
Rules of Civil Procedure, dismissing the complaint in this action
as State defendants Sherman and Berens, on the grounds that
plaintiffs lack standing to maintain this action, that the
complaint fails to state a cause of action as against State
defendants, and that this Court lacks personal jurisdiction over

Sherman.[1]

2.    This action seeks declaratory and injunctive relief
invalidating N.Y. Laws of 2004, ch. 482 ("Chapter 482"), in
relation to the historic Seventh Regiment Armory, the New York
State Army National Guard facility that occupies the city block
bounded by East 66th and East 67th Streets, and Lexington and Park
Avenues, in the Upper East Side of Manhattan.

3.    By means of Chapter 482, the Legislature set up a plan
for the creation of a public-private partnership to restore,
maintain and operate the Armory as a community landmark and
resource.  Under the plan, the State entered into a long-term
lease of the Armory to defendant Seventh Armory Conservancy, Inc.
(the "Conservancy"), a not-for-profit corporation established in
1997 to explore ways to restore the Armory, to operate the Armory
as a nonprofit cultural arts center, and to maintain the Armory
on a self-sustaining basis in furtherance of the public interest.

4.    Plaintiffs oppose the restoration plan, claiming that
the enactment and implementation of Chapter 482 violates their

---

[1]Plaintiffs also name as a defendant Charles Gargano, former
Chair of the Empire State Development Corporation.  Although
plaintiffs filed affidavits of service with respect to the other
defendants, which are Dkt. No. 9 in this Court's docket, no
affidavit was filed with respect to Gargano.  So far as the
Attorney General's Office is aware, Gargano has not been served
and this Court therefore lacks personal jurisdiction over
Gargano.  The Attorney General's Office has not received a
request for representation from Gargano as required by N.Y.
Public Officers Law § 17(4)(i).

federal constitutional rights and several rights under the state common law.

5.   As demonstrated *infra*, and in State defendants' memorandum of law submitted herewith, plaintiffs lack standing to maintain this action, as they fail plausibly to allege any legally protected interest in the Armory or injury on account of the implementation of Chapter 482. Each of the seven claims asserted in the complaint also fails to state a cause of action as a matter of law.

6.   Ex. A to this declaration is a copy of Chapter 482 divided into three components for ease of reference:   (a) the session law itself; (b) N.Y. Military Law § 180-a, newly added by Chapter 482; and (c) § 39 to § 1 of Chapter 174 of N.Y. Laws of 1968, constituting the New York State Urban Development Corporation Act – § 39 also having been newly added by Chapter 482.

**Facts Pertinent To The Motion**

7.   This declaration briefly will describe facts pertinent to the action and the present motion to dismiss, by reference to the complaint, the thirteen exhibits attached to the complaint, public documents that the complaint incorporates by reference, the legislative history applicable to Chapter 482, and other public documents subject to judicial notice. At the foot of this declaration there is a list of exhibits submitted herewith.

-3-

8.    The Armory was built for the Seventh Regiment of the State Army National Guard, known as the "Silk Stocking Regiment" for its prestigious roster of members, and the largest and most admired volunteer militia in the country during the nineteenth century.   The Armory consists of two parts: a five-story Administration Building fronting on Park Avenue, and a 52,550 square-foot column-free Drill Hall that runs from the rear of the Administration Building to Lexington Avenue.   The first three stories of the Administration Building and the Drill Hall, designed by renowned architect Charles William Clinton, were erected from 1879 through 1881.   There followed a number of alterations during 1909-1911, and the addition of a fifth floor in 1929.   See Complaint ¶ ¶ 12-16, 27-31.

9.    It is often noted that the cost of building the Armory was paid for by members of the general public, through the purchase of State-issued bonds, and by gifts made by members as well as veterans of the Regiment.   Complaint ¶ ¶ 21-22, 26; Veterans of the Seventh Regiment v. Field Officers of the Seventh Regiment, 60 Hun. 578, 14 N.Y.S. 811, 814 (1st Dep't 1891) (noting veterans "contributed large sums of money" to build and furnish the so-called Veterans/Tiffany Room on the main floor of the Armory).

10.    The Legislature reaffirmed the State's ownership of the Armory by § 1 of Chapter 482, which provides in pertinent part as

-4-

follows:

> [L]easehold title to the seventh regiment
> armory is the property of the state under an
> indenture of lease made on September 23, 1874
> between "the mayor, alderman and commonality
> of the city of New York," as lessors, and
> "the field officers of the seventh regiment
> of the national guard of the state of New
> York," as lessees, which field officers were
> later redesignated as the trustees of the
> seventh regiment armory building (Chapter 518
> of the Laws of 1893), as amended by an
> indenture of lease dated April 23, 1879.

Chapter 482, § 1 merely confirms a fact respecting all State

National Guard armories – all are State facilities as a matter of

law, although some are owned by political subdivisions of the

State and some are owned by the State itself as in the case of

the Seventh Regiment Armory.

11.   The Armory is a City, State and federal landmark – an

institution and a property of great importance to the People of

the State of New York historically, architecturally and

culturally.  Complaint ¶ ¶ 27-29.  The exterior of the Armory was

landmarked by New York City in 1967, and portions of the interior

were designated in 1994.  The interior is described in the

Designation Report of the New York City Landmarks Preservation

Commission, dated July 19, 1994, a copy of which is Ex. B to this

declaration.  A portion of the Designation Report is quoted at

Complaint ¶ 28.

12.   As the Landmarks Preservation Commission Report and

numerous other sources have described, the Armory is perhaps the

-5-

nation's finest example of the American Aesthetic Movement, with
interiors designed by some of the foremost artists of the time
including Louis Comfort Tiffany, Stanford White, Candace Wheeler,
the Herter Brothers and Jasper Cropsey. Complaint ¶ 27. The
Landmarks Preservation Commission called the Armory "the single
most important collection of nineteenth century interiors to
survive intact in one building."

13. As State Supreme Court found in Dalva v. Pataki, Sup.
Ct. N.Y. Co. (Index No. 116965/05), Slip op. dated March 3, 2006,
at 3 (Hon. Marilyn Shafer), "sadly," however, the Armory "has
deteriorated to a point from which it may never be used again,
unless something is done very soon." A copy of that decision and
order, which upheld the constitutionality of Chapter 482 as
against a claimed violation of municipal home rule, is Ex. C to
this declaration.

14. Indeed, the dire need to restore and renovate the
Armory was recognized in 2000, when World Monuments Watch, a
global program of the World Monuments Fund aimed at calling
attention to imperiled cultural heritage sites around the world,
listed the Armory as being one of the World's 100 Most Endangered
Sites. See
http://www.wmf.org/html/programs/WatchlistPrevious.html. The
World Monuments Fund designation is merely emblematic of the
overwhelming importance of the Armory to the People of the State

-6-

of New York according to diverse military, cultural,
architectural and historical criteria.

16.    State officials enlisted the Empire State Development
Corporation to act on behalf of the New York State Division of
Military and Naval Affairs ("DMNA") to explore the potential for
a private partnership for the restoration, preservation,
management and operation of the Armory, consistent with the
overall public interest and the specific needs of the New York
State militia.    Here it should be noted that ESDC was
particularly well-situated for this purpose, as it had been
established by the Legislature in 1968, as the New York State
Urban Development Corporation (see N.Y. Unconsol. Law § § 6251 et
seq.), to "undertake public and private improvement programs . .
. including the provision of educational, recreational and
cultural facilities, and the encouragement of participation in
these programs by private enterprise."    N.Y. Unconsol. Law §
6252.

17.    Accordingly, ESDC began by issuing a RFP for a
consultant to assess the condition of the Armory, to recommend
and evaluate the costs and practicality of necessary physical
improvements to the facility, and to help develop a proposal for
a public-private mechanism to undertake and finance essential
improvements as well as to operate the facility together with the
National Guard in the overall public interest.

-7-

18.   The State's initiative gave rise to intense interest in the community – for one reason, because the Armory is recognized as being "the city's main showplace for art, antiques and craft shows," and had recently been discussed as a possible future venue for the New York Philharmonic. D. J. Wakin, "Armory's Opera Debut Delayed by Lincoln Center," The New York Times, Jun. 15, 2006 § E, p. 1, col. 6.  See Complaint ¶ 34.  From inception the Armory has been used for many community functions such as music festivals, tennis tournaments, grand balls, and art fairs, even in the course of construction in the 1800s.  See, e.g., www.nyc-architecture.com/UES/UES045.htm.  The Legislature itself recognized that the Armory has been a "prominent center of cultural and civic events since its construction in 1879." Chapter 482, § 1.  Community involvement has always been a core part of the mission of the State Army National Guard.

19.   As a result of the consultancy process, a second RFP, prepared by the consulting firm of Ernst & Young, was issued by ESDC on behalf of DMNA in July, 2000.  Complaint ¶ 36.  A copy of that RFP is Ex. D to this declaration.  Despite a broad outreach effort and extensive advertising, there was only one bid, that of defendant Seventh Regiment Armory Conservancy, which responded to the RFP with a well-developed proposal supported by a number of substantial civic-minded individuals and organizations.  The following year, in September, 2001, ESDC designated the

-8-

Conservancy as what is termed the Preferred Proposer. Complaint ¶ 37.

20. As State Supreme Court accurately observed, there is no "alternative to the State's plan which would salvage the Armory before it becomes a ruin, no plan for its viable use, and certainly no evidence of the wherewithal to accomplish either goal" other than by means of Chapter 482, which "provides for the restoration of a valuable resource and a viable plan for its use." Dalva v. Pataki, Slip op. dated March 3, 2006, at 18.

21. As Chapter 482 § 1 suggests, the impetus for the legislation that became Chapter 482 arose when State officials and the People's elected representatives then determined that certain legislative action would be helpful to further the project, with respect to ESDC's authority to act on behalf of DMNA and the State, the powers and duties of the Adjutant General/DMNA in relation to the Armory, and legal details in respect to formal title to the Armory.

22. Among other things, the Legislature sought to confirm by means of Chapter 482 § 1 the organizational identity of the "Seventh Regiment," an iconic term referring to a New York Army National Guard unit first organized as a State militia artillery battalion in 1806, and reorganized as infantry and redesignated the 7th Regiment of Infantry (National Guard) in 1847, a designation that was retained until 1917. (There were, however,

-9-

numerous preceding and succeeding name changes and
redesignations.)

23. In 1995, by reason of a determination of the Chief of
Military History of the United States Army, the ultimate arbiter
in such matters involving the Army National Guard, the lineage
and honors of the original 1806 unit and all of its successors
were bestowed upon the 107th Corps Support Group of the New York
Army National Guard. See Ex. E hereto - describing the U.S. Army
"Lineage and Honors" applicable to the Regiment up to that point.

24. Thereafter, by order dated April 24, 2007, but
effective *nunc pro tunc* the year before, on September 1, 2006,
the National Guard Bureau of the Departments of the Army and the
Air Force, United States Department of Defense, reorganized,
redesignated and consolidated certain units of the New York Army
National Guard including the 107th Corps Support Group. That
unit, two others based at the Armory, and a fourth unit based at
the 369th Regiment Armory in Harlem, were made a part of a new
unit called Headquarters 53d Army Liaison Detachment, with the
result that that unit is now the Regiment. A copy of the
National Guard Bureau order is Ex. F to this declaration. The
headquarters of Headquarters 53d Army Liaison Detachment is now
at the Armory, as had been the headquarters of the 107th Corps

-10-

Support Group.[2]

25.   The Legislature made specific reference in Chapter 482
to the organizational identity of the Seventh Regiment because of
language employed by the Legislature in the 1800s requiring the
City of New York to lease the land upon which the Armory is
situated to the so-called "field officers" of the Regiment.   See
N.Y. Laws 1874, ch. 234; N.Y. Laws 1879, ch. 57; and N.Y. Laws
1893, ch. 518.   Plaintiffs' complaint discusses these session
laws.   Complaint ¶ ¶ 16, 17, 24.

26.   The "field officers" – a military term of art which
refers to the ranks of major through colonel – can never have
functioned under the law other than in their official military
capacities, and as subordinates of the Adjutant General, as head
of DMNA, and the Governor as Commander-in-Chief of the State
Militia.   Tobin v. La Guardia, 290 N.Y. 119, 125 (1943) (holding
that the Armory trustees, that is, the field officers, "are an
'agency or instrumentality of the state'").   See also Maryland ex
rel. Levin v. United States, 381 U.S. 41, 48 (1965) ("military
members of the Guard are employees of the States, and so the
courts of appeals have uniformly held").

---

[2]The Supreme Court has held that the composition of military
forces, specifically the National Guard, is nonjusticiable.
Gilligan v. Morgan, 413 U.S. 1, 10 (1973) ("the complex, subtle,
and professional decisions as to the composition, training,
equipping, and control of a military force are essentially
professional military judgments").

27.   There can therefore be no doubt about the fact that there remains today a Seventh Regiment, embodied by Headquarters 53d Army Liaison Detachment of the New York Army National Guard, and that the Armory continues to be the armory of the Seventh Regiment, as was contemplated by the 1880s legislation.

28.   Chapter 482 provides for continuing military use of the Armory for regimental purposes under the lease with the Conservancy entered into pursuant to the legislation (see new N.Y. Military Law § 180-a(1)(h); and new § 39(b), § 1, ch. 174, N.Y. Laws 1968), and further provides for immediate reversion of use and control of the entire Armory to State military officials in the event of a declared "civil or military emergency," as occurred on the occasion of the terrorist attack of September 11, 2001, when for nearly a year afterwards the Armory had to be dedicated to essential homeland security functions.   N.Y. Military Law § § 180-a(1)(h), (1)(i), (1)(j), (3)(a), (3)(b), (3)(c).   See Complaint ¶ 32.

29.   In addition, the legislation insures the continuation and improvement of a very important homeless women's shelter in the Armory administered for many years by the City of New York through a contract with the Lenox Hill Neighborhood House, a highly-respected not-for-profit social services organization devoted to ministering to needy individuals on Manhattan's Upper East Side.   Complaint ¶ 33.   The shelter serves about 100 women

-12-

"over 45 years old, many of whom are mentally ill or who have suffered from other illnesses." www.lenoxhill.org/homeless.html. This women's shelter, which the State Army National Guard has hosted for over twenty-five years, was established not by the City of New York but by the State of New York, by Executive Orders of Governors Hugh Carey and Mario M. Cuomo in the 1980s.

30. Apart from addressing these matters involving the military needs of the State and one of New York City's best-run shelters for women, the Legislature's extraordinary "Statement of Legislative Findings and Purposes" (§ 1 of Chapter 482) expressly recognizes the Conservancy as "deemed to fulfill all financial, organizational and operational requirements to undertake this endeavor in partnership with the State."

31. The elected officials who served as the proponents of Chapter 482 are the representatives within whose districts the Armory is located: Assembly Member Jonathan L. Bing and State Senator Liz Krueger. With one exception, every member of the City's Albany delegation who voted on Chapter 482 voted in favor of the legislation: a total of 84 members of the Legislature from the City. The votes in the Assembly and in the Senate are annexed to this declaration as Ex. G.[3] A copy of Assembly Member Jonathan L. Bing's memorandum in support of the Assembly bill

---

[3]Contrary to plaintiffs' allegations, however, the statewide vote was not "unanimous." See Complaint ¶ ¶ 47, 77. There were thirty-five nays in the Assembly. See Ex. G.

-13-

that became Chapter 482 is Ex. H to this declaration.

32.  Ex. I to this declaration is the memorandum of the

State Division of the Budget, directed to the Governor,

supporting his signing of the bill that became Chapter 482.  The

Budget Division's memorandum states in part as follows:

> The Division of Military and Naval Affairs'
> mission to train National Guard soldiers can
> be effectively met in the New York
> metropolitan area without the use of the
> Seventh Regiment Armory.  The costs of
> restoring and maintaining the Armory are
> prohibitive and cannot currently be met by
> the State.  Nonetheless, the Armory remains a
> valuable historic, civic and military
> resource for both the State and the City of
> New York and this bill will ensure that it is
> restored and preserved.

33.  The City of New York issued a memorandum to the

Governor strongly urging him to sign the bill, stating in part as

follows:

> The City of New York supports this
> legislation, which allows for the restoration
> of an important and historic city landmark
> without interrupting the operation of a
> homeless shelter for women. * * * This
> legislation strikes a unique balance between
> the City's homeless needs and the needs of
> the restoration project. * * * Accordingly,
> it is urged that this bill be approved.

A copy of the City's memorandum is Ex. J to this declaration, and

the memorandum is also published in 2004 N.Y. Session Laws, at

1970-71.

34.  After Chapter 482 was signed into law by the Governor

on September 21, 2004, ESDC adopted, at its Directors' meeting on

-14-

November 16, 2005, what is referred to as a General Project Plan,

providing for a lease of the Armory to the Conservancy in

accordance with the terms of Chapter 482.  A copy of the General

Project Plan is Complaint Ex. L, and is annexed hereto as Ex. K.

35.  Prior to the adoption of the General Project Plan, a

public hearing on the plan, conducted by a professional hearing

officer, was held at the Armory on July 21, 2005.  Twenty-seven

members of the public testified at the hearing, and nine

subsequent letters or statements were received during the open

public hearing period which ran through August, 2005.  In

addition to the witness testimony, 26 statements, letters and

other documents were marked as hearing exhibits.  One of the

witnesses who testified was plaintiff Peter Wells.  A transcript

of the public hearing, which is quoted in Complaint ¶ 87, is Ex.

L, and the exhibits and written statements are Ex. M.

36.  Although plaintiffs allege that the implementation of

Chapter 482 would "violate the City Landmarks Commission's

official guidelines" (Complaint ¶ 66), one of the exhibits

received at the hearing, marked Ex. 26, is a letter from Robert

B. Tierney, Chair of the New York City Landmarks Preservation

Commission, in which he wrote as follows:

> I am writing to express my support for the
> proposal to allow the Seventh Regiment Armory
> Conservancy to undertake efforts to provide
> for the restoration and renovation of the
> Seventh Regiment Armory.

-15-

> We understand that the Conservancy intends to
> restore the Armory in a way that is
> appropriate to its architectural and historic
> importance, and to create a new cultural
> institution that will feature performances,
> exhibitions and events that will include
> dance, music and the visual arts.
>
> I look forward to the restoration and
> renovation of this important structure.

37.    The ESDC Board of Directors was presented with a report
on the public process, dated November 16, 2005, and, as noted,
the General Project Plan was thereafter approved.  The report,
which is Complaint Ex. M, and Ex. N to this declaration, included
as attachments the transcript of the July 21, 2005 public hearing
and copies of all written comments received through the August
21, 2005 comment period.

38.    There followed a year-long process of negotiations
between ESDC, on behalf of DMNA, and the Conservancy, culminating
in a lease dated November 14, 2006.  The lease was reviewed,
approved and signed on behalf of the New York State Comptroller,
as is mandated by the N.Y. State Finance Law, and on behalf of
the New York Attorney General who is required by statute to
review State leases for form.  The lease is expressly
"incorporated by reference" in the complaint.  Complaint ¶ 50.  A
copy of the lease is Ex. O to this declaration.

39.    On December 19, 2006, the Conservancy formally accepted
possession of the portions of the Armory demised under the lease.

-16-

**Status Of State Defendants**

40.  As noted, the Attorney General's Office represents

defendants Carol Berens and William Sherman.  Berens, a public

officer employed by ESDC, is an architect licensed by the Office

of the Professions of the New York State Education Department,

and is in good standing with that Office.  Sherman is an attorney

licensed to practice in the State of New York, but was not hired

by ESDC as an attorney.  According to information ascertained by

the Attorney General's Office, Sherman resigned from ESDC in 2006

and relocated with his family to a new job and home in a foreign

state.

WHEREFORE, for the reasons stated, it is respectfully

requested that State defendants' motion be granted, that the

complaint be dismissed in entirety, and that this Court grant

such other and further relief as it may deem just and proper.


I hereby declare under penalty of perjury, pursuant to 28

U.S.C. § 1746(2), that the foregoing is true and correct.

Executed on October 4, 2007.

JOEL GRABER
Assistant Attorney General
Special Litigation Counsel

-17-

**Index To State Defendants' Exhibits**

A    N.Y. Laws of 2004, ch. 482.

     N.Y. Military Law § 180-a, newly added by Chapter 482.

     § 39 to § 1 of Chapter 174 of N.Y. Laws of 1968,
     constituting the New York State Urban Development
     Corporation Act - § 39, newly added by Chapter 482.

B    Designation Report of the New York City Landmarks
     Preservation Commission, dated July 19, 1994.

C    Dalva v. Pataki, Sup. Ct. N.Y. Co. (Index No. 116965/05),
     Slip op. dated March 3, 2006 (Hon. Marilyn Shafer).

D    RFP issued by ESDC on behalf of DMNA in July, 2000.

E    Lineage and Honors of the Seventh Regiment.

F    Order dated April 24, 2007, rendered by the National Guard
     Bureau of the Departments of the Army and the Air Force,
     United States Department of Defense.

G    Votes of the Legislature on legislation which became Chapter
     482.

H    Assembly Member Jonathan L. Bing's memorandum in support of
     the legislation that became Chapter 482.

I    Memorandum of the State Division of the Budget to the
     Governor with respect to the legislation that became Chapter
     482.

J    City of New York memorandum to the Governor with respect to
     the legislation that became Chapter 482.

K    General Project Plan, dated June 16, 2005.

L    Transcript of public hearing on July 21, 2005.

M    Exhibits and written statements with respect to the public
     hearing on July 21, 2005.

N    Report on the public process with respect to the General

Project Plan, dated November 16, 2005.

O    Lease dated November 14, 2006.

P    N.Y. Laws of 1874, ch. 234.

Q    N.Y. Laws of 1879, ch. 57.

R    N.Y. Laws of 1893, ch. 518.

S    Constitution and Bylaws, 107th Infantry Regiment (Seventh, New York) Historical Society.

T    <u>Veterans of the Seventh Regiment v. Field Officers of the Seventh Regiment</u>, 60 Hun. 578, 14 N.Y.S. 811 (1st Dep't 1891).

U    <u>State of New York v. Seventh Regiment Fund</u>, 13 Misc.3d 222 (Sup. Ct. N.Y. Co. 2006) (Hon. Richard F. Braun).

V    <u>The Seventh Regiment Fund v. Pataki</u>, 179 F.Supp.2d 356 (S.D.N.Y. 2002) (Hon. Laura Taylor Swain).

W    <u>Dalva v. Pataki</u>, Sup. Ct. N.Y. Co. (Index No. 116965/05), Slip op. dated November 29, 2006 (Hon. Marilyn Shafer).

X    <u>Chu v. New York State Urban Dev. Corp.</u>, 13 Misc.3d 1229A (Sup. Ct. N.Y. Co. 2006) (Hon. Lottie E. Wilkins).