default of Tenant of the nature set forth in subparagraphs (d) and (e) of Section 24.01 of this Lease.

Section 10.12    Additional Recognized Mortgagee Protective Clauses. In addition to the other rights, notices and cure periods afforded to the holders of any Recognized Mortgage on this Lease approved by Landlord, Landlord further agrees that:

(i)    This Lease will not be modified or amended without the prior written consent of any holder of a Recognized Mortgage if such modification or amendment would have a material adverse effect on such holder.

## ARTICLE 11

### MAJOR CONSTRUCTION WORK

Section 11.01    Tenant shall comply with all applicable statutes, rules, and regulations of the City, State and Federal governments relating to the performance of the Lease and the construction work and any restoration work to be performed thereunder.

Section 11.02    Major Construction Schedule. Annexed to this Lease as Exhibit M and made a part hereof is a description of the Major Construction Work which has been approved by Landlord. Annexed to this Lease as Exhibit L is a schedule for the performance of the Major Construction Work, which sets forth the estimated timing of commencement and of Substantial Completion of each phase (a "Phase") of the Major Construction Work, and identifies with specificity the work to be undertaken in each Phase, which has been approved by Landlord ("Major Construction Schedule.")

Section 11.03    Schematic Design Submission.

(a)    Prior to the commencement of any Phase of the Major Construction Work, Tenant shall submit to Landlord the following items (the "Schematic Design Submission"): (i) an update to the Major Construction Schedule, identifying any changes proposed from the previously-approved Major Construction Schedule as a result of the Major Construction Work that Tenant intends to undertake during such Phase, (ii) an updated description of the Major Construction Work that Tenant intends to undertake during such Phase, identifying any changes proposed from the previously approved description of Major Construction Work, and (iii) schematic drawings, a scope of work description and a Budget with respect to the proposed Phase that Tenant intends to undertake (such documents, collectively, the "Schematic Design Documents"). Such Schematic Design Documents shall be in compliance with all Requirements. Tenant's submission of Schematic Design Documents shall be deemed complete and ready for Landlord review provided the Schematic Design Documents constitute "Schematic Design Documents" as defined in the then-current edition of the AIA Standard Form of Agreement between Owner and Architect, B141 (the "AIA Form Agreement").

that Tenant intends to undertake (such documents, the "Design Development Documents"). Such Design Development Documents shall be in compliance with all Requirements. Tenant's submission of Design Development Documents shall be deemed complete and ready for Landlord review provided the Design Development Documents constitute "Design Development Documents" as defined in the AIA Form Agreement.

   (b) Landlord shall have the right to review and approve any elements of the Design Development Submission which represent changes (and not merely the course of progression of design detail) from the Landlord-approved Schematic Design Submission; provided that Landlord shall not unreasonably withhold, delay or condition its consent thereto so long as the submission meets the standards enumerated in Section 11.04(a). Landlord shall notify Tenant within 10 days whether Landlord approves or disapproves of the Design Development Submission, in whole or in part, with respect to such portions of the Design Development Submission related to HVAC, electrical, utility, fire/life safety and other mechanical systems (collectively "Mechanical Systems") and 20 days for all other portions, which notice shall identify with specificity any matters disapproved (time being of the essence). Landlord may not disapprove any items in the Design Development Submission which were previously approved by Landlord in the Schematic Design Submission (except with respect to previously approved items that are inconsistent with subsequent modifications made to such items in the Design Development Submission). Tenant shall resubmit to Landlord revised elements of the Design Development Submission addressing the matters as to which Landlord notified Tenant of its disapproval, and Landlord shall review and respond to all such revised elements within 10 days with respect to revisions related to Mechanical Systems, or 20 days with respect to revisions related to other items (time being of the essence). In the event that Landlord fails to respond to any submission within such 10-day or 20-day period, as applicable, Tenant shall deliver a second notice to Landlord requesting Landlord to review and respond to the Design Development Submission or revised Design Development Submission within 10 days with respect to revisions related to Mechanical Systems, or 20 days with respect to revisions related to other items (time being of the essence), which notice shall state prominently "LANDLORD RESPONSE TO THE BELOW SUBMISSION IS REQUIRED WITHIN 10 DAYS FROM THE DATE OF THIS NOTICE OR LANDLORD APPROVAL WILL BE DEEMED GIVEN," or, "LANDLORD RESPONSE TO THE BELOW SUBMISSION IS REQUIRED WITHIN 20 DAYS FROM THE DATE OF THIS NOTICE OR LANDLORD APPROVAL WILL BE DEEMED GIVEN," as applicable. Any Design Development Submission or revised Design Development Submission to which Landlord has not notified Tenant of its approval or disapproval within such 10-day or 20-day period, as applicable, following such second notice shall be deemed to have been approved by Landlord. Tenant shall consult with OPRHP with respect to the Design Development Documents as required by applicable law and/or agreement between Tenant and OPRHP, and Landlord shall cooperate with Tenant with respect to such consultation.

   Section 11.05 Construction Document Submission.

(a)    Following Landlord's approval of the Design
Development Submission and prior to the commencement of any Phase of Major
Construction Work, Tenant shall submit to Landlord the following items (the
"Construction Document Submission"), identifying any changes in such items from the
Landlord-approved Design Development Submission: (i) an update to the Major
Construction Schedule, (ii) an updated description of the Major Construction Work, and
(iii) construction drawings and specifications, a scope of work description and a Budget
with respect to the proposed Phase that Tenant intends to undertake (such documents,
the "Construction Documents"). Such Construction Documents shall be in compliance
with all Requirements. Tenant's submission of Construction Documents shall be deemed
complete and ready for Landlord review provided that the Construction Documents
constitute "Drawings and Specifications" with respect to the "Construction Documents
Phase" as defined in the AIA Form Agreement.

(b)    Landlord shall have the right to review and approve any
elements of the Construction Document Submission which represent changes (and not
merely the course of progression of design detail) from the Landlord-approved Design
Development Submission; provided that Landlord shall not unreasonably withhold,
delay or condition its consent thereto so long as the submission meets the standards
enumerated in Section 11.03(b). If there are no changes in the Construction Document
Submission from the Design Development Submission, no consent of Landlord shall be
required. With respect to any changes, Landlord shall notify Tenant within five (5)
Business Days whether Landlord approves or disapproves of such changed elements of
the Construction Document Submission, which notice shall identify with specificity any
matters disapproved (time being of the essence). Landlord may not disapprove any items
in the Construction Document Submission which were previously approved by Landlord
in the Design Development Submission (except with respect to previously approved
items that are inconsistent with subsequent modifications made to such items in the
Construction Document Submission). Tenant shall resubmit to Landlord revised
elements of the Construction Document Submission addressing the matters as to which
Landlord notified Tenant of its disapproval, and Landlord shall review and respond to all
such revised elements within five (5) Business Days (time being of the essence). In the
event that Landlord fails to respond to any submission within such five (5)-Business
Day period, Tenant shall deliver a second notice to Landlord requesting Landlord to
review and respond to the Construction Document Submission or revised Construction
Document Submission within five (5) Business Days (time being of the essence), which
notice shall state prominently "LANDLORD RESPONSE TO THE BELOW
SUBMISSION IS REQUIRED WITHIN 5 BUSINESS DAYS FROM THE DATE OF
THIS NOTICE OR LANDLORD APPROVAL WILL BE DEEMED GIVEN." Any
Construction Document Submission or revised Construction Document Submission to
which Landlord has not notified Tenant of its approval or disapproval within such five
(5)-Business Day period following such second notice shall be deemed to have been
approved by Landlord. Tenant shall consult with OPRHP with respect to the
Construction Documents as required by applicable law and/or agreement between
Tenant and OPRHP, and Landlord shall cooperate with Tenant with respect to such
consultation.

Section 11.06    Modifications of Previously Approved Submissions. Tenant shall submit to Landlord from time to time any modifications to the Schematic Design Documents, Design Development Documents and Construction Documents. If any such modifications affect any items as to which Landlord has previously granted or is deemed to have granted its approval, Landlord shall have the same review rights with respect to such modifications as are set forth in the applicable of Section 11.03(b), 11.03(b) and 11.04(b), except that Landlord's review periods shall be shortened by five (5) days each, provided that in no event shall any such review period be shortened to less than five (5) Business Days. Landlord shall cooperate with Tenant in coordinating communications with OPRHP with respect to modifications to the Schematic Design Documents, Design Development Documents and Construction Documents.

Section 11.07    [Intentionally Deleted].

Section 11.08    Tenant's Compliance with Requirements. Tenant shall ensure that the Schematic, Design Development Documents and Construction Documents comply with the Requirements. Landlord's review of any plans pursuant to Sections 11.03, 11.04 and 11.05 shall not be, nor be construed as being a determination that such plans comply with Requirements.

Section 11.09    Landlord's Right to Use Field Personnel. Landlord's designees may inspect the Demised Premises at all reasonable times to observe Tenant's Major Construction Work then being undertaken. No such observation by Landlord's personnel or designees shall impose on Landlord any responsibility for any failure by Tenant to observe any Requirements or safety practices in connection with such construction, preclude in any way any governmental authority having jurisdiction thereof from enforcing any Requirements or constitute an acceptance of any work which does not comply in all respects with the provisions of this Lease. Such designees shall not direct or interfere with any demolition work or Major Construction Work being conducted by Tenant and shall comply with any reasonable instructions of Tenant intended to avoid such interference or injury to such designees while at the Demised Premises (including telephonic or other reasonable notice to Tenant's construction officials prior to entering the actual construction site and checking in with such officials upon such entry). Tenant shall designate a high-level construction official to provide liaison with such designees.

Section 11.10    Additional Conditions to Major Construction Work. In addition to any other items required hereunder, Tenant shall deliver to Landlord the following items in connection with the Major Construction Work prior to the commencement of each Phase of Major Construction Work:

(i)    copies of all documents which have been stamped or otherwise approved by the `Buildings Department;

(ii)    executed counterparts and collateral assignments with agreements to perform for Landlord of the Architect's agreement, the general contractor agreement and any other construction contract agreements between Tenant and

Contractors, construction managers, vendors, suppliers and other Persons involved in such Phase of Major Construction Work (collectively, the "Contract Documents");

(iii)     evidence that payment and performance bonds, contractor guaranties, letters of credit, or other construction security have been deposited with Tenant, and collateral assignments of the same to Landlord;

(iv)     all documents required for compliance with OPRHP Requirements;

(v)     at least fifteen (15) days prior to the commencement of such Phase of Major Construction Work, certified copies or certificates of the policies of insurance required under Section 7.01; and

(vi)     a financial plan which demonstrates that the funding necessary to complete such Phase of Major Construction Work shall be funded in a timely manner to allow for the diligent and continuous performance and completion of such Phase of the Major Construction Work, which such plan shall be consistent with prudent and customary standards then employed by not-for-profit institutions in undertaking major capital construction projects to be funded by capital fundraising campaigns.

Section 11.11     Requirements During Major Construction Work. Tenant shall submit to Landlord the following in connection with the Major Construction Work during the construction thereof:

(i)     copies and approvals of all structural and mechanical system test reports conducted by or for Tenant, its contractors and subcontractors, or the Architect as promptly as the same are obtained;

(ii)     copies of progress schedules once every two (2) months;

(iii)     progress photos once every two (2) months;

(iv)     two (2) sets of copies of (a) all documents filed with the Buildings Department, including, without limitation, application and amendment forms as promptly as the same are filed, (b) all amendments approved by the Buildings Department as promptly as the same are obtained and (c) all permits, consents, and other certificates issued pursuant to the Building Code of New York City or New York State as promptly as the same are obtained; and

(v)     all documents required for compliance with OPRHP Requirements.

Section 11.12     Requirements Upon Substantial Completion. Tenant shall submit to Landlord, as promptly following Substantial Completion of each Phase

of Major Construction Work as the same are available, copies of the following items in connection with such Phase of Major Construction Work:

(i)     all guarantees or certifications called for under any and all Contract Documents or otherwise received by Tenant, in each case to the extent separate from the Contract Documents; and

(ii)    all certificates required by the New York City Building Code or the Buildings Department to be filed with the Buildings Department;

(iii)   as-built plans prepared by Architect (which plans may, if as-builts are not prepared, consist of the Construction Documents accurately marked to show all changes made in actual execution of such Phase of Major Construction Work); and

(iv)    a certification by Tenant of the total hard and soft costs incurred by Tenant in connection with such Phase of Major Construction Work, identifying the amount of Landlord's Contribution expended in such Phase.

Section 11.13     Commencement and Completion of Major Construction Work.

(a)     Subject to Unavoidable Delay, commencement of Major Construction Work shall take place no more than four (4) years after the Commencement Date, such date to be extended to the extent necessary to obtain any approvals described in subsection (h) of the definition of Unavoidable Delay. All Major Construction Work, once commenced, shall be diligently and continuously pursued, and shall be completed in a good and workmanlike manner and substantially in accordance with the Construction Documents therefor, with Substantial Completion of the Major Construction Work to occur no later than (x) the tenth (10th) anniversary of the Commencement Date, if not performed in Phases, or (y) the fifteenth (15th) anniversary of the Commencement Date, if performed in Phases, subject to Unavoidable Delay during or in connection with the commencement of the Major Construction Work (the "Outside Completion Date"). Tenant shall, with reasonable diligence, apply and prosecute the application for a certificate of occupancy for all Major Construction Work as to which, under applicable Requirements, a new or revised certificate of occupancy is required, and shall promptly deliver to Landlord a copy of such certificate of occupancy upon issuance thereof.

Section 11.14     Fire Safety Planning. Tenant, at Tenant's cost and expense, shall retain or cause the Architect to retain a qualified fire protection planning firm or mechanical engineering firm qualified in fire protection planning, and to utilize the services of such firm in the preparation of a fire protection plan, and for fire protection consultation during performance of any Major Construction Work. Such fire protection plan shall be submitted to Landlord for its information simultaneously with the submission of the fire protection plan to the Department of Buildings.

Section 11.15    Conditions Precedent to Tenant's Commencement of All Major Construction Work.

(a)    Permits and Insurance. Tenant shall not commence any Major Construction Work unless and until it shall have obtained and delivered to Landlord (i) true copies of all necessary permits, consents, certificates and approvals of all governmental authorities to be issued pursuant to the Building Code of New York City, the New York State Building Code or any other applicable law for such demolition and construction and (ii) certified copies of the policies of insurance required to be carried pursuant to the provisions of Article 7 hereof.

(b)    Cooperation of Landlord in Obtaining Permits. Landlord, in its proprietary capacity, shall reasonably cooperate with Tenant in obtaining any permits, consents, certificates and approvals of governmental authorities required under this Article 11 and shall execute and, where required, acknowledge any applications made by Tenant which are required to obtain such permits, consents, certificates and approvals.

(c)    OPRHP Approval of Construction Documents; Other Submissions. Tenant shall not commence any Phase of Major Construction Work unless and until (i) OPRHP shall have approved the Construction Documents and (ii) Tenant shall have satisfied the requirements of Sections 11.08, 11.10, 11.14 and this Section 11.15.

Section 11.16    Required Submissions Upon Completion of Major Construction Work. Promptly upon Substantial Completion of the Major Construction Work, or any Phase thereof, Tenant shall furnish Landlord with a certification of the Architect (certified to Landlord and Tenant) that it has examined the applicable plans and specifications (which shall include the Construction Documents and any other plans and specifications required to be delivered to Landlord) and that, in its best professional judgment to its best knowledge and belief, all Major Construction Work has been Substantially Completed in accordance with the Construction Documents.

Section 11.17    Title to the Materials, Fixtures and Equipment. Materials, fixtures and Equipment to be incorporated in the Building (which shall not include, however, personal property and fixtures of Tenant or any Users that are permitted to be removed by them pursuant to this Lease or User Agreements, at the end of the terms thereof) shall, effective upon their purchase and at all times thereafter, constitute the property of Landlord and shall constitute a portion of the Demised Premises covered by this Lease. However, Landlord shall not be liable in any manner for payment or otherwise to any contractor, subcontractor, laborer or supplier of materials in connection with the purchase of any such materials, fixtures or Equipment, nor shall Landlord have any obligation to pay any compensation to Tenant or any User by reason of Landlord's acquisition of title to the materials, fixtures or Equipment. Notwithstanding the foregoing or anything to the contrary elsewhere contained in this Lease, Landlord hereby agrees that, for income tax purposes, Tenant (or, to the extent provided in any User Agreement, a User) shall be considered to have all of the benefits

and burdens of ownership with respect to the Demised Premises or improvements therein and that Landlord will not claim any deduction or credit on its income tax returns with respect to the Demised Premises or improvements therein and will not otherwise take any action in connection with the Demised Premises or improvements therein which would disentitle Tenant (or a User, where applicable) to claim the deductions and credits that it would otherwise be entitled to claim as the owner of the Buildings for income tax purposes.

Section 11.18    Contractors Not Prohibited Parties. Tenant shall ensure that all Persons with whom Tenant contracts for any portion of any Phase of Major Construction Work ("Contractors"), and all Persons with whom any Contractor contracts for labor or materials for any portion of any Phase of Major Construction Work, and all other Persons who have been solicited by others to perform any labor or other services or supply any materials in connection with any portion of any Phase of Major Construction Work are not Prohibited Parties.

Section 11.19    Required Clauses in Contract Documents. All Contract Documents shall include the following provisions:

(i)    "["Contractor"]/["Subcontractor"]/["Materialman"] hereby agrees that immediately upon the purchase by ["contractor"]/["subcontractor"]/ ["materialman"] of any building materials, fixtures or Equipment to be incorporated in the Buildings (as defined in the lease pursuant to which the owner acquired a leasehold interest in the property (the "Lease"), such materials, fixtures or Equipment shall become the sole property of The State of New York, notwithstanding that such materials, fixtures or Equipment have not been incorporated in, or made a part of, such Buildings at the time of such purchase; provided, however, that Landlord shall not be liable in any manner for payment or otherwise to ["contractor"]/["subcontractor"]/["materialman"] in connection with the purchase of any such materials, fixtures or Equipment and Landlord shall have no obligation to pay any compensation to ["contractor "]/["sub-contractor"]/ ["materialman"] by reason of such materials, fixtures or Equipment becoming the sole property of Landlord, provided, however, that nothing contained herein shall prejudice any rights which ["contractor"]/["subcontractor"]/["materialman"] may have under the Lien Law of the State of New York; and provided, further, however, that the risk of loss shall not transfer to Landlord or Tenant prior to the incorporation of such materials, fixtures and Equipment by reason of such ownership."

(ii)    "["Contractor"]/["Subcontractor"]/["Materialman"] hereby agrees that notwithstanding that ["contractor"]/["subcontractor"]/["materialman"] performed work at the Demised Premises (as such term is defined in the Lease) or any part thereof, Landlord shall not be liable in any manner for payment or otherwise to ["contractor"]/["subcontractor"]/["materialman"] in connection with the work performed at the Demised Premises, provided, however, that nothing contained herein shall prejudice any rights which ["contractor"]/["subcontractor"]/["materialman"] may have under the Lien Law of the State of New York."

(iii)    "["Contractor"]/["Subcontractor"]/["Materialman"]
hereby agrees to make available for inspection by Landlord, upon reasonable notice and
during reasonable business hours, ["contractor's"]/["subcontractor's"]/["materialman's"]
books and records relating to Major Construction Work (as defined in the Lease) being
performed or the acquisition of any materials, fixtures or Equipment to be incorporated
into the Buildings."

(iv)    "["Contractor"]/["Subcontractor"]["Materialman"]
shall comply with all applicable statutes, rules, and regulations of the city, state and
federal governments relating to the performance of the contract and the construction work
and any restoration work to be performed thereunder."

(v)    "The agreements made in [clauses (i)-(iii) above]
hereunder shall be deemed to be made for the benefit of the Landlord under the Lease and
shall be enforceable by said Landlord."

Section 11.20    Rights and Licenses. Tenant shall have the right to
acquire, create or grant temporary rights or licenses reasonably required in connection
with the construction, installation, maintenance, operation or restoration of the Demised
Premises or any utility lines, pipes, ducts, conduits or other equipment or facilities
servicing any of the same, provided (a) any such right or license which is acquired by
Tenant shall become part of the Demised Premises for all of the purposes of this Lease
for so long as such right or license exists, (b) no such right or license, whether acquired,
granted or created, may impose any charge on Landlord or lien upon the Demised
Premises in respect of any cost or charges in connection therewith, other than for
unpaid charges for utilities supplied to the Demised Premises through any such right or
license, (c) no such right or license, or any rights granted thereunder, shall, unless
Landlord and the City, as Superior Lessor under the City Lease, elect otherwise in
writing, survive the termination of the Lease, and (d) no such right or license shall be
effective unless and until Tenant delivers a notice to Landlord with a copy of such right
or license. At Tenant's request, Landlord will join with Tenant in the acquisition,
creation or granting of any such right or license (subject to the limitations hereinabove
described), provided Landlord does not thereby incur any liability.

## ARTICLE 12

## REPAIRS; MAINTENANCE OF DEMISED PREMISES AND PUBLIC AREAS

Section 12.01    Tenant's Repair and Maintenance Obligations.

(a)    Tenant shall take good care of the Demised Premises and,
subject to Section 12.02, make all repairs therein and thereon, interior and exterior,
structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen,
necessary or appropriate to keep the same in a good condition and repair consistent with
the "Standards for Treatment of Historic Properties" established by the United States
Secretary of the Interior, and whether or not necessitated by wear, tear, obsolescence or
defects, latent or otherwise. Tenant shall not commit or suffer, and shall use all

reasonable precaution to prevent, waste, damage or injury to the Demised Premises. When used in this Section 12.01, the term "repairs" shall include all necessary replacements, alterations and additions. All repairs made by Tenant shall be made in compliance with all Requirements and the provisions of this Lease.

(b)     Tenant shall keep clean and free from dirt, snow, ice, rubbish, obstructions and encumbrances, the sidewalks, landscaped areas, chutes and sidewalk hoists comprising, in front of, or adjacent to, the Demised Premises.

(c)     Landlord shall not be required to furnish any services, utilities or facilities whatsoever to the Demised Premises, nor shall Landlord have any duty or obligation to make any alteration, change, improvement, replacement, Restoration or repair to, nor to demolish, any Building.

(d)     Tenant shall not clean nor require, permit, suffer nor allow any window in the Building to be cleaned from the outside in violation of Section 202 of the Labor Law or of the rules of the Industrial Board or other state, county or municipal department, board or body having jurisdiction.

Section 12.02     Emergency Repairs. Prior to the Substantial Completion of the Major Construction Work for the respective items which are listed in Exhibit I, Tenant shall perform, at its sole cost and expense, all imminent and necessary repairs to those items listed in Exhibit I which are broken or severely deteriorated, and which require imminent repair or maintenance in order to maintain the Property in a functional condition which is safe and sound ("Emergency Repairs"). To the extent possible, Tenant will cause such Emergency Repairs to be timely performed in order to maintain the safe and sound functionality of the Building. It is acknowledged and agreed that Emergency Repairs are intended to be performed in as economical a manner possible consistent with Requirements, and are intended merely to maintain the Building in safe and functional condition pending the performance by Tenant of the Major Construction Work. In no event are Emergency Repairs intended to include work to maintain or restore the interior decorative finishes of the Demised Premises, regardless of whether such finishes were damaged by reason of an item which is the subject of an Emergency Repair. As an example, but without limitation, Emergency Repairs would include the patching (but not the replacement) of a portion of the roof to stop water leaks, and would not include repair or restoration of decorative wall, floor or other interior surfaces which were damaged by reason of the water leaks. Notwithstanding the foregoing, Tenant shall perform Emergency Repairs in compliance with all Requirements and the provisions of this Lease. To the extent that any Emergency Repair would constitute a Capital Improvement if it was undertaken from and after the Completion of Construction Date, Tenant shall also comply with the provisions of Article 13. In the event that it is not reasonably practicable for Tenant to comply with such provisions prior to the performance of such Emergency Repair, the Tenant shall be permitted to perform such Emergency Repair without compliance with such provisions. In such instance, Tenant shall notify Landlord, in writing, of any Emergency Repairs performed by Tenant as soon as practical but in no event less than the end of the Business Day following such Emergency Repair, and shall thereafter take

all steps reasonably necessary to comply with such provisions. Any costs incurred by Tenant with respect to any Emergency Repairs shall be deemed prepaid Base Rent for which Tenant shall receive a credit against the next due installment(s) of Base Rent and Additional Charges until such credit is extinguished, provided that the aggregate amount of credit to which Tenant shall be entitled under this Section 12.02 for Emergency Repairs shall not exceed $3 million Adjusted for Inflation.

Section 12.03    Electric Power. To the extent available to the Building, electric power for the Demised Premises shall continue to be purchased by Landlord from the New York Power Authority at its lowest applicable rate as currently supplied, and Landlord shall be reimbursed by Tenant as Additional Charges for the cost of such electric power. In the event that such electric power from the New York Power Authority becomes unavailable to the Building, Tenant shall obtain electrical power for the Demised Premises directly from the applicable public utility supplier.

## ARTICLE 13

### CHANGES, ALTERATIONS AND ADDITIONS

Section 13.01    Capital Improvements. From and after the Completion of Construction Date, Tenant shall not demolish, replace or materially alter the Demised Premises, or any part thereof, or make any addition thereto, other than (a) interior, non-structural work which is either decorative or temporary in nature (such as lighting, sound system, stage or partitions for the "run of a show"), (b) ordinary repairs performed with materials of type and quality similar to those then existing, or (c) replacements of items which are outdated or deteriorated with new items of a type and quality similar to those then existing (items other than in clauses (a), (b) or (c), "Capital Improvement"), unless Tenant shall comply with the following requirements and, if applicable, with the additional requirements set forth in Section 13.02:

(a)    No Capital Improvement shall be undertaken unless and until Tenant shall have obtained and delivered to Landlord copies of final plans and specifications for such Capital Improvement, and Permits for the proposed Capital Improvement which are required to be obtained prior to the commencement of the proposed Capital Improvement (collectively, "Improvement Approvals") and the original polices of insurance, or duplicate originals thereof in accordance with Section 11.15. For the avoidance of doubt, required Improvement Approvals shall include consultation by Tenant with OPRHP. In the case of a Capital Improvement which is subject to Section 13.02, Tenant shall also obtain Landlord's approval to the performance of such Capital Improvement prior to undertaking the same. Landlord shall join or otherwise cooperate in the application for any such Improvement Approvals with respect to which Landlord's approval is not required or which Landlord has approved, provided that Landlord shall not be obligated to incur third-party expenses in connection therewith other than a de minimis cost. True copies of all such Improvement Approvals shall be delivered by Tenant to Landlord prior to the commencement of the proposed Capital Improvement.

(b)     All Capital Improvements, when completed, shall be of such a character as not to reduce the value of the Demised Premises below its value immediately before construction of such Capital Improvement.

(c)     All Capital Improvements shall be made with diligence and continuity and in a good and workmanlike manner and in compliance with (i) all Improvement Approvals, (ii) the plans and specifications for such Capital Improvement (iii) the Requirements, and (iv) the applicable provisions of this Lease.

(d)     No construction of any Capital Improvement shall be commenced until Tenant shall have delivered to Landlord insurance policies issued by responsible insurers, bearing notations evidencing the payment of premiums or accompanied by other evidence satisfactory to Landlord of such payments, for the insurance required under this Lease.

Section 13.02     Material Capital Improvement. If the estimated cost of any proposed Capital Improvement would either (i) exceed $250,000 Adjusted for Inflation, or (ii) involve alterations to the Major Construction Work which are inconsistent with the previously-approved Major Construction Work, Tenant shall comply with the provisions of Sections 11.01 through 11.06 and 11.10 through 11.15 in respect of such Capital Improvement, including making all submissions described therein and obtaining Landlord's approvals as provided therein.

Section 13.03     Completion Obligations. Upon completion of any Capital Improvement, Tenant shall furnish to Landlord (a) where applicable, a Certificate of Occupancy or Sign Off from the New York City Department of Buildings therefor issued by the New York City Department of Buildings, to the extent a modification thereof was required, and (b) lien waivers, in form satisfactory to Landlord, issued by each Contractor, with respect to services performed and materials provided in connection with the Capital Improvement.

Section 13.04     Title to Improvements. Title to all additions, alterations, improvements and replacements made to the Building, including, without limitation, the Capital Improvements, shall forthwith vest in Landlord as provided in Section 11.17, without any obligation by Landlord to pay any compensation therefor to Tenant.

## ARTICLE 14

### REQUIREMENTS OF PUBLIC AUTHORITIES AND OF INSURANCE UNDERWRITERS AND POLICIES

Section 14.01     Compliance with Requirements. Tenant promptly shall comply with (a) any and all applicable present and future, foreseen and unforeseen, laws, rules, orders, ordinances, regulations, statutes, requirements, permits, consents, certificates, approvals, codes and executive orders of all Governmental Authorities now existing or hereafter created, and of any and all of their departments and bureaus (including, without limitation, the New York City Department of Buildings), including,

without limitation, the State of New York Building Code, the Americans with Disabilities Act (ADA) Accessibility Guidelines for Buildings and Facilities, all Environmental Laws, and requirements of any applicable Fire Rating Bureau or other body exercising similar functions, affecting the Demised Premises or any portion(s) thereof and (b) any and all present and future, foreseen and unforeseen, provisions and requirements of any liability or other insurance policy required to be carried by Tenant under the provisions of this Lease and shall not violate any restrictions or requirements set forth in the Title Matters (all of the foregoing collectively, the "Requirements").

Section 14.02    Contest of Requirements. Tenant shall have the right to contest the validity of any Requirements or the application thereof. During such contest, compliance with any such contested Requirements may be deferred by Tenant upon condition that (a) such deferral, in Landlord's reasonable judgment, shall not adversely affect all or any portion of the Building or pose a hazard or danger to any Persons or property or place any portion of the Property in danger of being forfeited or lost or place Landlord in danger of any civil and/or criminal liability or penalty, (b) Tenant shall undertake to Landlord the payment of all interest, penalties, fines and fees in connection therewith, and (c) if an adverse decision in such proceeding or the failure to pay any judgment resulting from such adverse decision could result in the imposition of any lien against the Demised Premises, then before the commencement of such contest, Tenant shall furnish to Landlord the bond of a reputable surety company, or other deposit or security in an amount equal to 125% of the anticipated amount of the monetary risk of loss. Tenant shall keep Landlord informed as to the status of any such contest. Notwithstanding the foregoing, Tenant promptly shall comply with any such Requirements and compliance shall not be deferred if at any time the Demised Premises, or any part thereof, shall be in danger of being forfeited or lost or if Landlord shall be in danger of being subjected to civil and/or criminal liability or penalty by reason of noncompliance therewith. Landlord shall cooperate with Tenant in any such contest provided that Landlord shall not required to exercise any governmental powers and shall not be obligated to incur third-party expenses in connection therewith (other than a de minimis amount).

## ARTICLE 15

## EQUIPMENT

Section 15.01    Property of Landlord. All Equipment shall be and shall remain the property of Landlord. Tenant shall not have the right, power or authority to, and shall not, remove any Equipment from the Demised Premises without the consent of Landlord, which consent shall not be unreasonably withheld; provided, however, that such consent shall not be required in connection with repairs, cleaning or other servicing, or if the same is promptly replaced by Equipment which is at least equal in utility and value to the Equipment being removed.

Section 15.02    Maintenance and Replacement. Tenant shall keep all Equipment in good order and repair and shall replace the same when necessary with items at least equal in utility and value to the Equipment being replaced.

Notwithstanding any provision of this Article 15, Tenant shall not be required to replace any Equipment which performed a function which has become obsolete or otherwise is no longer necessary or desirable in connection with the use or operation of the Demised Premises, unless such failure to replace would reduce the value of the Demised Premises or would result in a reduced level of maintenance of the Demised Premises, in which case Tenant shall be required to install such Equipment as may be necessary to prevent such reduction in the value of the Demised Premises or in the level of maintenance.

## ARTICLE 16

### DISCHARGE OF LIENS; BONDS

Section 16.01    No Liens. Subject to the provisions of Section 16.02, except as otherwise expressly provided in this Lease, Tenant shall not create or permit to be created any lien, encumbrance or charge upon the Demised Premises or any part thereof or any interest therein, or the Property or any part thereof, the income therefrom or any assets of, or funds appropriated to, Landlord, and Tenant shall not suffer any other matter or thing whereby the estate, right and interest of Landlord in the Demised Premises or any part thereof might be impaired.

Section 16.02    Tenant's Obligation to Discharge. If any mechanic's, laborer's or materialman's lien (other than a lien arising out of any work performed by Landlord) at any time shall be filed in violation of the obligations of Tenant pursuant to Section 16.01 against the Demised Premises or any part thereof or any interest therein or the Property, or, if any public improvement lien created or permitted to be created by Tenant shall be filed against any assets of, or funds appropriated to, Landlord, Tenant, within thirty (30) days after notice of the filing thereof, shall cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise. Notwithstanding the foregoing provisions of this Section 16.02, Tenant shall not be required to discharge any such lien if (i) Tenant is in good faith contesting the same, (ii) Tenant has undertaken to Landlord to pay such lien with interest and penalties and shall deliver to Landlord the bond of a reputable surety company, or other deposit or security in an amount equal to 125% of the amount of the lien, (iii) neither the Demised Premises nor the Property, nor any part thereof, shall be in danger of being forfeited or lost and (iv) Landlord is not in danger of being subjected to civil and/or criminal liability or penalty by reason thereof.

Section 16.03    No Consent to Liens. Nothing contained in this Lease shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, by inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Demised Premises or the Property or any part thereof, nor as giving Tenant any right, power or authority to contract for or permit the rendering of any services or the furnishing of materials that would give rise to the filing of any lien against Landlord's interest in the Demised Premises or any part thereof, or any assets of, or funds

appropriated to, Landlord. Notice is hereby given, and Tenant shall cause all Construction Agreements to provide, that Landlord shall not be liable for any work performed or to be performed at the Demised Premises for Tenant or any User for any materials furnished or to be furnished at the Demised Premises for any of the foregoing, and that no mechanic's or other lien for such work or materials shall attach to or affect the estate or interest of Landlord in and to the Demised Premises, the Property or any part thereof, or any assets of, or funds appropriated to, Landlord.

Section 16.04   No Lien on Landlord's Interest. Tenant shall have no power to do any act or make any contract which may create or be the foundation of any lien, mortgage or other encumbrance upon the estate or assets of, or funds appropriated to, Landlord or of any interest of Landlord in the Demised Premises.

Section 16.05   Intentionally Deleted

## ARTICLE 17

### REPRESENTATIONS; POSSESSION

Section 17.01   Except as otherwise expressly set forth in this Lease, no representations, statements, or warranties, express or implied, have been made by or on behalf of Landlord in respect of Demised Premises, the status of title thereof, the physical condition thereof, the zoning or other laws, regulations, rules and orders applicable thereto, taxes, or the use that may be made thereof.

## ARTICLE 18

### LANDLORD NOT LIABLE FOR INJURY OR DAMAGE, ETC.

Section 18.01   Landlord Not Liable. Landlord shall not be liable for any injury or damage to Tenant or to any other Person happening on, in or about the Demised Premises and its appurtenances, nor for any injury or damage to the Demised Premises or to any property belonging to Tenant or to any other Person which may be caused by the use, misuse or abuse of any of the Demised Premises (including, but not limited to, any of the common areas within the Building, Equipment, elevators, hatches, openings, installations, stairways, hallways, or other common facilities), or the sidewalk area within the Demised Premises or which may arise from any other cause whatsoever, except in any such case to the extent caused by (i) Landlord's gross negligence or willful acts, (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space, but excluding loss or injury caused by acts or omissions of the Shelter or the residents thereof, or (iii) all other matters for which Landlord is expressly liable under any other provision of this Lease.

Section 18.02   Failure of Services. Landlord shall not be liable to Tenant or to any other Person claiming through or under Tenant for any failure of water supply, gas or electric current, nor for any injury or damage to any property of Tenant or of any other Person or to the Demised Premises caused by or resulting from gasoline,

oil, steam, gas, electricity, or hurricane, tornado, flood, wind or similar storms or disturbances, or water, rain or snow which may leak or flow from the street, sewer, gas mains or subsurface area or from any part of the Demised Premises, or from any other place, or caused by any public or quasi-public work, except in any such case to the extent caused by (i) Landlord's gross negligence or willful acts or (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space, but excluding loss or injury caused by acts or omissions of the Shelter or the residents thereof.

Section 18.03    Landlord Retained Liability. Notwithstanding the foregoing, Landlord shall only be liable for (i) Landlord's gross negligence or willful acts and (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space, but excluding loss or injury caused by acts or omissions of the Shelter.

Section 18.04    Exclusion of Consequential Damages. In no event shall Landlord be liable for special or consequential damages under this Lease.

## ARTICLE 19

## MUTUAL INDEMNIFICATION

Section 19.01    Indemnification by Tenant. Tenant shall not do, or permit any User, or any employee, agent, Contractor or invitee of Tenant or of any User, to do any act or thing upon the Demised Premises or elsewhere in the Building which may subject Landlord to any liability or responsibility for injury or damage to persons or property, or to any liability by reason of any violation of any Requirements, and shall exercise such control over the Demised Premises so as to fully protect Landlord against any such liability. Tenant, to the fullest extent permitted by law, shall indemnify and save Landlord, DMNA, the State, the City, and their respective agents, Contractors, affiliates, licensees, invitees, trustees, members, directors, shareholders, partners, officers, employees and disclosed and undisclosed principals (collectively, the "Landlord Indemnitees"), harmless from and against any and all actions, liabilities, suits, judgments, obligations, fines, damages, penalties, claims, costs, charges and expenses, including, without limitation, engineers', architects' and attorneys' fees and disbursements, which may be imposed upon or incurred by or asserted against any of the Landlord Indemnitees arising out of or in connection with the Demised Premises or the ownership, leasing, operation, management, maintenance, repair, rebuilding, use or occupation of the Demised Premises, or the Building, including, without limitation, any of the matters set forth in clauses (a) through (k) of this Section 19.01 during the Term (or prior to the commencement or following the expiration of the Term if Tenant shall be in occupancy or control of the Demised Premises or any portion thereof during such periods):

(a)    Performance of the Major Construction Work or any other work performed by or on behalf of Tenant or any User, or any employee, agent,

Contractor, invitee of Tenant or any User in or around Building, including, without limitation, the Demised Premises, or any part thereof;

(b)     any use, non-use, possession, occupation, alteration, replacement, repair, condition, operation, maintenance or management of the Demised Premises or any part thereof;

(c)     any negligent or tortious act or failure to act, whether real or alleged, in or around Building, including, without limitation, the Demised Premises, on the part of Tenant or any agent, contractor or employee of Tenant;

(d)     any accident, injury (including death at any time resulting therefrom) or damage to any Person or property occurring in or on the Demised Premises or any part thereof;

(e)     any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease on its part to be performed or complied with;

(f)     any lien or claim which may have arisen out of any act of Tenant or any agent, Contractor, servant or employee of Tenant against or on the Building, including, without limitation, the Demised Premises, or any lien or claim created or permitted to be created by Tenant in respect of the Building, including, without limitation, the Demised Premises, against any assets of, or funds appropriated to any of the Landlord Indemnitees under the laws of any Governmental Authority or any liability which may be asserted against any of the Landlord Indemnitees with respect thereto;

(g)     any failure on the part of Tenant to keep, observe and perform any of the terms, covenants, agreements, provisions, conditions or limitations contained in the Construction Agreements, User Agreements, or other contracts and agreements affecting the Demised Premises, on Tenant's part to be kept, observed or performed;

(h)     any tax or recording charge attributable to the execution, delivery or recording of this Lease, any User Agreement or any assignment of this Lease;

(i)     any contest by Tenant permitted pursuant to the provisions of this Lease;

(j)     any claim for brokerage commissions, fees or other compensation by any Person who alleges to have acted or dealt with Tenant in connection with this Lease or any User Agreement or otherwise; and

(k)     any work performed by or on behalf of Tenant.

Tenant shall not be liable for, and there shall be excluded from the foregoing indemnity, matters arising from (i) Landlord's gross negligence or willful acts, (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space (unless caused by Tenant's negligence, willful acts, or defaults under this Lease), but excluding loss or injury caused by acts or omissions of the Shelter or the residents thereof.

Section 19.02    Indemnification by Landlord. To the fullest extent provided by law, including appropriation if legally required, and consistent with Section 8 of the State Court of Claims Act, Landlord shall hold Tenant, each member thereof in the event Tenant is a partnership or joint venture, and their respective agents, Contractors, affiliates, licensees, invitees, trustees, members, directors, shareholders, partners, officers, employees and disclosed and undisclosed principals (collectively, the "Tenant Indemnitees") harmless from and indemnify it for any final judgment of a court of competent jurisdiction to the extent the event giving rise to the judgment is solely attributable to the gross negligence or intentional acts of Landlord (including, without limitation, DMNA) or of Landlord's officers or employees when acting within the course and scope of their employment.

Section 19.03    Payment of Obligations. The obligations of Landlord and Tenant under this Article 19 shall not be affected in any way by the absence in any case of covering insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under insurance policies affecting the Demised Premises. All amounts owed to any Indemnitees under this Article 19 shall be paid on demand following the date any indemnified amount was paid by such Indemnitees and shall (if owed by Tenant) constitute Additional Charges.

Section 19.04    Defense Process. If any claim, action, or proceeding is made or brought against any of the Indemnitees by reason of any event which is the subject of the indemnifications in Sections 19.01 or 19.02, as the case may be, then, upon demand by the indemnified party, the indemnifying party shall resist or defend such claim, action or proceeding (in such Indemnitee's name, if necessary) by the attorneys for the indemnifying party's insurance carrier (if such claim, action or proceeding is covered by insurance) or (in all other instances) by such attorneys as the indemnifying party shall select and the indemnified party shall approve, which approval shall not be unreasonably withheld. The indemnifying party shall not enter into any settlement of such claims without the prior consent of the indemnified party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, the indemnified party may engage its own attorneys to assist in its defense and such party shall pay the fees and disbursements of such attorneys.

Section 19.05    Exclusion of Consequential Damages. In no event shall either Landlord or Tenant be liable for special or consequential damages under this Article 19.

Section 19.06    Survival. The provisions of this Article 19 and all other indemnity provisions contained elsewhere in this Lease shall survive the termination of

this Lease with respect to acts and omissions occurring prior to the Expiration Date of this Lease, regardless of whether the claims relating to such acts or omissions are made before or after the Expiration Date of this Lease, but in any event subject to the applicable statute of limitations.

## ARTICLE 20

## RIGHT OF INSPECTION, ETC.

Section 20.01    Right of Inspection. Tenant shall permit Landlord and its agents or representatives to enter the Demised Premises at all reasonable times (except in cases of emergency, in which case Landlord may enter at any time ) for the purpose of (a) inspecting the same, (b) determining whether or not Tenant is in compliance with its obligations hereunder, (c) constructing, maintaining and inspecting any of Landlord's improvements and (d) making any necessary repairs to the Demised Premises and performing any work therein pursuant to Landlord's obligations under this Lease.

Section 20.02    No Interference. Landlord, during the progress of any work referred to in Section 20.01, shall use reasonable efforts to minimize any inconvenience, annoyance, disturbance, loss of business or other damage to Tenant, any User or other occupant of the Building by reason of making such repairs or the performance of any such work, or on account of bringing materials, tools, supplies and equipment into the Demised Premises during the course thereof and the obligations of Tenant under this Lease shall not be affected thereby. To the extent that Landlord undertakes such work or repairs, such work or repairs shall be commenced promptly and completed diligently in a good and workmanlike manner, in accordance with Requirements, and in such a manner as not to unreasonably interfere with the conduct of business in or use of such. The parties shall reasonably cooperate to determine, as necessary, an on-site or off-site storage area for materials, tools, supplies and equipment during the progress of any work referred to in Section 20.01.

## ARTICLE 21

## LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS

Section 21.01    Landlord's Right to Cure. If Tenant at any time shall be in Default and shall not have cured such Default within thirty (30) days after notice thereof or, provided Tenant is proceeding diligently to cure such Default, within a reasonable time to effect such cure (which notice and cure period shall not apply in an emergency), Landlord, without waiving or releasing Tenant from any obligation of Tenant contained in this Lease, may (but shall be under no obligation to) perform such obligation on Tenant's behalf and any costs or expenses incurred by Landlord in the performance of such obligation shall be Additional Charges payable by Tenant with interest at the Involuntary Rate.

Section 21.02    No Waiver. Any payment or performance by Landlord pursuant to Section 21.01 shall not be nor be deemed to be a waiver or release of any Default of Tenant with respect thereto or of the right of Landlord to terminate this Lease, institute summary proceedings or take such other action as may be permissible hereunder if an Event of Default by Tenant shall have occurred.

## ARTICLE 22

## NET LEASE; NO ABATEMENT OF BASE
## RENT OR ADDITIONAL CHARGES

Section 22.01    Net Lease. This Lease is intended to be and shall be construed as being an absolutely net lease, whereby under all circumstances and conditions, foreseen and unforeseen, except as expressly set forth herein, Base Rent and Additional Charges shall be net to Landlord without abatement, deduction, counterclaim, set-off or offset.

Section 22.02    No Set-Off. Except as expressly provided to the contrary in this Lease, there shall be no abatement, off-set, diminution or reduction of Base Rent or Additional Charges payable by Tenant hereunder or of the other obligations of Tenant hereunder under any circumstances.

## ARTICLE 23

## PERMITTED USE; NO UNLAWFUL OCCUPANCY

Section 23.01    Permitted Uses.

(a)    Subject to the Requirements and this Lease, Tenant shall occupy, and shall cause all Users and other occupants of the Demised Premises, to occupy the Demised Premises only for the following uses (which the parties acknowledge represent long-established and continuing uses of the Property), subject to the further terms and conditions of this Agreement: (i) primarily as a not-for-profit cultural center for performing and visual arts and other similar cultural exhibitions, including without limitation art and antiques shows (the "Primary Use"), and (ii) incidentally, as uses related to the Primary Use, including activities the purposes of which are to support the Conservancy's not-for-profit activities, as well as catering, offices, and other incidental uses that promote the mission of the Conservancy and the Public Goals of the Project (the "Permitted Uses"). Nothing in this Section shall prevent the use of the Demised Premises, in the event of a national or state emergency, for Emergency Use as set forth in Section 23.04.

(b)    Tenant shall use diligent efforts to maintain activity constituting Permitted Uses in the Demised Premises as close to 330 days per year as possible, subject to reasonable periods of closing for casualty and Restoration, repairs and maintenance, the performance of the Major Construction Work and any Capital Improvements, loading, set-up and breakdown time for shows, and Emergency Use.

(c)     Landlord shall cause the portions of the Building which are excluded from the Demised Premises to be used only as follows: (i) within the DMNA Retained Space, as offices and facilities for DMNA, (ii) within the Shelter Retained Space, as the Shelter, and (iii) in the event of a national or state emergency, for emergency use as set forth in Section 23.04.

(d)     Tenant shall obtain and maintain throughout the Term all authorizations, permits, licenses and consents necessary to operate the Demised Premises for the Permitted Uses in accordance with this Lease.

Section 23.02     No Illegal Uses. Tenant shall not use or occupy the Demised Premises and shall neither permit nor suffer the Demised Premises or any part thereof to be used or occupied for any unlawful or illegal business, activity, use or purpose.

Section 23.03     Drill Hall Use by DMNA. With respect to use requested by DMNA of the Drill Hall or other portions of the Demised Premises outside of the DMNA Retained Space (other than for Emergency Use), such bookings shall be subject to Tenant's usual procedures for booking space, and DMNA shall pay for such use at then-applicable governmental rates.

Section 23.04     Emergency Use. Landlord and Tenant agree and acknowledge that in the event of a national or state emergency, the Demised Premises may be used and occupied for Emergency Use, upon and pursuant to the provisions of Section 9.04 hereof and this Section 23.04. During the period of any Emergency Use, Tenant's rights and obligations hereunder shall be suspended to the extent necessary to comply with the terms of the emergency order with respect to the Demised Premises. Tenant shall in no event be responsible for any loss, cost, damage or expense, including without limitation costs of operating the Demised Premises during the period of such Emergency Use. Upon termination or cessation of such emergency, the Demised Premises shall be restored by Landlord or the party utilizing the Demised Premises during the emergency as nearly as practicable to its physical condition prior to the emergency, and Tenant shall resume the operations of the Demised Premises in accordance with the terms of this Agreement. Nothing herein shall diminish the rights of Tenant, its permitted sublessees or assignees or any User to seek compensation under applicable law for any loss, cost, damage or expense incurred by such party during the pendency or arising out of an Emergency Use.

Section 23.05     Nuisance Uses. Tenant shall not use or occupy, nor permit or suffer the Demised Premises or any part thereof to be used or occupied for any unlawful, illegal or extra hazardous business, use or purpose, or in such manner as to constitute a nuisance of any kind (public or private) or that Landlord, in its reasonable judgment, deems offensive by reason of odors, fumes, dust, smoke, noise or other pollution, or for any purpose or in any way in violation of any Requirements, or which may make void or voidable any insurance then in force on the Demised Premises. Tenant shall take, immediately upon the discovery of any such unpermitted,

Doc #:NY6:491877.32

unlawful, illegal or extra hazardous use, all necessary actions, legal and equitable, to compel the discontinuance of such use.

Section 23.06    Adverse Possession. Tenant shall not knowingly suffer or permit the Demised Premises or any portion thereof to be used by the public in such manner as might reasonably tend to impair title to the Demised Premises or any portion thereof, or in such manner as might reasonably make possible a claim or claims of adverse usage or adverse possession by the public, as such, or of implied dedication of the Demised Premises or any portion thereof.

## ARTICLE 24

### EVENTS OF DEFAULT;
### CONDITIONAL LIMITATIONS, REMEDIES, ETC.

Section 24.01    Events of Default. Each of the following events shall be an "Event of Default" hereunder:

(a)    if Tenant shall fail to pay any installment of Base Rent or Additional Charges, or any part thereof, when the same shall become due and payable and such failure shall continue for twenty (20) days after notice of such default is given to Tenant;

(b)    if Tenant shall fail to observe or perform one or more of the other terms, conditions, covenants or agreements contained in this Lease and such failure shall continue for a period of thirty (30) days after notice thereof by Landlord to Tenant specifying such failure (unless such failure requires work to be performed, acts to be done, or conditions to be removed which cannot by their nature reasonably be performed, done or removed, as the case may be, within such thirty (30) day period, in which case no Event of Default shall be deemed to exist as long as Tenant shall have commenced curing the same within such thirty (30) day period and shall diligently and continuously prosecute the same, subject to Unavoidable Delays);

(c)    if Tenant shall make an assignment for the benefit of creditors;

(d)    if Tenant shall file a voluntary petition under Title 11 of the United States Code or if such petition is filed against it, and an order for relief is entered, or if Tenant shall file any petition or answer seeking, consenting to or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy code or any other present or future applicable federal, state or other statute or law, or shall seek or consent to or acquiesce in or suffer the appointment of any trustee, receiver, custodian, assignee, sequestrator, liquidator or other similar official of Tenant, or of all or any substantial part of its properties or of the Demised Premises or any interest therein of Tenant, or if Tenant shall take any corporate action in furtherance of any action described in Section 24.01(d), (e) or (f);

(e)     if within ninety (90) days after the commencement of any proceeding against Tenant seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy code or any other present or future applicable federal, state or other statute or law, such proceeding shall not have been dismissed, or if, within ninety (90) days after the appointment, without the consent or acquiescence of Tenant, of any trustee, receiver, custodian, assignee, sequestrator, liquidator or other similar official of Tenant or of all or any substantial part of its properties or of the Demised Premises or any interest therein of Tenant, such appointment shall not have been vacated or stayed on appeal or otherwise, or if, within ninety (90) days after the expiration of any such stay, such appointment shall not have been vacated;

(f)     if Tenant shall abandon the Demised Premises; or

(g)     if this Lease or the estate of Tenant hereunder shall be assigned or encumbered in violation of the terms of this Lease.

Section 24.02     [intentionally omitted].

Section 24.03     Conditional Limitation.

(a)     If any Event of Default shall occur, Landlord, at any time thereafter, may, at its option, give notice to Tenant stating that this Lease and the Term shall expire and terminate on the date specified in such notice, which date shall be not less than five (5) days after the giving of such notice, and the Term and all rights of Tenant under this Lease shall expire and terminate as of the date specified in such notice, as if such date were the date herein fixed for the expiration of the Term and Tenant immediately shall quit and surrender the Demised Premises.

(b)     If an Event of Default described in Section 24.01(c), Section 24.01(d) or Section 24.01(e) shall occur, or this Lease shall be terminated as provided in Section 24.03(a), Landlord, without notice, may re-enter and repossess the Demised Premises and may dispossess Tenant by summary proceedings or otherwise.

(c)     If an Event of Default shall occur and the Lease shall be terminated, Landlord may elect to declare due and payable a sum equal to the amount by which the Base Rent and Additional Charges reserved in this Lease for the unexpired portion of the Term exceeds the fair and reasonable rental value of the Demised Premises for the same period, both discounted to present worth at a rate of three percent (3%), such sum shall be due and payable ten (10) days after notice by Landlord to Tenant of such election. For purposes of the foregoing, it shall be deemed that Base Rent for the unexpired portion of the Term shall equal the average Base Rent payable by Tenant over the five-year period immediately preceding the date of termination, escalated by the average annual change in the Consumer Price Index during such five-year period over the unexpired portion of the Term. Landlord may also elect to proceed by appropriate judicial proceedings. either at law or in equity, to enforce performance or

observance by Tenant of the applicable provisions of this Lease and/or to recover damages for breach thereof.

          Section 24.04    Landlord's Rights on Termination. If this Lease shall be terminated as provided in Section 24.03(a) or Tenant shall be dispossessed by summary proceedings or otherwise as provided in Section 24.03(b) hereof:

          (a)    Tenant shall pay to Landlord all Base Rent and Additional Charges payable by Tenant under this Lease to the date upon which this Lease and the Term shall have expired and come to an end or to the date of re-entry upon the Demised Premises by Landlord, as the case may be;

          (b)    Landlord may complete all construction required to be performed by Tenant hereunder and may repair and alter the Demised Premises in such manner as Landlord may deem necessary or advisable (and may apply to the foregoing all funds, if any, then held by Depositary pursuant to Articles 9 and 10 and by Landlord under any provision of this Lease) without relieving Tenant of any liability under this Lease or otherwise affecting any such liability, and/or let or relet the Demised Premises or any parts thereof for the whole or any part of the remainder of the Term or for a longer period, in Landlord's name or as agent of Tenant, and out of any rent and other sums collected or received as a result of such reletting Landlord shall: (i) first, pay to itself the cost and expense of terminating this Lease, re-entering, retaking, repossessing, completing construction and repairing or altering the Demised Premises, or any part thereof, and the cost and expense of removing all persons and property therefrom, including in such costs brokerage commissions, legal expenses and attorneys' fees and disbursements, (ii) second, pay to itself the costs and expense sustained in securing any new tenants and other occupants, including in such costs brokerage commissions, legal expenses and attorneys' fees and disbursements and other expenses of preparing the Demised Premises for reletting, and, if Landlord shall maintain and operate the Demised Premises, the cost and expense of operating and maintaining the Demised Premises, and (iii) third, pay to itself any balance remaining on account of the liability of Tenant to Landlord. Landlord in no way shall be responsible or liable for any failure to relet the Demised Premises or any part thereof, or for any failure to collect any rent due on any such reletting, and no such failure to relet or to collect rent shall operate to relieve Tenant of any liability under this Lease or to otherwise affect any such liability;

          (c)    if Landlord shall not have declared all Base Rent and Additional Charges due and payable pursuant to Section 24.03 (c), Tenant shall be liable for and shall pay to Landlord, as damages, any deficiency (referred to as "Deficiency") between the Base Rent and Additional Charges reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term and the net amount, if any, of rents collected under any reletting effected pursuant to the provisions of Section 24.04(b) for any part of such period (first deducting from the rents collected under any such reletting all of the payments to Landlord described in Section 24.04(b)); any such Deficiency shall be paid in installments by Tenant on the days specified in this Lease for payment of installments of Base Rent and Additional Charges, and Landlord shall be entitled to recover from Tenant each Deficiency installment as the same shall

arise, and no suit to collect the amount of the Deficiency for any installment period shall prejudice Landlord's right to collect the Deficiency for any subsequent installment period by a similar proceeding. For purposes of the foregoing, it shall be deemed that Base Rent for the unexpired portion of the Term shall equal the average Base Rent payable by Tenant over the five-year period immediately preceding the date of termination, escalated by the average annual change in the Consumer Price Index during such five-year period over the unexpired portion of the Term; and

(d)    if Landlord shall not have declared all Base Rent and Additional Charges due and payable pursuant to Section 24.03 (c), and whether or not Landlord shall have collected any Deficiency installments as aforesaid, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, in lieu of any further Deficiencies, as and for liquidated and agreed final damages (it being agreed that it would be impracticable or extremely difficult to fix the actual damage), a sum equal to the amount by which the Base Rent and Additional Charges reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term exceeds the then fair and reasonable rental value of the Demised Premises for the same period, both discounted to present worth at a rate of three percent (3%) less the aggregate amount of Deficiencies theretofore collected by Landlord pursuant to the provisions of Section 24.04(c) for the same period; it being agreed that before presentation of proof of such liquidated damages to any court, commission or tribunal, if the Demised Premises, or any part thereof, shall have been relet by Landlord for the period which otherwise would have constituted the unexpired portion of the Term, or any part thereof, the amount of rent reserved upon such reletting shall be deemed, prima facie, to be the fair and reasonable rental value for the part or the whole of the Demised Premises so relet during the term of the reletting. For purposes of the foregoing, it shall be deemed that Base Rent for the unexpired portion of the Term shall equal the average Base Rent payable by Tenant over the five-year period immediately preceding the date of termination, escalated by the average annual change in the Consumer Price Index during such five-year period over the unexpired portion of the Term.

(e)    Suit or suits for the recovery of damages, or for a sum equal to any installments or installments of Base Rent and Additional Charges payable hereunder or any Deficiencies or other sums payable by Tenant to Landlord pursuant to this Article 24, may be brought by Landlord from time to time at Landlord's election, and nothing herein contained shall be deemed to require Landlord to await the date whereon this Lease or the Term would have expired had there been no Event of Default by Tenant and termination.

Section 24.05    Survival. No termination of this Lease pursuant to this Article 24 or taking possession of or reletting the Demised Premises, or any part thereof, pursuant to this Article 24, shall relieve Tenant of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, repossession or reletting.

Section 24.06    Bankruptcy Damages. Nothing contained in this Article 24 shall limit or prejudice the right of Landlord to prove and obtain as

liquidated damages in any bankruptcy, insolvency, receivership, reorganization or dissolution proceeding an amount equal to the maximum allowed by statute or rule of law governing such proceeding and in effect at the time when such damages are to be proved.

Section 24.07    No Reinstatement. No receipt or acceptance of moneys by Landlord from Tenant after the termination of this Lease, or after the giving of any notice of the termination of this Lease, shall reinstate, continue or extend the Term or affect any notice theretofore given to Tenant, or operate as a waiver of the right of Landlord to enforce the payments of Base Rent and Additional Charges payable by Tenant hereunder or thereafter falling due, or operate as a waiver of the right of Landlord to recover possession of the Demised Premises by proper remedy, except as herein otherwise expressly provided, it being agreed that after the service of notice to terminate this Lease or the commencement of any suit or summary proceedings, or after a final order or judgment for the possession of the Demised Premises, Landlord may demand, receive and collect any moneys due or thereafter falling due without in any manner affecting such notice, proceeding, order, suit or judgment, all such moneys collected being deemed payments on account of the use and operation of the Demised Premises or, at the election of Landlord, on account of Tenant's liability hereunder.

Section 24.08    Waivers by Tenant. Except as otherwise expressly provided herein or as prohibited by applicable law, Tenant hereby expressly waives the service of any notice of intention to re-enter provided for in any statute, or of the institution of legal proceedings to that end, and Tenant, for and on behalf of itself and all persons claiming through or under Tenant, also waives any and all right of redemption provided by any law or statute now in force or hereafter enacted or otherwise, or re-entry or repossession or to restore the operation of this Lease in case Tenant shall be dispossessed by a judgment or by warrant of any court or judge or in case of re-entry or repossession by Landlord or in case of any expiration or termination of this Lease. Tenant hereby waives and shall waive trial by jury in any action, proceeding or counterclaim brought by Landlord against Tenant on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Demised Premises, or any claim of injury or damage. The terms "enter," "re-enter," "entry" or "re-entry," as used in this Lease are not restricted to their technical legal meaning.

Section 24.09    No Waiver.

(a)    No failure by Landlord or any prior landlord to insist upon the strict performance of any covenant, agreement, term or condition of this Lease or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial Base Rent or Additional Charges during the continuance of any such breach, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Lease to be performed or complied with by Tenant, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Landlord and Tenant. No waiver of any breach shall affect or alter this Lease, but each and every covenant, agreement,

term and condition of this Lease still continue in full force and effect with respect to any other then existing or subsequent breach thereof.

(b)     No failure by Tenant to insist upon the strict performance of any covenant, agreement, term or condition of this Lease or to exercise any right or remedy consequent upon a breach thereof and no payment of full or partial Base Rent or Additional Charges during the continuance of any such breach, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Lease to be performed or complied with by Landlord, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Landlord and Tenant. No waiver of any breach shall affect or alter this Lease, but each and every covenant, agreement, term and condition of this Lease shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

Section 24.10     Injunction. In the event of any breach or threatened breach by Tenant of any of the covenants, agreements, terms or conditions contained in this Lease, Landlord shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any rights and remedies allowed at law or in equity or by statute or otherwise as though re-entry, summary proceedings, and other remedies were not provided for in this Lease.

Section 24.11     Remedies Cumulative. Each right and remedy of Landlord provided for in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Landlord of any one or more of the rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by Landlord of any or all other rights or remedies provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise.

Section 24.12     Bankruptcy Rights. If an order for relief is entered or if a stay of proceedings or other acts becomes effective in favor of Tenant or Tenant's interest in this Lease in any proceeding which is commenced by or against Tenant under the present or any future federal bankruptcy code or any other present or future applicable federal, state or other statute or law, Landlord shall be entitled to invoke any and all rights and remedies available to it under such bankruptcy code, statute, law or this Lease, including, without limitation, such rights and remedies as may be necessary to adequately assure the complete and continuous future performance of Tenant's obligations under this Lease. Adequate protection of Landlord's right, title and interest in and to the Demised Premises, and adequate assurance of the complete and continuous future performance of Tenant's obligations under this Lease, shall include, without limitation, the following requirements:

(a)     that Tenant shall comply with all of its obligations under this Lease, including without limitation Tenant's obligation to continue to pay any Base Rent and Additional Charges;

(b)     that Tenant shall continue to use the Demised Premises in the manner required by this Lease;

(c)     that Landlord shall be permitted to supervise the performance of Tenant's obligations under this Lease;

(d)     that Tenant shall pay to Landlord within thirty (30) days after entry of such order or the effective date of such stay, as adequate assurance of the complete and continuous future performance of Tenant's obligations under this Lease, a security deposit as may be required by law or ordered by the court;

(e)     that Tenant has and will continue to have unencumbered assets after the payment of all secured obligations and administrative expenses to assure Landlord that sufficient funds will be available to fulfill the obligations of Tenant under this Lease;

(f)     that if Tenant's trustee, Tenant or Tenant as debtor-in-possession assumes this Lease and proposes to assign the same (pursuant to Title 11 U.S.C. § 365, as the same may be amended) to any Person who shall have made a bona fide offer to accept an assignment of this Lease on terms acceptable to the trustee, Tenant or Tenant as debtor-in-possession, then notice of such proposed assignment, setting forth (i) the name and address of such person, (ii) all of the terms and conditions of such offer, and (iii) the adequate assurance to be provided Landlord to assure such Person's future performance under the Lease, including, without limitation, the assurances referred to in Title 11 U.S.C. § 365(b)(3) (as the same may be amended), shall be given to Landlord by the trustee, Tenant or Tenant as debtor-in-possession no later than twenty (20) days after receipt by the trustee, Tenant or Tenant as debtor-in-possession of such offer, but in any event no later than ten (10) days prior to the date that the trustee, Tenant or Tenant as debtor-in-possession shall make application to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Landlord shall thereupon have the prior right and option, to be exercised by notice to the trustee given at any time prior to the effective date of such proposed assignment, to accept an assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such Person, less any brokerage commissions which may be payable out of the consideration to be paid by such Person for the assignment of this Lease.

Section 24.13    Landlord Costs and Expenses. Tenant shall pay to Landlord all costs and expenses incurred by Landlord by reason of a Default of Tenant under this Lease, including, without limitation, attorneys' fees and disbursements, incurred by Landlord in enforcing any of the covenants and provisions of this Lease, together with interest thereon at the Involuntary Rate, unless a court of competent jurisdiction shall have rendered a non-appealable judgment that Tenant did not violate

such covenants and provisions. All of the sums paid or obligations paid by Landlord pursuant to this Section 24.13 shall be paid by Tenant to Landlord upon demand by Landlord and shall constitute Additional Charges hereunder.

## ARTICLE 25

### NOTICES

Section 25.01    Notices. Whenever it is provided in this Lease that a notice, demand, request, consent, approval or other communication shall or may be given to or served upon either of the parties by the other and whenever either of the parties shall desire to give or serve upon the other any notice, demand, request, consent, approval, or other communication with respect hereto or the Demised Premises, each such notice, demand, request, consent, approval, or other communication shall be in writing (whether or not so stated elsewhere in this Lease) and, any law or statute to the contrary notwithstanding, shall be effective for any purpose only if given or served as follows:

(a)    if by Landlord, by hand delivering or by mailing the same to Tenant by registered or certified mail, postage prepaid, return receipt requested, or by sending by nationally recognized overnight courier service, addressed to Tenant at its address first set forth above, attention: President, Seventh Regiment Armory Conservancy or to such other parties and addresses as Tenant may from time to time designate by notice given as aforesaid;

(b)    if by Tenant, DMNA or any other agency of Landlord (other than ESDC), by hand delivering or by mailing the same to Landlord by registered or certified mail, postage prepaid, return receipt requested, or by sending by nationally recognized overnight courier service, addressed to Landlord at:

> New York State Urban Development Corporation
> d/b/a Empire State Development Corporation
> 633 Third Avenue
> New York, New York 10017
> Attention: Senior Vice President,
> Legal/General Counsel

or to such other parties and addresses as Landlord may from time to time designate by notice given as aforesaid;

(c)    during the period that Tenant's leasehold estate in this Lease is subject to a Mortgage, or Tenant's leasehold estate in this Lease is acquired by the Mortgagee because of a default under such Mortgage, copies of all notices given by Landlord to Tenant shall be sent to the Mortgagee in the manner provided for notices in this Article 25 at the address (or to such other parties and addresses) as the Mortgagee may from time to time designate by notice given as aforesaid; and

(d)    in the event the subject of any notice concerns the obligations or rights of DMNA under this Lease, Landlord and/or Tenant, as the case may be, shall send a copy of such notice to DMNA in the manner provided for notices in this Article 25 at the following address:

> Division of Military and Naval Affairs
> 330 Old Niskayuma Road
> Latham, New York 12110-2224
> Attention: Director of Facilities Management and Engineering

or to such other parties and addresses as DMNA may from time to time designate by notice given as aforesaid.

Section 25.02    Timing. Every notice, demand, request, consent, approval, or other communication hereunder shall be deemed to have been given or served only when hand delivered against a signed receipt, or if mailed, on the earliest to occur of (a) five (5) Business Days after the date that the same shall have been deposited in the United States mails, postage prepaid, in the manner aforesaid, (b) the date of actual receipt thereof and (c) the date of refusal by the addressee to accept such mailing or delivery.

## ARTICLE 26

### FINANCIAL AND VENDOR RESPONSIBILITY REPORTS

Section 26.01    Financial Statements. Tenant shall, at its own cost and expense, furnish to Landlord, the following:

(a)    as soon as practicable after the end of each fiscal year of Tenant, but in any event within one-hundred fifty (150) days thereafter, financial statements of Tenant and of the operations of the Demised Premises, including, without limitation, a statement of Gross Revenues from Commercial Operations, balance sheets and income and expense statements, all in detail reasonably satisfactory to Landlord and examined and certified by a Certified Public Accountant in accordance with generally accepted Accounting Principles who shall render a written report thereof certified as complete and accurate to the Landlord ; and

(b)    as soon as practicable after the end of each fiscal year of Tenant, but in any event within one hundred fifty (150) days thereafter, Tenant shall send to Landlord a schedule of all User Agreements (including any amendments thereto), setting forth the name of each User thereunder, the original rent to be paid under each such User Agreement and any increases (including the basis for calculating such increases) in rent since the date of such User Agreement certified by the chief financial officer or managing general partner of Tenant; and

(c)  such other information respecting the business, property, condition and operations, financial of otherwise, of the Demised Premises, Tenant and any entity comprising Tenant as Landlord may reasonably request.

Section 26.02  Books and Records. Tenant shall keep and maintain at an office in New York City complete and accurate books and records of accounts of the operations of the Demised Premises from which Landlord may determine for each fiscal year of Tenant (all or any portion of which falls within the Term) the items to be shown or set forth on the statements to be delivered by Tenant to Landlord pursuant to Section 26.01 and in accordance with any applicable provision of any Mortgage and shall preserve, for a period of at least six (6) years after the end of each applicable period of time, such books and records. However, if, at the expiration of such six (6) year period, Landlord is seeking to contest or is contesting any matter relating to such records or any matter to which such records may be relevant, Tenant shall preserve these until one (1) year after the final adjudication, settlement or other disposition of any such contest.

Section 26.03  Landlord Review and Audit.

(a)  Landlord or Landlord's agent or designee shall have the right from time to time during regular business hours, upon five (5) Business Days' notice, to inspect, audit and, at its option, duplicate, at Landlord's expense, and retain copies of all of Tenant's books and records relating in any manner to the operation of the Demised Premises or to matters covered by this Lease. Tenant shall produce them upon request of Landlord, Landlord's agent or designee.

(b)  Should any audit performed by Landlord or Landlord's agent or designee disclose that any payment of Base Rent or Additional Charges was understated, Landlord shall notify Tenant, of the amount of the underpayment by a statement showing in reasonable detail the reasons why such payment of Base Rent and/or Additional Charges was understated. Within thirty (30) days after Tenant has received notice of such underpayment from Landlord, Tenant shall either pay to Landlord the amount by which such payment was understated, with interest to the extent provided below, or deliver to Landlord a statement contesting Landlord's determination of underpayment and giving the reasons therefor in reasonable detail. Within thirty (30) days after it is determined by agreement between Landlord and Tenant or otherwise that a payment of Base Rent and Additional Charges was understated, Tenant shall pay to Landlord the amount of the deficiency with interest to the extent provided below and, in the event that the amount of the deficiency is greater than five percent (5%) of the correct amount owed, Tenant shall reimburse Landlord for the reasonable costs of such audit. Any payment of a deficiency pursuant to this Section 26.03(b) shall bear interest at the Involuntary Rate from the date of the underpayment to the date of the payment of the deficiency, which interest shall constitute Additional Charges hereunder.

Section 26.04  Survival. The obligations of Tenant under Sections 26.01 through 26.03 shall survive the termination of this Lease for a period of six (6) years. However, if at the end of such six (6) year period, Landlord is seeking to contest

Doc #:NY6:491877.32

or is contesting any matter under such surviving Sections, the obligations of Tenant shall not terminate until final adjudication, settlement or other disposition of any such contest.

Section 26.05    Vendor Responsibility. Tenant shall notify Landlord in writing with respect to any change in Tenant's vendor responsibility disclosure as required by the Procurement and Disbursement Guidelines set forth in Bulletin No. G-221 and related materials issued by the New York State Office of the State Comptroller, and any successor requirements.

## ARTICLE 27

## DMNA OCCUPANCY

Section 27.01    DMNA Retained Space. The Demised Premises excludes certain space located in the Building and described and depicted with particularity in Exhibits C-1 and C-2, and referred to as the "DMNA Retained Space". The current location and configuration of the DMNA Retained Space is depicted in Exhibit C-1. No later than the Completion of Construction Date, DMNA shall relocate into the space depicted in Exhibit C-2, and such space shall thereafter constitute the DMNA Retained Space, unless the DMNA shall at any time determine that it does not want a portion of the space depicted in Exhibit C-2, in which event such portion shall cease to comprise part of the DMNA Retained Space and shall become part of the Demised Premises. DMNA shall use and occupy the DMNA Retained Space under an arrangement with Landlord for use as an military use pursuant to Article IX of the New York Military Law as modified by the Laws of 2004, Chapter 482 and in accordance with the terms of the City Lease. DMNA shall at all times maintain a sufficient presence of personnel in occupancy of the DMNA Retained Space such that the Building continues to function as an armory for purposes of Article IX of the New York Military Law as modified by the Laws of 2004, Chapter 482 and the City Lease.

Section 27.02    Maintenance and Operation of DMNA Retained Space.

(a)    Except as set forth in Section 27.02(b), DMNA shall be solely responsible for the maintenance, operation, cleaning, repair, replacement and upkeep of the DMNA Retained Space, and Tenant shall have no liability therefor. DMNA shall take good care of the DMNA Retained Space and make all repairs therein, ordinary and extraordinary, foreseen and unforeseen, as necessary or appropriate to keep the same in a good condition, and whether or not necessitated by wear, tear, obsolescence or defects, latent or otherwise, or resulting from a casualty or condemnation. DMNA shall not commit or suffer, and shall use all reasonable precaution to prevent, waste, damage or injury to the DMNA Retained Space and the Demised Premises. When used herein, the term "repairs" shall include all necessary replacements, alterations and additions. All repairs made by DMNA shall be made in compliance with all Requirements and the provisions of this Lease. Tenant shall not be required to furnish any services, utilities or facilities whatsoever to the DMNA Retained

Space, nor shall Tenant have any duty or obligation to make any alteration, change, improvement, replacement, Restoration or repair to, the DMNA Retained Space.

(b)     DMNA shall be entitled to use the electric power supplied to the Building by Landlord pursuant to Section 12.03. DMNA shall pay to Tenant within ten (10) days following demand by Tenant, DMNA's pro rata share of the cost of such electric power as billed to Tenant by Landlord, with such pro rata share to be calculated as 1.4% [the ratio of square footage of the DMNA Retained Space to the square footage of the Administration Building] (the "DMNA Pro Rata Share").

(c)     DMNA shall pay to Tenant, on an annual basis throughout the Term, DMNA's Pro Rata Share of Common Area Operating Expenses for the Building.

(d)     The DMNA Retained Space shall be used for offices and related uses. DMNA shall not use or occupy, nor permit or suffer the DMNA Retained Space or any part thereof to be used or occupied for any unlawful, illegal or extra hazardous business, use or purpose, or in such manner as to constitute a nuisance of any kind (public or private), including for the storage of live ammunition therein on other than a temporary basis, or that Tenant, in its reasonable judgment, deems offensive by reason of odors, fumes, dust, smoke, noise or other pollution, or for parking or storage of vehicles or for any purpose or in any way in violation of any Requirements, or which may make void or voidable any insurance then in force on the Demised Premises. DMNA shall take, immediately upon the discovery of any such unpermitted, unlawful, illegal or extra hazardous use, all necessary actions, legal and equitable, to compel the discontinuance of such use.

Section 27.03     Cross-Easements for Access, Emergency and Communications Purposes.

(a)     DMNA shall have a permanent easement for access of individuals across the Demised Premises to allow for ingress and egress from the Building main door located on Park Avenue to the DMNA Retained Space, and to allow for emergency egress from the DMNA Retained Space through all egress stairs located in the Building which service the DMNA Retained Space. DMNA employees, visitors and business invitees may pass through such easement areas as necessary for such ingress and egress to the DMNA Retained Space. Tenant shall be entitled to maintain security procedures, including limited access, hours of operation, and screening of visitors, to and through the Demised Premises. Notwithstanding the preceding sentence, DMNA, ESDC and the Landlord's employees, agents and assigns shall have unfettered access to the DMNA Retained Space at all times.

(b)     Tenant, its employees, visitors and business invitees shall have an easement for the Term of this Lease for access to and across the DMNA Space in the event of an emergency, or as may be required to perform and services which Tenant is performing in the Building or to fulfill any obligation of Tenant under this Lease.

(c)    DMNA shall have an easement for the Term of this Lease to install and maintain wiring, cabling, fiber optic or other electrical and communications lines, within conduits, chases, risers, or concealed within or behind walls, ceilings or floors, through the Demised Premises to and from the DMNA Retained Space.

Section 27.04    Exculpation.

(a)    Tenant shall not in any event whatsoever be liable for any injury or damage to any Person happening on, in or about the DMNA Retained Space and its appurtenances, nor for any injury or damage to the DMNA Retained Space or to any property belonging to DMNA or to any other Person which may be caused by any fire or breakage, or by the use, misuse or abuse of any of the DMNA Retained Space unless caused by Tenant, or its agents, assignees, sublessees, Users or invitees.

(b)    Failure of Services. Tenant shall not be liable to DMNA or to any other Person claiming through or under DMNA for any failure of water supply, gas or electric current, nor for any injury or damage to any property of DMNA or of any other Person or to the DMNA Retained Space caused by or resulting from gasoline, oil, steam, gas, electricity, or hurricane, tornado, flood, wind or similar storms or disturbances, or water, rain or snow which may leak or flow from the street, sewer, gas mains or subsurface area or from any part of the DMNA Retained Space or the Demised Premises, or from any other place, or caused by any public or quasi-public work, except in any such case to the extent caused by Tenant's negligence or improper acts.

Section 27.05    Insurance. Landlord is, and shall throughout the Term be, self-retained with respect to liabilities arising from DMNA's occupancy of the DMNA Retained Space pursuant to this Article 27 and under Section 19.02. In the event that at any time Landlord ceases to be self-retained with respect to such liabilities, (i) Landlord shall, or shall cause DMNA to, obtain insurance or to self-insure with respect to its obligations under Section 19.02, (i) such insurance or self-insurance shall provide the coverages described in Section 7.01, which insurance or self-insurance shall specifically cover the indemnifications set forth in Section 19.02 and otherwise meet all of the requirements set forth in Section 7.01 of insurance to be carried by Tenant, (ii) Landlord, Tenant and any Mortgagee, shall be named as additional insureds on all policies of liability insurance, if any, maintained by DMNA, and (iii) in the event that Landlord and/or DMNA carries property insurance (or is self-insured for property coverage) on its personal property, each such policy of property insurance shall expressly include a waiver of all rights of subrogation and permission to release liability against Tenant and any Mortgagee; provided that if an insurer will not include such a provision in such policy or if the inclusion of such a provision would involve an additional premium, Landlord shall use all reasonable efforts to cause such a provision to be so included at Landlord's expense.

## ARTICLE 28

### [INTENTIONALLY OMITTED]

## ARTICLE 29

### STREET WIDENING

If at any time during the Term, any proceedings are instituted or orders made by any Governmental Authority for the widening or other enlargement of any Street requiring removal of any projection or encroachment on, under or above any such Street, or any changes or alterations upon the Demised Premises, or in the sidewalks, vaults (other than vaults which are under the control of, or are maintained or repaired by, a utility company), gutters, curbs or appurtenances, Tenant, with reasonable diligence shall comply with such requirements, and on Tenant's failure to do so, Landlord may comply with the same in accordance with the provisions of <u>Article 21</u>. Tenant shall be permitted to contest in good faith any proceeding or order for street widening instituted or made by any Governmental Authority in accordance with <u>Section 14.02</u>. Any widening or other enlargement of any such Street and the award or damages in respect thereto shall be deemed a partial condemnation and be subject to the provisions of <u>Article 9</u>.

## ARTICLE 30

### SUBORDINATION AND NON-DISTURBANCE

Section 30.01    <u>Landlord's Interest Not Subordinate</u>. Neither Landlord's interest in the Demised Premises nor Landlord's interest in this Lease, as this Lease may be modified, amended or supplemented, or any part thereof, shall be subject or subordinate to (a) any mortgage now or hereafter placed upon Tenant's interest in this Lease or (b) any other liens or encumbrances hereafter affecting Tenant's interest in this Lease.

Section 30.02    <u>Tenant's Interest Subordinate</u>. This Lease, and all rights of Tenant hereunder, are and shall be subject and subordinate in all respects to all future ground leases, overriding leases and underlying leases of the Land and/or the Building hereafter existing (a "<u>Superior Lease</u>") and to any mortgages held by an Institutional Lender on Landlord's Interest in the Land and Building (a "<u>Landlord's Mortgage</u>"); provided that with respect to any such Superior Lease or Landlord's Mortgage, there shall have been delivered to Tenant a Non-Disturbance Agreement. In confirmation of such subordination, Tenant shall promptly execute, acknowledge and deliver to Landlord, the lessor under any such Superior Lease (a "<u>Superior Lessor</u>") or the holder of any such Landlord's Mortgage or any of their respective successors in interest any further instruments to evidence such subordination; provided that Tenant shall have received a Non-Disturbance Agreement and that any such instruments of subordination are not inconsistent with the terms of the Non-Disturbance Agreement or this Lease. Tenant shall execute, acknowledge and deliver the Non-Disturbance Agreement to Superior Lessor or holder of Landlord's Mortgage within ten (10) Business Days after

Tenant's receipt thereof. Notwithstanding anything to the contrary contained in this Article 30, this Lease shall be subordinate to a Superior Lease or Landlord's Mortgage only during the period in which the Non-Disturbance Agreement between Tenant and the Superior Lessor or holder of the Landlord's Mortgage, as the case may be, is in full force and effect.

Section 30.03    A "Non-Disturbance Agreement" shall mean an agreement, in form and substance, reasonably satisfactory to Landlord, Tenant and the Superior Lessor or holder of Landlord's Mortgage, and executed by Tenant and by the Superior Lessor or holder of Landlord's Mortgage, whereby such superior party agrees that (a) as long as Tenant is not in default beyond any applicable grace period, Tenant shall not be named or joined as a party defendant (unless deemed a necessary party under any applicable law) in any suit, action or proceeding to terminate a Superior Lease or Landlord's Mortgage, as the case may be, by reason of a default thereunder, and (b) Tenant's leasehold estate in this Lease shall not be disturbed by reason of such termination or foreclosure and Tenant agrees to attorn to such superior party and any successor thereto, on the terms and conditions of this Lease, subject to the terms referred to in clauses (i) through (vii) of Section 10.07(a) and such other commercially customary and reasonable provisions as such superior party shall customarily include in its non-disturbance and attornment agreements.

## ARTICLE 31

### EXCAVATIONS AND SHORING

If any excavation shall be made or contemplated to be made for construction or other purposes upon property adjacent to the Property, Tenant shall afford to Landlord or, at Landlord's option, to the person or persons causing or authorized to cause such excavation the right to enter upon the Demised Premises in a reasonable manner for the purpose of doing such work as may be necessary to preserve any of the walls or structures of the Building from injury or damage and to support the same by proper foundations; provided that Tenant shall have approved of the plans and specifications for such work and Tenant shall be indemnified from and against all loss and damage resulting from such work. Tenant's approval shall be limited to determining that the work is safely planned and shall not be unreasonably withheld. If Tenant shall not have approved or disapproved of such plans and specifications within twenty (20) days after they shall have been delivered to Tenant, Tenant shall be deemed to have approved of such plans and specifications. Tenant shall not, by reason of any such excavation or work, have any claim against Landlord for suspension, diminution, abatement, offset or reduction of Base Rent or Additional Charges or, except as set forth in this Article 31, for damages or for indemnity.

## ARTICLE 32

### CERTIFICATES BY LANDLORD AND TENANT

Section 32.01    Tenant Certificates. At any time and from time to time upon not less than ten (10) days notice by Landlord, Tenant shall execute, acknowledge and deliver to Landlord or any other party specified by Landlord a statement certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same, as modified, is in full force and effect and stating the modifications) and the date to which Base Rent and Additional Charges have been paid, and stating whether or not to the best knowledge of Tenant, Landlord is in default in the performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such default of which Tenant may have knowledge.

Section 32.02    Landlord Certificates. At any time and from time to time upon not less than ten (10) days notice by Tenant, Landlord shall execute, acknowledge and deliver to Tenant or any other party specified by Tenant a statement certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same, as modified, is in full force and effect and stating the modifications) and the date to which Base Rent and Additional Charges have been paid, and stating whether or not to the best knowledge of Landlord, Tenant is in Default in the performance of any covenant, agreement or condition contained in this Lease, and, if so, specifying each such Default of which Landlord may have knowledge.

## ARTICLE 33

### CONSENTS AND APPROVALS

Section 33.01    Consents in Writing. All consents and approvals which may be given under this Lease shall, as a condition of their effectiveness, be in writing and otherwise satisfy the requirements of Article 25. The granting of any consent or approval by a party to perform any act requiring consent or approval under the terms of this Lease, or the failure on the part of a party to object to any such action taken without the required consent or approval, shall not be deemed a waiver by the party whose consent was required of its right to require such consent or approval for any further similar act.

Section 33.02    Reasonableness. Except as provided below in this Section 33.02, in no event shall Tenant be entitled to any damages for any unreasonable withholding by Landlord of its consent or approval. Tenant's sole recourse against Landlord for the unreasonable withholding of Landlord's consent or approval in those instances in which such recourse is permitted under this Section 33.02 shall be limited to an action for declaratory relief that the withholding of such consent or approval was unreasonable and that, accordingly, Tenant may proceed as if such consent or approval had been granted by Landlord, except that Tenant shall be entitled to damages solely in the case where a court of competent jurisdiction has reached a final, non-appealable verdict stating that Landlord's withholding of consent was not done in good faith. If

Tenant is delayed in performing its obligations under this Lease because Landlord has unreasonably or in bad faith refused to give its consent as determined in accordance with this Section 33.02, all time periods shall be tolled for Tenant hereunder during the pendency of the action for declaratory relief or damages provided for in this Section 33.02. If, pursuant to the terms of this Lease, any consent or approval by Landlord or Tenant is not to be unreasonably withheld, such consent or approval shall, in addition, not be unreasonably delayed, unless specific time periods are provided therefor, in which event such specific time periods shall govern, or unreasonably conditioned.

## ARTICLE 34

### SURRENDER AT END OF TERM

Section 34.01    Surrender of Premises. On the last day of the Term or upon any earlier termination of this Lease, or upon a re-entry by Landlord upon the Demised Premises pursuant to Article 24, Tenant shall well and truly surrender and deliver to Landlord the Demised Premises in good order, condition and repair, reasonable wear and tear excepted and subject to the provisions of Article 8, free and clear of all lettings, occupancies, liens and encumbrances other than the Title Matters and those created by or consented to by Landlord. Tenant hereby waives any notice now or hereafter required by law with respect to vacating the Demised Premises on any such termination date.

Section 34.02    Delivery of Documents. On the last day of the Term or upon any earlier termination of the Lease, or upon a re-entry by Landlord upon the Demised Premises pursuant to Article 24 hereof, Tenant shall deliver to Landlord Tenant's executed counterparts of all User Agreements and any service and maintenance contracts then affecting the Demised Premises, true and complete maintenance records for the Demised Premises, all original Permits then pertaining to the Demised Premises, permanent or temporary Certificates of Occupancy then in effect for the Building, and all warranties and guarantees then in effect which Tenant has received in connection with any work or services performed or Equipment installed in the Building, all financial reports, books and records required by Article 26 hereof and any and all other documents of every kind and nature whatsoever relating to the Demised Premises, together with a duly executed assignment thereof to Landlord.

Section 34.03    Delivery of Plans. The Contract Documents, and any and all other plans, drawings, specifications and models prepared in connection with construction at the Demised Premises, any Restoration and any Capital Improvement, shall become the sole and absolute property of Landlord upon the Expiration Date or any earlier termination of this Lease. Tenant shall deliver all such documents to Landlord promptly upon the Expiration Date or any earlier termination of this Lease.

Section 34.04    Personal Property. Any personal property of Tenant or of any User which shall remain on the Demised Premises for thirty (30) days after the termination of this Lease and after the removal of Tenant or such User, from the Demised Premises, may, at the option of Landlord, be deemed to have been abandoned

by Tenant or such User and either may be retained by Landlord as its property or be disposed of, without accountability, in such manner as Landlord may see fit. Landlord shall not be responsible for any loss or damage occurring to any such property owned by Tenant or any User.

        Section 34.05    Survival. The provisions of this Article 34 shall survive any termination of this Lease.

## ARTICLE 35

### WAIVER OF AIR RIGHTS

        Tenant being a "Party in interest" (as defined in Section 12-10(d) of the Zoning Resolution of the City of New York effective December 15, 1961, as amended) with respect to the Land more particularly described in Exhibit A, annexed hereto, does hereby waive its right to execute, and any right or interest it may have now or in the future with respect to (i) Declarations of Zoning Lot Restrictions or modifications, amendments, additions, replacements, reinstatements or consolidations thereof that relate or pertain to the Land and/or (ii) Transfers of Development Rights and Notice of Restrictions Pursuant to Section 974-79 et seq. or other applicable provisions of the Zoning Resolution, or modifications, amendments additions, replacements, restatements or consolidation thereof that relate or pertain to the Land.

## ARTICLE 36

### QUIET ENJOYMENT

        Landlord covenants that Tenant shall and may (subject, however, to the exceptions, reservations, terms and conditions of this Lease) peaceably and quietly have, hold and enjoy the Demised Premises for the term hereby granted without molestation or disturbance by or from Landlord or any Person claiming through Landlord and free of any encumbrance created or suffered by Landlord, except those encumbrances, liens or defects of title, created or suffered by Tenant and the Title Matters.

## ARTICLE 37

### INVALIDITY OF CERTAIN PROVISIONS

        If any term or provision of this Lease or the application thereof to any Person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

## ARTICLE 38

## ENVIRONMENTAL PROVISIONS

Section 38.01    Definitions. For the purpose of this Lease, the following terms shall have the following meanings:

"Contaminants" shall mean (a) any toxic substance or hazardous waste, substance or related material, or any pollutant or contaminant; (b) radon gas, lead, asbestos in any form which is or could become friable, urea formaldehyde foam insulation, transformers or the equipment which contain dielectric fluid containing levels of polychlorinated biphenyls in excess of federal, state or local safety guidelines, whichever are more stringent; (c) any substance, gas, material or chemical which is or may hereafter be defined as or included in the definition of "hazardous substances," "toxic substances," "hazardous materials," "hazardous wastes" or words of similar import under any Environmental Law or Requirements; and (d) any other chemical, material, gas, vapor, energy, radiation or substance, the exposure to or release of which is or may hereafter be prohibited, limited or regulated by any Governmental Authority having jurisdiction over the Demised Premises or the operations or activity at the Demised Premises.

"Environment" shall mean the Land and surrounding parcels, including without limitation the soil, ground waters, Building and Improvements, surface or subsurface strata and ambient air.

"Environmental Condition" shall mean any condition with respect to the Environment which (i) affects the Demised Premises or (ii) which affects other property and originates from or results from the occupancy of the Demised Premises, and which results in Environmental Damages, but excluding any condition which was caused or first arose (x) prior to the Commencement Date or after the Expiration Date, or (y) by a Person other than Tenant or any Person claiming through or under Tenant.

"Environmental Damages" shall mean all claims, judgments, damages (including punitive damages) losses, penalties, fines, liabilities (including strict liability), encumbrances, liens, costs and expenses of investigation and defense of any claim, whether or not such is ultimately defeated, and of any settlement or judgment, of whatever kind or nature, contingent or otherwise, matured or unmatured, foreseeable or unforeseeable, any of which are incurred at any time as a result of (i) an Environmental Condition, (ii) the existence of Contaminants on, about or beneath the Demised Premises or which have migrated to or from the Demised Premises, (iii) the Release or Threatened Release of Contaminants into the Environment or (iv) the violation or threatened violation of any Environmental Law pertaining to the Demised Premises, and including:

(i)    damages for personal injury, disease or death or injury to property or natural resources occurring on or off the Demised Premises (excluding lost profits, consequential damages, the cost of demolition and rebuilding of any improvements);

(ii)    reasonable fees incurred for the services of attorneys, consultants, Contractors, experts, laboratories and all other reasonable costs incurred in connection with the investigation, required cleanup or remediation, including the preparation of any feasibility studies or reports and the performance of any required cleanup, remedial, removal, abatement, containment, closure, restoration or monitoring work; and

(iii)    liability to any person or entity to indemnify such person or entity for costs expended in connection with the items referenced in this Section 38.01.

"Environmental Laws" shall mean all Requirements relating to the protection of human health or the Environment, including, without limitation:

(i)    all Requirements relating to reporting, licensing, permitting, investigation or remediation of emissions, discharges, Releases, Threatened Releases or the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Contaminants, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9061, et seq.; the Hazardous Materials Transportation Act, as amended 49 U.S.C. § 1801, et seq.; the Resource Conservation and Recovery Act, as amended 42 U.S.C. § 6901, et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251, et seq.; analogous state environmental statutes and local ordinances; and any regulations promulgated under any of the foregoing; and

(ii)    all Requirements pertaining to the protection of the health and safety of employees or the public.

"Existing Environmental Condition" shall mean any Environmental Condition which was first caused or first arose prior to the Commencement Date, whether or not the same was known of as of the Commencement Date. All Existing Environmental Conditions which are currently known to Landlord are set forth in the following reports (collectively, the "Environmental Reports"): (i) Appendix 5 Existing Physical Conditions Assessment of the Seventh Regiment Armory Request for Proposals, sponsored by ESDC and DMNA, which has been delivered by Landlord to Tenant and a copy of which is attached hereto as Exhibit N-1, (ii) Environmental Conditions Document Review, dated December 30, 2003, by AKRF Environmental and Planning Consultants ("AKRF"), which has been delivered by Tenant to Landlord and a copy of which is attached hereto as Exhibit N-2, (iii) Phase II Environmental Site Assessment, dated July 12, 2004, by Warren & Panzer Engineers, P.C., which has been delivered by Tenant to Landlord and is attached hereto as Exhibit N-3, and (iv) Addendum Report, dated April 12, 2006, by AKRF, which has been delivered by Tenant to Landlord and is attached hereto as Exhibit N-4.

"Landlord's Acts" shall mean the affirmative acts or negligence of the State, Landlord, their respective agents, contractors or tenants of the Demised Premises

(other than Tenant or User) which occur prior to or after the Commencement Date and which create an Environmental Condition.

"Release" shall mean any releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, disposing or dumping of any Contaminant into the Environment.

"Tenant's Acts" shall mean the affirmative acts or negligence of the Tenant, any User, or any agent or contractor thereof which create an Environmental Condition.

"Threatened Release" shall mean a substantial likelihood of a Release which requires action to prevent or mitigate damage to the Environment which may result from such Release.

Section 38.02    Landlord's Representations; the Tenant's Remediation Work Obligation.

(a)    Except as otherwise set forth in the Environmental Reports, Landlord hereby represents and warrants to Tenant and Tenant warrants to the Landlord that, to the best of Landlord's and Tenant's information, knowledge and belief, at the date hereof and at all times prior to the Commencement Date,: (i) there are no Existing Environmental Conditions, (ii) the Demised Premises are and were free from Contaminants, and otherwise in compliance with Environmental Laws in all material respects and (iii) such party has received no violations, suits, notices, claims or charges which are still outstanding which either (x) claim liability for any Environmental Damages or (y) allege that the Demised Premises are not in compliance with Environmental Laws in any material respect.

(b)    With respect to all Existing Environmental Conditions, Tenant, at its sole cost and expense, shall commence remediation of all hazardous materials which exist at the Armory as of the Commencement Date in accordance with a workplan to be developed by Tenant in compliance with all Environmental Laws ("Remediation Work"), and thereafter diligently perform such remediation through to completion . The performance of such Remediation Work shall be scheduled in coordination with Tenant's Major Construction Work, in order to minimize disruption to operations of the Demised Premises. Such Remediation Work shall be conducted by a reputable environmental remediation firm, and shall be conducted in accordance with all Environmental Laws. Tenant shall file or cause to be filed all necessary applications and reports with all Governmental Authorities required under Environmental Laws in connection with such Remediation Work, and shall deliver a copy to Landlord of all such filings. Landlord shall cooperate with Tenant in the making of all such filings and shall execute any such filings upon request by Tenant. At the conclusion of such Remediation Work, Tenant shall deliver to Landlord one or more certifications, in form(s) required by Environmental Laws (including, in the event that Tenant is performing asbestos removal, an ACP-5 certificate for filing with the NYC Department of Buildings), evidencing that such Remediation Work has been completed in

accordance with all Environmental Laws and that the Demised Premises are free from Contaminants.

(c) Tenant reserves the right to apply to the Landlord for contributions to the cost of such Remediation Work; however, any such contribution by the Landlord will be Subject to Appropriation and the Landlord (i) shall have no obligation to seek such Appropriation, and (ii) shall have no liability for any such contributions unless funds for such purpose are appropriated.

Section 38.03    Compliance with Environmental Laws. Except to the extent related to or arising from Environmental Conditions that are not caused by Tenant's Acts, Tenant, at its sole cost and expense, shall comply with all Environmental Laws which are applicable to the Demised Premises or Tenant. Tenant shall not by any act, omission or negligence violate or cause or permit to be violated any Environmental Law. Tenant shall not cause or permit any Contaminant, (except ordinary cleaning and maintenance materials) to be manufactured, processed, distributed, used, treated, stored, disposed of, transported or handled on, in or about the Demised Premises without the prior written consent of Landlord, which Landlord shall not unreasonably withhold as long as Tenant demonstrates to Landlord's reasonable satisfaction that such Contaminant is necessary or useful to Tenant's business or the business of Tenant's Users, is of a kind customarily used in connection with such business and will be used, kept, stored, disposed of, transported and handled in a manner that complies with all Environmental Laws. Tenant shall use, keep, store, dispose of, transport and handle all ordinary cleaning and maintenance materials for which Landlord's prior consent is not required in a manner that complies with all Environmental Laws..

Section 38.04    Notice of Environmental Complaint. If Tenant acquires any knowledge or receives any notice of a Release, Threatened Release or Environmental Condition or notice with regard to air emissions, water discharges, noise emissions, recycling, violations or threatened violation of any Environmental Law or any other environmental, health or safety matter affecting the Demised Premises other than arising from an Existing Environmental Condition (an "Environmental Complaint"), on its own, or independently or from any person or entity, including any Governmental Authority, then Tenant shall give prompt notice of the same to Landlord detailing all relevant facts and circumstances.

Section 38.05    Landlord Self-Help. Tenant shall promptly take all actions Tenant reasonably deems necessary to cleanup, remove, resolve or minimize the impact of or otherwise deal with any Environmental Complaint upon its obtaining knowledge of such matters. If Tenant shall fail to take (or to commence and diligently pursue) such actions within thirty (30) days after notice thereof from Landlord, the provisions of Section 21.01 and 21.02shall apply and Landlord shall have the right, but not the obligation, to enter into the Demised Premises and take such actions; provided, however, that Landlord shall not be liable to Tenant, User(s), occupant(s) or any other person(s) or entity(ies) by or through Tenant for entering the Demised Premises or

taking such actions, except for liability arising from Landlord's Acts. Notwithstanding the foregoing, no notice shall be required in an emergency.

Section 38.06    Mutual Indemnities.

(a)    Tenant hereby indemnifies and holds harmless the Landlord Indemnitees from and against any and all Environmental Damages arising from or related to any Environmental Conditions attributable to Tenant's Acts and/or Remediation Work. This obligation shall include the burden and expense of defending all claims, suits and administrative proceedings (with counsel reasonably satisfactory to Landlord) even if such claims, suits or proceedings are groundless, false or fraudulent, and conducting all negotiations of any description, and paying and discharging, when and as the same become due, any and all judgments, penalties or other sums due against the Landlord Indemnitees. Without limiting the foregoing, Tenant shall promptly take all actions at its sole cost and expense, as are necessary to return the Demised Premises to a condition acceptable to any Governmental Authority and the Landlord if there is a Release or Environmental Condition on, from or at the Demised Premises; provided that Landlord's approval of such actions shall first be obtained, which approval shall not be unreasonably withheld. Tenant's indemnification obligations shall not apply with respect to Environmental Damages caused by Landlord's Acts

(b)    Notwithstanding anything to the contrary in Articles 18 or 19, Landlord hereby indemnifies and holds harmless the Tenant Indemnitees from and against Environmental Damages which were incurred prior to the Commencement Date, regardless of whether claims for such Environmental Damages are brought prior to or following the Commencement Date. This obligation shall include the burden and expense of defending all claims, suits and administrative proceedings (with counsel reasonably satisfactory to Tenant) even if such claims, suits or proceedings are groundless, false or fraudulent, and conducting all negotiations of any description, and paying and discharging, when and as the same become due, any and all judgments, penalties or other sums due against the Tenant Indemnitees.

Section 38.07    Survival. The provisions of this Article 38 shall survive the Expiration Date or any earlier termination of this Lease with respect to acts and omissions occurring prior to the termination of this Lease; provided that the indemnification provisions of this Article 38 shall survive the Expiration Date of this Lease regardless of whether the claims relating to such acts or omissions are made before or after the Expiration Date of this Lease, but in any event subject to the applicable statute of limitations.

## ARTICLE 39

## RECORDING OF MEMORANDUM; TRANSFER TAXES

Section 39.01    Memorandum of Lease. Neither Landlord nor Tenant shall record this Lease or cause the same to be placed of record without the consent of the other party. Landlord and Tenant agree that concurrently with the execution of this

Lease, the parties shall join in the execution of, and record, a memorandum of lease in the form annexed as Exhibit G hereto and made a part hereof.

Section 39.02    Transfer Taxes. Landlord and Tenant agree to complete any and all forms required by Article 31 of the New York State Tax Law, Chapter 21 of Title 11 of the Administrative Code of the City of New York and all other tax laws promulgated by any Governmental Authority in connection with the recording of the memorandum of this Lease (and any future amendment thereto), and any future sale, assignment, subletting or other transfer. Tenant agrees to timely pay any applicable taxes to the appropriate Governmental Authority.

Section 39.03    Survival. The obligations arising under this Article 39 shall survive the termination of this Lease.

## ARTICLE 40

## NO DISCRIMINATION

Section 40.01    No Discrimination. Tenant, in the sale, transfer or assignment of its interest under this Lease, or in its use, operation or occupancy of the Demised Premises and employment and conditions of employment in connection therewith, or in the subletting of the Demised Premises or any part thereof, or in connection with the erection, maintenance, repair, Restoration, alteration or replacement of, or addition to, any Building shall (a) not discriminate nor permit discrimination against any person by reason of race, creed, color, religion, national origin, ancestry, sex (including gender identity or expression), age, disability, sexual orientation, military status, genetic predisposition or carrier status or marital status and (b) comply with all Requirements.

Section 40.02    Contractor Provisions. Tenant shall be bound by and shall include the following paragraphs (a) through (e) of this Section 40.02 in all agreements with Contractors.

(a)    Contractor shall not discriminate against employees or applicants for employment because of race, creed, color, religion, national origin, ancestry, sex, age, disability or marital status, shall comply with all applicable Requirements prohibiting such discrimination or pertaining to equal employment opportunities and shall undertake programs of affirmative action to ensure that employees and applicants for employment are afforded equal employment opportunities without discrimination. Such action shall be taken with reference to, but not limited to, recruitment, employment, job assignment, promotion, upgrading, demotion, transfer, layoff or termination, rates of pay or other forms of compensation, and selection for training or retraining, including apprenticeship and on-the-job training.

(b)    Contractor shall request each employment agency and authorized representative of workers with which it has an agreement or understanding to furnish it with a written statement that such employment agency or representative will

not discriminate because of race, creed, color, religion, national origin, ancestry, sex, age, disability or marital status and that such agency or representative will cooperate in the implementation of Contractor's obligations hereunder.

(c)    Contractor shall state in all solicitations or advertisements for employees placed by or on behalf of contractor that all qualified applicants shall be afforded equal employment opportunities without discrimination because of race, creed, color, religion, national origin, ancestry, sex, age, disability or marital status.

(d)    Contractor shall comply with all of the provisions of the Civil Rights Law of the State of New York and Sections 291-299 of the Executive Law of the State of New York, shall upon reasonable notice furnish all information and reports deemed reasonably necessary by Landlord and shall permit access to its relevant books, records and accounts for the purpose of monitoring compliance with the Civil Rights Law and such sections of the Executive Law.

(e)    Contractor shall include in all agreements with subcontractors the foregoing provisions of Sections (a) through (d) in such a manner that said provisions shall be binding upon the subcontractor and enforceable by Contractor, Tenant and Landlord. Contractor shall take such action as may be necessary to enforce the foregoing provisions. Contractor shall promptly notify Tenant and Landlord of any litigation commenced by or against it arising out of the application or enforcement of these provisions, and Tenant and Landlord may intervene in any such litigation.

Section 40.03    Affirmative Action. Tenant shall comply with the Non-Discrimination and Affirmative Action Construction Contract Provisions, a copy of which is annexed hereto as Exhibit H. Tenant shall, and shall cause each of its agents, Contractors and employees to, promptly and diligently carry out its obligations under such Provisions in accordance with the terms thereof.

## ARTICLE 41

## MISCELLANEOUS

Section 41.01    Captions. The captions of this Lease are for convenience of reference only and in no way define, limit or describe the scope or intent of this Lease or in any way affect this Lease.

Section 41.02    Table of Contents. The Table of Contents is for the purpose of convenience of reference only and is not to be deemed or construed in any way as part of this Lease or as supplemental thereto or amendatory thereof.

Section 41.03    Pronouns. The use herein of the neuter pronoun in any reference to Landlord or Tenant shall be deemed to include any individual Landlord or Tenant, and the use herein of the words "successors and assigns" or "successors or assigns" of Landlord or Tenant shall be deemed to include the heirs, legal representatives and assigns of any individual Landlord or Tenant.

Section 41.04    Depositary Charges. Depositary may pay to itself out of the monies held by Depositary pursuant to this Lease charges for services rendered hereunder, which shall not exceed customary charges for a depositary performing the services of Depositary in New York City, and Tenant shall pay any deficiency.

Section 41.05    Multiple Tenants. If more than one entity is named as or becomes Tenant hereunder, Landlord may require the signatures of all such entities in connection with any notice to be given or action to be taken by Tenant hereunder except to the extent that any such entity shall designate another such entity as its attorney-in-fact to act on its behalf, which designation shall be effective until receipt by Landlord of notice of its revocation executed by all of them. Each entity named as Tenant shall be fully liable for all of Tenant's obligations hereunder. Any notice by Landlord to any entity named as Tenant shall be sufficient and shall have the same force and effect as though given to all parties named as Tenant. If all such parties designate in writing one entity to receive copies of all notices, Landlord agrees to send copies of all notices to that entity.

Section 41.06    Limitations on Liability.

(a)    Notwithstanding anything in this Lease to the contrary, Tenant agrees and acknowledges that ESDC is acting solely as agent for Landlord and has no liability under or with respect to this Lease. None of the members, directors, officers, employees, agents or servants of ESDC or of Landlord shall have any liability (personal or otherwise) hereunder, and no other property or assets of the members, directors, officers, employees, agents or servants of either shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies hereunder. Tenant agrees that it shall look solely to Landlord, and not to ESDC, for any claim against Landlord under any provision of this Lease.

(b)    No member, shareholder, director, officer or employee of Tenant (collectively, the "Protected Parties") shall have any liability (personal or otherwise) hereunder, and no property or assets of any such Protected Party shall be subject to levy, execution or other enforcement procedure for the satisfaction of Landlord's remedies hereunder. Nothing contained in this Section 41.06(b), however, shall relieve any Protected Party from personal liability for fraud or breach of trust or misapplication or misappropriation of any Proceeds (as hereinafter defined). As used herein, the term "Proceeds" shall mean, collectively, all rents and other income derived from the Demised Premises, condemnation awards, insurance proceeds, proceeds of any assignment or subletting, security of Users and proceeds of title insurance.

Section 41.07    No Merger. Except in the event of a condemnation or governmental taking of the leasehold estate created by this Lease, there shall be no merger of this Lease or the leasehold estate created hereby with the fee estate, the Demised Premises or any part thereof by reason of the same Person acquiring or holding, directly or indirectly, this Lease or the leasehold estate created hereby or any interest in this Lease or in such leasehold estate as well as the fee estate in the Demised Premises.

Section 41.08    No Brokers. Each of the parties represents to the other that it has not dealt with any broker, finder or like entity in connection with this Lease. If any claim is made by any Person who shall claim to have acted or dealt with Tenant or Landlord in connection with this transaction, Tenant or Landlord, as the case may be, will pay the brokerage commission, fee or other compensation to which such Person is entitled, shall indemnify and hold the other party hereto harmless from and against any claim asserted by such Person for any such brokerage commission, fee or other compensation and shall reimburse such other party for any costs and expenses, including, without limitation, attorneys' fees and disbursements, incurred by such other party in defending itself against claims made against it for any such brokerage commission, fee or other compensation.

Section 41.09    Modifications in Writing. This Lease may not be changed, modified, or terminated orally, but only by a written instrument of change, modification or termination executed by the party against whom enforcement of any change, modification or termination is sought.

Section 41.10    Governing Law. This Lease shall be governed by and construed in accordance with the internal laws of the State of New York without regard to conflicts of laws principles.

Section 41.11    Successor and Assigns. The agreements, terms, covenants and conditions herein shall be binding upon, and shall inure to the benefit of, Landlord and Tenant and (except as otherwise provided herein) their respective successors and assigns. Except as set forth in the immediately preceding sentence, nothing contained in this Lease shall be deemed to confer upon any Person any right or benefit, including any right to insist upon, or to enforce against Landlord or Tenant, the performance of such party's obligations hereunder.

Section 41.12    References. All references in this Lease to "Articles" or "Sections" or "Exhibits" shall refer to the designated Article(s), Section(s) or Exhibit(s), as the case may be, of this Lease, unless otherwise stated.

Section 41.13    Landlord from Time to Time. The term "Landlord" as used in this Lease means only the owner of the Demised Premises so that if the Landlord named herein or any successor to its interest hereunder ceases to have any interest in the Demised Premises under this Lease or there is at any time or from time to time any sale or sales or disposition or dispositions or transfer or transfers of the Landlord's or any successor's interest in the Demised Premises, the Landlord named herein or any such successor, as the case may be, shall be and hereby is entirely freed and relieved of all agreements, covenants and obligations of Landlord hereunder to be performed on or after the date of such sale or transfer, and it shall be deemed and construed without further agreement between the parties or their successors in interest or between the parties and the Person who acquires or owns the Landlord's interest in the Demised Premises under this Lease, including, without limitation, the purchaser or transferee in any such sale. disposition or transfer, that, subject to the provisions of Section 41.06, such Person has assumed and agreed to carry out any and all agreements,

covenants and obligations of Landlord hereunder to be performed from and after the date of such acquisition, sale or transfer.

Section 41.14     No Joint Venture. Nothing herein is intended nor shall be deemed to create a joint venture or partnership between Landlord and Tenant, nor to make Landlord in any way responsible for the debts or losses of Tenant.

Section 41.15     ESDC Name; Publicity; Name of Armory.

(a)     Tenant shall not have the right to use the names "Empire State Development Corporation," "ESDC," "State of New York," "SONY," "NYS" or any variants thereof in any advertising and promotional materials in connection with the leasing of the Building or in any press releases or media events or otherwise, without obtaining the prior written approval of Landlord, which approval shall not be unreasonably withheld. If Landlord shall not have approved or disapproved of any advertising or promotional materials submitted to it for approval within ten (10) Business Days after submission, Landlord shall be deemed to have approved of such advertising or promotional materials.

(b)     Tenant shall not change the name of the Building from "The Seventh Regiment Armory" or "The Park Avenue Armory", without obtaining the prior written approval of Landlord. Notwithstanding the foregoing, Tenant shall have the right, without Landlord's consent, (i) to name individual rooms or other locations within the Demised Premises (including, without limitation, the Drill Hall), or (ii) to name one or more performance venues within the Demised Premises (such as, solely by way of example, "The _____ Performing Arts Center at the Park Avenue Armory"); provided, however, in no event shall any such room, location or performance venue be named for a Prohibited Party.

Section 41.16     Entire Agreement. This Lease, together with the Exhibits hereto, contains all the promises, agreements, conditions, conditions, inducements and understandings between Landlord and Tenant relative to the Demised Premises and there are no promises, agreements, conditions, understandings, inducements, warranties, or representations, oral or written, expressed or implied, between them, other than as herein or therein set forth. The Exhibits to this Lease are hereby made a part of this Lease.

Section 41.17     Execution of Lease. Submission by Landlord of this Lease for review and execution by Tenant shall confer no rights nor impose any obligation upon either party unless and until both Landlord and Tenant shall have executed this Lease and duplicate originals thereof shall have been delivered to the respective parties hereto or their respective attorneys.

Section 41.18     ESDC Role; Project Fee. ESDC shall represent Landlord in all negotiations for Lease, shall assist the Conservancy in seeking required State and local governmental approvals for the project, and shall administer the Lease on behalf of Landlord. Without limiting the foregoing, whenever Landlord has a right

under this Lease to grant or withhold consent to a matter, such right shall be exercised by ESDC on behalf of Landlord, and ESDC is hereby fully authorized and directed so to act. Tenant shall pay to ESDC a Project Fee (the "Project Fee") on account of ESDC services and third-party expenses incurred in connection with this Lease in the amount of $100,000 per annum, commencing with the fiscal year of Landlord in which the Commencement Date occurs (or such later date as ESDC and Tenant may agree) until the earlier of (i) the fiscal year of Landlord in which Substantial Completion of the Major Construction Work occurs or (ii) the tenth fiscal year of Landlord thereafter, each such payment to be made on the last day of the fiscal year of Landlord. In no event shall Tenant be required to reimburse ESDC for expenses except to the extent of the Project Fee payable pursuant to this Section 41.18, or as elsewhere expressly provided in this Lease. The amount of the Project Fee shall be reduced in any year to the extent of any State appropriation received by ESDC for the purpose of covering expenses related to the Project (other than legal expenses). The Project Fee payable by Tenant shall cover all costs incurred by ESDC in administering the Project, including without limitation third-party costs, other than legal expense. Tenant will reimburse ESDC for legal expenses incurred to outside counsel at the customary ESDC billing rates for the negotiation of the Lease and any funding agreement arising from any such contribution described in clause (i) above and will enter into a cost agreement with Landlord with respect thereto.

Section 41.19    Project-Related Litigation. Tenant will indemnify, defend and hold harmless ESDC in connection with any litigation arising from the grant of the Lease to Tenant, and related challenges to the Project, with counsel selected by Tenant and reasonably satisfactory to ESDC (it being agreed that Paul, Weiss, Rifkind, Wharton & Garrison LLP, litigation counsel to the Conservancy, is reasonably acceptable to ESDC). In the event that ESDC reasonably determines there to be a conflict of interest between ESDC and Tenant in any such litigation such that representation by the same counsel would not be appropriate, or that the adequate protection of ESDC's interests otherwise warrants separate representation from Tenant, ESDC shall be entitled to engage separate counsel for such representation, and Tenant shall pay or reimburse ESDC for reasonable legal fees and expenses incurred by it in connection with such representation, at rates not to exceed normally and customarily paid by ESDC to outside counsel. ESDC agrees that it shall engage the Office of the Attorney General of New York State to represent ESDC in instances where ESDC reasonably determines that its interests warrant separate counsel from the Conservancy, and that representation by the Attorney General is both available to ESDC and provides adequate protection to ESDC's interests.

Section 41.20    Publicity. Subject to Section 41.15, ESDC and Tenant shall cooperate in the issuance of press releases with respect to the undertaking and commencement of the Project and ESDC's participation therein.

Section 41.21    Enforcement of Shelter Agreement. Upon notice from Tenant, Landlord shall use diligent efforts to enforce the performance obligations of the Shelter under the agreement between Landlord and the City of New York with respect to the Shelter, with the objective that the proper operations of the Shelter, as conducted

in accordance with such agreement, shall not interfere with Tenant's use and enjoyment of the Demised Premises pursuant to this Lease. Tenant shall reasonably cooperate with Landlord in Landlord's efforts to enforce such agreement, including providing such information or evidence as may be in Tenant's possession with respect to an enforcement matter. Tenant acknowledges that notwithstanding Landlord's foregoing obligation, Landlord shall not be liable for acts, omissions or defaults of the Shelter under such agreement.

Section 41.22    Use of Project Revenues. Tenant shall apply all revenues generated by operations of the Demised Premises to pay or provide for costs of repairs, restoration, refurbishment, operation, maintenance and/or programming of the Demised Premises and the uses therein and the activities of the Tenant with respect thereto, and shall not apply any such revenues for any other purpose.

## ARTICLE 42

## PUBLIC GOALS

Section 42.01    Public Goals. Landlord and Tenant hereby adopt the public goals set forth in Exhibit K annexed hereto (the "Public Goals"), which Public Goals set forth Landlord's and Tenant's goals for the development, use and occupancy of the Demised Premises pursuant to this Lease. Tenant shall use diligent efforts to operate the Demised Premises in accordance with the Public Goals.

Section 42.02    Modification of Public Goals. From time to time, Tenant may submit to Landlord a proposal for initiating proceedings to modify the Public Goals, based on a significant change in circumstances affecting the conditions at the Premises, or other relevant economic or demographic factors. Neither Landlord nor Tenant shall be obligated to make any modification to such Public Goals, it being the sole intent of this Section 42.02 to afford both parties flexibility, in light of the long term duration of this Lease, to maintain appropriate levels of activity at the Premises by adapting the Public Goals to changing conditions. If Landlord and Tenant both agree to modify the Public Goals, Landlord shall use reasonable efforts to initiate such proceedings as are then legally necessary or desirable to effectuate such modification, it being understood that Landlord cannot guarantee that such modification will be effectuated. If Landlord and Tenant are unable to agree upon any proposed modification of the Public Goals, either party may submit such matter to non-binding mediation. Any User Agreements which pre-exist an approved modification of the Public Goals shall not be affected by any subsequent modification of the Public Goals, unless a modification of any particular User Agreement is agreed to in writing by Tenant and the applicable User.

Section 42.03    Tenant's Annual Certification of Promotion of Public Goals. After Substantial Completion of the Major Construction Work, within thirty (30) days after the end of each Lease Year, Tenant shall in good faith submit to Landlord a written statement, duly executed by the President or Chairman of the Board of Directors of Tenant, certifying to Landlord that the then current uses for the Demised

Premises promote the Public Goals then in effect, together with a detailed description indicating how each of the Public Goals is being met. If for any reason Tenant shall be unable to submit such certification to Landlord, or the certification submitted by Tenant certifies that the then current uses for the Armory do not promote the Public Goals, or if Landlord shall dispute that Tenant's certification was submitted in good faith or that the then current uses for the Armory promote the Public Goals, Landlord may notify Tenant that Tenant is in default under its obligations under this Article 42, specifying the nature of such default.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the day and year first above written.

THE PEOPLE OF THE STATE OF NEW YORK, ACTING BY AND THROUGH ITS AGENT, NEW YORK STATE URBAN DEVELOPMENT CORPORATION D/B/A EMPIRE STATE DEVELOPMENT CORPORATION

By: _Eilee millerberg_____

   Name: Eileen Millenberger

   Title: Chief Operating Officer

SEVENTH REGIMENT ARMORY CONSERVANCY, INC.

By:_____

   Name:

   Title:

Approved as to form:

ATTORNEY GENERAL OF THE STATE OF NEW YORK

By: _Henry A. Detotu_

   Assistant Attorney General  11/10/06

Approved:

COMPTROLLER OF THE STATE OF NEW YORK

By: _____

   Jann S. Moriarty  11/11/06

DIVISION OF MILITARY AND NAVAL AFFAIRS OF THE STATE OF NEW YORK

By: _____  11/08/06

Joseph J. Taluto

Major General, NY Army National Guard

The Adjutatn General

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the day and year first above written.

THE PEOPLE OF THE STATE OF NEW YORK, ACTING BY AND THROUGH ITS AGENT, NEW YORK STATE URBAN DEVELOPMENT CORPORATION D/B/A EMPIRE STATE DEVELOPMENT CORPORATION

By:_____

    Name:

    Title:

SEVENTH REGIMENT ARMORY CONSERVANCY, INC.

By:_____

    Name: REBECCA ROBERTSON

    Title: PRESIDENT AND CHIEF EXECUTIVE OFFICER

Approved as to form:

ATTORNEY GENERAL OF THE STATE OF NEW YORK

By: _____

Approved:

COMPTROLLER OF THE STATE OF NEW YORK

By: _____

DIVISION OF MILITARY AND NAVAL AFFAIRS OF THE STATE OF NEW YORK

By: _____

[Signature Page for Agreement of Lease]

STATE OF NEW YORK         )
                                   ) SS.:

COUNTY OF _New York_       )

On this _2nd_ day of _Feb___, 2006, before me personally came
Eileen Mildenberger, to me known and known to me to be the person described in and
who executed the foregoing instrument and he acknowledged to me that he executed the
same.

                                               _____

                                                  Notary Public

LAWRENCE M. GERSON
Notary Public, State of New York
No. 01-4510185
Qualified in Nassau County
Commission Expires April 30, 2009

STATE OF NEW YORK         )
                                   ) SS.:

COUNTY OF                  )

On this _____ day of _____, 2006, before me personally came
Rebecca Robertson, to me known and known to me to be the person described in and
who executed the foregoing instrument and he acknowledged to me that he executed the
same.

                                               _____

                                                  Notary Public

[Acknowledgment Page for Agreement of Lease]

STATE OF NEW YORK )
) SS.:
COUNTY OF )

On this _____ day of _____, 2006, before me personally came
Eileen Mildenberger, to me known and known to me to be the person described in and
who executed the foregoing instrument and he acknowledged to me that he executed the
same.

_____
Notary Public

STATE OF NEW YORK )
) SS.:
COUNTY OF )

On this _1ˢᵗ_____ day of _November_____, 2006, before me personally came
Rebecca Robertson, to me known and known to me to be the person described in and
who executed the foregoing instrument and he acknowledged to me that he executed the
same.

_____
Notary Public

MEREDITH J. KANE
Notary Public, State of New York
No. 02KA5025795
Qualified in New York County
Commission Expires April 4, 2010

[Acknowledgment Page for Agreement of Lease]

## EXHIBIT A

## LAND

Street Address: 641 Park Avenue, New York, NY (Manhattan Block 1401, Lot 1)

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, and County of New York, City and State of New York, described as being bounded and situated between Sixty Sixth Street and Sixty Seventh Street and Fourth Avenue and Lexington Avenue and the Armory of the 7th Regiment erected thereon.

Doc #:NY6:491877.32

EXHIBIT B

ADMINISTRATION BUILDING AND DRILL HALL

[Attached behind.]

Doc #:NY6:491877.32

EXHIBIT B



SEVENTH REGIMENT ARMORY

North

FIRST FLOOR PLAN

ADMINISTRATION BUILDING

DRILL HALL

NOTE: INFORMATION ON DRAWING RELATES SOLELY TO DELINEATION OF DRILL HALL AND ADMINISTRATION BUILDING.



Platt Byard Dovell White
Architects LLP

20 West 22nd Street
New York, NY 10010
212.813.2440
212.633.2314 fax
www.pbdw.com

Structural Engineer

Robert Silman Associates, P.C.
88 University Place
New York, New York 10003
212.620.7970
212.620.9197 fax

MEP Engineer

AKF Engineers
100 E Broadway, Suite 700
New York, New York 10038
212.354.5656
212.354.5666 fax

Construction Manager

Tishman Construction
666 Fifth Avenue
New York, New York 10103
212.399.3600
212.843.3961 fax

Building & Zoning Consultant

wth Oxley
41 West 42nd Street
New York, New York 10036
212.686.2114
212.686.2255 fax

Project
7th Regiment
Armory

| | |
|---|---|
| Drawn by | |
| Checked by | |
| Scale | 1/32"=1'-0" |
| Project no. | 08476.2 |
| Date | 06.14.06 |

Sheet title
Existing Cond.
Basement Plan

Sheet no.
A-100





Platt Byard Dovell White
Architects LLP

20 West 22nd Street
New York, NY 10010
212.691.2440
212.633.0144 fax
www.pbdw.com

Structural Engineer

Robert Silman Associates, P.C.
88 University Place
New York, New York 10003
212.620.7970
212.620.7975 fax

MEP Engineer

ABS Engineers
1001 Broadway, Suite 700
New York, New York 10036
212.354.5656
212.354.5666 fax

Construction Manager

Tishman Construction
666 Fifth Avenue
New York, New York 10103
212.399.3600
212.843.3891 fax

Building & Zoning Consultant

William Staley
441 West 43rd Street
New York, New York 10036
212.586.2114
212.586.2305 fax

Project
7th Regiment
Armory

| | |
|---|---|
| Drawn by | |
| Checked by | |
| Scale | 1/32"=1'-0" |
| Project no. | 05476.3 |
| Date | 06.14.06 |

Sheet title
Existing Cond.
First Fl. Mezz. Plan

Sheet no.
A-101M