Page 1

2006 NY Slip Op 26262, *; 13 Misc. 3d 222, **;
822 N.Y.S.2d 383, ***; 2006 N.Y. Misc. LEXIS 1713

LEXSEE 13 MISC3D 222

[*1] **State of New York, Plaintiff, v. Seventh Regiment Fund, Defendant.**

406660/96

SUPREME COURT OF NEW YORK, NEW YORK COUNTY

2006 NY Slip Op 26262; 13 Misc. 3d 222; 822 N.Y.S.2d 383; 2006 N.Y. Misc. LEXIS 1713

June 21, 2006, Decided

**PRIOR HISTORY:** State v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 774 N.E.2d 702, 2002 N.Y. LEXIS 1503, 746 N.Y.S.2d 637 (2002)
State of New York v. Seventh Regiment Fund, 2006 N.Y. Misc. LEXIS 1522 (N.Y. Sup. Ct., June 21, 2006)

**JUDGES:** RICHARD F. BRAUN, J.S.C.

**OPINION BY:** RICHARD F. BRAUN

**OPINION**

[***384] [**223] Richard F. Braun, J.

One significant part of the history of our State is found in its artifacts. The New York State Attorney General brought this action on behalf of plaintiff State of New York against defendant Seventh Regiment Fund (Fund) on November 18, 1996, pursuant to Executive Law § 63-c (1), to uphold plaintiff's claim of ownership of many historical artifacts, which plaintiff contends that it holds in trust for all of the people of our State. Plaintiff seeks a judgment declaring that it is the owner of that personal property received by the 107th Infantry Regiment, New York National Guard, not by bequest, which is in the possession of defendant Fund; ordering an immediate return of the property to plaintiff; and ordering restitution, damages, and a surcharge for those items of property lost, damaged, or destroyed due to the fault or negligence of any member of defendant Fund. Defendant Fund asserts that it alone should have title to the property, and interposed counterclaims for a declaration in defendant Fund's favor [1] and injunctive [***385] relief. The second counterclaim was discontinued by stipulation.

> 1   Defendant's first counterclaim was unnecessary because, if the court had held that plaintiff was not entitled to a declaratory judgment, then this court would have had to declare in this action in favor of defendant Fund on the merits of plaintiff's declaratory judgment claim (*Lanza v Wagner*, 11 N.Y.2d 317, 334, 183 N.E.2d 670, 229 N.Y.S.2d 380 [1962]).

The Seventh Regiment refers to a New York State Army national guard unit first organized in 1806, reorganized and designated as the "7th Regiment of Infantry (National Guard)" in 1847, and redesignated as the "107th Infantry Regiment, New York National Guard" (107th) at the beginning of World War I. The Seventh Regiment is now named the "107th Support Group of the New York Army National Guard". The Seventh Regiment has often been called the "Silk Stocking Regiment" because of its ties to socially prominent New York families. Defendant Fund was incorporated in 1909 and is charged with taking care of the Seventh Regiment's property.

Since the 1870's, the Seventh Regiment national guard unit has occupied the armory at 643 Park Avenue between 66th and 67th Streets in Manhattan (the armory). That is also the location of defendant Fund's office. The New York City Landmarks Preservation [**224] Commission has designated most of the armory as a landmark. The armory contains many valuable historical [*2] artifacts, which the parties estimated to be valued at 6 to 10 million dollars.

On February 29, 1952, the board of officers of the 107th resolved to transfer to defendant Fund title to all personal property in the armory, including military trophies, prizes, decorations, silverware, emblems, flags, mementos, paintings, portraits, etchings, prints, sculptures, other works of art, documents, and the library, except for property title of which was held by the United States Army or individual component company units of the 107th. The resolution stated that the consideration for the sale would be one dollar. On March 1, 1952, the 107th conveyed the property, per the resolution, to defendant Fund for the expressed consideration "of One Dollar ($ 1.00) and other good and valuable considerations...." Documents from 1952 and 1953 show that the reason for this conveyance was the concern of the board of officers of the 107th that the unit would be called into Federal service to fight in the

EX. U

2006 NY Slip Op 26262, \*; 13 Misc. 3d 222, \*\*;
822 N.Y.S.2d 383, \*\*\*; 2006 N.Y. Misc. LEXIS 1713

Korean War, and thus the board wanted the valuable property of the 107th placed with the defendant Fund for safekeeping. On March 21, 1952, the regimental commander of the Seventh Regiment told the veterans at their quarterly meeting that an "outstanding accomplishment" had been the transfer of the regimental property to defendant Fund "in view of the possibility of increasing Federal control" of the Seventh Regiment.

Only three items of personalty claimed by defendant Fund were received by bequest to the 107th: "a large silver vase, crossed rifles and crossed guns with insignia"; a "Busse memorial trophy for the encouragement of rifle practice"; and a "Courtney S. Busse trophy, awarded for attendance". Neither the documentary nor testimonial evidence demonstrated any other bequests.

Over the years, several inventories have been made of personal property in the armory, including one by defendant Fund's curators. Defendant Fund placed numbers, and stickers stating "Property of Seventh Regt Fund" on a small percentage of property in the armory. Plaintiff had a superintendent at the armory who observed defendant Fund's stickers on the [\*\*\*386] items. However, he was not responsible for historical property in the armory. At times, some of the property was removed from the armory by defendant Fund for repairs and then returned to the armory. Four valuable paintings, including three by Sanford Gifford, are on loan by defendant Fund to The Metropolitan [\*\*225] Museum of Art, and photographs of several paintings in the armory appear in publications about the Civil War. Defendant Fund was credited in the museum and the publications as the owner of the paintings. One other painting has been sold by defendant Fund.

In 1984, defendant Fund sued the then Governor of New York State to enjoin the proposed expansion of a homeless shelter in the armory (*Veterans of Seventh Regiment v Cuomo*, Supreme Court, New York County, Index No. 7098/84). In the complaint therein, defendant Fund as a plaintiff there claimed that it owned personal property in the armory, which plaintiff admitted in its answer to the complaint. [2] Defendant Fund asserts that this showed that in 1984 [\*3] plaintiff had notice of defendant Fund's claim of ownership of the property at issue. Plaintiff contends that because ownership of the property that is the subject of this action was not at issue in the 1984 action, and it was undisputed that defendant Fund owned a substantial collection of other property in the armory, the answer in that action did not give plaintiff notice of any claim of defendant Fund that it owned the subject property.

  2   Defendant Fund neither asserts that plaintiff made informal judicial admissions, which would not be conclusive, but would be admissible as some evidence against plaintiff in this action (*Matter of Union Indem. Ins. Co. of NY*, 89 N.Y.2d 94, 103, 651 N.Y.S.2d 383, 674 N.E.2d 313 [1996]; *Leonia Bank v Kouri*, 3 A.D.3d 213, 220, 772 N.Y.S.2d 251 [1st Dept 2004]; *Matter of Home of Histadruth Ivrith v State of New York Facilities Dev. Corp.*, 114 A.D.2d 200, 204, 498 N.Y.S.2d 883 [3rd Dept 1986]), nor that plaintiff is judicially estopped thereby (*see Cantor Fitzgerald Inc. v Cantor Fitzgerald, L.P.*, 295 A.D.2d 124, 742 N.Y.S.2d 552 [1st Dept 2002]).

On June 4, 1996, the director of plaintiff's Military History Task Force went to the armory to inventory the property there. He was prevented from doing so by defendant Fund's vice president, David Dalva, and its then curator, Lisa Weilbacker. The director was not given access to the armory's personal property and was told by the curator that he could not see the property because it was owned by defendant Fund. In response to a June 14, 1996 letter from the State of New York Office of the Attorney General, the attorney for defendant Fund stated that it only held property to which defendant Fund had clear legal title, and that a visit by plaintiff to the armory to do an inventory would be allowed only if plaintiff acknowledged that the personal property in the armory was owned by defendant Fund.

[\*\*226] Under Military Law § 241, [3] a unit of the New York State organized militia has the right to take property by bequest for the militia's uses and purposes as a military organization, and to dispose of the property. The organized militia includes the New York national guard (*see* Military Law § 2 [1]). The New York State Division of Military and Naval Affairs (DMNA) includes the organized militia (Executive Law § 190 [2]), which is part of the executive department (Executive Law § 31 [2]) of New York State (Executive Law § 30). The New York State Adjutant General is the head of the DMNA (Executive Law § 190 [1]). The Seventh Regiment is an unincorporated association, which is capable of holding property (Military Law § 260 [1]). [\*\*\*387] Plaintiff is not claiming a right to property bequeathed to defendant Fund. The Appellate Division, First Department, held in this action that the subject personal property acquired by the 107th by inter vivos gift had to be held by the 107th in trust for the State, and the 107th had no right to dispose of that property (*State of New York v Seventh Regiment Fund*, 262 A.D.2d 205, 206, 692 N.Y.S.2d 328 [1999]). At issue is that property. (*id.*)

  3   Military Law § 241 is derived from former § 244, which was repealed in 1953 when § 241 was enacted.

Another Justice of this Court, to whom this action had previously been assigned, granted a summary

Case 1:07-cv-06851-BSJ-DCF    Document 11-31    Filed 10/04/2007    Page 3 of 4

Page 3

2006 NY Slip Op 26262, *; 13 Misc. 3d 222, **;
822 N.Y.S.2d 383, ***; 2006 N.Y. Misc. LEXIS 1713

judgment motion by defendant Fund dismissing this action on the ground of the statute of limitations, and he was affirmed by the Appellate Division, First Department (283 A.D.2d 321, 725 N.Y.S.2d 324 [2001]). The Court of Appeals reversed that determination, and gave specific directions as to issues upon which to make findings of fact and conclusions of law upon remand (98 N.Y.2d 249, 261-262, 774 N.E.2d 702, 746 N.Y.S.2d 637 [2002]). On remand, the action was then reassigned to this court. A trial was conducted by this court over 14 days without a jury. These are the essential findings of fact (CPLR 4213 [b]) and conclusions of law.

As the Court of Appeals stated, the claim of plaintiff is in essence one for conversion (98 N.Y.2d at 259). Conversion is defined as a person's assuming and exercising without authorization the right of ownership over goods which belong to another person to the exclusion [*4] of that person's rights (*Employers' Fire Ins. Co. v Cotten*, 245 N.Y. 102, 105, 156 N.E. 629 [1927]; *Soviero v Carroll Group Intl. Inc.*, 27 A.D.3d 276, 277, 813 N.Y.S.2d 49 [1st Dept 2006]). "It is elementary that the law of conversion is concerned with possession, not with title." (*Pierpoint v Hoyt*, 260 N.Y. 26, 29, 182 N.E. 235 [1932].) One element of conversion is an affirmative act by the defendant, [**227] such as denying the rightful owner access to the property (*State of New York v Seventh Regiment Fund*, 98 N.Y.2d at 260).

The date upon which plaintiff's cause of action accrued and thus the statute of limitations began to run depends on whether defendant Fund was a bona fide purchaser of the property at issue in 1952 (*State of New York v Seventh Regiment Fund*, 98 N.Y.2d at 261-262). Defendant Fund's position on this issue is ironic. The predecessors of defendant Fund's members in 1952 served the people of this State in our militia and may even have been injured or killed defending us in the Korean War, [4] and one would think that defendant Fund would be praising its predecessors as heroes. Yet, defendant Fund is now contending that it was not a bona fide purchaser in 1952, and that the then board of directors of defendant Fund and board of officers of the 107th acted in bad faith in the transaction by attempting to illegally take title to the subject property away from our State and thus its people. Defendant Fund sullies its predecessors' reputation just because this argument suits the litigation position of defendant Fund in this action as to the statute of limitations defense (*see id.* at 261; *Guggenheim Found. v Lubell*, 77 N.Y.2d 311, 318, 569 N.E.2d 426, 567 N.Y.S.2d 623 [1991]).

   4  There is nothing in the record to show whether the 107th went to Korea during the Korean War.

[***388] If defendant Fund was a bona fide purchaser of the property improperly sold to it in 1952, as plaintiff argues, then its claim would not have accrued until plaintiff made a demand for a return of the property, and then defendant refused the return (*State of New York v Seventh Regiment Fund*, 98 N.Y.2d at 261-262). Until a return of the property is demanded by the rightful owner and the demand refused, possession of the property by a bona fide purchaser is not deemed wrongful (*Guggenheim Found. v Lubell*, 77 N.Y.2d at 318). A demand gives a good faith buyer the opportunity to return the property to its rightful owner before the buyer would become liable for conversion (*State of New York v Seventh Regiment Fund*, 98 N.Y.2d at 260). If defendant Fund were not a good faith purchaser, as defendant Fund contends, or no demand were necessary because a demand would have been futile, [5] then the claim would have accrued when defendant Fund interfered with plaintiff's property (*id.* At 261).

   5

   Defendant Fund is not asserting a futility argument. Even if such a position had been put forth, it would have been meritless "because the circumstances [would have had to] show that the defendant [knew] that it [had] no right to the goods...." (*State of New York v Seventh Regiment Fund*, 98 N.Y.2d at 260.) That could be if defendant Fund had stolen the property. (*id.*) The record here does not demonstrate that defendant Fund had such knowledge.

[**228] Defendant Fund was a bona fide purchaser. Defendant Fund bought the property in good faith (*cf. 432 Broome St. v Bullen*, 270 A.D.2d 130, 704 N.Y.S.2d 256 [1st Dept 2000] [where the plaintiff could not claim to be a good faith purchaser where the purchaser had actual knowledge of a defect in title]; UCC 1-201 [19] ["Good faith" means honesty in fact in the conduct or transaction concerned."]). There is nothing in the record to show that defendant Fund knew of any defect in the title of the [*5] 107th to the subject property. Defendant Fund purchased the property from the 107th due to the concern that the 107th might be sent to Korea and that the United States Government would take control of the armory's property. Furthermore, if the 107th had been sent to Korea as an active unit in the military service of the United States, the New York State Adjutant General could have directed the disposition of the 107th's property (Military Law § 260 [3]). The actions of defendant Fund, as well as the 107th, were documented and not done in secret. Even if the 107th and defendant Fund were attempting to circumvent plaintiff's control over the property, that does not mean that defendant Fund did not have a good faith belief that the 107th could lawfully transfer title of the property to defendant Fund.

That the conveyance was stated to be for one dollar and other unspecified consideration does not mean that

2006 NY Slip Op 26262, *; 13 Misc. 3d 222, **;
822 N.Y.S.2d 383, ***; 2006 N.Y. Misc. LEXIS 1713

the purchase was not bona fide. Consideration "consists of either a benefit to the promisor or a detriment to the promisee (citation omitted)." (*Weiner v McGraw-Hill, Inc.*, 57 N.Y.2d 458, 464, 443 N.E.2d 441, 457 N.Y.S.2d 193 [1982].) Here, as stated, the consideration included the benefit to the 107th of believing that its property would be safely in the hands of defendant Fund, which would preserve the subject property.

Although defendant Fund acted in ways consistent with its claim of right to the armory property, those pre-1996 actions of defendant Fund are irrelevant to the statute of limitations issue. As defendant Fund was a bona fide purchaser, the statute of limitations did not commence until [***389] defendant Fund refused the demand of the director of plaintiff's Military History Task Force to be given access to the property in 1996 to do the inventory. Plaintiff did not have to actually demand a removal of the property from the armory for defendant Fund's refusing to permit the director to have possession of the property for the inventory to constitute a demand for statute of limitations purposes. As this action was commenced later that year, the [**229] statute of limitations of six years (CPLR 213 [5]) had not run when the action was commenced. Thus, that defense is not meritorious.

The property at issue belongs to plaintiff. The 107th had no right to transfer the property to defendant Fund. The plaintiff demanded of defendant Fund the right to possess the property in order to perform an inventory, which defendant Fund would not allow plaintiff to do. Plaintiff has proven that it should be afforded the declaration sought and a judgment that defendant must immediately return the subject property to plaintiff. Therefore, by this court's separate decision and order, plaintiff has been awarded that relief, and defendant Fund's counterclaim was denied. Plaintiff is not entitled to relief as to the one painting sold by defendant Fund because it no longer has possession thereof and plaintiff only claimed property that defendant Fund possessed. Plaintiff could attempt to obtain a return of that painting from its purchaser. Plaintiff has not proven that defendant Fund has lost, damaged, or destroyed any of the subject property, other than what was damaged and defendant Fund had repaired, so that plaintiff is not entitled to the restitution, damages, and surcharge sought.

Finally, the court hopes that plaintiff will allow the artifacts to remain in place in the armory and The Metropolitan Museum of Art, with both parties cooperatively controlling the property, especially as defendant Fund has been such a conscientious guardian of the property over the decades. In that way, the people of our State, and others, can have the opportunity to learn about the rich history of the Seventh Regiment and appreciate these valuable historical artifacts.

[*6] Dated: New York, New York

June 21, 2006 RICHARD F. BRAUN, J.S.C.