```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 36
------------------------------------------X

DAVID L. DALVA, II,

                           Plaintiff,
                                                Index No. 116965/05
           -against-

GEORGE PATAKI, as Governor of the State
of New York, BRIG. GEN. FREDRIC DAVID
SHEPPARD, as Adjutant General for the
Division of Military and Naval Affairs,
the DIVISION OF MILITARY and NAVAL
AFFAIRS, NYS URBAN DEVELOPMENT
CORPORATION, d/b/a EMPIRE STATE
DEVELOPMENT CORPORATION, SEVENTH
REGIMENT ARMORY CONSERVANCY, INC.,
and THE CITY OF NEW YORK,

                           Defendants.
------------------------------------------X
```

[FILED DEC 11 2006 NEW YORK COUNTY CLERK'S OFFICE]

Marilyn Shafer, J.:

The following two motions are addressed below: (1) defendant Seventh Regiment Armory Conservancy, Inc.'s (the Conservancy) motion for summary judgment dismissing the complaint (mot. seq. no. 003); and (2) defendants the Governor of the State of New York, the Adjutant General of the State of New York and the Empire State Development Corporation's (the State defendants) motion for the same relief (mot. seq. no. 004).

The facts have been fully detailed in the prior decision, and will only be referred to herein as necessary. In brief, the Seventh Regiment Armory (the Armory) is a building located in the city block bounded by Lexington Avenue and Park Avenue, and 66th

1

EX. W

and 67th Streets, in Manhattan, which is in sore need of restoration. In 2004, the State Legislature enacted Chapter 482 of the Laws of 2004 (Chapter 482), to allow the lease of the Armory, so that it can be fully restored, and put to use as, among other things, a cultural center. Plaintiff David L. Dalva II (Dalva), an individual who has been accorded standing to pursue this action as a taxpayer under State Finance Law § 123-b[1], does not want the project to go forward. Therefore, he seeks a declaration that Chapter 482 is unconstitutional, because the project involved property owned by the City of New York, and Chapter 482 was unconstitutionally enacted without a "home rule message."

In a decision dated March 3, 2006 (*Dalva v Pataki*, Sup Ct, NY County, Shafer, J., Index No. 116965/05)(Decision), I declined to grant Dalva a preliminary injunction enjoining defendants from pursuing the project, holding, among other things, that Dalva had failed to show a likelihood of success on the merits.

### Discussion

---

[1] Defendants challenge Dalva's standing to challenge the 1879 lease. However, I find that the State expediture issues and the lease issues are so intertwined that standing cannot be denied. The arguments by the State defendants on this issue have not been considered, as they were raised for the first time in their reply. See *Branham v Loew's Orpheum Cinemas, Inc.*, 31 AD3d 319 (1st Dept 2006)(matters first raised upon reply papers may be rejected by the court).

On a motion to dismiss, "the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit in any cognizable legal theory [internal quotation marks and citations omitted]." *Bishop v Maurer*, ___AD3d___, 2006 WL 3007824 *1 (1st Dept 2006).

Pursuant to Article IX § 2 (b) (2) of the State Constitution, the Legislature "[s]hall have the power to act in relation to the property, affairs or government of any local government ... by special law only (a) on request of two-thirds of the total membership of its legislative body or on request of its chief executive officer concurred in by a majority of such membership ... ." This request is known as a "home rule message." *Patrolmen's Benevolent Association of the City of New York v City of New York*, 97 NY2d 378 (2001)(*Policemen's Benevolent Association*). The crux of the present motion is whether the State Legislature was required to obtain a home rule message from the City of New York prior to enacting Chapter 482.

The Court in *Patrolmen's Benevolent Association of the City of New York* (*supra*) determined that an exception to the home rule message requirement exists "when a special law serves a substantial State concern" (*id.* at 386), and where there is a "reasonable relationship" between the enactment and the "substantial State concern." *Id.*

3

Dalva argues that defendants cannot identify any substantial State concern in converting the Armory to cultural uses. He posits that the Act does not have the necessary "statewide effect" or "statewide applicability" to justify the failure to obtain a home rule message (Dalva memo. in opp. to State defendants' mot., at 5), and that, similarly, the defendants have not established that "the legislation affects the citizens of the State generally." *Id.* at 3, quoting *Matter of Kelley v McGee*, 57 NY2d 522, 538 (1982).

The flaw in Dalva's argument is that the law does not require that a legislative enactment have a statewide "effect" or "aapplicability"; the law requires the legislation to relate to a substantial State "concern." *Patrolmen's Benevolent Association of the City of New York*, 97 NY2d at 390. This does not mean that the enactment must have an effect in the entire State. Further, Dalva's reading of *Matter of Kelley v McGee* (*supra*) is flawed. The Court in *Kelley* stated that

> [i]n questioning whether a challenged statute involves a matter other than the property, affairs or government of a municipality, this court has consistently analyzed the issue from the stand point of whether the subject matter of the statute is of sufficient importance to the State *generally* to render it a proper subject of State legislation [emphasis supplied]."

57 NY2d at 538. I find no difference between this language, and

4

the language of *Patrolmen's Benevolent Association*[2], in that it does not mean that the statute effect the entire State, but only that the State have a general interest, i.e., concern, in the subject matter of the statute. *Patrolmen's Benevolent Association* has defined that interest to be a substantial "concern," whether or not that concern is felt Statewide.[3]

The question then is, what, if any, is the State's substantial concern in Chapter 482. In the Decision, I agreed with defendants, as I do now, that numerous substantial State concerns are encompassed by Chapter 482, to wit:

> The legislation will save an irreplaceable State landmark for future generations. It will create an important public cultural center. It will sustain the women's shelter within its walls. And it will maintain the entire facilities of the Armory for military use in times of need, as it has in the past.

Decision, at 17. However, Dalva urges that these "so called 'concerns' are "nothing more than general, abstract statements ... which do not, when measured up against the language of the statute, constitute a real, substantial State interest with

---

[2]In fact, *Patrolmen's Benevolent Association* refers to *Kelley* several times in its decision.

[3]In *Hotel Dorset Company v Trust for Cultural Resources of City of New York*, (46 NY2d 358 [1978]), a case involving the future of the Museum of Modern Art, the Court found the "there is ample showing from the legislative findings alone that the maintenance of cultural institutions is a State concern." *Id.* at 373. But it also found that "[e]ven if we considered that this legislation presently affects but one museum, the preservation of that one facility is of importance to the citizens of the State as well as the City." *Id.* The same could be said of the Armory.

statewide applicability." Memo in opp. to State defendants mot., at 5.

The difficulty with this argument is that the concerns expressed by defendants mirror those set forth in the legislation itself, which states that all of the above concerns are "beneficial to the health, safety, welfare and education of the people of the city and state." Chapter 482, Section 1.

In an action predating *Patrolmen's Benevolent Association, City of New York v Patrolmen's Benevolent Association* (89 NY2d 380, 393 [1996]), the Court stressed the importance of the language contained in a statute's legislative history, stating that "our precedents have consistently relied upon the stated purpose and legislative history of the act in question to find, or reject, a substantial state concern." This sentiment was reiterated in *Patrolmen's Benevolent Association*, 97 NY2d at 388. Therefore, I find that the State's concerns are neither "general" nor "abstract," but are, rather, concise and specific, and firmly support the legislature's right to forego a home rule message.

Dalva relies finally on the case of *Veterans of Seventh Regiment v Field Officers of Seventh Regiment* (60 Hun 578, 14 NYS 811 [1891]) to show that the Armory may only be used for an armory and drill rooms. In *Veterans of the Seventh Regiment*, plaintiff, a private organization, subleased a single room in the Armory from the lessees of the building, the Field Officers of

the Seventh Regiment, to be used for the purposes of the veteran's organization. The veteran's organization aided the Field Officers in raising money for the completion of the Armory, and donated funds as well. The sublease apparently came into being when the Armory opened in 1879.

Eventually, the Field Officers objected to the sublease, determining that the sublease was improper, in that it violated the purposes for which the Armory had been created: to act as an armory and drill room. The Court agreed with the Field Officers, and held that the veteran's organization, a private entity, had no right to a room in the Armory.

*Veterans of the Seventh Regiment* is distinguishable from the present action, because, in that case, the Court only addressed itself to one of the possible uses expressed in the 1874 lease: the use of the Armory as an armory and drill room. In fact, the 1874 lease also refers to other uses, in that it speaks of "the purpose of an Armory and Drill Rooms *or the public purposes of said regiment or in furtherance of such public purposes* [emphasis added]." Thus, the 1874 lease, by its language, anticipated public purposes other than those of armory and drill rooms, purposes which were not within the scope of *Regiment v Field Officers of Seventh Regiment*. Therefore, *Regiment v Field Officers of Seventh Regiment* is distinguishable from the matter at hand. As a result, it is correct to say that the public uses

7

which the State has chosen to pursue fall within the terms of the 1894 lease. The motions to dismiss the complaint are granted.

Plaintiff The City of New York has offered an affirmation in which the City affirms that, under the "particular circumstances relating to this legislation and this property, the City has chosen not to assert any home rule related claim." It asks that the complaint be dismissed as to it as well. This request is granted.

Accordingly, it is

ORDERED that the motion to dismiss the complaint made by defendant Seventh Regiment Armory Conservancy, Inc. (mot. seq. no. 003) is granted, and the complaint is dismissed as to it; and it is further

ORDERED that the motion to dismiss made by defendants the Governor of the State of New York, the Adjutant General of the State of New York and the Empire State Development Corporation (mot. seq. no. 004) is granted, and the complaint is dismissed as to these defendants; and it s further

ORDERED that request made by defendant the City of New York to dismiss the complaint as to it is granted; and it is further

ORDERED that the complaint is dismissed as to it; and it is further

ORDERED that costs and disbursements are awarded to defendants as taxed by the Clerk of the Court; and it is further

8

ORDERED that the Clerk is directed to enter judgment accordingly.

Dated: 11/29/06

ENTER:

_____
J.S.C.

HON. MARILYN SHAFER, JSC

FILED
DEC 11 2006
NEW YORK
COUNTY CLERK'S OFFICE