Administration Building and/or the Drill Hall shall constitute a taking of a Substantial Portion of the Demised Premises.

(c)    If the whole or a Substantial Portion of the Demised Premises shall be taken or condemned as provided in Section 9.01(a), the award, awards or damages in respect thereof shall be apportioned as follows: (i) there shall first be paid to any Mortgagee who shall hold a first priority Mortgage on Tenant's interest in this Lease and who shall have complied with the first sentence of Section 10.10(a), so much of the portion of the award attributable to the Building as shall be required to pay the unpaid principal balance of such Mortgage (not to exceed total costs incurred by Tenant in connection with the Major Construction Work), plus interest accrued thereon from the date of taking to the date of payment to such Mortgagee, at the rate of interest payable in the condemnation proceedings, (ii) there shall then be paid to Tenant the costs of Tenant's major capital improvements to the Building (not to exceed total costs incurred by Tenant in connection with the Major Construction Work, plus any Capital Improvements, less any amounts apportioned to any Mortgagees under clause (i) hereof, and, in the event such taking or condemnation occurs during or following the fiftieth Lease Year, depreciated on a straight-line basis over the period from the first day of the fiftieth Lease Year to the last day of the Term), and (iii) there shall then be paid to Landlord the balance, if any, of such award.

Section 9.02    Date of Taking. For purposes of this Article 9, the date on which a taking shall occur shall be deemed to be the earlier of (i) the date on which actual possession of the whole or a Substantial Portion of the Demised Premises, or a part thereof, as the case may be, is acquired by any lawful power or authority pursuant to the provisions of the applicable federal or New York State law or (ii) the date on which title to the Demised Premises or the aforesaid portion thereof shall have vested in any lawful power or authority pursuant to the provisions of the applicable federal or New York State law.

Section 9.03    Taking of Less than a Substantial Portion of Demised Premises. If less than a Substantial Portion of the Demised Premises shall be so taken, this Lease and the Term shall continue as to the portion of the Demised Premises remaining without abatement of the Base Rent or Additional Charges or diminution of any of Tenant's obligations hereunder; provided, however, that Landlord acknowledges that Base Rent is calculated and paid solely on the basis of a percentage of Gross Revenues from Commercial Operations in excess of the Breakpoint, and therefore the Breakpoint shall be equitably adjusted as set forth in Section 9.01. Tenant shall utilize the award received by it to Restore any remaining part of the Demised Premises not so taken so that the latter shall be complete, operable, self-contained architectural units in good condition and repair, to the extent feasible in light of the amount of the award so received. Tenant's obligation to restore shall be contingent on Landlord's restoration of any portion of the Building so taken which is not part of the Demised Premises. In the event of any taking pursuant to this Section 9.03, the Tenant's portion shall be paid to Tenant to be applied to Restoration of the Building if under $2,000,000 Adjusted for Inflation and to Depositary if $2,000,000 Adjusted for Inflation or more and, in either case, shall be applied to the cost of Restoration of the part of the Demised Premises not

so taken. Subject to the provisions and limitations in this Article 9, Depositary shall, after receipt of the written approval of the Landlord make available to Tenant as much of that portion of the award as is actually received and held by Depositary, if any, as may be necessary to pay the cost of Restoration of the part of the Demised Premises remaining.

Section 9.04    Emergency Use of Demised Premises; Temporary Taking. If the temporary use of the whole or any portion of the Demised Premises shall be taken for any public or quasi-public purpose, including military use in the event of a national or state declaration of emergency ("Emergency Use"), by any lawful power or authority whether by the exercise of the right of condemnation or otherwise (the "Condemning Authority") due to the status of the Building as an armory, (i) unless prohibited by law, the Term and all dates and deadlines set forth herein shall be tolled during the period of the Emergency Use or temporary taking, plus any additional period as shall be equitable taking into account the additional time required for Tenant to re-schedule and re-commence any activities in the Demised Premises which were disrupted by the Emergency Use or temporary taking, (ii) Breakpoint shall be equitably adjusted during the period of Emergency Use and/or temporary taking, and until the first anniversary of the date on which the Full Operation Date shall have been achieved following the period of Emergency Use. The provisions of this Lease which entitle Landlord to use the Demised Premises for Emergency Use shall not be deemed to diminish Tenant's rights to receive any condemnation award arising under applicable law or to assert a claim for compensation and reimbursement under applicable law, regardless of whether Landlord is the Condemning Authority.

Section 9.05    Change of Grade. In case of any governmental action, not resulting in the taking or condemnation of any portion of the Demised Premises but creating a right to compensation therefor, such as the changing of the grade of any street upon which the Demised Premises abut, this Lease shall continue in full force and effect without reduction or abatement of Base Rent and Additional Charges and the award shall be paid to Landlord.

Section 9.06    Negotiated Sale in Lieu of Condemnation. In the event of a negotiated sale of all or a portion of the Demised Premises in lieu of condemnation, subject to the approval reasonably exercised of Landlord and Tenant, the proceeds shall be distributed as provided as in cases of condemnation.

Section 9.07    Landlord's Right to Participate. Landlord, Tenant and any Mortgagee shall be entitled to file any claim permitted to such party pursuant to this Article 9 and otherwise participate in any condemnation or similar proceeding and all hearings, trials and appeals in respect thereof.

Section 9.08    Trade Fixtures. Notwithstanding anything to the contrary contained in this Article 9, in the event of any permanent or temporary taking of all or any part of the Demised Premises, Tenant and its Users shall have the exclusive right to assert claims for any trade fixtures and personal property so taken which were the property of Tenant or its Users (but not including any Equipment) and

for relocation expenses of Tenant or its Users, and all awards and damages in respect thereof shall belong to Tenant and its Users, and Landlord hereby waives any and all claims to any part thereof; provided, however, that if there shall be no separate award or allocation for such trade fixtures or personal property or relocation expenses, then such claims of Tenant and its Users, or awards and damages, shall be subject and subordinate to Landlord's claims under this Article 9.

## ARTICLE 10

## ASSIGNMENT, SUBLETTING, MORTGAGES, ETC.

Section 10.01    No Assignment; Subletting Permitted.

(a)    Except as otherwise provided in this Article 10, Tenant shall not, without the prior written consent of Landlord and the State Comptroller assign or otherwise transfer Tenant's rights, title and interest under this Lease or the term and estate hereby granted. Furthermore, except as otherwise provided in this Article 10, Tenant shall not, without the prior written approval of the Landlord (i) sublet, permit any other person to use or occupy, or enter into any User Agreement with respect to the Demised Premises or any part thereof, (ii) mortgage, pledge or encumber this Lease or (iii) permit any User to sublet or sublicense any portion of the Demised Premises or assign any User Agreement to any other Person (it being understood that this clause (iv) shall not prevent a User under a User Agreement which provides for the booking of shows, performances, and the like from entering into such booking arrangements pursuant to its User Agreement). Any of the arrangements in clauses (i)-(iv) above entered into in violation of this Article 10 shall be null and void. For the purposes of this Article 10, the merger or consolidation of Tenant into or with another entity or transfer of control of the Tenant to any other entity shall be deemed an assignment of this Lease.

(b)    Notwithstanding anything to the contrary set forth herein, Tenant shall not assign its interest in this Lease, nor sublet or enter into any User Agreement for any portion of the Demised Premises, to any person or entity which is a Prohibited Party, nor allow any such Prohibited Party to use or occupy all or any portion of the Demised Premises. Landlord or Tenant may terminate any assignment, sublease, User Agreement or licensed use of the Demised Premises or any part thereof, in the event that any assignee, sublessee, assignee or User, their officers, directors, managers, employees, or operators meets the definition of a Prohibited Party at any time during the term of such assignment, sublease, User Agreement or licensed use of the Demised Premises or any part thereof. Tenant shall cause any written agreement for the assignment, sublease or licensed use of the Demised Premises, or any part thereof, and any User Agreement to contain a provision providing for Landlord's and Tenant's right to terminate such agreement as described in the proceeding sentence.

(c)    Tenant shall require any subtenant, Tenant's licensee, or Tenant's assignee, who is a Significant Sub-occupant, to execute and deliver to Tenant and/or Landlord a Vendor Responsibility Questionnaire on the form hereto attached as Exhibit O or any successor or replacement form required by the Landlord or the Office

of the State Comptroller. No occupancy or sub-occupancy agreement of any type with a Significant Sub-occupant (other than User Agreements with Significant Sub-occupants, which shall be governed by <u>Section 10.04)</u> shall be effective until Landlord approves the Significant Sub-occupant. Nothing in this <u>Article 10</u> shall relieve any Significant Sub-occupant from complying with any and all approval requirements imposed by any City, State or Federal statute, ordinance, rule or regulation.

Section 10.02    <u>Certain Permitted Assignments</u>. Notwithstanding the provisions of <u>Section 10.01(a)</u>, Landlord shall not unreasonably withhold, delay or condition its consent to the following:

(a)    a sale, assignment or transfer of Tenant's interest in this Lease to (i) a for-profit entity of which the Tenant or an Affiliate has and maintains management control for the purpose of obtaining the federal historic rehabilitation tax credit for the Major Construction Work, or (ii) an Affiliate in connection with any other financing to be obtained by Tenant for the Major Construction Work;

(b)    an assignment of the Lease to any proposed tenant that was the holder of a Recognized Mortgage or that is the affiliated nominee of the former holder of a Recognized Mortgage following either a foreclosure of a Recognized Mortgage or the acceptance by the holder of a Recognized Mortgage (or its nominee) of an assignment of the mortgagor's interest in the Lease in lieu of foreclosure or any purchaser at a sale in a foreclosure of the Recognized Mortgage, its successors and assigns;

provided that such assignee is not a Prohibited Person and meets the vendor responsibility requirements of the State of New York or other applicable Requirements; provided further that, Tenant and the proposed assignee shall execute such documents evidencing the sale, assignment or transfer as Landlord shall reasonably request; provided further that in the event that Landlord fails to respond within one hundred twenty (120) days to a written request by Tenant, or one hundred twenty (120) days to a written request by a Recognized Mortgagee, to sell, assign or transfer the Lease to an entity described in this <u>Section 10.02</u>, Landlord shall be deemed to have consented to such assignment.

Section 10.03    <u>Procedure for Approval of Assignments or Subleases Which Do Not Constitute User Agreements</u>.

(a)    For any proposed assignment or sublease of all or any portion of the Demised Premises in an arrangement which does not constitute a User Agreement, Tenant shall request, in writing, the approval of the Landlord, and, where the State Comptroller's approval is required by Section 10.01(a), the approval of the State Comptroller, setting forth in Tenant's request the identity of the proposed assignee or sublessee, information about the business, character and financial capacity of the proposed assignee or sublessee, and any other information that Landlord shall reasonably request in connection with its determination. Except as otherwise provided in <u>Section 10.02</u>, Landlord shall have one hundred twenty (120) days from the date that

Tenant requests, in writing, approval of a proposed assignment or subletting of all or any portion of the Demised Premises under this Article 10 to notify Tenant whether it approves or disapproves thereof. No assignment which requires the approval of the State Comptroller will be effective until a written approval of such assignment, has been delivered to the Tenant by the State Comptroller.

(b)     From and after the tenth (10th) anniversary of the Commencement Date and provided that no Event of Default has occurred and is continuing, Tenant may deliver a notice (a "Recapture Request") to Landlord requesting Landlord to terminate the Lease and take possession of the Demised Premises as of a date specified in the Recapture Request (the "Recapture Date"), which date shall not be sooner than ninety (90) days nor later than three hundred sixty (360) days from the date of the Recapture Request. Within one hundred twenty (120) days from the delivery of the Recapture Request, Landlord, in Landlord's sole determination, shall deliver a written notice to Tenant granting such Recapture Request (a "Recapture Approval") or denying such Recapture Request (a "Recapture Denial"). In the event that Landlord elects to grant the Recapture Request, on the Recapture Date or such other date set forth in the Recapture Approval and reasonably agreed to by Tenant, Tenant shall surrender the Demised Premises to Landlord, this Lease shall terminate and the rights and obligation of the parties to the other shall be same as if such date were the Scheduled Expiration Date. In the event that Landlord elects to deny the Recapture Request, Tenant shall have a period of one (1) year from the date of the Recapture Denial to request Landlord's approval in writing (an "Assignment Request") to assign this Lease to a not-for-profit entity with experience and financial capacity sufficient to operate the Demised Premises pursuant to this Lease and that is not a Prohibited Person (a "Proposed Assignee"), which approval shall be in the sole discretion of the Landlord, conditioned or delayed. In the event that Landlord approves such Assignment Request, the parties shall share any payments received from the Proposed Assignee with respect to such assignment (i) on a pari passu basis up to the amount of the sum of (x) Landlord's Contribution (which shall be payable to Landlord), and (y) the total cost incurred by Tenant in connection with the Major Construction Work and any other Capital Improvement, less Landlord's Contribution (which shall be payable to Tenant) and (ii) equally on any amounts thereafter.

(c)     Any consent or approval by Landlord under this Section 10.03 shall apply only to the specific transaction thereby authorized and shall not relieve Tenant from the requirement of obtaining the prior written consent of Landlord to any further assignment of this Lease or subletting of the Demised Premises in an arrangement which does constitute a User Agreement.

(d)     No assignment of this Lease or subletting of the Demised Premises in an arrangement which does not constitute a User Agreement shall have any validity except upon compliance with the provisions of this Section 10.03.

(e)     No approved assignment of this Lease or subletting of the Demised Premises in an arrangement which does not constitute a User Agreement shall become effective until there shall have been delivered to Landlord (i) an executed

counterpart of the sublease or the instrument of assignment of this Lease, in recordable form, containing inter alia, the name, address and telephone number of the assignee or User, and (ii) in the case of an assignment, an executed instrument of assumption by said assignee, in recordable form, whereby assignee expressly assumes all of the obligations of Tenant under this Lease.

(f)     Upon any approved assignment of this Lease and assumption of the obligations of the Tenant hereunder by the assignee, the assignor shall be relieved of all obligations first arising under this Lease following the effective date of the assumption. Nothing herein shall relieve the assignor of any obligations hereunder which are expressly stated in this Lease or in the Landlord's consent to assignment to survive the assignment.

Section 10.04     User Agreements with Respect to Portions of the Demised Premises.

(a)     Notwithstanding the provisions of Section 10.01(a), Tenant may, from time to time demise any portion(s) of the Demised Premises under subleases, occupancy agreements or licenses and/or enter into service or concession agreements, with a term not to exceed fifteen (15) years, for actual use and occupancy by the sublessee or licensee (a "Direct User"), or for production or presentation by the sublessee or licensee of events or other productions (an "Intermediary User"), hereinafter collectively referred to as User Agreements. Neither a Direct User nor an Intermediary User shall be an Affiliate of the Tenant. All User Agreements with Significant Sub-occupants shall be subject to the provisions of Section 10.04(c). All User Agreements shall include a provision requiring the User to use the subleased, licensed, occupied or concessioned space solely for Permitted Uses. Tenant shall perform and observe all of the terms and conditions to be observed by the landlord or licensor under the User Agreements, and shall cause the users, operators, licensees, concessionaires and other occupants (collectively "Users") to comply with their obligations under their User Agreements and shall enforce all of the rights of such landlord or licensor in accordance with the terms thereof.

(b)     All User Agreements must be in writing and meet the following criteria: (i) the use permitted under the User Agreement must be a Permitted Use and shall further the Public Goals set forth in Exhibit K hereto; (ii) the User Agreement shall comply with the Lease and with the requirements of all applicable governmental authorities and all policies of insurance covering the Demised Premises; (iii) the User and the User's officers, directors, managers, employees or operators shall not be Prohibited Parties, and Landlord and/or Tenant may terminate any User Agreement in the event that any User, its officers, directors, managers, employees or operators meet the definition of Prohibited Parties at any time during the term of the user Agreement, (iv) the User Agreement shall be subject and subordinate to the Lease, and shall provide that upon the termination of this Lease, Landlord, at its sole option, may terminate the User Agreement or enforce the User Agreement and the User will attorn to, or enter into a direct lease with Landlord on the same terms and conditions as are contained in the User Agreement for the then remainder of the User Agreement term,

subject, however, to the matters contained in <u>Section 10.07</u> hereof, (v) the User shall obtain and keep in force adequate Commercial General Liability coverage providing Demised Premises liability, products completed operations, broad form property damage, independent contractors, and blanket contractual including written and oral contracts and otherwise meeting the requirements of <u>Article 7</u> hereof.

(c)     Any other provision of this <u>Article 10</u> to the contrary notwithstanding, Tenant shall require any Direct or Intermediary User that is a Significant Sub-occupant, to execute and deliver to Tenant and Landlord a Vendor Responsibility Questionnaire on the form hereto attached as <u>Exhibit O</u> or any successor or replacement form required by the Landlord or the Office of the State Comptroller. In the event that Landlord reasonably determines that the applicable Significant Sub-occupant does not meet the vendor responsibility requirements of the State of New York, Landlord shall notify Tenant of such determination and Tenant shall terminate the applicable User Agreement. Nothing in this <u>Section 10.04 (c)</u> shall relieve any Significant Sub-occupant from complying with any and all approval requirements imposed by any City, State or Federal statute, ordinance, rule or regulation.

(d)     Within 30 days following execution, Tenant shall deliver to Landlord a fully executed copy of the User Agreement and all ancillary agreements, together with such other documentation and information as Landlord shall reasonably request to evidence that the criteria set forth in paragraph (b) have been satisfied.

(e)     Upon and subject to the terms and conditions of <u>Article 19</u> hereof, Tenant shall indemnify Landlord against, and shall hold Landlord harmless from, any and all liabilities, claims and causes of action arising under the terms and conditions of any User Agreements affecting the Demised Premises or any part thereof.

(f)     The fact that a violation or breach of any of the terms, provisions or conditions of this Lease results from or is caused by an act or omission by any of the Users shall not relieve Tenant of Tenant's obligation to cure, or liability for, the same. Tenant shall take all necessary and reasonable steps to prevent any such violation or breach. Landlord shall afford Tenant a reasonable time in which to enforce Tenant's rights against any User which is in violation or breach of its User Agreement, provided Tenant is diligently proceeding with its remedies against such User.

Section 10.05     <u>Landlord's Right to Collect Rent Under User Agreements</u>. Subject to the rights of a Recognized Mortgagee, Landlord, after an Event of Default by Tenant, may collect subrent and all other sums due under User Agreements and apply the net amount collected to the Rental payable by Tenant hereunder, but no such collection shall be, or be deemed to be, a waiver of any agreement, term, covenant or condition of this Lease or the acceptance by Landlord of any User as Tenant hereunder, or a release of Tenant from performance by Tenant of its obligations under this Lease.

Section 10.06     <u>Assignment to Landlord of Tenant's Interest in User Agreements</u>. To secure the prompt and full payment by Tenant of Rental and the

faithful performance by Tenant of all the other terms and conditions herein contained on its part to be kept and performed, Tenant hereby assigns, transfers and sets over unto Landlord (subject to the conditions hereinafter set forth and subject and subordinate to the rights of the holder of any Recognized Mortgage), all of Tenant's right, title and interest in and to all User Agreements affecting the Demised Premises or any part thereof and hereby confers upon Landlord, its agents and representatives, a right of entry by any lawful means in, and sufficient possession of, the Demised Premises to permit and insure the collection by Landlord of said rentals and other sums payable under the User Agreements, and further agrees that the exercise of said right of entry and qualified possession by Landlord shall not constitute an eviction of Tenant from the Demised Premises or any portion thereof; provided, however, that such assignment shall become operative and effective only in the event that this Lease and the term hereof shall be cancelled or terminated pursuant to the terms, covenants and conditions hereof, or in the event of repossession under a dispossess warrant or other re-entry or repossession by Landlord under the provisions hereof, if an Event of Default by Tenant shall occur hereunder and then only such User Agreements as the Landlord may additionally elect to take over and assume. At any time and from time to time upon Landlord's demand, Tenant shall promptly deliver to Landlord a schedule of all User Agreements setting forth the names of all Users, with a photostatic copy of each of such User Agreements.

Section 10.07    Recognition of Certain Users by Landlord.

(a)    Landlord covenants and agrees, for the benefit of any User having a User Agreement with a term of ten (10) years or more (excluding renewal options) which meets the requirements of <u>Section 10.04</u> hereof and which User has the right under such User Agreement to occupy or use either (x) more than fifty percent (50%) of any floor of the Administration Building, or (y) the entire Drill Hall, provided that in the case of occupancy or use of the Drill Hall, Tenant certifies to Landlord that such User has delivered a User Pledge to Tenant, Landlord will execute and deliver an agreement in recordable form pursuant to which Landlord agrees to recognize such User as the direct tenant of Landlord upon the termination of this Lease pursuant to any of the provisions of <u>Article 24</u> hereof, subject to such User fulfilling the terms of its User Pledge in all material respects and paying to Landlord the entire balance of the User Pledge, if any, upon such termination, and agreeing that Landlord will not (x) join the User as a party defendant in any action or proceeding which may be commenced by Landlord to terminate this Lease or (y) evict the User from the portion of the Demised Premises demised to it, or affect any of the User's rights under its User Agreement by reason of any default by Tenant under this Lease; provided, however, that at the time of the termination of this Lease (A) no default exists under the User's User Agreement which at such time would then permit the landlord thereunder to terminate the same or to exercise any dispossess remedy provided for therein, (B) Landlord elects to continue to operate the Demised Premises for the Permitted Uses, (C) Landlord shall not be bound by any provision of the User Agreement which would require Landlord to perform any action or incur any obligation which cannot legally be performed or incurred by a governmental entity, or which would require the payment by Landlord to, or performance by Landlord of any work for the benefit of, the User in excess of the

aggregate of sums actually received by Landlord under such User Agreement and all other attorned User Agreements but only to the extent such sums received are actually available for payment after Landlord has paid any necessary expenses for the Demised Premises and has established any reasonable and customary reserve accounts, and (D) the User shall deliver to Landlord an instrument confirming the agreement of such User to attorn to Landlord and to recognize Landlord as the User's landlord under its User Agreement as required by <u>Section 10.04</u> hereof, which instrument shall provide that neither Landlord, nor anyone claiming by, through or under Landlord shall be:

     (i)  liable for any act or omission of any prior landlord (including, without limitation, the then defaulting landlord); or

     (ii)  subject to any offsets or defenses which the User may have against any prior landlord (including, without limitation, the then defaulting landlord); or

     (iii)  bound by any payment of rent which the User might have paid for more than the current month to any prior landlord (including, without limitation, the then defaulting landlord); or

     (iv)  bound by any covenant to undertake or complete any construction of the Demised Premises demised by the User Agreement; or

     (v)  bound by any obligation to make any payment to the User or to expend any money in connection with the development, maintenance, operation or management of the Demised Premises, except to the extent such sums received are actually available for payment after Landlord has paid any necessary expenses for the Demised Premises and has established any reasonable and customary reserve accounts); or

     (vi)  bound to perform any action or incur any obligation which Landlord is legally prohibited from incurring or performing because of its status as a governmental entity.

     (vii)  required to use the Demised Premises for the Permitted Uses.

   Section 10.08  Mortgage of Leasehold Interests.

     (a)  Tenant shall not mortgage, assign or encumber this Lease or Tenant's interest herein, without Landlord's prior written consent, which consent shall not be unreasonably withheld, delayed or conditioned provided such proposed mortgagee qualifies as a Mortgagee.

     (b)  No Mortgage(s) or any extension thereof shall extend to or affect the estate and interest of Landlord in and to the Land or Building or any part thereof.

Section 10.09    Required Provisions in Mortgages. No Mortgage of this Lease or of Tenant's interest herein, shall be valid or of any force or effect, as against Landlord, unless and until a photostatic copy of the original of each instrument creating and affecting such Mortgage, and written notice containing the name and post office address of the holder of such Mortgage, shall have been delivered to Landlord, and unless the Mortgage shall contain, in substance, the following provisions:

    (a)    "This mortgage is executed upon the condition that no purchaser at any foreclosure sale shall acquire any right, title or interest in or to the Lease hereby mortgaged, unless the said purchaser, or the person, firm or corporation to whom or to which such purchaser's right has been assigned, shall, in the instrument transferring to such purchaser or to such assignee the interest of Tenant under the Lease, assume and agree, in accordance with the provisions of said Lease, to perform all of the terms, covenants and conditions of said Lease to be observed or performed on the part of Tenant and moreover, that no further or additional mortgage or assignment of said Lease shall be made except in accordance with the applicable provisions contained in Article 10 of the Lease, and that a duplicate original of said instrument containing such assumption agreement, duly executed and acknowledged by such purchaser or such assignee and in recordable form, is delivered to Landlord immediately after the consummation of such sale, or, in any event, prior to taking possession of the Demised Premises demised thereby;" and

    (b)    "The mortgagee shall not retain and apply the proceeds of any insurance or the proceeds of any condemnation award toward payment of the sum secured by this mortgage to the extent such proceeds are required for the repair or restoration of the mortgaged Demised Premises in accordance with the provisions of the Lease hereby mortgaged."

Section 10.10    Notice and Cure Period to Recognized Mortgagee for Tenant's Defaults Under the Lease.

    (a)    If at any time there shall be a Mortgage to which Landlord has consented pursuant to Section 10.08(a) of this Lease (a "Recognized Mortgage"), Landlord shall give to the holder of such Recognized Mortgage, at the address set forth in the notice mentioned in Section 10.09 hereof, a copy of each notice of default by Tenant given by Landlord under this Lease at the same time as, and whenever, any such notice of Default shall thereafter be given by Landlord to Tenant, and no such notice of default by Landlord shall be deemed to have been duly given to Tenant unless and until a copy thereof shall have been so given to the holder of a Recognized Mortgage of this Lease. The holder of such Recognized Mortgage (i) shall thereupon have a period of thirty (30) days more, after such notice is given to it, for remedying the default, or causing the same to be remedied, or causing action to remedy a default of the nature set forth in Section 24.01(c) to be commenced, than is given Tenant after such notice is given to it, and (ii) shall, within such period and otherwise as herein provided, have the right to remedy such default, cause the same to be remedied or cause action to remedy a default of the nature set forth in Section 24.01(c) to be commenced. Landlord will accept performance by the holder of a Recognized Mortgage of any covenant, condition, or

agreement on Tenant's part to be performed under this Lease with the same force and effect as though performed by Tenant.

(b)     Notwithstanding the provisions of paragraph (a) hereof, no default by Tenant under an this Lease shall be deemed to exist as long as the holder of a Recognized Mortgage shall, in good faith, have commenced promptly either (i) to cure the default and to diligently and continuously prosecute the same to completion, or (ii) if possession of the Demised Premises is required in order to cure the default, to institute foreclosure proceedings and obtain possession directly or through a receiver, to prosecute such proceedings with diligence and continuity and, upon obtaining such possession, commence promptly to cure the default and to prosecute the same to completion with diligence and continuity, provided, however, that the holder of a Recognized Mortgage shall have delivered to Landlord, in writing, its agreement to take the action described in clause (i) or (ii) herein, and that during the period in which such action is being taken (and any foreclosure proceedings are pending) all of the other obligations of Tenant under this Lease, to the extent they are susceptible of being performed by the holder of such Recognized Mortgage, are being duly performed. However, at any time after the delivery of the aforementioned agreement, the holder of such Recognized Mortgage may notify Landlord, in writing, that it has relinquished possession of the Demised Premises or that it will not institute foreclosure proceedings or, if such proceedings have been commenced, that it has discontinued them, and in such event the holder of such Recognized Mortgage shall have no further liability under such agreement from and after the date it delivers such notice to Landlord (except for any obligations accruing prior to the date it delivers such notice), and thereupon Landlord shall have the unrestricted right to terminate this Lease and to take any other action it deems appropriate by reason of any default by Tenant, and upon any such termination the provisions of <u>Section 10.11</u> hereof shall be applicable.

(c)     Anything herein contained to the contrary notwithstanding, except in the event of a condemnation or governmental takings, the effects of which shall be governed by <u>Article 8</u>, hereof, so long as a Recognized Mortgage remains outstanding, if the interests in the Demised Premises of Landlord and Tenant shall simultaneously be owned by the same Person, this Lease, and the leasehold estate created thereby shall not be deemed merged into the fee estate in the Demised Premises, or to have been extinguished, but shall continue nevertheless with the same force and effect as if Landlord and Tenant were different Persons.

(d)     Notwithstanding any other provision of this Lease, or any assumption agreement required hereunder, to the contrary, no holder of any Recognized Mortgage shall become liable under the provisions of this Lease (except to the extent provided in <u>(b))</u> unless and until such time as it becomes, and then only for as long as it remains, the owner of the leasehold estate created thereby.

Section 10.11     Recognized Mortgagee's Rights Upon Termination of this Lease.

(a)     In case of termination of this Lease by reason of any default or for any other reason, Landlord shall give prompt notice thereof to the holders of any Recognized Mortgages which are a lien thereon. Landlord, on written request of the holder of the Recognized Mortgage most senior in lien priority (or of any junior Recognized Mortgagee in successive order of priority, if a senior Recognized Mortgagee shall have transferred or assigned its rights to such junior Recognized Mortgagee or shall have failed to exercise its rights hereunder within the applicable period of time) made any time within thirty (30) days after the giving of such notice by Landlord, shall execute and deliver a new lease of the portion of the Demised Premises demised under this Lease to the holder of such Recognized Mortgage, or its nominee, for the remainder of the term of this Lease, upon all the covenants, conditions, limitations and agreements therein contained, provided that the holder of such Recognized Mortgage shall not be a Prohibited Party and shall pay to Landlord, simultaneously with the delivery of such new lease, all unpaid Rental due under this Lease up to and including the date of the commencement of the term of such new lease and all expenses including, but not limited to, reasonable attorneys' fees and disbursements and court costs incurred by Landlord in connection with the default by Tenant, the termination of this Lease and the preparation of the new lease.

(b)     Any such new lease and the leasehold estate thereby created shall, subject to the same conditions contained in this Lease, continue to maintain the same priority as the terminated Lease with regard to any lien, charge or encumbrance on Landlord's interest in the Demised Premises. Concurrently with the execution and delivery of such new lease, Landlord shall assign to the tenant named therein all of its right, title and interest in and to moneys (including insurance and condemnation proceeds), if any, then held by or payable to Landlord (or Depositary, as applicable), which Tenant would have been entitled to receive but for the termination of this Lease, and any sums then held by or payable to Landlord shall be deemed to be held by or payable to it as Landlord under the new lease.

(c)     Upon the execution and delivery of a new lease under this Section 10.11, all User Agreements which theretofore may have been assigned to Landlord thereupon shall be assigned and transferred, without representation or recourse (except that Landlord shall represent that it has not previously assigned or transferred the same), by Landlord to the tenant named in such new lease. Between the date of termination of this Lease and (i) the last date on which the holders of Recognized Mortgages constituting a lien thereon shall have failed to exercise their rights to obtain a new lease, or (ii) the date of execution and delivery of the new lease, if the holder of a Recognized Mortgage shall have requested such new lease as provided in paragraph (a) of this Section, whichever of (i) or (ii) is later, Landlord will not cancel any User Agreements or accept any cancellation, termination or surrender thereof (unless such termination shall be effected as a matter of law on the termination of this Lease) without the consent of the holder of such Recognized Mortgage, except for default as permitted in the User Agreement.

(d)     Notwithstanding anything to the contrary contained in this Section 10.11, the holder of a Recognized Mortgage shall have no obligation to cure any

default of Tenant of the nature set forth in subparagraphs (d) and (e) of <u>Section 24.01</u> of this Lease.

        Section 10.12    <u>Additional Recognized Mortgagee Protective Clauses</u>. In addition to the other rights, notices and cure periods afforded to the holders of any Recognized Mortgage on this Lease approved by Landlord, Landlord further agrees that:

                (i)    This Lease will not be modified or amended without the prior written consent of any holder of a Recognized Mortgage if such modification or amendment would have a material adverse effect on such holder.

## ARTICLE 11

## MAJOR CONSTRUCTION WORK

        Section 11.01    Tenant shall comply with all applicable statutes, rules, and regulations of the City, State and Federal governments relating to the performance of the Lease and the construction work and any restoration work to be performed thereunder.

        Section 11.02    <u>Major Construction Schedule.</u> Annexed to this Lease as <u>Exhibit M</u> and made a part hereof is a description of the Major Construction Work which has been approved by Landlord. Annexed to this Lease as <u>Exhibit L</u> is a schedule for the performance of the Major Construction Work, which sets forth the estimated timing of commencement and of Substantial Completion of each phase (a "<u>Phase</u>") of the Major Construction Work, and identifies with specificity the work to be undertaken in each Phase, which has been approved by Landlord ("<u>Major Construction Schedule</u>.")

        Section 11.03    Schematic Design Submission.

        (a)    Prior to the commencement of any Phase of the Major Construction Work, Tenant shall submit to Landlord the following items (the "<u>Schematic Design Submission</u>"): (i) an update to the Major Construction Schedule, identifying any changes proposed from the previously-approved Major Construction Schedule as a result of the Major Construction Work that Tenant intends to undertake during such Phase, (ii) an updated description of the Major Construction Work that Tenant intends to undertake during such Phase, identifying any changes proposed from the previously approved description of Major Construction Work, and (iii) schematic drawings, a scope of work description and a Budget with respect to the proposed Phase that Tenant intends to undertake (such documents, collectively, the "<u>Schematic Design Documents</u>"). Such Schematic Design Documents shall be in compliance with all Requirements. Tenant's submission of Schematic Design Documents shall be deemed complete and ready for Landlord review provided the Schematic Design Documents constitute "<u>Schematic Design Documents</u>" as defined in the then-current edition of the AIA Standard Form of Agreement between Owner and Architect, B141 (the "<u>AIA Form Agreement</u>").

(b)     Landlord shall have the right to review and approve each element comprising the Schematic Design Submission; provided that Landlord shall not unreasonably withhold, delay or condition its consent thereto so long as: (i) with respect to the description of the Major Construction Work, any proposed revisions do not materially reduce the scope of the Major Construction Work below the previously-approved description of the Major Construction Work (taking into account that elements of the Major Construction Work may be performed in a later Phase), (ii) with respect to the Major Construction Schedule, any proposed revisions do not materially delay the overall date for Substantial Completion of the Major Construction Work beyond the Outside Completion Date, and (iii) with respect to the Schematic Design Documents, the work shown therein (1) is in accordance with the description of the Major Construction Work, (2) is of good professional engineering/architectural design and incorporates into the Building first-quality equipment and materials, (3) would not jeopardize or adversely affect the structural integrity of the Building, the major Building systems or the roof, and (4) otherwise provides for a quality of design, equipment, materials and techniques that are commensurate in quality with the historic significance of the Building and are in accordance with the restoration standards applicable to a building of this type and significance. Landlord shall notify Tenant within twenty (20) days whether Landlord approves or disapproves of the Schematic Design Submission in whole or in part, which notice shall identify with specificity any matters disapproved (time being of the essence). Tenant shall resubmit to Landlord revised elements of the Schematic Design Submission addressing the matters as to which Landlord notified Tenant of its disapproval, and Landlord shall review and respond to all such revised elements within twenty (20) days (time being of the essence). In the event that Landlord fails to respond to any submission within such twenty-day period, Tenant shall deliver a second notice to Landlord requesting Landlord to review and respond to the Schematic Design Submission or revised Schematic Design Submission within fifteen (15) days (time being of the essence), which notice shall state prominently "LANDLORD RESPONSE TO THE BELOW SUBMISSION IS REQUIRED WITHIN FIFTEEN (15) DAYS FROM THE DATE OF THIS NOTICE OR LANDLORD APPROVAL WILL BE DEEMED GIVEN." Any Schematic Design Submission or revised Schematic Design Submission to which Landlord has not notified Tenant of its approval or disapproval within such fifteen (15) day period following such second notice shall be deemed to have been approved by Landlord. Tenant shall consult with OPRHP with respect to the Schematic Design Documents as required by applicable law and/or agreement between Tenant and OPRHP, and Landlord shall cooperate with Tenant with respect to such consultation.

Section 11.04     Design Development Submission.

(a)     Following Landlord's approval of the Schematic Design Submission and prior to the commencement of any Phase of Major Construction Work, Tenant shall submit to Landlord the following items (the "Design Development Submission"), identifying any changes in such items from the Landlord-approved Schematic Design Submission: (i) an update to the Major Construction Schedule, (ii) an updated description of the Major Construction Work, and (iii) design development drawings, a scope of work description and a Budget with respect to the proposed Phase

that Tenant intends to undertake (such documents, the "Design Development Documents"). Such Design Development Documents shall be in compliance with all Requirements. Tenant's submission of Design Development Documents shall be deemed complete and ready for Landlord review provided the Design Development Documents constitute "Design Development Documents" as defined in the AIA Form Agreement.

(b)    Landlord shall have the right to review and approve any elements of the Design Development Submission which represent changes (and not merely the course of progression of design detail) from the Landlord-approved Schematic Design Submission; provided that Landlord shall not unreasonably withhold, delay or condition its consent thereto so long as the submission meets the standards enumerated in Section 11.04(a). Landlord shall notify Tenant within 10 days whether Landlord approves or disapproves of the Design Development Submission, in whole or in part, with respect to such portions of the Design Development Submission related to HVAC, electrical, utility, fire/life safety and other mechanical systems (collectively "Mechanical Systems") and 20 days for all other portions, which notice shall identify with specificity any matters disapproved (time being of the essence). Landlord may not disapprove any items in the Design Development Submission which were previously approved by Landlord in the Schematic Design Submission (except with respect to previously approved items that are inconsistent with subsequent modifications made to such items in the Design Development Submission). Tenant shall resubmit to Landlord revised elements of the Design Development Submission addressing the matters as to which Landlord notified Tenant of its disapproval, and Landlord shall review and respond to all such revised elements within 10 days with respect to revisions related to Mechanical Systems, or 20 days with respect to revisions related to other items (time being of the essence). In the event that Landlord fails to respond to any submission within such 10-day or 20-day period, as applicable, Tenant shall deliver a second notice to Landlord requesting Landlord to review and respond to the Design Development Submission or revised Design Development Submission within 10 days with respect to revisions related to Mechanical Systems, or 20 days with respect to revisions related to other items (time being of the essence), which notice shall state prominently "LANDLORD RESPONSE TO THE BELOW SUBMISSION IS REQUIRED WITHIN 10 DAYS FROM THE DATE OF THIS NOTICE OR LANDLORD APPROVAL WILL BE DEEMED GIVEN," or, "LANDLORD RESPONSE TO THE BELOW SUBMISSION IS REQUIRED WITHIN 20 DAYS FROM THE DATE OF THIS NOTICE OR LANDLORD APPROVAL WILL BE DEEMED GIVEN," as applicable. Any Design Development Submission or revised Design Development Submission to which Landlord has not notified Tenant of its approval or disapproval within such 10-day or 20-day period, as applicable, following such second notice shall be deemed to have been approved by Landlord. Tenant shall consult with OPRHP with respect to the Design Development Documents as required by applicable law and/or agreement between Tenant and OPRHP, and Landlord shall cooperate with Tenant with respect to such consultation.

Section 11.05    Construction Document Submission.

(a)    Following Landlord's approval of the Design Development Submission and prior to the commencement of any Phase of Major Construction Work, Tenant shall submit to Landlord the following items (the "Construction Document Submission"), identifying any changes in such items from the Landlord-approved Design Development Submission: (i) an update to the Major Construction Schedule, (ii) an updated description of the Major Construction Work, and (iii) construction drawings and specifications, a scope of work description and a Budget with respect to the proposed Phase that Tenant intends to undertake (such documents, the "Construction Documents"). Such Construction Documents shall be in compliance with all Requirements. Tenant's submission of Construction Documents shall be deemed complete and ready for Landlord review provided that the Construction Documents constitute "Drawings and Specifications" with respect to the "Construction Documents Phase" as defined in the AIA Form Agreement.

(b)    Landlord shall have the right to review and approve any elements of the Construction Document Submission which represent changes (and not merely the course of progression of design detail) from the Landlord-approved Design Development Submission; provided that Landlord shall not unreasonably withhold, delay or condition its consent thereto so long as the submission meets the standards enumerated in Section 11.03(b). If there are no changes in the Construction Document Submission from the Design Development Submission, no consent of Landlord shall be required. With respect to any changes, Landlord shall notify Tenant within five (5) Business Days whether Landlord approves or disapproves of such changed elements of the Construction Document Submission, which notice shall identify with specificity any matters disapproved (time being of the essence). Landlord may not disapprove any items in the Construction Document Submission which were previously approved by Landlord in the Design Development Submission (except with respect to previously approved items that are inconsistent with subsequent modifications made to such items in the Construction Document Submission). Tenant shall resubmit to Landlord revised elements of the Construction Document Submission addressing the matters as to which Landlord notified Tenant of its disapproval, and Landlord shall review and respond to all such revised elements within five (5) Business Days (time being of the essence). In the event that Landlord fails to respond to any submission within such five (5)-Business Day period, Tenant shall deliver a second notice to Landlord requesting Landlord to review and respond to the Construction Document Submission or revised Construction Document Submission within five (5) Business Days (time being of the essence), which notice shall state prominently "LANDLORD RESPONSE TO THE BELOW SUBMISSION IS REQUIRED WITHIN 5 BUSINESS DAYS FROM THE DATE OF THIS NOTICE OR LANDLORD APPROVAL WILL BE DEEMED GIVEN." Any Construction Document Submission or revised Construction Document Submission to which Landlord has not notified Tenant of its approval or disapproval within such five (5)-Business Day period following such second notice shall be deemed to have been approved by Landlord. Tenant shall consult with OPRHP with respect to the Construction Documents as required by applicable law and/or agreement between Tenant and OPRHP, and Landlord shall cooperate with Tenant with respect to such consultation.

Section 11.06    <u>Modifications of Previously Approved Submissions</u>. Tenant shall submit to Landlord from time to time any modifications to the Schematic Design Documents, Design Development Documents and Construction Documents. If any such modifications affect any items as to which Landlord has previously granted or is deemed to have granted its approval, Landlord shall have the same review rights with respect to such modifications as are set forth in the applicable of <u>Section 11.03(b)</u>, <u>11.03(b) and 11.04(b)</u>, except that Landlord's review periods shall be shortened by five (5) days each, provided that in no event shall any such review period be shortened to less than five (5) Business Days. Landlord shall cooperate with Tenant in coordinating communications with OPRHP with respect to modifications to the Schematic Design Documents, Design Development Documents and Construction Documents.

Section 11.07    [Intentionally Deleted].

Section 11.08    <u>Tenant's Compliance with Requirements</u>. Tenant shall ensure that the Schematic, Design Development Documents and Construction Documents comply with the Requirements. Landlord's review of any plans pursuant to Sections <u>11.03</u>, <u>11.04</u> and <u>11.05</u> shall not be, nor be construed as being a determination that such plans comply with Requirements.

Section 11.09    <u>Landlord's Right to Use Field Personnel</u>. Landlord's designees may inspect the Demised Premises at all reasonable times to observe Tenant's Major Construction Work then being undertaken. No such observation by Landlord's personnel or designees shall impose on Landlord any responsibility for any failure by Tenant to observe any Requirements or safety practices in connection with such construction, preclude in any way any governmental authority having jurisdiction thereof from enforcing any Requirements or constitute an acceptance of any work which does not comply in all respects with the provisions of this Lease. Such designees shall not direct or interfere with any demolition work or Major Construction Work being conducted by Tenant and shall comply with any reasonable instructions of Tenant intended to avoid such interference or injury to such designees while at the Demised Premises (including telephonic or other reasonable notice to Tenant's construction officials prior to entering the actual construction site and checking in with such officials upon such entry). Tenant shall designate a high-level construction official to provide liaison with such designees.

Section 11.10    <u>Additional Conditions to Major Construction Work</u>. In addition to any other items required hereunder, Tenant shall deliver to Landlord the following items in connection with the Major Construction Work prior to the commencement of each Phase of Major Construction Work:

(i)      copies of all documents which have been stamped or otherwise approved by the `Buildings Department;

(ii)     executed counterparts and collateral assignments with agreements to perform for Landlord of the Architect's agreement, the general contractor agreement and any other construction contract agreements between Tenant and

Contractors, construction managers, vendors, suppliers and other Persons involved in such Phase of Major Construction Work (collectively, the "<u>Contract Documents</u>");

   (iii) evidence that payment and performance bonds, contractor guaranties, letters of credit, or other construction security have been deposited with Tenant, and collateral assignments of the same to Landlord;

   (iv) all documents required for compliance with OPRHP Requirements;

   (v) at least fifteen (15) days prior to the commencement of such Phase of Major Construction Work, certified copies or certificates of the policies of insurance required under <u>Section 7.01</u>; and

   (vi) a financial plan which demonstrates that the funding necessary to complete such Phase of Major Construction Work shall be funded in a timely manner to allow for the diligent and continuous performance and completion of such Phase of the Major Construction Work, which such plan shall be consistent with prudent and customary standards then employed by not-for-profit institutions in undertaking major capital construction projects to be funded by capital fundraising campaigns.

  Section 11.11 <u>Requirements During Major Construction Work</u>. Tenant shall submit to Landlord the following in connection with the Major Construction Work during the construction thereof:

   (i) copies and approvals of all structural and mechanical system test reports conducted by or for Tenant, its contractors and subcontractors, or the Architect as promptly as the same are obtained;

   (ii) copies of progress schedules once every two (2) months;

   (iii) progress photos once every two (2) months;

   (iv) two (2) sets of copies of (a) all documents filed with the Buildings Department, including, without limitation, application and amendment forms as promptly as the same are filed, (b) all amendments approved by the Buildings Department as promptly as the same are obtained and (c) all permits, consents, and other certificates issued pursuant to the Building Code of New York City or New York State as promptly as the same are obtained; and

   (v) all documents required for compliance with OPRHP Requirements.

  Section 11.12 <u>Requirements Upon Substantial Completion</u>. Tenant shall submit to Landlord, as promptly following Substantial Completion of each Phase

of Major Construction Work as the same are available, copies of the following items in connection with such Phase of Major Construction Work:

(i)    all guarantees or certifications called for under any and all Contract Documents or otherwise received by Tenant, in each case to the extent separate from the Contract Documents; and

(ii)    all certificates required by the New York City Building Code or the Buildings Department to be filed with the Buildings Department;

(iii)    as-built plans prepared by Architect (which plans may, if as-builts are not prepared, consist of the Construction Documents accurately marked to show all changes made in actual execution of such Phase of Major Construction Work); and

(iv)    a certification by Tenant of the total hard and soft costs incurred by Tenant in connection with such Phase of Major Construction Work, identifying the amount of Landlord's Contribution expended in such Phase.

Section 11.13    Commencement and Completion of Major Construction Work.

(a)    Subject to Unavoidable Delay, commencement of Major Construction Work shall take place no more than four (4) years after the Commencement Date, such date to be extended to the extent necessary to obtain any approvals described in subsection (h) of the definition of Unavoidable Delay. All Major Construction Work, once commenced, shall be diligently and continuously pursued, and shall be completed in a good and workmanlike manner and substantially in accordance with the Construction Documents therefor, with Substantial Completion of the Major Construction Work to occur no later than (x) the tenth (10th) anniversary of the Commencement Date, if not performed in Phases, or (y) the fifteenth (15th) anniversary of the Commencement Date, if performed in Phases, subject to Unavoidable Delay during or in connection with the commencement of the Major Construction Work (the "Outside Completion Date"). Tenant shall, with reasonable diligence, apply and prosecute the application for a certificate of occupancy for all Major Construction Work as to which, under applicable Requirements, a new or revised certificate of occupancy is required, and shall promptly deliver to Landlord a copy of such certificate of occupancy upon issuance thereof.

Section 11.14    Fire Safety Planning. Tenant, at Tenant's cost and expense, shall retain or cause the Architect to retain a qualified fire protection planning firm or mechanical engineering firm qualified in fire protection planning, and to utilize the services of such firm in the preparation of a fire protection plan, and for fire protection consultation during performance of any Major Construction Work. Such fire protection plan shall be submitted to Landlord for its information simultaneously with the submission of the fire protection plan to the Department of Buildings.

Section 11.15    Conditions Precedent to Tenant's Commencement of All Major Construction Work.

(a)    Permits and Insurance. Tenant shall not commence any Major Construction Work unless and until it shall have obtained and delivered to Landlord (i) true copies of all necessary permits, consents, certificates and approvals of all governmental authorities to be issued pursuant to the Building Code of New York City, the New York State Building Code or any other applicable law for such demolition and construction and (ii) certified copies of the policies of insurance required to be carried pursuant to the provisions of Article 7 hereof.

(b)    Cooperation of Landlord in Obtaining Permits. Landlord, in its proprietary capacity, shall reasonably cooperate with Tenant in obtaining any permits, consents, certificates and approvals of governmental authorities required under this Article 11 and shall execute and, where required, acknowledge any applications made by Tenant which are required to obtain such permits, consents, certificates and approvals.

(c)    OPRHP Approval of Construction Documents; Other Submissions. Tenant shall not commence any Phase of Major Construction Work unless and until (i) OPRHP shall have approved the Construction Documents and (ii) Tenant shall have satisfied the requirements of Sections 11.08, 11.10, 11.14 and this Section 11.15.

Section 11.16    Required Submissions Upon Completion of Major Construction Work. Promptly upon Substantial Completion of the Major Construction Work, or any Phase thereof, Tenant shall furnish Landlord with a certification of the Architect (certified to Landlord and Tenant) that it has examined the applicable plans and specifications (which shall include the Construction Documents and any other plans and specifications required to be delivered to Landlord) and that, in its best professional judgment to its best knowledge and belief, all Major Construction Work has been Substantially Completed in accordance with the Construction Documents.

Section 11.17    Title to the Materials, Fixtures and Equipment. Materials, fixtures and Equipment to be incorporated in the Building (which shall not include, however, personal property and fixtures of Tenant or any Users that are permitted to be removed by them pursuant to this Lease or User Agreements, at the end of the terms thereof) shall, effective upon their purchase and at all times thereafter, constitute the property of Landlord and shall constitute a portion of the Demised Premises covered by this Lease. However, Landlord shall not be liable in any manner for payment or otherwise to any contractor, subcontractor, laborer or supplier of materials in connection with the purchase of any such materials, fixtures or Equipment, nor shall Landlord have any obligation to pay any compensation to Tenant or any User by reason of Landlord's acquisition of title to the materials, fixtures or Equipment. Notwithstanding the foregoing or anything to the contrary elsewhere contained in this Lease, Landlord hereby agrees that, for income tax purposes, Tenant (or, to the extent provided in any User Agreement, a User) shall be considered to have all of the benefits

and burdens of ownership with respect to the Demised Premises or improvements therein and that Landlord will not claim any deduction or credit on its income tax returns with respect to the Demised Premises or improvements therein and will not otherwise take any action in connection with the Demised Premises or improvements therein which would disentitle Tenant (or a User, where applicable) to claim the deductions and credits that it would otherwise be entitled to claim as the owner of the Buildings for income tax purposes.

   Section 11.18 <u>Contractors Not Prohibited Parties</u>. Tenant shall ensure that all Persons with whom Tenant contracts for any portion of any Phase of Major Construction Work ("<u>Contractors</u>"), and all Persons with whom any Contractor contracts for labor or materials for any portion of any Phase of Major Construction Work, and all other Persons who have been solicited by others to perform any labor or other services or supply any materials in connection with any portion of any Phase of Major Construction Work are not Prohibited Parties.

   Section 11.19 <u>Required Clauses in Contract Documents</u>. All Contract Documents shall include the following provisions:

    (i) "["Contractor"]/["Subcontractor"]/["Materialman"] hereby agrees that immediately upon the purchase by ["contractor"]/["subcontractor"]/ ["materialman"] of any building materials, fixtures or Equipment to be incorporated in the Buildings (as defined in the lease pursuant to which the owner acquired a leasehold interest in the property (the "<u>Lease</u>"), such materials, fixtures or Equipment shall become the sole property of The State of New York, notwithstanding that such materials, fixtures or Equipment have not been incorporated in, or made a part of, such Buildings at the time of such purchase; provided, however, that Landlord shall not be liable in any manner for payment or otherwise to ["contractor"]/["subcontractor"]/["materialman"] in connection with the purchase of any such materials, fixtures or Equipment and Landlord shall have no obligation to pay any compensation to ["contractor "]/["sub-contractor"]/ ["materialman"] by reason of such materials, fixtures or Equipment becoming the sole property of Landlord, provided, however, that nothing contained herein shall prejudice any rights which ["contractor"]/["subcontractor"]/["materialman"] may have under the Lien Law of the State of New York; and provided, further, however, that the risk of loss shall not transfer to Landlord or Tenant prior to the incorporation of such materials, fixtures and Equipment by reason of such ownership."

    (ii) "["Contractor"]/["Subcontractor"]/["Materialman"] hereby agrees that notwithstanding that ["contractor"]/["subcontractor"]/["materialman"] performed work at the Demised Premises (as such term is defined in the Lease) or any part thereof, Landlord shall not be liable in any manner for payment or otherwise to ["contractor"]/["subcontractor"]/["materialman"] in connection with the work performed at the Demised Premises, provided, however, that nothing contained herein shall prejudice any rights which ["contractor"]/["subcontractor"]/["materialman"] may have under the Lien Law of the State of New York."

(iii)    "["Contractor"]/["Subcontractor"]/["Materialman"] hereby agrees to make available for inspection by Landlord, upon reasonable notice and during reasonable business hours, ["contractor's"]/["subcontractor's"]/["materialman's"] books and records relating to Major Construction Work (as defined in the Lease) being performed or the acquisition of any materials, fixtures or Equipment to be incorporated into the Buildings."

(iv)    "["Contractor"]/["Subcontractor"]["Materialman"] shall comply with all applicable statutes, rules, and regulations of the city, state and federal governments relating to the performance of the contract and the construction work and any restoration work to be performed thereunder."

(v)    "The agreements made in [clauses (i)-(iii) above] hereunder shall be deemed to be made for the benefit of the Landlord under the Lease and shall be enforceable by said Landlord."

Section 11.20    Rights and Licenses. Tenant shall have the right to acquire, create or grant temporary rights or licenses reasonably required in connection with the construction, installation, maintenance, operation or restoration of the Demised Premises or any utility lines, pipes, ducts, conduits or other equipment or facilities servicing any of the same, provided (a) any such right or license which is acquired by Tenant shall become part of the Demised Premises for all of the purposes of this Lease for so long as such right or license exists, (b) no such right or license, whether acquired, granted or created, may impose any charge on Landlord or lien upon the Demised Premises in respect of any cost or charges in connection therewith, other than for unpaid charges for utilities supplied to the Demised Premises through any such right or license, (c) no such right or license, or any rights granted thereunder, shall, unless Landlord and the City, as Superior Lessor under the City Lease, elect otherwise in writing, survive the termination of the Lease, and (d) no such right or license shall be effective unless and until Tenant delivers a notice to Landlord with a copy of such right or license. At Tenant's request, Landlord will join with Tenant in the acquisition, creation or granting of any such right or license (subject to the limitations hereinabove described), provided Landlord does not thereby incur any liability.

## ARTICLE 12

## REPAIRS; MAINTENANCE OF DEMISED PREMISES AND PUBLIC AREAS

Section 12.01    Tenant's Repair and Maintenance Obligations.

(a)    Tenant shall take good care of the Demised Premises and, subject to Section 12.02, make all repairs therein and thereon, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, necessary or appropriate to keep the same in a good condition and repair consistent with the "Standards for Treatment of Historic Properties" established by the United States Secretary of the Interior, and whether or not necessitated by wear, tear, obsolescence or defects, latent or otherwise. Tenant shall not commit or suffer, and shall use all

reasonable precaution to prevent, waste, damage or injury to the Demised Premises. When used in this Section 12.01, the term "repairs" shall include all necessary replacements, alterations and additions. All repairs made by Tenant shall be made in compliance with all Requirements and the provisions of this Lease.

(b)    Tenant shall keep clean and free from dirt, snow, ice, rubbish, obstructions and encumbrances, the sidewalks, landscaped areas, chutes and sidewalk hoists comprising, in front of, or adjacent to, the Demised Premises.

(c)    Landlord shall not be required to furnish any services, utilities or facilities whatsoever to the Demised Premises, nor shall Landlord have any duty or obligation to make any alteration, change, improvement, replacement, Restoration or repair to, nor to demolish, any Building.

(d)    Tenant shall not clean nor require, permit, suffer nor allow any window in the Building to be cleaned from the outside in violation of Section 202 of the Labor Law or of the rules of the Industrial Board or other state, county or municipal department, board or body having jurisdiction.

Section 12.02    Emergency Repairs. Prior to the Substantial Completion of the Major Construction Work for the respective items which are listed in Exhibit I, Tenant shall perform, at its sole cost and expense, all imminent and necessary repairs to those items listed in Exhibit I which are broken or severely deteriorated, and which require imminent repair or maintenance in order to maintain the Property in a functional condition which is safe and sound ("Emergency Repairs"). To the extent possible, Tenant will cause such Emergency Repairs to be timely performed in order to maintain the safe and sound functionality of the Building. It is acknowledged and agreed that Emergency Repairs are intended to be performed in as economical a manner possible consistent with Requirements, and are intended merely to maintain the Building in safe and functional condition pending the performance by Tenant of the Major Construction Work. In no event are Emergency Repairs intended to include work to maintain or restore the interior decorative finishes of the Demised Premises, regardless of whether such finishes were damaged by reason of an item which is the subject of an Emergency Repair. As an example, but without limitation, Emergency Repairs would include the patching (but not the replacement) of a portion of the roof to stop water leaks, and would not include repair or restoration of decorative wall, floor or other interior surfaces which were damaged by reason of the water leaks. Notwithstanding the foregoing, Tenant shall perform Emergency Repairs in compliance with all Requirements and the provisions of this Lease. To the extent that any Emergency Repair would constitute a Capital Improvement if it was undertaken from and after the Completion of Construction Date, Tenant shall also comply with the provisions of Article 13. In the event that it is not reasonably practicable for Tenant to comply with such provisions prior to the performance of such Emergency Repair, the Tenant shall be permitted to perform such Emergency Repair without compliance with such provisions. In such instance, Tenant shall notify Landlord, in writing, of any Emergency Repairs performed by Tenant as soon as practical but in no event less than the end of the Business Day following such Emergency Repair, and shall thereafter take

all steps reasonably necessary to comply with such provisions. Any costs incurred by Tenant with respect to any Emergency Repairs shall be deemed prepaid Base Rent for which Tenant shall receive a credit against the next due installment(s) of Base Rent and Additional Charges until such credit is extinguished, provided that the aggregate amount of credit to which Tenant shall be entitled under this Section 12.02 for Emergency Repairs shall not exceed $3 million Adjusted for Inflation.

Section 12.03    Electric Power. To the extent available to the Building, electric power for the Demised Premises shall continue to be purchased by Landlord from the New York Power Authority at its lowest applicable rate as currently supplied, and Landlord shall be reimbursed by Tenant as Additional Charges for the cost of such electric power. In the event that such electric power from the New York Power Authority becomes unavailable to the Building, Tenant shall obtain electrical power for the Demised Premises directly from the applicable public utility supplier.

## ARTICLE 13

## CHANGES, ALTERATIONS AND ADDITIONS

Section 13.01    Capital Improvements. From and after the Completion of Construction Date, Tenant shall not demolish, replace or materially alter the Demised Premises, or any part thereof, or make any addition thereto, other than (a) interior, non-structural work which is either decorative or temporary in nature (such as lighting, sound system, stage or partitions for the "run of a show"), (b) ordinary repairs performed with materials of type and quality similar to those then existing, or (c) replacements of items which are outdated or deteriorated with new items of a type and quality similar to those then existing (items other than in clauses (a), (b) or (c), "Capital Improvement"), unless Tenant shall comply with the following requirements and, if applicable, with the additional requirements set forth in Section 13.02:

(a)    No Capital Improvement shall be undertaken unless and until Tenant shall have obtained and delivered to Landlord copies of final plans and specifications for such Capital Improvement, and Permits for the proposed Capital Improvement which are required to be obtained prior to the commencement of the proposed Capital Improvement (collectively, "Improvement Approvals") and the original polices of insurance, or duplicate originals thereof in accordance with Section 11.15. For the avoidance of doubt, required Improvement Approvals shall include consultation by Tenant with OPRHP. In the case of a Capital Improvement which is subject to Section 13.02, Tenant shall also obtain Landlord's approval to the performance of such Capital Improvement prior to undertaking the same. Landlord shall join or otherwise cooperate in the application for any such Improvement Approvals with respect to which Landlord's approval is not required or which Landlord has approved, provided that Landlord shall not be obligated to incur third-party expenses in connection therewith other than a de minimis cost. True copies of all such Improvement Approvals shall be delivered by Tenant to Landlord prior to the commencement of the proposed Capital Improvement.

(b)      All Capital Improvements, when completed, shall be of such a character as not to reduce the value of the Demised Premises below its value immediately before construction of such Capital Improvement.

(c)      All Capital Improvements shall be made with diligence and continuity and in a good and workmanlike manner and in compliance with (i) all Improvement Approvals, (ii) the plans and specifications for such Capital Improvement (iii) the Requirements, and (iv) the applicable provisions of this Lease.

(d)      No construction of any Capital Improvement shall be commenced until Tenant shall have delivered to Landlord insurance policies issued by responsible insurers, bearing notations evidencing the payment of premiums or accompanied by other evidence satisfactory to Landlord of such payments, for the insurance required under this Lease.

Section 13.02    Material Capital Improvement. If the estimated cost of any proposed Capital Improvement would either (i) exceed $250,000 Adjusted for Inflation, or (ii) involve alterations to the Major Construction Work which are inconsistent with the previously-approved Major Construction Work, Tenant shall comply with the provisions of Sections 11.01 through 11.06 and 11.10 through 11.15 in respect of such Capital Improvement, including making all submissions described therein and obtaining Landlord's approvals as provided therein.

Section 13.03    Completion Obligations. Upon completion of any Capital Improvement, Tenant shall furnish to Landlord (a) where applicable, a Certificate of Occupancy or Sign Off from the New York City Department of Buildings therefor issued by the New York City Department of Buildings, to the extent a modification thereof was required, and (b) lien waivers, in form satisfactory to Landlord, issued by each Contractor, with respect to services performed and materials provided in connection with the Capital Improvement.

Section 13.04    Title to Improvements. Title to all additions, alterations, improvements and replacements made to the Building, including, without limitation, the Capital Improvements, shall forthwith vest in Landlord as provided in Section 11.17, without any obligation by Landlord to pay any compensation therefor to Tenant.

## ARTICLE 14

## REQUIREMENTS OF PUBLIC AUTHORITIES AND
## OF INSURANCE UNDERWRITERS AND POLICIES

Section 14.01    Compliance with Requirements. Tenant promptly shall comply with (a) any and all applicable present and future, foreseen and unforeseen, laws, rules, orders, ordinances, regulations, statutes, requirements, permits, consents, certificates, approvals, codes and executive orders of all Governmental Authorities now existing or hereafter created, and of any and all of their departments and bureaus (including, without limitation, the New York City Department of Buildings), including,

without limitation, the State of New York Building Code, the Americans with Disabilities Act (ADA) Accessibility Guidelines for Buildings and Facilities, all Environmental Laws, and requirements of any applicable Fire Rating Bureau or other body exercising similar functions, affecting the Demised Premises or any portion(s) thereof and (b) any and all present and future, foreseen and unforeseen, provisions and requirements of any liability or other insurance policy required to be carried by Tenant under the provisions of this Lease and shall not violate any restrictions or requirements set forth in the Title Matters (all of the foregoing collectively, the "Requirements").

Section 14.02     Contest of Requirements. Tenant shall have the right to contest the validity of any Requirements or the application thereof. During such contest, compliance with any such contested Requirements may be deferred by Tenant upon condition that (a) such deferral, in Landlord's reasonable judgment, shall not adversely affect all or any portion of the Building or pose a hazard or danger to any Persons or property or place any portion of the Property in danger of being forfeited or lost or place Landlord in danger of any civil and/or criminal liability or penalty, (b) Tenant shall undertake to Landlord the payment of all interest, penalties, fines and fees in connection therewith, and (c) if an adverse decision in such proceeding or the failure to pay any judgment resulting from such adverse decision could result in the imposition of any lien against the Demised Premises, then before the commencement of such contest, Tenant shall furnish to Landlord the bond of a reputable surety company, or other deposit or security in an amount equal to 125% of the anticipated amount of the monetary risk of loss. Tenant shall keep Landlord informed as to the status of any such contest. Notwithstanding the foregoing, Tenant promptly shall comply with any such Requirements and compliance shall not be deferred if at any time the Demised Premises, or any part thereof, shall be in danger of being forfeited or lost or if Landlord shall be in danger of being subjected to civil and/or criminal liability or penalty by reason of noncompliance therewith. Landlord shall cooperate with Tenant in any such contest provided that Landlord shall not required to exercise any governmental powers and shall not be obligated to incur third-party expenses in connection therewith (other than a de minimis amount).

## ARTICLE 15

## EQUIPMENT

Section 15.01     Property of Landlord. All Equipment shall be and shall remain the property of Landlord. Tenant shall not have the right, power or authority to, and shall not, remove any Equipment from the Demised Premises without the consent of Landlord, which consent shall not be unreasonably withheld; provided, however, that such consent shall not be required in connection with repairs, cleaning or other servicing, or if the same is promptly replaced by Equipment which is at least equal in utility and value to the Equipment being removed.

Section 15.02     Maintenance and Replacement. Tenant shall keep all Equipment in good order and repair and shall replace the same when necessary with items at least equal in utility and value to the Equipment being replaced.

Notwithstanding any provision of this <u>Article 15</u>, Tenant shall not be required to replace any Equipment which performed a function which has become obsolete or otherwise is no longer necessary or desirable in connection with the use or operation of the Demised Premises, unless such failure to replace would reduce the value of the Demised Premises or would result in a reduced level of maintenance of the Demised Premises, in which case Tenant shall be required to install such Equipment as may be necessary to prevent such reduction in the value of the Demised Premises or in the level of maintenance.

**ARTICLE 16**

**DISCHARGE OF LIENS; BONDS**

Section 16.01    <u>No Liens</u>. Subject to the provisions of <u>Section 16.02</u>, except as otherwise expressly provided in this Lease, Tenant shall not create or permit to be created any lien, encumbrance or charge upon the Demised Premises or any part thereof or any interest therein, or the Property or any part thereof, the income therefrom or any assets of, or funds appropriated to, Landlord, and Tenant shall not suffer any other matter or thing whereby the estate, right and interest of Landlord in the Demised Premises or any part thereof might be impaired.

Section 16.02    <u>Tenant's Obligation to Discharge</u>. If any mechanic's, laborer's or materialman's lien (other than a lien arising out of any work performed by Landlord) at any time shall be filed in violation of the obligations of Tenant pursuant to <u>Section 16.01</u> against the Demised Premises or any part thereof or any interest therein or the Property, or, if any public improvement lien created or permitted to be created by Tenant shall be filed against any assets of, or funds appropriated to, Landlord, Tenant, within thirty (30) days after notice of the filing thereof, shall cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise. Notwithstanding the foregoing provisions of this <u>Section 16.02</u>, Tenant shall not be required to discharge any such lien if (i) Tenant is in good faith contesting the same, (ii) Tenant has undertaken to Landlord to pay such lien with interest and penalties and shall deliver to Landlord the bond of a reputable surety company, or other deposit or security in an amount equal to 125% of the amount of the lien, (iii) neither the Demised Premises nor the Property, nor any part thereof, shall be in danger of being forfeited or lost and (iv) Landlord is not in danger of being subjected to civil and/or criminal liability or penalty by reason thereof.

Section 16.03    <u>No Consent to Liens</u>. Nothing contained in this Lease shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, by inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Demised Premises or the Property or any part thereof, nor as giving Tenant any right, power or authority to contract for or permit the rendering of any services or the furnishing of materials that would give rise to the filing of any lien against Landlord's interest in the Demised Premises or any part thereof, or any assets of, or funds

appropriated to, Landlord. Notice is hereby given, and Tenant shall cause all Construction Agreements to provide, that Landlord shall not be liable for any work performed or to be performed at the Demised Premises for Tenant or any User for any materials furnished or to be furnished at the Demised Premises for any of the foregoing, and that no mechanic's or other lien for such work or materials shall attach to or affect the estate or interest of Landlord in and to the Demised Premises, the Property or any part thereof, or any assets of, or funds appropriated to, Landlord.

    Section 16.04  <u>No Lien on Landlord's Interest</u>. Tenant shall have no power to do any act or make any contract which may create or be the foundation of any lien, mortgage or other encumbrance upon the estate or assets of, or funds appropriated to, Landlord or of any interest of Landlord in the Demised Premises.

    Section 16.05  Intentionally Deleted

## ARTICLE 17

## REPRESENTATIONS; POSSESSION

    Section 17.01  Except as otherwise expressly set forth in this Lease, no representations, statements, or warranties, express or implied, have been made by or on behalf of Landlord in respect of Demised Premises, the status of title thereof, the physical condition thereof, the zoning or other laws, regulations, rules and orders applicable thereto, taxes, or the use that may be made thereof.

## ARTICLE 18

## LANDLORD NOT LIABLE FOR INJURY OR DAMAGE, ETC.

    Section 18.01  <u>Landlord Not Liable</u>. Landlord shall not be liable for any injury or damage to Tenant or to any other Person happening on, in or about the Demised Premises and its appurtenances, nor for any injury or damage to the Demised Premises or to any property belonging to Tenant or to any other Person which may be caused by the use, misuse or abuse of any of the Demised Premises (including, but not limited to, any of the common areas within the Building, Equipment, elevators, hatches, openings, installations, stairways, hallways, or other common facilities), or the sidewalk area within the Demised Premises or which may arise from any other cause whatsoever, except in any such case to the extent caused by (i) Landlord's gross negligence or willful acts, (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space, but excluding loss or injury caused by acts or omissions of the Shelter or the residents thereof, or (iii) all other matters for which Landlord is expressly liable under any other provision of this Lease.

    Section 18.02  <u>Failure of Services</u>. Landlord shall not be liable to Tenant or to any other Person claiming through or under Tenant for any failure of water supply, gas or electric current, nor for any injury or damage to any property of Tenant or of any other Person or to the Demised Premises caused by or resulting from gasoline,

oil, steam, gas, electricity, or hurricane, tornado, flood, wind or similar storms or disturbances, or water, rain or snow which may leak or flow from the street, sewer, gas mains or subsurface area or from any part of the Demised Premises, or from any other place, or caused by any public or quasi-public work, except in any such case to the extent caused by (i) Landlord's gross negligence or willful acts or (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space, but excluding loss or injury caused by acts or omissions of the Shelter or the residents thereof.

Section 18.03    <u>Landlord Retained Liability</u>. Notwithstanding the foregoing, Landlord shall only be liable for (i) Landlord's gross negligence or willful acts and (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space, but excluding loss or injury caused by acts or omissions of the Shelter.

Section 18.04    <u>Exclusion of Consequential Damages</u>. In no event shall Landlord be liable for special or consequential damages under this Lease.

## ARTICLE 19

## MUTUAL INDEMNIFICATION

Section 19.01    <u>Indemnification by Tenant</u>. Tenant shall not do, or permit any User, or any employee, agent, Contractor or invitee of Tenant or of any User, to do any act or thing upon the Demised Premises or elsewhere in the Building which may subject Landlord to any liability or responsibility for injury or damage to persons or property, or to any liability by reason of any violation of any Requirements, and shall exercise such control over the Demised Premises so as to fully protect Landlord against any such liability. Tenant, to the fullest extent permitted by law, shall indemnify and save Landlord, DMNA, the State, the City, and their respective agents, Contractors, affiliates, licensees, invitees, trustees, members, directors, shareholders, partners, officers, employees and disclosed and undisclosed principals (collectively, the "<u>Landlord Indemnitees</u>"), harmless from and against any and all actions, liabilities, suits, judgments, obligations, fines, damages, penalties, claims, costs, charges and expenses, including, without limitation, engineers', architects' and attorneys' fees and disbursements, which may be imposed upon or incurred by or asserted against any of the Landlord Indemnitees arising out of or in connection with the Demised Premises or the ownership, leasing, operation, management, maintenance, repair, rebuilding, use or occupation of the Demised Premises, or the Building, including, without limitation, any of the matters set forth in clauses (a) through (k) of this <u>Section 19.01</u> during the Term (or prior to the commencement or following the expiration of the Term if Tenant shall be in occupancy or control of the Demised Premises or any portion thereof during such periods):

(a)    Performance of the Major Construction Work or any other work performed by or on behalf of Tenant or any User, or any employee, agent,

Contractor, invitee of Tenant or any User in or around Building, including, without limitation, the Demised Premises, or any part thereof;

(b)     any use, non-use, possession, occupation, alteration, replacement, repair, condition, operation, maintenance or management of the Demised Premises or any part thereof;

(c)     any negligent or tortious act or failure to act, whether real or alleged, in or around Building, including, without limitation, the Demised Premises, on the part of Tenant or any agent, contractor or employee of Tenant;

(d)     any accident, injury (including death at any time resulting therefrom) or damage to any Person or property occurring in or on the Demised Premises or any part thereof;

(e)     any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease on its part to be performed or complied with;

(f)     any lien or claim which may have arisen out of any act of Tenant or any agent, Contractor, servant or employee of Tenant against or on the Building, including, without limitation, the Demised Premises, or any lien or claim created or permitted to be created by Tenant in respect of the Building, including, without limitation, the Demised Premises, against any assets of, or funds appropriated to any of the Landlord Indemnitees under the laws of any Governmental Authority or any liability which may be asserted against any of the Landlord Indemnitees with respect thereto;

(g)     any failure on the part of Tenant to keep, observe and perform any of the terms, covenants, agreements, provisions, conditions or limitations contained in the Construction Agreements, User Agreements, or other contracts and agreements affecting the Demised Premises, on Tenant's part to be kept, observed or performed;

(h)     any tax or recording charge attributable to the execution, delivery or recording of this Lease, any User Agreement or any assignment of this Lease;

(i)     any contest by Tenant permitted pursuant to the provisions of this Lease;

(j)     any claim for brokerage commissions, fees or other compensation by any Person who alleges to have acted or dealt with Tenant in connection with this Lease or any User Agreement or otherwise; and

(k)     any work performed by or on behalf of Tenant.

Tenant shall not be liable for, and there shall be excluded from the foregoing indemnity, matters arising from (i) Landlord's gross negligence or willful acts, (ii) conditions at the Building located in the DMNA Retained Space and Shelter Retained Space (unless caused by Tenant's negligence, willful acts, or defaults under this Lease), but excluding loss or injury caused by acts or omissions of the Shelter or the residents thereof.

Section 19.02    Indemnification by Landlord. To the fullest extent provided by law, including appropriation if legally required, and consistent with Section 8 of the State Court of Claims Act, Landlord shall hold Tenant, each member thereof in the event Tenant is a partnership or joint venture, and their respective agents, Contractors, affiliates, licensees, invitees, trustees, members, directors, shareholders, partners, officers, employees and disclosed and undisclosed principals (collectively, the "Tenant Indemnitees") harmless from and indemnify it for any final judgment of a court of competent jurisdiction to the extent the event giving rise to the judgment is solely attributable to the gross negligence or intentional acts of Landlord (including, without limitation, DMNA) or of Landlord's officers or employees when acting within the course and scope of their employment.

Section 19.03    Payment of Obligations. The obligations of Landlord and Tenant under this Article 19 shall not be affected in any way by the absence in any case of covering insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under insurance policies affecting the Demised Premises. All amounts owed to any Indemnitees under this Article 19 shall be paid on demand following the date any indemnified amount was paid by such Indemnitees and shall (if owed by Tenant) constitute Additional Charges.

Section 19.04    Defense Process. If any claim, action, or proceeding is made or brought against any of the Indemnitees by reason of any event which is the subject of the indemnifications in Sections 19.01 or 19.02, as the case may be, then, upon demand by the indemnified party, the indemnifying party shall resist or defend such claim, action or proceeding (in such Indemnitee's name, if necessary) by the attorneys for the indemnifying party's insurance carrier (if such claim, action or proceeding is covered by insurance) or (in all other instances) by such attorneys as the indemnifying party shall select and the indemnified party shall approve, which approval shall not be unreasonably withheld. The indemnifying party shall not enter into any settlement of such claims without the prior consent of the indemnified party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, the indemnified party may engage its own attorneys to assist in its defense and such party shall pay the fees and disbursements of such attorneys.

Section 19.05    Exclusion of Consequential Damages. In no event shall either Landlord or Tenant be liable for special or consequential damages under this Article 19.

Section 19.06    Survival. The provisions of this Article 19 and all other indemnity provisions contained elsewhere in this Lease shall survive the termination of

this Lease with respect to acts and omissions occurring prior to the Expiration Date of this Lease, regardless of whether the claims relating to such acts or omissions are made before or after the Expiration Date of this Lease, but in any event subject to the applicable statute of limitations.

## ARTICLE 20

## RIGHT OF INSPECTION, ETC.

Section 20.01    <u>Right of Inspection</u>. Tenant shall permit Landlord and its agents or representatives to enter the Demised Premises at all reasonable times (except in cases of emergency, in which case Landlord may enter at any time ) for the purpose of (a) inspecting the same, (b) determining whether or not Tenant is in compliance with its obligations hereunder, (c) constructing, maintaining and inspecting any of Landlord's improvements and (d) making any necessary repairs to the Demised Premises and performing any work therein pursuant to Landlord's obligations under this Lease.

Section 20.02    <u>No Interference</u>. Landlord, during the progress of any work referred to in <u>Section 20.01</u>, shall use reasonable efforts to minimize any inconvenience, annoyance, disturbance, loss of business or other damage to Tenant, any User or other occupant of the Building by reason of making such repairs or the performance of any such work, or on account of bringing materials, tools, supplies and equipment into the Demised Premises during the course thereof and the obligations of Tenant under this Lease shall not be affected thereby. To the extent that Landlord undertakes such work or repairs, such work or repairs shall be commenced promptly and completed diligently in a good and workmanlike manner, in accordance with Requirements, and in such a manner as not to unreasonably interfere with the conduct of business in or use of such. The parties shall reasonably cooperate to determine, as necessary, an on-site or off-site storage area for materials, tools, supplies and equipment during the progress of any work referred to in <u>Section 20.01</u>.

## ARTICLE 21

## LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS

Section 21.01    <u>Landlord's Right to Cure</u>. If Tenant at any time shall be in Default and shall not have cured such Default within thirty (30) days after notice thereof or, provided Tenant is proceeding diligently to cure such Default, within a reasonable time to effect such cure (which notice and cure period shall not apply in an emergency), Landlord, without waiving or releasing Tenant from any obligation of Tenant contained in this Lease, may (but shall be under no obligation to) perform such obligation on Tenant's behalf and any costs or expenses incurred by Landlord in the performance of such obligation shall be Additional Charges payable by Tenant with interest at the Involuntary Rate.

Section 21.02    No Waiver. Any payment or performance by Landlord pursuant to Section 21.01 shall not be nor be deemed to be a waiver or release of any Default of Tenant with respect thereto or of the right of Landlord to terminate this Lease, institute summary proceedings or take such other action as may be permissible hereunder if an Event of Default by Tenant shall have occurred.

## ARTICLE 22

## NET LEASE; NO ABATEMENT OF BASE
## RENT OR ADDITIONAL CHARGES

Section 22.01    Net Lease. This Lease is intended to be and shall be construed as being an absolutely net lease, whereby under all circumstances and conditions, foreseen and unforeseen, except as expressly set forth herein, Base Rent and Additional Charges shall be net to Landlord without abatement, deduction, counterclaim, set-off or offset.

Section 22.02    No Set-Off. Except as expressly provided to the contrary in this Lease, there shall be no abatement, off-set, diminution or reduction of Base Rent or Additional Charges payable by Tenant hereunder or of the other obligations of Tenant hereunder under any circumstances.

## ARTICLE 23

## PERMITTED USE; NO UNLAWFUL OCCUPANCY

Section 23.01    Permitted Uses.

(a)    Subject to the Requirements and this Lease, Tenant shall occupy, and shall cause all Users and other occupants of the Demised Premises, to occupy the Demised Premises only for the following uses (which the parties acknowledge represent long-established and continuing uses of the Property), subject to the further terms and conditions of this Agreement: (i) primarily as a not-for-profit cultural center for performing and visual arts and other similar cultural exhibitions, including without limitation art and antiques shows (the "Primary Use"), and (ii) incidentally, as uses related to the Primary Use, including activities the purposes of which are to support the Conservancy's not-for-profit activities, as well as catering, offices, and other incidental uses that promote the mission of the Conservancy and the Public Goals of the Project (the "Permitted Uses"). Nothing in this Section shall prevent the use of the Demised Premises, in the event of a national or state emergency, for Emergency Use as set forth in Section 23.04.

(b)    Tenant shall use diligent efforts to maintain activity constituting Permitted Uses in the Demised Premises as close to 330 days per year as possible, subject to reasonable periods of closing for casualty and Restoration, repairs and maintenance, the performance of the Major Construction Work and any Capital Improvements, loading, set-up and breakdown time for shows, and Emergency Use.

(c)    Landlord shall cause the portions of the Building which are excluded from the Demised Premises to be used only as follows: (i) within the DMNA Retained Space, as offices and facilities for DMNA, (ii) within the Shelter Retained Space, as the Shelter, and (iii) in the event of a national or state emergency, for emergency use as set forth in Section 23.04.

(d)    Tenant shall obtain and maintain throughout the Term all authorizations, permits, licenses and consents necessary to operate the Demised Premises for the Permitted Uses in accordance with this Lease.

Section 23.02    No Illegal Uses. Tenant shall not use or occupy the Demised Premises and shall neither permit nor suffer the Demised Premises or any part thereof to be used or occupied for any unlawful or illegal business, activity, use or purpose.

Section 23.03    Drill Hall Use by DMNA. With respect to use requested by DMNA of the Drill Hall or other portions of the Demised Premises outside of the DMNA Retained Space (other than for Emergency Use), such bookings shall be subject to Tenant's usual procedures for booking space, and DMNA shall pay for such use at then-applicable governmental rates.

Section 23.04    Emergency Use. Landlord and Tenant agree and acknowledge that in the event of a national or state emergency, the Demised Premises may be used and occupied for Emergency Use, upon and pursuant to the provisions of Section 9.04 hereof and this Section 23.04. During the period of any Emergency Use, Tenant's rights and obligations hereunder shall be suspended to the extent necessary to comply with the terms of the emergency order with respect to the Demised Premises. Tenant shall in no event be responsible for any loss, cost, damage or expense, including without limitation costs of operating the Demised Premises during the period of such Emergency Use. Upon termination or cessation of such emergency, the Demised Premises shall be restored by Landlord or the party utilizing the Demised Premises during the emergency as nearly as practicable to its physical condition prior to the emergency, and Tenant shall resume the operations of the Demised Premises in accordance with the terms of this Agreement. Nothing herein shall diminish the rights of Tenant, its permitted sublessees or assignees or any User to seek compensation under applicable law for any loss, cost, damage or expense incurred by such party during the pendency or arising out of an Emergency Use.

Section 23.05    Nuisance Uses. Tenant shall not use or occupy, nor permit or suffer the Demised Premises or any part thereof to be used or occupied for any unlawful, illegal or extra hazardous business, use or purpose, or in such manner as to constitute a nuisance of any kind (public or private) or that Landlord, in its reasonable judgment, deems offensive by reason of odors, fumes, dust, smoke, noise or other pollution, or for any purpose or in any way in violation of any Requirements, or which may make void or voidable any insurance then in force on the Demised Premises. Tenant shall take, immediately upon the discovery of any such unpermitted,

unlawful, illegal or extra hazardous use, all necessary actions, legal and equitable, to compel the discontinuance of such use.

Section 23.06    Adverse Possession. Tenant shall not knowingly suffer or permit the Demised Premises or any portion thereof to be used by the public in such manner as might reasonably tend to impair title to the Demised Premises or any portion thereof, or in such manner as might reasonably make possible a claim or claims of adverse usage or adverse possession by the public, as such, or of implied dedication of the Demised Premises or any portion thereof.

## ARTICLE 24

## EVENTS OF DEFAULT;
## CONDITIONAL LIMITATIONS, REMEDIES, ETC.

Section 24.01    Events of Default. Each of the following events shall be an "Event of Default" hereunder:

(a)    if Tenant shall fail to pay any installment of Base Rent or Additional Charges, or any part thereof, when the same shall become due and payable and such failure shall continue for twenty (20) days after notice of such default is given to Tenant;

(b)    if Tenant shall fail to observe or perform one or more of the other terms, conditions, covenants or agreements contained in this Lease and such failure shall continue for a period of thirty (30) days after notice thereof by Landlord to Tenant specifying such failure (unless such failure requires work to be performed, acts to be done, or conditions to be removed which cannot by their nature reasonably be performed, done or removed, as the case may be, within such thirty (30) day period, in which case no Event of Default shall be deemed to exist as long as Tenant shall have commenced curing the same within such thirty (30) day period and shall diligently and continuously prosecute the same, subject to Unavoidable Delays);

(c)    if Tenant shall make an assignment for the benefit of creditors;

(d)    if Tenant shall file a voluntary petition under Title 11 of the United States Code or if such petition is filed against it, and an order for relief is entered, or if Tenant shall file any petition or answer seeking, consenting to or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy code or any other present or future applicable federal, state or other statute or law, or shall seek or consent to or acquiesce in or suffer the appointment of any trustee, receiver, custodian, assignee, sequestrator, liquidator or other similar official of Tenant, or of all or any substantial part of its properties or of the Demised Premises or any interest therein of Tenant, or if Tenant shall take any corporate action in furtherance of any action described in Section 24.01(d), (e) or (f);

(e)    if within ninety (90) days after the commencement of any proceeding against Tenant seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy code or any other present or future applicable federal, state or other statute or law, such proceeding shall not have been dismissed, or if, within ninety (90) days after the appointment, without the consent or acquiescence of Tenant, of any trustee, receiver, custodian, assignee, sequestrator, liquidator or other similar official of Tenant or of all or any substantial part of its properties or of the Demised Premises or any interest therein of Tenant, such appointment shall not have been vacated or stayed on appeal or otherwise, or if, within ninety (90) days after the expiration of any such stay, such appointment shall not have been vacated;

(f)    if Tenant shall abandon the Demised Premises; or

(g)    if this Lease or the estate of Tenant hereunder shall be assigned or encumbered in violation of the terms of this Lease.

Section 24.02    [intentionally omitted].

Section 24.03    Conditional Limitation.

(a)    If any Event of Default shall occur, Landlord, at any time thereafter, may, at its option, give notice to Tenant stating that this Lease and the Term shall expire and terminate on the date specified in such notice, which date shall be not less than five (5) days after the giving of such notice, and the Term and all rights of Tenant under this Lease shall expire and terminate as of the date specified in such notice, as if such date were the date herein fixed for the expiration of the Term and Tenant immediately shall quit and surrender the Demised Premises.

(b)    If an Event of Default described in Section 24.01(c), Section 24.01(d) or Section 24.01(e) shall occur, or this Lease shall be terminated as provided in Section 24.03(a), Landlord, without notice, may re-enter and repossess the Demised Premises and may dispossess Tenant by summary proceedings or otherwise.

(c)    If an Event of Default shall occur and the Lease shall be terminated, Landlord may elect to declare due and payable a sum equal to the amount by which the Base Rent and Additional Charges reserved in this Lease for the unexpired portion of the Term exceeds the fair and reasonable rental value of the Demised Premises for the same period, both discounted to present worth at a rate of three percent (3%), such sum shall be due and payable ten (10) days after notice by Landlord to Tenant of such election. For purposes of the foregoing, it shall be deemed that Base Rent for the unexpired portion of the Term shall equal the average Base Rent payable by Tenant over the five-year period immediately preceding the date of termination, escalated by the average annual change in the Consumer Price Index during such five-year period over the unexpired portion of the Term. Landlord may also elect to proceed by appropriate judicial proceedings, either at law or in equity, to enforce performance or

observance by Tenant of the applicable provisions of this Lease and/or to recover damages for breach thereof.

   Section 24.04  Landlord's Rights on Termination. If this Lease shall be terminated as provided in Section 24.03(a) or Tenant shall be dispossessed by summary proceedings or otherwise as provided in Section 24.03(b) hereof:

    (a)  Tenant shall pay to Landlord all Base Rent and Additional Charges payable by Tenant under this Lease to the date upon which this Lease and the Term shall have expired and come to an end or to the date of re-entry upon the Demised Premises by Landlord, as the case may be;

    (b)  Landlord may complete all construction required to be performed by Tenant hereunder and may repair and alter the Demised Premises in such manner as Landlord may deem necessary or advisable (and may apply to the foregoing all funds, if any, then held by Depositary pursuant to Articles 9 and 10 and by Landlord under any provision of this Lease) without relieving Tenant of any liability under this Lease or otherwise affecting any such liability, and/or let or relet the Demised Premises or any parts thereof for the whole or any part of the remainder of the Term or for a longer period, in Landlord's name or as agent of Tenant, and out of any rent and other sums collected or received as a result of such reletting Landlord shall: (i) first, pay to itself the cost and expense of terminating this Lease, re-entering, retaking, repossessing, completing construction and repairing or altering the Demised Premises, or any part thereof, and the cost and expense of removing all persons and property therefrom, including in such costs brokerage commissions, legal expenses and attorneys' fees and disbursements, (ii) second, pay to itself the costs and expense sustained in securing any new tenants and other occupants, including in such costs brokerage commissions, legal expenses and attorneys' fees and disbursements and other expenses of preparing the Demised Premises for reletting, and, if Landlord shall maintain and operate the Demised Premises, the cost and expense of operating and maintaining the Demised Premises, and (iii) third, pay to itself any balance remaining on account of the liability of Tenant to Landlord. Landlord in no way shall be responsible or liable for any failure to relet the Demised Premises or any part thereof, or for any failure to collect any rent due on any such reletting, and no such failure to relet or to collect rent shall operate to relieve Tenant of any liability under this Lease or to otherwise affect any such liability;

    (c)  if Landlord shall not have declared all Base Rent and Additional Charges due and payable pursuant to Section 24.03 (c), Tenant shall be liable for and shall pay to Landlord, as damages, any deficiency (referred to as "Deficiency") between the Base Rent and Additional Charges reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term and the net amount, if any, of rents collected under any reletting effected pursuant to the provisions of Section 24.04(b) for any part of such period (first deducting from the rents collected under any such reletting all of the payments to Landlord described in Section 24.04(b)); any such Deficiency shall be paid in installments by Tenant on the days specified in this Lease for payment of installments of Base Rent and Additional Charges, and Landlord shall be entitled to recover from Tenant each Deficiency installment as the same shall

arise, and no suit to collect the amount of the Deficiency for any installment period shall prejudice Landlord's right to collect the Deficiency for any subsequent installment period by a similar proceeding. For purposes of the foregoing, it shall be deemed that Base Rent for the unexpired portion of the Term shall equal the average Base Rent payable by Tenant over the five-year period immediately preceding the date of termination, escalated by the average annual change in the Consumer Price Index during such five-year period over the unexpired portion of the Term; and

        (d)    if Landlord shall not have declared all Base Rent and Additional Charges due and payable pursuant to Section 24.03 (c), and whether or not Landlord shall have collected any Deficiency installments as aforesaid, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, in lieu of any further Deficiencies, as and for liquidated and agreed final damages (it being agreed that it would be impracticable or extremely difficult to fix the actual damage), a sum equal to the amount by which the Base Rent and Additional Charges reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term exceeds the then fair and reasonable rental value of the Demised Premises for the same period, both discounted to present worth at a rate of three percent (3%) less the aggregate amount of Deficiencies theretofore collected by Landlord pursuant to the provisions of Section 24.04(c) for the same period; it being agreed that before presentation of proof of such liquidated damages to any court, commission or tribunal, if the Demised Premises, or any part thereof, shall have been relet by Landlord for the period which otherwise would have constituted the unexpired portion of the Term, or any part thereof, the amount of rent reserved upon such reletting shall be deemed, prima facie, to be the fair and reasonable rental value for the part or the whole of the Demised Premises so relet during the term of the reletting. For purposes of the foregoing, it shall be deemed that Base Rent for the unexpired portion of the Term shall equal the average Base Rent payable by Tenant over the five-year period immediately preceding the date of termination, escalated by the average annual change in the Consumer Price Index during such five-year period over the unexpired portion of the Term.

        (e)    Suit or suits for the recovery of damages, or for a sum equal to any installments or installments of Base Rent and Additional Charges payable hereunder or any Deficiencies or other sums payable by Tenant to Landlord pursuant to this Article 24, may be brought by Landlord from time to time at Landlord's election, and nothing herein contained shall be deemed to require Landlord to await the date whereon this Lease or the Term would have expired had there been no Event of Default by Tenant and termination.

        Section 24.05    Survival. No termination of this Lease pursuant to this Article 24 or taking possession of or reletting the Demised Premises, or any part thereof, pursuant to this Article 24, shall relieve Tenant of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, repossession or reletting.

        Section 24.06    Bankruptcy Damages. Nothing contained in this Article 24 shall limit or prejudice the right of Landlord to prove and obtain as