EXHIBIT 7



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIV.

THE SEVENTH REGIMENT FUND et al.,

Plaintiff,

-against-

GEORGE PATAKI et al.,

Defendants.

COMPLAINT

McCANLISS & EARLY, LLP
Attorneys for Plaintiff
88 Pine Street, 21st Floor, N.Y., N.Y. 10005
(212) 943-0280

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

THE SEVENTH REGIMENT FUND, ASSOCIATES      :
OF THE ENGINEER CORPS AND COMPANY K,
SEVENTH REGIMENT, INC. and THE             :       01 CV 0819 (LTS)
VETERANS OF THE SEVENTH REGIMENT,
                                           :
            Plaintiffs,
                                           :       COMPLAINT
      -against-
                                           :
GEORGE PATAKI, as Governor of the
State of New York, MAJ. GEN. JOHN          :
H. FENIMORE V, individually and as
the Adjutant General for the               :
Division of Military and Naval
Affairs, the DIVISION OF MILITARY          :
AND NAVAL AFFAIRS, CHARLES A. GARGANO,
As Chairman, President and Chief           :
Executive Officer of the NYS Urban
Corporation, NYS URBAN DEVELOPMENT         :
CORPORATION d/b/a EMPIRE STATE
DEVELOPMENT CORPORATION, ERNST &           :
YOUNG LLP and SEVENTH REGIMENT
ARMORY CONSERVANCY, INC.,                  :

            Defendants.                    :

- - - - - - - - - - - - - - - - - - X

            Plaintiffs, The Seventh Regiment Fund, Associates of

the Engineer Corps and Company K, Seventh Regiment, Inc. and The

Veterans of the Seventh Regiment, by their attorneys McCanliss &

Early LLP, for their complaint against the defendants, George

Pataki, as Governor of the State of New York, Maj. Gen. John H.

Fenimore V, individually and as the Adjutant General for the

Division of Military and Naval Affairs, the Division of Military
and Naval Affairs, Charles A. Gargano, as Chairman, President
and Chief Executive Officer of the NYS Urban Development
Corporation, NYS Urban Development Corporation d/b/a Empire
State Development Corporation, Ernst & Young LLP and Seventh
Regiment Armory Conservancy, Inc., respectfully allege as
follows:

PARTIES

1.  Plaintiff, The Seventh Regiment Fund (the "Fund"),
is a not-for-profit corporation duly organized on April 3, 1909,
under the laws of the State of New York, having its offices at
the Seventh Regiment Armory, 643 Park Avenue, New York, New York
(the "Armory" or "Seventh Regiment Armory").  The Fund is
composed of present and past members of the lineal descendents
of the Seventh Regiment of the New York National Guard,
including the present 107th Corps Support Group (all referred to
herein as the "Seventh Regiment" or the "Regiment").

2.  Plaintiff, Associates of the Engineer Corps and
Company K, Seventh Regiment, Inc. (the "Associates"), is a not-
for-profit corporation duly organized on February 26, 1942,
under the laws of the State of New York, having its offices at
44 East 57th Street, New York, New York.  It is composed

entirely of veterans of the Engineer Corps or Company K of the Regiment, or the lineal descendent of the unit.

3. Plaintiff, The Veterans of the Seventh Regiment (the "Veterans"), is a not-for-profit corporation duly organized on March 11, 1861 under chapter 41 of the Laws of 1861 of the State of New York, having its offices at the Armory. The Veterans' present membership includes approximately 1,000 former and present active duty members of the successor units of Seventh Regiment.

4. Defendant, George Pataki ("Pataki") is the duly elected Governor of the State of New York, and the Commander and Chief of the National Guard of the State of New York, with offices at 633 Third Avenue, New York, New York.

5. Defendant, Maj. Gen. John H. Fenimore V, is the Adjutant General for the Division of Military and Naval Affairs of the State of New York (the "TAG") with offices at 330 Niskayuna Road, Latham, New York.

6. Defendant, the Division of Military and Naval Affairs ("DMNA"), is a division of the Executive Department of the State of New York, whose headquarters is located at Niskayuna Road, Latham, New York.

7. On information and belief, defendant, Charles A. Gargano, is the chairman, president and chief executive officer

3

of the NYS Urban Development Corporation with offices at 633 Third Avenue, New York, New York.

8. On information and belief, defendant, NYS Urban Development Corporation d/b/a Empire State Development Corporation ("ESD"), is a public benefit corporation and a corporate governmental agency of the State of New York organized under the laws of the State of New York. (The foregoing defendants are sometimes collectively referred to herein as the "State".)

9. On information and belief, defendant, Ernst & Young LLP, is a limited liability partnership formed under the laws of the State of Delaware and authorized to do business in the State of New York, with offices located at 1211 Avenue of the Americas, New York, New York.

10. On information and belief, defendant, Seventh Regiment Armory Conservancy, Inc. (the "Conservancy"), is a not-for-profit corporation duly organized on September 27, 1999, under the laws of the State of New York, with offices located at 457 Madison Avenue, New York, New York.

## JURISDICTION and VENUE

11. The jurisdiction of this Court is respectfully invoked under Title 28, United States Code, Sections 1331 and

4

1343, this being a suit in equity authorized by Title 42 of the United States Code, Section 1983.   Jurisdiction is further invoked under Title 28 of the United States Code, Section 2201 and 2202, this being a suit for declaratory judgment.

12.  As more fully discussed below, the plaintiffs seek a declaration that the defendants' proposal for the purported "restoration" of the Seventh Regiment Armory located within this judicial district constitutes a substantial deprivation of the plaintiffs' property rights without due process of law in violation of the Fifth Amendment of the United States Constitution and an impairment of contract prohibited under the Section 10, clause 1 of the United States Constitution.   Plaintiffs also seek injunctive relief to prevent the defendants from proceeding with their plan for "restoring" the Armory.

13.  Venue is proper pursuant to Title 28, United States Code, Section 1391(b)(2).

## ALLEGED FACTS

14.  In or about August of 1824, officers and men serving in various units of the militia of the State of New York met in New York City to form a new battalion of the militia under the name of the National Guards, a title not then in general use in the militia, but borrowed from the Guarde Nacional, an organization associated with the Marquis de Lafayette, hero of the Revolutionary War.   Some of these units

5

were formed at least as early as 1806, and hence, the successor organization is considered the oldest lineal regimental organization of the New York National Guard.

15.  In or about May of 1826, the Battalion of National Guards was renamed the Twenty-seventh Regiment of Artillery, and in July of 1847, the Seventh Regiment of New York State Militia.  Unlike current practice, the Seventh Regiment provided for its own expenses without reimbursement from the State of New York.

16.  In 1859, prior to building the present Armory, the Seventh Regiment refurbished at its own expense drill and office space provided free by the City of New York (the "City") at Tompkins Market.

17.  In 1861, the Seventh Regiment, on its own initiative answered the call of President Abraham Lincoln for the defense of Washington D.C. and became the first regiment to secure the White House, the Capital and Archives.  The Seventh Regiment is recognized by the U.S. Army Center for Military History as having saved Washington D.C. from capture by Confederate forces.

18.  By the early 1870's, it became clear that the Tompkins Market Armory was inadequate for the Regiment's purposes.  In recognition of this condition, a General Committee, consisting of a committee of the Board of Officers, a committee from the Veterans and a committee from each of the ten

6

companies of the Seventh Regiment petitioned the New York State Legislature for an act securing City owned land for an Armory for members of the Regiment.

19.  In 1873, the State Legislature choose to empower the Board of Supervisors of the County of New York with authority to create a board of commissioners for the erection of armories.  Chapter 429 of the Laws of 1873, further required that the comptroller pay for erection of those armories.

20.  In contradistinction, chapter 431 of the Laws of 1873 was enacted, directing the City to lease to the field officers of the Seventh Regiment, and their successors in office, acting for said Regiment, and for "the public purposes of said regiment," a plot of ground belonging to the City.  The field officers of the Seventh Regiment were authorized and empowered to accept the lease and the site with the same effect as if a body corporate, to be thereafter exclusively used for an armory and drill rooms by the Regiment.

21.  Pursuant to chapter 234 of the Laws of 1874, the City was required to lease to the Regiment the plot of land bounded by Sixty-sixth and Sixty-seventh Streets on the north and south and Park and Lexington Avenues on the east and west (the "Land") as the site for a new armory for the Regiment.  The field officers of the Seventh Regiment (the "Field Officers"), were designated a body corporate under New York State law in accordance with chapter 234 of the laws of 1874 and were

7

empowered to accept the lease and property.  On September 23, 1874, the City entered into a lease with the Field Officers of the Seventh Regiment for the Land.  This Land was "to be exclusively held and used for an Armory and Drill Rooms" by the Seventh Regiment.

22.   Pursuant to Chapter 223 of the Laws of 1875 the City was required to appropriate three hundred fifty thousand dollars for the erection of the Armory on the Land.  The City, however, withdrew funds for the new armory.

23.   Rather than cease construction, the Field Officers of the Regiment under its corporate powers proceeded to build the  Armory.  In 1876, funds were solicited from the Veterans and friends of the Regiment.  In October 1877, the Armory cornerstone was laid.

24.   Under the provisions of chapter 57 of the Laws of 1879, the New York State Legislative authorized the "board of officers" to issue fifteen year bonds aggregating $150,000.00 nominal amount.  The bonds were to be executed by the Field Officers and in the name of the Regiment.  The proceeds were for the completion of the Armory.

25.   Under this same law, the City was required to appropriate funds to furnish heat, light and maintain the Armory.  Additionally the City was to pay annually the sum of $15,000 in lieu of rental for the Armory for the Regiment.  This sum was later reduced to the sum of $8,000 per annum by chapter

8

518 of the Laws of 1893. The City continues to pay this sum to the Regiment (not the State of New York) to this day.

26.  Thus, by lease, dated April 23, 1879, the City leased the Land to the Field Officers, and their successors in office, for as long as the Regiment existed and acted as a military organization (the "Lease"). Pursuant to the terms of the Lease, the Land and the building are to be "held and used exclusively for an armory and drill rooms by" the Regiment. If the Armory ceases to be used exclusively by the Regiment for an armory and drill rooms, the Lease terminates.

27.  The bonds issued and sold in 1879 were redeemed from private monies raised from donations from veterans and friends of the Seventh Regiment, member assessments and rental fees. No State monies were expended in erecting the Armory.

28.  The Field Officers the Seventh Regiment were designated as the Trustees of the Seventh Regiment Armory (the "Trustees") by State statute, chapter 518 of the Laws of 1893 ("Chapter 518").

29.  The Trustees hold the Armory solely and exclusively for the public purposes of the Regiment and are charged with the duty of maintaining and improving the same. The Armory is unique in New York State and in the United States in that it was constructed and furnished solely with private funds raised by the active and veteran members of the Regiment.

9

30. In 1942, under the provisions of chapter 932 of the Laws of 1942, the State assumed certain City obligations for paying for the upkeep of the Armory. This chapter law, however, in no way created an ownership interest by the State in the Armory; rather, it merely passed the City's obligation for the upkeep of the Armory to the State of New York. The ownership of the Armory by the Trustees of the Regiment, rather than by the State of New York, was confirmed by the New York Court of Appeals in the 1937 decision in Tobin v. LaGuardia, 276 N.Y. 34 (1937). The defendants are on notice of the unique ownership status of the Armory.

31. During the construction of the Armory and thereafter, several private groups affiliated with members of the Regiment decorated and furnished rooms in the Armory. Over time, ownership of all the decorative properties were vested in the Veterans or the Fund. Additionally the Veterans, from its own funds, decorated the interior of the Veterans Room located on the first floor of the Armory. It purchased and owns the interior decorative art found in that room. Similarly, plaintiffs, the Fund and the Associates, have, since their inception, restored portions of the Armory.

32. Just for the construction of the Armory, the members of the Regiment and the Trustees spent over $600,000, most of which came exclusively from their own funds. Hundreds of thousands of dollars were expended to furnish the individual

10

rooms of the Armory.  Again, these funds came from members or
the Trustees.

33.  Notwithstanding the foregoing, in or about July,
2000, the individual defendants, acting through ESD and DMNA,
with the assistance of defendant Ernst & Young LLP, issued a
request for proposals ("the RFP") purportedly seeking a
developer for the "reuse" of the Armory.  This RFP was issued
without the consent of or the approval of the Trustees of
Armory, the true owner of the building.  The RFP purported to
offer the Armory on a long term lease to a developer who was
invited to use the Armory without regard to the terms of the
Lease, and the rights of the Regiment, the Veterans, the
Associates or the Fund in and to the Armory.

34.  In its illegal assumption of control over the
Armory, the State misstates its title to the Armory.  Thus, for
example, the RFP originally (and mistakenly) stated that the
title of the building is "vested in The Board of Officers of the
Seventh Regiment (currently, the 107th Corps Support Group)."
It also incorrectly stated that "[a]ccording to the original
ground lease, the military must maintain some presence in the
Armory."  As set forth above, it is the Trustees, not the Board
of Officers, who own the Armory and it is only the exclusive use
of the Armory by the Regiment which continues the Regiment's
ownership of the Armory.

11

35.  In an addendum to the RFP, the State abandoned this inaccurate statement of title in favor of an assertion of complete ownership by the State of New York over the Armory.  In response to questions posed at a pre-bidding conference held on August 17, 2000, the State stated it "is the owner of the building and is responsible for this RFP."  It further stated that it "will decide at its sole discretion of the make-up of the selection/evaluation team."  This claim of ownership, in derogation of the ownership of the Armory by the Trustees, is in direct contradiction of earlier statements by DMNA that it did not own the Armory.

36.  On information and belief, the Conservancy in response to the RFP has submitted a proposal for the "development" of the Armory into a theater and high-end restaurant.  Although representatives of the plaintiffs have asked for a copy of that proposal, the Conservancy has refused to provide a copy of the same.

37.  Thus, each of the defendants, acting under color of state law, improperly and illegally asserts ownership rights over the Armory and is acting to deprive the plaintiffs of their property rights in the Armory and their right to occupy the Armory to conduct their meetings and other activities.  The defendants and their agents are endeavoring to appropriate, without compensation, real assets of the Regiment.  This seizure includes the illegal usurpation of the Lease and the Armory

12

owned by the Regiment and held by its incorporated Trustees located on the Land.

38. The plaintiffs have no adequate remedy at law.

### FIRST CLAIM
### Violation of 42 U.S.C. §1983
### Fifth Amendment

39. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 38, inclusive, as if those allegations were set forth in their entirety herein.

40. Title 42 of the United States Code, Section 1983 ("Section 1983), provides that "every person who, under color of any statute . . . of any state . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" to liability in a "suit in equity, or other proper proceeding for redress."

41. The defendants are "persons" within the meaning of Section 1983.

42. The Fifth Amendment of the United States Constitution prohibits any person from being "deprived of life, liberty or property, without due process of law" and prohibits the taking of private property for public use without just compensation.

13

43. The defendants' proposal regarding the Armory shall result in the deprivation, under color of state law, of the property rights of the plaintiffs to the Armory without due process of law and without just compensation.

SECOND CLAIM
Violation of 42 U.S.C. §1983
Section 10, Clause 1 of the United States Constitution

44. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 43, inclusive, as if those allegations were set forth in their entirety herein.

45. Section 10, Clause 1 of the United States Constitution provides, in relevant part, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

46. The Lease between the City and the Trustees and the rights of the plaintiffs in and to the Armory are such contracts.

47. The defendants by their proposal to "reuse" the Armory will impair the obligations of the above-mentioned contracts in violation of Section 10, Clause 1 of the United States Constitution.

THIRD CLAIM
Declaratory Judgment

48. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 47, inclusive, as if those allegations were set forth in their entirety herein.

14

49.  There exists a justiciable controversy between the plaintiffs and the defendants as to the ownership and use of the Armory for which the plaintiffs have no adequate remedy at law.

50.  The plaintiffs seek a declaratory judgment that the proposal for the "reuse" of the Armory without the consent of the Trustees of the Armory will result in a violation of the plaintiffs' property rights in the Armory without due process of law or just compensation.

## FOURTH CLAIM
### Injunction

51.  Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through 50, inclusive, as if those allegations were set forth in their entirety herein.

52.  If not restrained and declared unlawful by this court, the defendants' proposal for the purported restoration of the Seventh Regiment Armory will cause irreparable injury to the plaintiffs who will be deprived of their property rights in and to the Armory.

53.  Plaintiffs have no adequate remedy at law.

54.  No prior application for injunctive relief has been made to any other court in connection with this action.

WHEREFORE, plaintiffs respectfully demand judgment as follows:

15

1.  Declaring the defendants' proposal for restoration of the Armory to be in violation of the plaintiff's constitutionally protected property rights;

2.  Enjoining the defendants, during the pendency of this action and permanently, from proceeding with the RFP and any proposal submitted there under;

3.  Awarding plaintiffs reasonable attorneys' fees as provided by law; and

4.  Awarding plaintiffs such other and further relief which to this Court may seem just and necessary.

Dated:  New York, New York
        February 1, 2001

McCANLISS & EARLY LLP


By:  _____
     Philip M. Chiappone (PC2854)
     Attorneys for Plaintiffs
     88 Pine Street - 21st Floor
     Wall Street Plaza
     New York, New York  10005
     (212) 943-0280

16