EXHIBIT 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -X

DAVID L. DALVA II,                            :

                         Plaintiff,           :    Index No.

            -against-                         :

GEORGE PATAKI, as Governor of the             :    VERIFIED COMPLAINT
State of New York, BRIG. GEN. FREDRIC
DAVID SHEPPARD, as the Adjutant General       :
for the Division of Military and Naval
Affairs, the DIVISION OF MILITARY             :
AND NAVAL AFFAIRS, NYS URBAN
DEVELOPMENT CORPORATION d/b/a EMPIRE          :
STATE DEVELOPMENT CORPORATION, SEVENTH
REGIMENT ARMORY CONSERVANCY, INC.,            :
THE CITY OF NEW YORK,
                                              :
                         Defendants.
                                              :
- - - - - - - - - - - - - - - - - - - - -X

          Plaintiff, David L. Dalva II, by his attorneys, McCanliss &

Early LLP, for his Complaint against the defendants, George Pataki, as

Governor of the State of New York, Brig. Gen. Fredric David Sheppard,

as the Adjutant General for the Division of Military and Naval

Affairs, the Division of Military and Naval Affairs (the "State

Defendants"), NYS Urban Development Corporation d/b/a Empire State

Development Corporation, Seventh Regiment Armory Conservancy, Inc. and

The City of New York as follows:

                            INTRODUCTION

          1.   This is an action brought by a taxpayer citizen of the

City and State of New York to prevent the State of New York and a

private organization, with the acquiescence of the City of New York,

from depriving the people of the City of New York of their inalienable

public property:  The Seventh Regiment Armory.  Although the Armory was constructed by private funds on land owned by the City of New York, the State Defendants, joined by Empire State Development Corporation and the Seventh Regiment Armory Conservancy, Inc., illegally and without constitutional authority, are assuming control over real property properly belonging to the people of the City of New York.  The legislation under which the State Defendants are acting, Chapter 482 of the Laws of 2004, a copy of which is annexed hereto as Exhibit 1, is an unconstitutional intrusion into the local affairs of the City of New York and the expenditure of State funds in connection with that endeavor should be enjoined under New York State Finance Law § 123-b.

### PARTIES, JURISDICTION AND VENUE

2.  Plaintiff, David L. Dalva II, is a citizen and resident of the State and City of New York, Borough of Manhattan, residing at 320 East 72nd Street, State and County of New York ("Dalva").  Dalva is now, and, at all times hereinafter mentioned, was, a citizen who has paid and is paying New York State income and sales taxes within the meaning of New York Finance Law § 123-a.

3.  Defendant, George Pataki is the duly elected Governor of the State of New York, and the Commander and Chief of the National Guard of the State of New York, with offices at 633 Third Avenue, New York, New York.

4.  Defendant, Brig. Gen. Fredric David Sheppard is the

-2-

Adjutant General for the Division of Military and Naval Affairs of the State of New York with offices at 330 Niskayuna Road, Latham, New York.

5.   Defendant, Division of Military and Naval Affairs ("DMNA"), is a division of the Executive Department of the State of New York with offices at 330 Niskayun Road, Latham, New York.

6.   On information and belief, defendant, NYS Urban Development Corporation d/b/a Empire State Development Corporation ("ESD"), is a public benefit corporation and a corporate governmental agency of the State of New York organized under the laws of the State of New York with offices at 633 Third Avenue, New York, New York.

7.   On information and belief, defendant, Seventh Regiment Armory Conservancy, Inc. (the "Conservancy"), is a not-for-profit corporation duly organized on September 27, 1999, under the laws of the State of New York, with offices located at 643 Park Avenue, New York, New York.

8.   Defendant, The City of New York (the "City"), was, and still is, a municipal corporation organized and existing under the laws of the State of New York.

9.   The subject matter jurisdiction of this Court is respectfully invoked pursuant to Article VI, § 7 of the New York State Constitution and section 123-c(1) of the New York State Finance Law.

10.   Venue is proper pursuant to CPLR 503, 504(3), 505(a) and section 123-c(1) of the New York State Finance Law.

-3-

ALLEGED FACTS

11.  The real property which is at the center of this dispute is the Seventh Regiment Armory.  The Seventh Regiment Armory is located at 643 Park Avenue, in the Borough of Manhattan, State, City and County of New York, and occupies an entire City block bounded by East 66th Street on the south, Lexington Avenue on the East, East 67th Street on the North and Park Avenue on the West, identified as block 1401, Lot 1 on the tax map of The City of New York (the "Armory").  The Armory was built on public land belonging to the City of New York and remains, with improvements, public land belonging to the City of New York.

12.  The Seventh Regiment (sometimes herein referred to as the "Regiment"), referred to by some as the "Silk Stocking Regiment" was considered to be the most prestigious American military group of the nineteenth century.  The Regiment traces its lineage to four companies organized in 1806 by New York merchants in response to the British practice of boarding American ships to search for British sailors.

13.  In or about August of 1824, the officers and men serving in various units of the militia of the State of New York met in New York City to form a new battalion of the militia under the name of the National Guards, a title not then in general use in the militia, but borrowed from the Guarde Nacional, an organization

-4-

associated with the Marquis de Lafayette, hero of the Revolutionary War.

14. In or about May of 1826, the Battalion of National Guards was renamed the Twenty-seventh Regiment of Artillery, and in July of 1847, the Seventh Regiment of New York State Militia. Unlike current practice, the Seventh Regiment provided for its own expenses without reimbursement from the State of New York. In 1859, prior to building the present Armory, the Seventh Regiment refurbished at its own expense drill and office space provided free by the City at Tompkins Market.

15. In 1861, the Seventh Regiment, on its own initiative answered the call of President Abraham Lincoln for the defense of Washington D.C., and became the first regiment to secure the White House, the Capital and Archives. The Seventh Regiment is recognized by the U.S. Army Center for Military History as having saved Washington D.C. from capture by Confederate forces.

16. By the early 1870's, it became clear that the Tompkins Market Armory was inadequate for the Regiment's purposes. But in the 1870's New York City was in the midst of a severe economic depression and recovering from recent construction scandals involving "Boss" William M. Tweed. In this economic and political climate, the Regiment was hesitant to insist that the City construct a new building for its purposes.

17. In recognition of this condition, the Board of Officers

of the Regiment set out to raise the money to build the Armory by private subscription.  Thus, the Seventh Regiment Armory was the only armory thus privately constructed and owned.

18.  In 1873, the State Legislature empowered the Board of Supervisors of the County of New York with authority to create a board of commissioners for the erection of armories.  Chapter 429 of the Laws of 1873, further required that the comptroller pay for erection of those armories.

19.  Pursuant to chapter 234 of the Laws of 1874, the City was required to lease to the Regiment the plot of land bounded by Sixty-sixth and Sixty-seventh Streets on the north and south and Park and Lexington Avenues on the east and west (the "Land") as the site for a new armory for the Regiment.  A copy of chapter 234 of the Laws of 1874 is annexed hereto as Exhibit 2.

20.  Chapter 234 designated the field officers of the Seventh Regiment (the "Field Officers") a body corporate and empowered the Field Officers to accept the lease and property.  The Field Officers hold the lease as trustees for the public, for public purposes, and upon the express condition that the site is to be thereafter exclusively held and used for an armory and drill rooms by said regiment.

21.  On September 23, 1874, the City entered into a lease (the "1874 Lease") with the Field Officers "and their successors in office acting for said regiment" for "the plot of ground bounded by

-6-

and situated between Sixty-sixth and Sixty-seventh Streets and Fourth [now Park] and Lexington Avenues (the "Land"). Those Field Officers were Emmons Clark, Colonel of the 7th Regiment, Lieutenant Colonel Stephen C. Ryderm and Major George Moore Smith, both in the Seventh Regiment. A copy of the 1874 Lease is annexed hereto as Exhibit 3.

22. The term of the 1874 Lease was for twenty-one (21) years and the Land was "to be exclusively held and used for an Armory and Drill Rooms" by the Seventh Regiment. The yearly rent was one dollar payable on the first day of January in each year during the term.

23. The 1874 Lease also provided that the Field Officers covenant and agree that

> [T]hese presents are upon the express condition and understanding, that if the said parties of the second part [i.e. the Field Officers] or their successors in office shall refuse or neglect to erect or cause to be erected, as aforesaid, the buildings aforesaid upon the said devised premises or at anytime during the said term neglect or refuse to keep and maintain the same thereon, as aforesaid, or shall cease to use the said devised premises for the purposes aforesaid <u>or shall use the same for any other than the purposes of an Armory and Drill Rooms</u> or the pubic purposes of said regiment or in furtherance of such public purposes, that then this lease and all the estate, right, title and interest of the said parties of the second part or their successors in office of, in and to the plot of land herein devised shall thereupon cease and determine, and these presents and every article and clause herein contained shall become null and void (emphasis added).

24. Thus, the 1874 Lease contained a conditional limitation

on its term, which upon the occurrence of the limitation, the term automatically expires.

25. Pursuant to Chapter 223 of the Laws of 1875, the City was required to appropriate three hundred fifty thousand dollars for the erection of the Armory on the Land. The City, however, withdrew funds for the new armory. Rather than cease construction, however, the Field Officers under their corporate powers proceeded to build the Armory. In 1876, funds were solicited from the Veterans and friends of the Regiment. In October of 1877, the Armory cornerstone was laid.

26. When the building was nearly completed, a special act (Laws of 1879, ch. 57) authorized the issuance of bonds for $150,000 upon security of the building and lease, and directed the Board of Estimate and Apportionment, in lieu of rental, to appropriate and pay over to the trustees of the building $15,000 annually to be used by them in paying the interest and principal of the bonds. This sum was later reduced to the sum of $8,000 per annum by chapter 518 of the Laws of 1893. The City continues to pay this sum to the Regiment (not the State of New York) to this day. A copy of chapter 57 of the laws of 1879 is annexed hereto as Exhibit 4.

27. By supplemental indenture, dated April 23, 1879, the City leased the Land and the Armory built on that Land to the Field Officers, and their successors in office (the "1879 Lease"). The 1879 Lease extended the term of the 1874 Lease, providing for a term "for and during the period that said regiment shall exist and act as a

-8-

military organization, and desire to occupy said armory for its lawful purposes." Pursuant to the terms of the 1879 Lease, the Land and the building were to be "held and used exclusively for an armory and drill rooms by" the Regiment. The 1879 Lease was "subject to all respects to the covenants, conditions and restrictions contained and expressed in the [1874 Lease] . . . except so far as the same have been modified by or pursuant to any act of the Legislature of the State of New York." A copy of the 1879 Lease is annexed hereto as Exhibit 5.

28. Thus, the 1879 Lease was subject to the conditional limitation contained in the 1874 Lease. If the Armory ceased to be used exclusively by the Regiment for an armory and drill rooms, the Lease terminated.

29. In 1942, under the provisions of chapter 932 of the Laws of 1942, the State assumed certain City obligations for paying for the upkeep of the Armory. This chapter law, however, in no way created an ownership interest by the State in the Armory or the land on which the Armory was built; rather, it merely passed the City's obligation for the upkeep of the Armory to the State of New York.

30. In or about July of 2000, without the consent or approval of the Trustees or the City, defendant DMNA and ESDC issued a request for proposal, purporting to seek a developer for the reuse of the Armory. In response to that RFP, the Conservancy submitted a proposal for the development of the Armory into a theater and high-end restaurant.

-9-

31.   The Seventh Regiment Fund and the Veterans of the Seventh Regiment challenged that request for proposal under the Takings Clause of the Fifth Amendment in the federal district court, Southern District of New York.  The court dismissed this challenge on the ground that the action was not yet ripe.  <u>Seventh Regiment Fund v. Pataki</u>, 179 F. Supp.2d 356 (S.D.N.Y. 2002).

32.   In or about August, 2004, the New York State Legislature enacted Chapter 482 of the Laws of 2004 (hereinbefore defined as the "Act") to amend the Military Law of the State of New York and the New York State Urban Development Act to add a new section 180-a to the Military Law and adding a new section 39 to the New York State Urban Development Act.  A copy of chapter 482 of the Laws of 2004 is annexed hereto as Exhibit 1.

33.   The Act, which became law on September 21, 2004, with the approval of the Governor, is still in full force and effect.  Paragraph 2(a) of the Act provides as follows:

> The state, acting through the Division [of Military and Naval Affairs], is and shall be recognized as and declared to be the lawful successor to the interest of the lessee under the city Lease.  No other person or party, whether through claims or entitlements of past or continuing use, occupancy, improvement or otherwise, is or shall be recognized as having any lawful rights in respect of the armory other than as may be expressly granted by, and subject to, the applicable subdivision of section one hundred eighty-three or this article.

The "city lease" identified in the Act is defined collectively as "the

-10-

leases dated September 23, 1874 and April 23, 1879 by and between the

mayor, aldermen and commonality of the city of New York to the field

officers of the seventh regiment;" *i.e.*, the 1874 Lease and the 1879

Lease described above (Exhibits 3 and 5).

34.    Section 3 of the Act amends Section 1 of chapter 174 of

the laws of 1968 [the New York State Urban Development Corporation

Act], to provide that:

> The corporation is hereby authorized to act on
> behalf of the state and the division of military
> and naval affairs to enter into a lease or
> subsequent leases and the management agreement on
> behalf of the state and the division with a
> lessee, subsequent lessee or the manager pursuant
> to the terms of the management agreement in order
> to accomplish the purposes of this section.  The
> leasing of the armory to a lessee or subsequent
> lessee and the entrance into the management
> agreement and the repair, restoration and
> refurbishment of the armory and operation thereof
> by a lessee or subsequent lessee for cultural and
> other civic uses pursuant to the lease is hereby
> declared to be a valid use under the city lease,
> and is undertaken for public purposes.

The "corporation" is the defendant Empire State Development

Corporation.  The "lessee" is defined by the Act as a "tenant, a not-

for-profit corporation dedicated to the preservation of the armory as

a historical, civic and cultural facility for the community, which is

party to a lease with the state, acting through the urban development

corporation as landlord, leasing the armory or portions thereof."  The

defendant Conservancy is that "not-for-profit corporation" which is

destined to be the "lessee."  A "management agreement" is defined in

-11-

the Act as "an agreement to be entered into by the state, acting through the urban development corporation as landlord, leasing the armory or portions thereof."

35.    Thus, by its terms the Act provides for use of the Armory by persons or entities other than the Regiment or its lineal descendants and for purposes other than the exclusive use by the Regiment thereby triggering the conditional limitations contained in the 1874 Lease and the 1879 Lease.

36.    The Act, in addition to triggering the conditional limitation in the 1874 and 1879 Leases, does not contain a "home rule message."  Article IX, § 2(b)(2) of the New York State Constitution, provides in relevant part as follows:

> Subject to the bill of rights of local governments and other applicable provisions of this constitution, the legislature:
>
> Shall have the power to act in relation to the property, affairs or government of any local government only by general law, or by special law only (a) on request of two-thirds of the total membership of its legislative body or on request of its chief executive offer concurred in by a majority of such membership.

By reason of this provision in the constitution of this State, the legislature is limited in its authority to intrude in local affairs by requiring it to act through general or special laws.

37.    Article IX, § 2(b)(2) gives the New York State Legislature authority to enact a "general law" relating to the property, affairs or government of local governments such as the City

of New York. A "general law" is defined as a "law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages." New York Constitution, Article IX, § 3(d)(1).

38. A "special law" is, in contrast, defined as a law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages." New York Constitution, Article IX, § 3(d)(4).

39. Article IX provides that a special law relating to the property, affairs or government of a local municipality may not be enacted without a "home rule message" from the locality or the localities affected by the law. New York Constitution, Article IX, § 2(b)(2).

40. A "home rule message" is a "request of two-thirds of the total membership of [the local] legislative body or . . . [a] request of its chief executive concurred in by a majority of such membership." New York Constitution, Article IX, § 2(b)(2).

41. Chapter 482 of the Laws of New York is a "special law" as defined by New York Constitution, Article IX, § 3(d)(4) and it should not have been enacted without a "home rule message" from the City which is affected by the Act.

42. Although a recognized exception to the home rule message requirement exists when a special law serves a substantial State concern, to overcome the infirmity of enacting a special law

-13-

without complying with home rule requirements the enactment must have a reasonable relationship to a substantial State concern. A special law that relates to the property, affairs, or government of the City is constitutional only if enacted upon a home rule message or the provision bears a direct and reasonable relationship to a substantial State concern.

43. The Act relates to the "property, affairs or government" of the City. The law applies to a single piece of real property located in the City and owned by the City. The Act, therefore, is a "special law."

44. Starting with the preamble, the Act fails to articulate any substantial State concern with respect to the Armory. The Act itself declares that the Armory is located in the City of New York. It acknowledges that the Armory "is an important civic and cultural facility for the community in which it is located," i.e., New York City. The Act acknowledges the April 23, 1879 lease in which the City of New York is the landlord and owner of the property on which the Armory stands.

45. Even if defendant DMNA has, in fact, assumed the powers of the Trustees of the Regiment, it is not within the power of DMNA to enter into any agreement with another entity by which the later should have the exclusive or even substantial use of the building. The management agreement contemplated by the Act is a breach of trust arising out the April 23, 1879 and September 23, 1874 leases.

-14-

46.  In short, the State Defendants have entered into or are contemplating an illegal management agreement through ESDC and the Conservancy affecting real property located in and owned by The City of New York.  The State has been and will be expending State funds in connection with the implementation of the management agreement contemplated by the Act.

47.  For example, on information and belief, the State will be funding emergency repairs of structural elements, roof and major building systems in the Armory until such items are replaced or rehabilitated by the Conservancy.  This expenditure of State funds is for a building for which the lease has expired and pursuant to an illegal enactment.

48.  On information and belief, the State will pay a $100,000.00 annual administrative fee to ESDC in connection with the project contemplated by the Act.

### FIRST CAUSE OF ACTION
### (Common Law Taxpayer Action)

49.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48, inclusive, as if those allegations were set forth in their entirety herein.

50.  Chapter 482 of the Laws of the State of New York is an unconstitutional enactment under Article IX, § 2(b)(2) of the New York State Constitution.

51.  There is no substantial State concern with this Armory

-15-

which would justify excepting a "home rule message" from Chapter 482 of the Laws of the State of New York.  Rather, the Act has the single goal of transferring City property to the defendant Conservancy, a private organization, whose stated goal is to turn the property into a not-for-profit cultural center for the visual and performing arts.

52.  The prospect of challenge to the constitutionality of the Act is effectually remote.  On information and belief the Office of the Attorney General of the State of New York has approved the language of the Act.  Furthermore, the active participation of the defendant Division of Military and Naval Affairs in the transfer of this public property to the private defendant Conservancy for development into a performance arts center makes it highly unlikely that officials of the government of this State will review and attack this legislation which benefits only the State.

53.  The land upon which the Armory was built was city park land which land is inalienable belonging as it does to the people of the City of New York.  The purported transfer of control of the Armory to the defendant Conservancy is both a violation of the Lease and a derogation of the rights of the people of the City of New York in and to their public property.

54.  Pursuant to the terms of the Lease for the Armory, the Land and the building are to be "held and used exclusively for an armory and drill rooms by" the Regiment.  If the Armory ceases to be used exclusively by the Regiment for an armory and drill rooms, the

-16-

Lease terminates. Although the Act purports to assert State control over the Armory to preclude triggering reversion language in the ground lease, in fact, the Act, and the plan of the Conservancy to turn the Armory into a performance arts center is in violation of the Lease since it is no longer being used exclusively for an armory and drill rooms by the Regiment. Furthermore, the Act purports to unilaterally modify the terms of the Lease without regard to the rights and interests of the City of New York who is the other party to the Lease.

55. The matter of takeover of city owned property without proper consideration by the New York City Council would result in immediate and irreparable injury, loss and damage to the people of the City of New York of which the plaintiff is one. The Act deprives the people of the City of New York of benefit of such land and the improvements thereon.

56. Plaintiff seeks an injunction preventing the State and City defendants from depriving the people of the City of New York of their land without due process of law.

57. Plaintiff seeks a judgment declaring Chapter 482 of the Laws of the State of New York unconstitutional under the New York State Constitution.

58. The plaintiff has no adequate remedy at law.

-17-

### SECOND CAUSE OF ACTION
### (Citizen Taxpayer Action Under
### State Finance Law, Article 7-A)

59.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58, inclusive, as if those allegations were set forth in their entirety herein.

60.  This is an action brought pursuant to State Finance Law, Article 7-A (Citizen Taxpayer Actions).  The relief sought in this action is a judgment declaring that the defendants, their agents and employees, have caused, are now causing, or are about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds by entering into a management agreement with a private organization pursuant to the Act which was enacted in violation of Article IX, § 2(b)(2) of the New York State Constitution.

61.  The State Defendants by and through the Act have caused and are about to cause an expenditure of State funds and property in violation of Article IX, § 2(b)(2) of the New York State Constitution as described in paragraphs 47 and 48 above.

62.  Defendant, the Conservancy, is the recipient or beneficiary or intended recipient or beneficiary of such a wrongful expenditure, misappropriation, misapplication or unconstitutional disbursement of state funds and is a proper party defendant under section 123-b(2) of the New York State Finance Law.

-18-

63. The ESDC is the recipient or beneficiary or intended recipient or beneficiary of such a wrongful expenditure, misappropriation, misapplication or unconstitutional disbursement of state funds and is a proper party defendant under section 123-b(2) of the New York State Finance Law.

64. This action affects the rights and interests of The City of New York in the Property and is a proper party defendant under Civil Practice and Law Rules § 1001.

65. In order to prevent the illegal misappropriation of state funds in furtherance of a project which violates the New York State Constitution, the defendants should be stopped from proceeding with implementation of the Act or from further proceeding with implementation of the Act.

66. Plaintiff seeks, pursuant to section 123-e of the State Finance Law, the equitable relief of a permanent injunction enjoining the wrongful expenditure, misappropriation, misapplication, or other illegal or unconstitutional disbursement of State funds.

67. The plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff respectfully demands judgment against defendants as follows:

(a) A declaration that the Act is unconstitutional;

(b) Pursuant to section 123-e of the State Finance Law, entry of a judgment declaring that the defendants, in the course of their duties have caused, are now causing, or about to cause a

-19-

wrongful expenditure, misappropriation, misapplication or other illegal or unconstitutional disbursement of state funds;

     (c)  Pursuant to section 123-e of the State Finance Law, entry of a judgment permanently enjoining defendants, their agents and employees from proceeding in any way under the Act;

     (d)  Canceling or declaring as void any management agreement entered into under the Act;

     (e)  Pursuant to section 123-g of the State Finance Law, allowing plaintiff reasonable attorneys fees and the costs and expenses of this action;

     (f)  Granting such other and further relief which to this Court may seem just and necessary.

Dated:  New York, New York
       December 1, 2005

                         McCANLISS & EARLY LLP

                       By: _____
                       Philip M. Chiappone
                       Attorneys for Plaintiff
                       88 Pine Street - 21st Floor
                       Wall Street Plaza
                       New York, New York  10005
                       (212) 943-0280

-20-

VERIFICATION

STATE OF NEW YORK   )
                    )   ss.:
COUNTY OF NEW YORK  )


        David L. Dalva II, being duly sworn, deposes and says:

        That he is the plaintiff herein; that he has read the

foregoing Complaint and knows the contents thereof; and that the same

is true to his own knowledge, except as to the matters therein stated

to be alleged on information and belief and that as to those matters

he believes them to be true.

                                        _____
                                             David L. Dalva II

Sworn to before me this

1st day of December, 2005.


_____
Philip M. Chiappone
Notary Public - State of New York
Registration No. 02CH4930685
Qualified in Kings County
Commission Expires on April 18, 2006


                                    -21-