# EXHIBIT A

LAWS OF NEW YORK

.RE PROGRAM

section 2

:are program; and providing

ıd *Assembly, do enact as*

any adult day health care han fifty authorized slots, ıty-five thousand and less int in time is unable to th care program, shall be of adult day health care ration program by up to satisfy all other adult day 425. Further, any such lult day health care slots e commissioner of health, r of the assembly, which d local governments, the of the demographic and aluation of the quality of he second report by any gs to the state and local commissioner of health. e commissioner of health senate and the speaker ch program.

: repealed September 1, e program pursuant to rized to remain in such provided, further, state authorized by this act he provisions of this act

RS

of structured settlement

*Assembly, do enact as*

: by shading



§ 1. Subdivision (b) of section 5–1706 of the general obligations law, as added by chapter 537 of the laws of 2002, is amended to read as follows:

(b) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependants; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and reasonable. <u>Provided the court makes the findings as outlined in this subdivision, there is no requirement for the court to find that an applicant is suffering from a hardship to approve the transfer of structured settlement payments under this subdivision</u>;

§ 2. This act shall take effect immediately.

## HEALTH CLUBS—AUTOMATED EXTERNAL DEFIBRILLATORS

### CHAPTER 481

A. 11765

Approved September 21, 2004, effective as provided in section 2

**AN ACT to amend a chapter of the laws of 2004, amending the general business law relating to requiring certain health clubs to have at least one automated external defibrillator, requiring health club employees to be certified in cardiopulmonary resuscitation and requiring such employees to be certified in the operation of automated external defibrillators, as proposed in legislative bills numbers S.6803 and A.5084–A, in relation to the effectiveness of such chapter**

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

§ 1. Section 3 of a chapter of the laws of 2004, amending the general business law relating to requiring certain health clubs to have at least one automated external defibrillator, requiring health club employees to be certified in cardiopulmonary resuscitation and requiring such employees to be certified in the operation of automated external defibrillators, as proposed in legislative bills numbers S. 6803 and A. 5084–A, is amended to read as follows:

§ 3. This act shall take effect ~~on the one hundred eightieth day~~ <u>one year</u> after it shall have become a law; provided that any rules and regulations necessary to implement the provisions of this act on its effective date are authorized and directed to be added, amended and/or repealed on or before such date.

§ 2. This act shall take effect on the same date as a chapter of the laws of 2004, amending the general business law relating to requiring certain health clubs to have at least one automated external defibrillator, requiring health club employees to be certified in cardiopulmonary resuscitation and requiring such employees to be certified in the operation of automated external defibrillators, as proposed in legislative bills numbers S. 6803 and A. 5084–A, takes effect.

## LEASES—CORPORATIONS—SEVENTH REGIMENT ARMORY

### CHAPTER 482

A. 11817

Approved and effective September 21, 2004

AN ACT to amend the military law and the New York state urban development corporation act, in relation to a lease of the seventh regiment armory to a not-for-profit corporation

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

§ 1. Statement of legislative findings and purposes. It is hereby found and declared that New York state's Seventh Regiment Armory, located in the city of New York, is an important historic landmark; that it has been a prominent center of cultural and civic events since its construction in 1879; that it is of great military historic value; that the continued ability to operate the seventh regiment armory for military purposes in times of civil or military emergency is vitally important to the city and state, and that the physical restoration and refurbishment of the armory is necessary and important to preserve this structure for current and future generations of New Yorkers.

It is further found and declared that the armory is an important civic and cultural facility for the community in which it is located and for the residents of the city and state; and that the continued use of the armory for cultural events and other civic uses is beneficial to the health, safety, welfare, and education of the people of the city and the state, and is consistent with the armory's purpose as a military facility.

It is further found and declared that a portion of the armory has been successfully utilized for a range of activities, including use as a shelter for homeless women that has been operated by the city of New York and that continued use of a portion of the armory as a shelter for homeless women is beneficial to the health, safety, welfare and education of the people of the city and state, and is consistent with the armory's purpose as a military facility and is contemplated pursuant to this legislation.

It is further found and declared that the armory has suffered deterioration in its physical infrastructure and plant in recent decades and that the continued deterioration of the facility must be remedied and reversed; that the renovation of the armory will require the investment of many millions of dollars and that financial circumstances make such public expenditures very difficult.

It is further found and declared that the restoration and renovation of the armory is in the public interest and that a partnership between the state and the private sector is necessary to undertake the financing of the restoration and future operation of this historic structure; that the division of military and naval affairs and the urban development corporation issued a request for proposals from interested private sector organizations in the year 2000 to undertake the restoration and operation of the armory. A not-for-profit organization, the seventh regiment armory conservancy, was named as chosen developer and deemed to fulfill all financial, organizational and operational requirements to undertake this endeavor in partnership with the state.

It is further found and declared that leasehold title to the seventh regiment armory is the property of the state under an indenture of lease made on September 23, 1874 between "the mayor, alderman and commonality of the city of New York," as lessors, and "the field officers of the seventh regiment of the national guard of the state of New York," as lessees, which field officers were later redesignated as the trustees of the seventh regiment armory building (Chapter 518 of the Laws of 1893), as amended by an indenture of lease dated April 23, 1879. The 107th corps support group, a division of the New York state national guard, is recognized by the department of the army and the courts of the state of New York as the lineal descendent of the seventh regiment, and the field officers of the 107th corps support group are recognized as the current trustees of the armory and successors in interest to the lessee under the above-cited leases, subject to the supervision of the New York state division of military and naval affairs. Pursuant to this act, the armory is under the general charge and control of the adjutant general, the commanding general and senior military officer of the New York state national guard.

Therefore, it is hereby found and declared that it is in the public interest for the state, acting through the division of military and naval affairs by the authority of the adjutant general, to enter into a public/private partnership with a not-for-profit corporation dedicated to the preservation of the armory as a historical, civic and cultural facility for the community to undertake the renovation and operation of the armory and to exercise the rights and powers herein authorized. Furthermore, such lease and all development-related activities, as well as any subsequent leases or development-related activities, shall be administered by the empire state development corporation on behalf of the division of military and naval affairs and the state.

§ 2. The military law is amended by adding a new section 180-a to read as follows:





§ 180-a. Lease and op
1. Definitions. (a) "
York.
(b) "Armory" shall me
100-126 East 67th stree
of New York, state of N
city of New York bound
streets.
(c) "City lease" shall
1879 by and between th
field officers of the seve
(d) "Division" shall m
article nine of the execut
(e) "Lease" shall mea
between the state, acti
lessee, as tenant, leasing
(f) "Lessee" shall me
tion of the armory as a
to a lease with the sta
leasing the armory or p
(g) "Management agr
acting through the urb
armory on a short-term
administration and man
(h) "Military use" sh
emergency, use of a p
square feet, or such les
armory which is not a
located on the first and
of the division, and use
(i) "Periods of civil or
the adjutant general di
order shall have effect i
general specifically asse
(j) "Shelter use" shal
emergency, the city of N
space for the current ar
well as usual and custo
water and electric, for u
(k) "Urban developm
corporation, a public b
development corporatio
2. State ownership
and shall be recognized
under the city lease.
past or continuing use,
having any lawful rights
and subject to, the appl
(b) All improvements
and similar items affi
moveable personal prop
are hereby recognized
state, and any and all p
of the foregoing items
the installation of such i

found and declared that
ew York, is an important
md civic events since its
the continued ability to
mes of civil or military
physical restoration and
his structure for current

ivic and cultural facility
city and state; and that
ises is beneficial to the
state, and is consistent

een successfully utilized
women that has been
on of the armory as a
e and education of the
se as a military facility

ioration in its physical
rioration of the facility
iory will require the
ces make such public

f the armory is in the
sector is necessary to
istoric structure; that
corporation issued a
in the year 2000 to
ofit organization, the
and deemed to fulfill
ke this endeavor in

giment armory is the
3, 1874 between "the
md "the field officers
k," as lessees, which
ent armory building
dated April 23, 1879.
guard, is recognized
York as the lineal
corps support group
iterest to the lessee
rk state division of
general charge and
litary officer of the

erest for the state,
ity of the adjutant
rporation dedicated
for the community
ise the rights and
elated activities, as
dministered by the
y and naval affairs

l as follows:





§ 180-a. Lease and operation of seventh regiment armory

1. Definitions. (a) "Adjutant general" shall mean adjutant general of the state of New York.

(b) "Armory" shall mean the seventh regiment armory located at 101-129 East 66th street, 100-126 East 67th street, 888-898 Lexington avenue and 641-649 Park avenue, in the county of New York, state of New York and identified as Block 1401, Lot 1 on the tax map of in the city of New York bounded by Park and Lexington avenues and Sixty-sixth and Sixty-seventh streets.

(c) "City lease" shall mean collectively, the leases dated September 23, 1874 and April 23, 1879 by and between the mayor, aldermen and commonality of the city of New York to the field officers of the seventh regiment.

(d) "Division" shall mean the state division of military and naval affairs, established by article nine of the executive law.

(e) "Lease" shall mean a lease for a term of up to ninety-nine years to be entered into between the state, acting through the urban development corporation, as lessor, and the lessee, as tenant, leasing the armory or portions thereof.

(f) "Lessee" shall mean the tenant, a not-for-profit corporation dedicated to the preservation of the armory as a historical, civic and cultural facility for the community, which is party to a lease with the state, acting through the urban development corporation as landlord, leasing the armory or portions thereof.

(g) "Management agreement" shall mean an agreement to be entered into by the state, acting through the urban development corporation, providing for the management of the armory on a short-term basis on behalf of the state as part of the routine or continuing administration and management of the armory.

(h) "Military use" shall mean during periods which are not periods of civil or military emergency, use of a portion of the armory containing approximately twenty-one hundred square feet, or such lesser area as the division may determine, located in the portion of the armory which is not a designated New York city landmark (i.e., not in the historic rooms located on the first and second floors or the drill hall), for offices or administrative functions of the division, and use by the division during any periods of civil or military emergency.

(i) "Periods of civil or military emergency" shall mean any period during which an order of the adjutant general directing a response to a civil or military emergency is in effect. Said order shall have effect in relation to this section only in the event of an order by the adjutant general specifically asserting control of areas within the armory.

(j) "Shelter use" shall mean use during periods which are not periods of civil or military emergency, the city of New York shall have the right to access and use sufficient and suitable space for the current and uninterrupted operation of the shelter by the city of New York, as well as usual and customary building services and utilities, including but not limited to heat, water and electric, for use as a shelter for homeless persons.

(k) "Urban development corporation" shall mean the New York state urban development corporation, a public benefit corporation of the state, doing business as the empire state development corporation.

2. State ownership of facility and fixtures. (a) The state, acting through the division, is and shall be recognized as and declared to be the lawful successor to the interest of the lessee under the city lease. No other person or party, whether through claims or entitlements of past or continuing use, occupancy, improvement or otherwise, is or shall be recognized as having any lawful rights in respect of the armory other than as may be expressly granted by, and subject to, the applicable subdivisions of section one hundred eighty-three of this article.

(b) All improvements, betterments, fixtures, equipment, ornaments, decorative elements, and similar items affixed or attached to the armory building (i.e., all items other than moveable personal property which is not affixed to the walls or other parts of the building) are hereby recognized and declared to be an integral part of the armory and property of the state, and any and all persons who have heretofore installed or paid for the installation of any of the foregoing items are deemed to have donated such items to the state as of the time of the installation of such items in the armory.

3. Lease and operation of armory; certain provisions of this chapter not applicable. (a) Except with respect to expenditures made by the state or the division in connection with military use or the operation of the armory during a period of civil or military emergency, the following provisions of this article shall not apply to the repair, restoration, refurbishment or operation of the armory pursuant to the lease or the management agreement: section one hundred seventy-eight, subdivisions two and three of section one hundred eighty and section one hundred eighty-one.

(b) The provisions of section one hundred eighty-two of this article shall apply only with respect to military use of the portions of the armory not demised under the lease, and with respect to periods of civil or military emergency, and shall not apply to the operations of the armory under the lease or the management agreement.

(c) Except with respect to military use and during periods of civil or military emergency, section one hundred eighty-three of this article shall not apply to the operations of the armory pursuant to the lease or the management agreement. The following provisions shall apply in lieu of such section one hundred eighty-three:

(i) On application of any of the associations of veterans described in paragraph b of subdivision one of such section one hundred eighty-three, the lessee or the manager pursuant to the terms of the management agreement shall provide a proper and convenient room or rooms or other appropriate space in the armory where such posts or chapters may hold regular and special meetings and organizational social events of a private nature, without the payment of any charge or expense therefor, provided that such use does not interfere with the use by the lessee or the manager pursuant to the terms of the management agreement, including any use by third parties contracted for under subparagraph (ii) of this paragraph.

(ii) The armory may be used by any person, firm, association, corporation, or municipal entity, provided that such person, firm, association or corporation enters into an agreement with the lessee or the manager pursuant to the terms of the management agreement permitting such use. The terms of any agreement entered into between the lessee or the manager pursuant to the terms of the management agreement and a user shall provide for such usage to cease during any periods of civil or military emergency.

(d) The provisions of sections one hundred eighty-five, one hundred eighty-six and one hundred eighty-seven of this article shall not apply to the armory.

(e) The management agreement and lease shall not apply to shelter use. Shelter use shall be governed by a separate agreement between the city of New York, the lessee and the state of New York; such separate agreement shall be executed prior to the execution of the lease.

§ 3. Section 1 of chapter 174 of the laws of 1968, constituting the New York state urban development corporation act, is amended by adding a new section 39 to read as follows:

§ 39. Lease and operation of seventh regiment armory. (a) The corporation is hereby authorized to act on behalf of the state and the division of military and naval affairs to enter into a lease or subsequent leases and the management agreement on behalf of the state and the division with a lessee, subsequent lessee or the manager pursuant to the terms of the management agreement in order to accomplish the purposes of this section. The leasing of the armory to a lessee or subsequent lessee and the entrance into the management agreement and the repair, restoration and refurbishment of the armory and operation thereof by a lessee or subsequent lessee for cultural and other civic uses pursuant to the lease is hereby declared to be a valid use under the city lease, and is undertaken for public purposes.

(b) The lease with a lessee or subsequent lessee authorized by this section shall require a lessee or subsequent lessee to undertake a program of repair, restoration and refurbishment of the armory and to manage and use the same as a facility for cultural and other civic uses. The lease shall demise all portions of the armory other than those reserved for a homeless shelter for women operated by the city of New York pursuant to agreement with the state and for that reserved for military use by the division. The portion of the premises allocated to the shelter for homeless women shall be sufficient and suitable space for the current and uninterrupted operation of the shelter by the city of New York. The division shall cause the 107th corps support group or its lineal descendent to maintain military use within the reserved portions of the armory. The division, and the city of New York, respectively, shall be responsible to repair and maintain their reserved premises, including the costs of





renovation and uninterrupt
lessee or subsequent lessee
the common portions of th
apply all revenues generat
repairs, restoration, refurbi
and the uses therein and th

(c) The corporation, in ca
the power granted it in law,
the foregoing, the powers g
this act shall be utilized b
applicable in respect to th
pursuant to the lease.

(d) In no event shall the
an instrumentality of the st
the lessee or subsequent l
section.

(e) Except with respect
action involving the armo
corporation shall be the l
approving such action for

§ 4. Construction. This
ants, shall be liberally cons

§ 5. Severability clause
tional or be ineffective in
ineffective it shall be valid
account thereof be deemed

§ 6. This act shall take

MUNICIPALITIES—V

AN ACT to amend the gen
community development

*The People of the State*
*follows:*

§ 1. Article 15–B of th
read as follows:

TITLE 119

C(

Section 680–f. Village (

er not applicable. (a) on in connection with ilitary emergency, the ion, refurbishment or reement: section one ed eighty and section

shall apply only with r the lease, and with the operations of the

military emergency, rations of the armory visions shall apply in

in paragraph b of e manager pursuant convenient room or chapters may hold nature, without the s not interfere with gement agreement, ) of this paragraph.

ation, or municipal into an agreement gement agreement 1 the lessee or the er shall provide for

eighty-six and one

Shelter use shall ssee and the state ution of the lease. York state urban o read as follows:

oration is hereby al affairs to enter f of the state and the terms of the 1. The leasing of the management operation thereof nt to the lease is public purposes.

n shall require a nd refurbishment other civic uses. d for a homeless nt with the state remises allocated the current and n shall cause the use within the espectively, shall ng the costs of

ding



renovation and uninterrupted use, and to pay an annual common maintenance charge to a lessee or subsequent lessee to cover allocated costs of repair, maintenance and operation of the common portions of the armory. The lessee or subsequent lessee shall be required to apply all revenues generated by operations at the armory to pay or provide for costs of repairs, restoration, refurbishment, operating, maintenance and programming of the armory and the uses therein and the activities of the lessee or subsequent lessee with respect thereto.

(c) The corporation, in carrying out its authorization under this section may exercise all of the power granted it in law, as if fully enumerated herein. Without limiting the generality of the foregoing, the powers granted to the corporation under sections sixteen and twenty-two of this act shall be utilized by the corporation in its administration of the lease, and shall be applicable in respect to the repair, restoration, refurbishment and operation of the armory pursuant to the lease.

(d) In no event shall the lessee or subsequent lessee be deemed a state actor or an agent or an instrumentality of the state by reason of the lease or this section or any of the activities of the lessee or subsequent lessee with respect to the armory pursuant to the lease or this section.

(e) Except with respect to military use or periods of civil or military emergency, for any action involving the armory that may have a significant effect on the environment, the corporation shall be the lead agency having principal responsibility for carrying out or approving such action for purposes of article eight of the environmental conservation law.

§ 4. Construction. This act, being necessary for the welfare of the state and its inhabitants, shall be liberally construed so as to effect its purposes.

§ 5. Severability clause. If any section, clause or provision of this act shall be unconstitutional or be ineffective in whole or in part, to the extent that it is not unconstitutional or ineffective it shall be valid and effective and no other section, clause or provision shall on account thereof be deemed invalid or ineffective.

§ 6. This act shall take effect immediately.

CHAPTER 483

*Chapter 483 is reserved for future use.*

## MUNICIPALITIES—WESTBURY COMMUNITY DEVELOPMENT AGENCY

CHAPTER 484

S. 520

Approved and effective September 21, 2004

AN ACT to amend the general municipal law, in relation to creating the village of Westbury community development agency

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

§ 1. Article 15-B of the general municipal law is amended by adding a new title 119 to read as follows:

TITLE 119

VILLAGE OF WESTBURY

COMMUNITY DEVELOPMENT AGENCY

Section 680-f. Village of Westbury community development agency.



LIBRARY