# EXHIBIT C

IN THE MATTER OF THE ARBITRATION BETWEEN

| | |
|---|---|
| FEDERAL INSURANCE COMPANY<br>15 Mountain View Road<br>Warren, NJ 07059,<br>    Claimant,<br><br>    v.<br><br>INTERDIGITAL COMMUNICATIONS<br>CORPORATION<br>-and-<br>INTERDIGITAL TECHNOLOGY<br>CORPORATION<br>781 Third Avenue<br>King of Prusssia, PA 19406,<br>    Respondents. | **NOTICE OF CLAIMS<br>AND REMEDIES SOUGHT** |

  In response to the March 6, 2006 Scheduling Order, Federal Insurance Company ("Federal") submits this Notice of Claims and Remedies Sought as a supplement to its October 30, 2003 Demand for Arbitration (the "Demand") in the above-captioned matter, which is annexed hereto as Exhibit 1 and fully incorporated herein by reference.

  1. On February 15, 2000, InterDigital Communications Corporation and InterDigital Technology Corporation (together, "InterDigital") and Federal entered into a Litigation Expense and Reimbursement Agreement (the "Agreement"), annexed hereto as Exhibit 2. That Agreement resolved a long-standing dispute between the parties over Federal's obligations, if any, to finance a protracted patent-infringement lawsuit between Ericsson Radio Systems, Inc. (and other Ericsson-related entities) and InterDigital that had been pending since 1993 (the "Combined Lawsuit").

2.  Federal fully performed its obligations under the Agreement by paying approximately $28,020,210.20 in litigation expenses to or on behalf of InterDigital in connection with the Combined Lawsuit. InterDigital used this money to finance its battle with Ericsson.

3.  Using Federal's money, InterDigital succeeded in its litigation with Ericsson by resolving the Combined Lawsuits pursuant to a settlement agreement executed on March 10, 2003 (the "Settlement"), annexed hereto as Exhibit 3. At the time, InterDigital announced publicly that under the Settlement it stood to receive more than $430 million within twelve months. Indeed, to date, the Settlement has generated more than $106 million in cash payments to InterDigital from Ericsson and Sony Ericsson, as well as $250 million in royalty payments due from Nokia, and has yielded significant additional value for InterDigital, including, among other things, royalty-bearing patent licensing agreements with various entities, non-monetary concessions such as royalty-free licensing agreements that benefited InterDigital, and other payments.

4.  But after InterDigital settled its dispute with Ericsson and the time came for InterDigital to make good on its obligations under the Agreement to *fully and promptly reimburse* Federal, InterDigital decided to disavow the Agreement.

5.  InterDigital must now live up to its end of the bargain and pay Federal the more than $28 million that Federal advanced under the Agreement.

I.  **THE AGREEMENT**

6.  The Agreement was designed to ensure that Federal would be fully and promptly reimbursed in the event of an award from, or a settlement of, the Combined

2

Lawsuit. To this end, the parties explicitly stated their intent that Federal be fully reimbursed no fewer than seven times in the Agreement:

- Paragraph 4: "During any settlement negotiations, [InterDigital] will, in good faith, demand and negotiate for Ericsson to include a separate reimbursement amount for litigation expenses";

- Paragraph 6(a): If any court award or settlement with Ericsson does not contain a separate amount "that results in **complete reimbursement to Federal for all of the litigation expenses it paid to or on behalf of Federal**," Federal is entitled to payments pursuant to 6(a) and 6(c)(i) (emphasis added);

- Paragraph 6(c)(ii): "If it is reasonably projected that Federal will not be **fully reimbursed** within four years from the date of the settlement based on [payments pursuant to ¶¶ 6(a) and 6(c)(i)], Federal will also receive 1.5% of all payments made by Ericsson for engineering services" (emphasis added);

- Paragraph 6(c)(ii): "If the combination of all of the foregoing is not reasonably projected to **fully reimburse Federal** within those four (4) years, Federal may, at its option, seek additional reimbursement" (emphasis added);

- Paragraph 6(f): "If the Combined Lawsuit is resolved or rendered moot [by a sale of assets to Ericsson or any affiliate or a merger with Ericsson], **Federal will be paid . . . the amount that Federal paid for the litigation expenses of the Combined Lawsuit**" (emphasis added);

- Paragraph 6(g): "If the Combined Lawsuit is resolved or rendered moot [by a transaction transferring ownership of Ericsson's assets or shares to InterDigital], **Federal will be paid by the Insureds . . . the amount that Federal paid for the litigation expenses of the Combined Lawsuit**" (emphasis added); and

- Paragraph 6(h): "If the Combined Lawsuit is resolved or rendered moot [by an alliance, joint venture or partnership between InterDigital and Ericsson] . . . then **Federal will be paid by the Insureds . . . the amount that Federal paid for the litigation expenses of the Combined Lawsuit**" (emphasis added).

7. To fulfill that commitment to full reimbursement, the Agreement first required InterDigital to demand in settlement negotiations over the Combined

3

Lawsuit that Ericsson repay the sums advanced by Federal (Ex. 2 at ¶ 4). On information and belief, InterDigital failed to do so, and the Settlement does not contain any such reimbursement provision. (*See* Ex. 3.) Recognizing the possibility that a settlement of the Combined Lawsuit might not expressly provide for Federal's full reimbursement, the Agreement established a specific, phased payment schedule under which Federal would obtain full reimbursement promptly — within four years from the date of the Settlement — so long as the total value of the Settlement exceeded the total amount of litigation expenses paid by Federal to or on behalf of InterDigital. Paragraph 6 of the Agreement states:

> a. In the event there is a court award, or a settlement with Ericsson, and there is not a separate amount reimbursing litigation expenses that results in **complete reimbursement to Federal for all of the litigation expenses it paid to or on behalf of [InterDigital]**, [InterDigital] will pay to Federal, upon receipt of sums paid by Ericsson, the following:
>
> (1) 9% of the first $50 million of the agreed-upon settlement; and
>
> (2) 10% of everything above $50 million of the agreed-upon settlement for the Patents and Claims in Suit.
>
> \* \* \* \*
>
> [c(ii)] If it is reasonably projected that Federal will not be **fully reimbursed within four (4) years from the date of the [S]ettlement** based on the foregoing payments, Federal will also receive 1.5% of all payments made by Ericsson for engineering services. If the combination of all the foregoing is not reasonably projected to **fully reimburse Federal within those four (4) years**, Federal may, at its option, seek additional reimbursement from [InterDigital].... If [InterDigital] and Federal cannot agree on a resolution, the matter will be submitted to arbitration, pursuant to Pennsylvania's Uniform Arbitration Act, before a single arbitrator approved by Federal and [InterDigital],

4

>  for a determination of the additional value to [InterDigital]
>  and its affiliates of the settlement (beyond the cash
>  payments related to the Patents and Claims in Suit and for
>  engineering services) and a determination of the payments
>  to be made to Federal based on such additional value of the
>  settlement agreement....

Ex. 2 at ¶ 6 (emphasis added).

8. In April 2003, InterDigital admitted that Federal was entitled to reimbursement of at least $3.51 million pursuant to the Agreement, equal to 9% of the $39 million in payments that InterDigital expected to receive from Ericsson within four years. (*See* Ex. 4.) Furthermore, as an initial step towards fulfilling its reimbursement obligation, on May 28, 2003 — more than three years after the parties signed the Agreement — InterDigital paid Federal $157,000. InterDigital has refused to pay more.

## II. CLAIMS AND REMEDIES SOUGHT

### A. InterDigital Must Immediately Pay Federal at Least $10.14 Million

9. Under the Agreement, InterDigital has failed to pay at least $10.14 million pursuant to the payment schedule set forth in paragraph 6(a) of the Agreement. (*See* Ex. 2 at ¶ 6(a).)

10. According to its public statements and SEC filings, InterDigital has received cash payments totaling approximately $106.4 million from Ericsson and Sony Ericsson through 2005.[1] All of these payments flow from the Settlement. Consequently, InterDigital must immediately pay Federal 9% of the first $50 million it has received

---

[1] The total cash payments that InterDigital already has received pursuant to the Settlement may, in fact, be more than $106.4 million. For example, InterDigital has stated publicly that Ericsson owes an additional $18 million in infrastructure licensing fees pursuant to the Settlement which may not be reflected in the $106.4 million figure. (*See* Ex. 8 at 3.)

5

($4.5 million) plus 10% of the remaining $56.4 million ($5.64 million), or $10.14 million, plus any statutory or other interest to which Federal is entitled.

11. Both the Settlement and Agreement encompass cash payments and other obligations that Sony Ericsson owes or must perform for InterDigital. The Settlement was conditioned upon InterDigital's receipt of, among other things, cash payments and executed patent licensing agreements whereby InterDigital granted royalty-bearing patent licenses to Ericsson and Sony Ericsson, and in which Sony Ericsson granted InterDigital a non-royalty bearing patent license. (*See* Ex 3.)

12. Moreover, InterDigital has publicly admitted, in the following statements, among many others, that its patent licensing agreement with Sony Ericsson was part of the Settlement and must be considered in calculating the reimbursement it owes Federal:

- In a March 17, 2003 press release entitled "InterDigital and Ericsson Settle Long-Standing Patent Infringement Litigation," InterDigital "announced that its subsidiary, InterDigital Technology Corporation (ITC), has entered into worldwide, royalty-bearing license agreements with Telefonaktiebolaget LM Ericsson and Ericsson, Inc. (Ericsson) and Sony Ericsson Mobile Communications AB (Sony Ericsson) . . . These agreements resolve a long-standing patent infringement litigation with Ericsson scheduled for trial in May 2003." (*See* Ex. 5.)

- In its 2002 Form 10-K filed with the SEC, InterDigital stated that "[o]n March 14, 2003, [InterDigital] and Ericsson Inc. entered into an agreement to settle their longstanding patent infringement lawsuit. In connection with the settlement, [InterDigital] entered into worldwide, royalty-bearing license agreements with [Ericsson] and [Sony Ericsson]." (Ex. 6 at 40.)

- In its 2002 Form 10-K filed with the SEC, InterDigital admitted that its reimbursement obligation pursuant to the Agreement applied to payments from both Ericsson *and* Sony Ericsson, stating, "[w]e expect that a portion (less than 10%) of amounts to

6

       be paid by **Ericsson and Sony Ericsson** will be used by us to satisfy an insurance reimbursement obligation [to Federal]." (*Id.* at 48 (emphasis added).)

- Likewise, in its May 15, 2003 Form 10-Q filed with the SEC, InterDigital stated, "our total obligation [to Federal] would not exceed the lesser of the amounts paid by [Federal] or an amount which is slightly less than 10% of the payments we receive from **Ericsson and Sony Ericsson** under our respective agreements." (Ex. 7 at 12 (emphasis added)).

B. **Because the Combination of Payments Pursuant to Paragraph 6(a) of the Agreement and 1.5% of Payments from Ericsson for "Engineering Services" Will Not Fully Reimburse Federal, Federal Is Entitled to Seek Additional Payments from InterDigital**

13.  As shown above, InterDigital owes Federal at least $10.14 million, which it must pay immediately. Because that amount is less than the $28 million in litigation expenses paid to or on behalf of InterDigital by Federal in connection with the Combined Lawsuit, Federal is also entitled to 1.5% of all payments made by Ericsson to InterDigital for "engineering services" under the Agreement. (Ex. 2 at ¶6(c)(ii).) InterDigital's SEC filings show no engineering services revenue from Ericsson from 2003 through 2005, however. Nevertheless, to the extent that such revenue exists, Federal's reimbursement should come from that source as well.

C. **Because InterDigital Claims the Settlement is Worth More Than $360 Million, It Must Fully Reimburse Federal**

14. The Agreement provides that Federal is entitled to seek additional payments from InterDigital if the combination of payments pursuant to paragraph 6(a) and 1.5% of payments for "engineering services" will not fully reimburse Federal within four years — which it will not — and that an arbitrator can determine the amount and timing of such payments. Assuming InterDigital pays Federal $10.14 million immediately, then Federal is entitled to an award of the balance of the $28 million in

7

litigation expenses Federal paid to or on behalf of InterDigital — around $18 million — in this arbitration.

15. InterDigital claims it has received, or will receive, more than $360 million in additional value from the Settlement in several ways. First, the Settlement was conditioned on InterDigital's receipt of various forms of non-cash consideration, including but not limited to: (1) an option to enter into a "Reference Design License and Support Agreement" with Ericsson Mobile Platforms without paying the $10 million initial fee; and (2) Sony Ericsson's grant of a royalty-free patent license to InterDigital. (*See* Ex. 3.)

16. Second, InterDigital has claimed publicly, and repeatedly, that the Settlement will yield significant additional value because it establishes the terms — through "most-favored nation" clauses and royalty rates — for InterDigital's licensing agreements with other companies, among them, Nokia and Samsung. For example, InterDigital has stated the following:

- In a March 17, 2003 investor and research analyst conference call, InterDigital's CFO stated in connection with the Settlement: "We believe we have taken a major step forward in that regard, with the signing of these agreements with Ericsson and Sony-Ericsson. If you take what I've just covered, the potential, aggregate cash flow from Ericsson, Sony-Ericsson, Nokia and Samsung in the next twelve months could conceivably be 360-430 million dollars with additional upside." (Ex. 8 at 4.)

- In its March 17, 2003 press release InterDigital stated that the license agreements with Ericsson and Sony Ericsson "resolve a long-standing patent infringement litigation with Ericsson . . . [and] define the royalty obligations of [Nokia] and [Samsung] . . . under their existing patent licensing agreements with ITC," which InterDigital valued at $300 to $360 million. (Ex. 5 at 1.)

8

- In its 2002 Form 10-K filed with the SEC, InterDigital stated: "The license agreements with Ericsson and Sony Ericsson establish the financial terms necessary to define the royalty obligations of [Nokia] and [Samsung] . . . under their existing patent licensing agreements with [InterDigital]. Under the most favored licensee (MFL) provision applicable to their respective patent licenses, both companies are obligated to pay royalties on sales of covered products from January 1, 2002 by reference to the terms of the Ericsson and Sony Ericsson licenses." (Ex. 6 at 23-24.)

17. InterDigital has already started receiving some of this additional value. On June 11, 2005, a panel of arbitrators determined that Nokia is "liable to InterDigital for approximately $250 million in royalty payments" in connection with Nokia's royalty obligations that were defined by the Settlement, and the Southern District of New York recently confirmed that award. *InterDigital Communications Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 525-26 (S.D.N.Y. 2005).

18. Under the Agreement, all such additional value must be considered in determining the amount of reimbursement owed Federal, and the schedule according to which InterDigital must pay Federal. (*See* Ex. 2 at ¶ 6(c)(ii).)

19. Federal reserves the right to assert any and all additional claims and to claim any additional damages that it may have suffered, or may suffer, as a result of InterDigital's breach of the Agreement and its refusal to perform obligations under and pursuant to the Agreement.

## CONCLUSION

For the foregoing reasons, Federal thus reasserts and supplements its October 30, 2003 Demand.

Dated: New York, New York
March 10, 2006

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

BY: _____
Mark Pomerantz
H. Christopher Boehning
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Claimant Federal Insurance Company*