*Seventh Regiment Fund* v. *Pataki*, 179 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2002). The Court's opinion is supported by well-settled case law. *See, e.g., Williamson County Reg'l Planning Comm'n* v. *Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985) ("[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."); *Villager Pond, Inc.* v. *Town of Darien*, 56 F.3d 375, 379 (2d Cir.1995) (takings claim is not ripe for federal court review "until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State.").

The Fund Action plaintiffs never brought these claims in state court, and their failure to do so demonstrates their awareness that they had no colorable claims. Plaintiffs in this case have also failed to allege exhaustion of state remedies. It is clear that their filing of the same claims in federal court is merely for the purpose of harassing defendants and interfering with the Conservancy's valuable project.

    **B.**    **Plaintiffs Fail to Allege Any Violation of a Protectable Right.**

To have standing to bring a claim, plaintiffs must allege that they "have suffered an "injury in fact"- an invasion of a judicially cognizable interest which is…concrete and particularized and…actual or imminent, not conjectural or hypothetical." *Bennett* v. *Spear,* 520 U.S. 154, 167 (1997). The party asserting federal jurisdiction bears the burden of establishing standing. *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Plaintiffs fail, however, to allege facts showing that Chapter 482 or the Conservancy lease deprive them of any protectable right or interest.

Plaintiffs allege that they have a right of access to the Armory based on Section 183 of the New York Military Law, which provided that veterans' groups could

have access to the Armory on application to the officer in charge of the Armory. Section 183 no longer applies to the Armory. Access to the Armory is now governed by N.Y. Mil. Law § 180-a, which Chapter 482 amended to provide veterans' groups access to the Armory. N.Y. Mil. Law § 180-a(3)(c)(i) provides that:

> *On application* of any of the associations of veterans described in paragraph b of subdivision one of such section one hundred eighty-three, the lessee or the manager pursuant to the terms of the management agreement shall provide a proper and convenient room or rooms or other appropriate space in the armory where such posts or chapters may hold regular and special meetings and organizational social events of a private nature, without the payment of any charge or expense therefor, provided that such use does not interfere with the use by the lessee or the manager pursuant to the terms of the management agreement, including any use by third parties contracted for under subparagraph (ii) of this paragraph. (emphasis added)

N.Y. Mil. Law § 180-a(3)(c)(i). Section 180(a)(3)(c)(i) parallels Section 183, merely shifting the responsibility of granting access to the Armory from the officer in charge of the Armory to the lessee of the Armory, the Conservancy.

Contrary to plaintiffs' assertions that Chapter 482 infringes upon their rights to the Armory, Chapter 482, as demonstrated, expressly requires that the Armory continue to be made available to veterans' groups. Plaintiffs have not shown and cannot show how any rights they may have are infringed by Chapter 482 or the lease to the Conservancy that the statute authorizes. Chapter 482 does not operate to bar veterans' groups from meeting in and using the Armory, and in fact, veterans' groups continue to do so.

Moreover, even if Chapter 482 could be construed to limit rights that plaintiffs enjoyed under Section 183, the Legislature is free to do so. Nothing in state

21

law, or in the United States Constitution, prohibits New York lawmakers from amending the State's own statutes. Thus, if Chapter 482 limits plaintiffs' alleged rights under pre-existing law, it was within the powers of the legislature to do so and such an act is not a constitutional violation. *See Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992) ("Having enacted a statute that created... a right, ... the legislature retains the power to enact new legislation altering or eliminating the right, and that elimination does not contravene the Due Process or Takings Clauses of the Constitution.").

Plaintiffs' claim also fails because they have not alleged any violation of New York Military Law Section 180-a(3)(c)(i) – the complaint does not claim that plaintiffs have applied for and been denied access to the Armory. Therefore, plaintiffs' claim should be dismissed for failure to allege injury. *See Lee v. Bd. of Governors of Fed. Reserve Sys.*, 118 F.3d 905, 912 (2d Cir. 1997) (holding that plaintiffs lacked standing to challenge the defendant's allegedly discriminatory credit practices because they did not allege that they had had suffered discrimination from defendants); *Schutz v. Thorne*, 415 F.3d 1128, 1134-35 (10th Cir. 2005) (plaintiff failed to allege injury by passage of statute allegedly limiting hunting in certain areas when he failed to show that he had applied to hunt in those areas and been denied access); *Women's Emergency Network v. Bush*, 323 F.3d 937, 946-47 (11th Cir. 2003) (plaintiffs failed to allege that their First Amendment rights had been violated by specialty license plate law when State had not rejected plaintiffs' license plate application).

Plaintiffs also allege that they have been injured because they, as members of the Historical Society, have been prevented by the lease of the Armory to the Conservancy from "[establishing] and [operating] a military history museum and

interpretive programs in the Armory's historic spaces for public education." (Compl. ¶ 69.) Plaintiffs have failed to allege that Chapter 482 and the Conservancy's lease infringed upon any of their rights here. Although a charter by the New York State Education Department permits plaintiffs to establish a museum, it does not give them a right to do so. Nor does the charter say that such museum is to be located in the Armory. The charter of the Historical Society states only that one of the purposes of the Historical Society is "to maintain a museum and library for the care and custody [of memorabilia pertaining to the Seventh Regiment]." *See* Constitution and Bylaws, 107th Infantry Regiment (Seventh New York) Historical Society, dated October 23, 1964, attached as Exhibit 12 to the Chen Decl. The Historical Society thus has not been injured by the enactment of Chapter 482 or lease of the Armory to the Conservancy.[5]

      Moreover, the Historical Society was founded in 1964, and the Conservancy's proposal for the Armory was not granted until 2001. Plaintiffs and the Historical Society had ample time, 37 years in fact, to establish their museum. They have not alleged that during that time they sought to establish a museum in the Seventh Regiment and were denied. In fact, they do not allege that a single step was taken to establish this museum. Only after the DMNA and ESDC granted the Conservancy's proposal to renovate and restore the now dilapidated Armory have plaintiffs come

---

[5] Plaintiffs have accused the Conservancy defendants of making false statements that the Conservancy has plans for a museum in the Armory. (*See* Compl. ¶ 55-60.) First, defendants had every right to make these statements and there do not appear to be any claims based on these representations. Second, the fact that the Conservancy's charter does not permit it to operate a museum (Compl. ¶ 59), does not render defendants' statements false. Although an organization is required to be chartered as a museum in order to hold collection items, *see* N.Y. Educ. Law § 216, the Conservancy may display objects of historical significance owned by the State of New York without becoming a museum.

forward to assert the Historical Society's alleged right to establish a museum in the Armory. The failure to allege even a single step taken to establish this museum shows that this claim is merely pretextual.[6]

### C. Plaintiffs Fail to State a Section 1983 Claim Because They Fail to Allege That the Conservancy Defendants Were Acting Under Color of State Law.

Plaintiffs fail to state a Section 1983 claim against the Conservancy, a private, non-governmental, non-profit corporation, and the individual Conservancy defendants, director and employees of the Conservancy. It is well-established that to state a claim under 42 U.S.C. §1983 "a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). A private actor does not act under color of state law unless "the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). Furthermore, "a plaintiff bears the burden of proof to establish that the acts of private persons or entities constitute state action under section 1983." *Omnipoint Commc'n Inc. v. Comi*, 233 F. Supp. 2d 388, 394 (N.D.N.Y. 2002) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). A merely conclusory allegation that a private entity or persons acted in concert with a state actor does not suffice to state a §1983 claim against the private entity. *See Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).

Plaintiffs contend that defendants, including the Conservancy defendants, entered into a conspiracy to deprive plaintiffs of their rights in the Armory. More

---

[6] The disingenuousness of this claim is evidenced by a presentation made by plaintiffs' counsel to a neighborhood group which discusses the use of museum as pretext for litigation. *See* New Armory Initiative Presentation, dated May 30, 2007, attached as Exhibit 13 to the Chen Decl.

24

specifically, plaintiffs allege that the Conservancy defendants engaged a law firm to write Chapter 482 – passed by the State Legislature – by which possession of the Armory transferred to the Conservancy. (Compl. ¶¶ 47-48.) Plaintiffs further allege that "[t]he ability of these defendants to have the Legislature unanimously pass complex legislation crafted by their own lawyers in the closing hours of the legislative session, with no debate, demonstrates that these defendants have disproportionate influence and power in the political process."[7] (*Id.* ¶ 77.)

Proposing and drafting legislation, however, does not constitute state action for purposes of a §1983 claim, because it is the legislature that ultimately "[accepts] Defendants' advice and [enacts] the proposed legislation." *Comi*, 233 F. Supp. 2d at 395 (holding that consultants that drafted the language of a local ordinance regulating construction of communications towers were not state actors even if they were "actively involved in the legislative process"). As the court in *Comi* explained, "[w]here a private actor merely provides professional advice, such advice cannot be considered state action for purposes of section 1983." *Id.* (citation omitted). As the court explained, if it adopted plaintiff's contention that the defendants were state actors, "any private citizen that recommended proposed legislation or drafted proposed legislation that was subsequently declared unconstitutional would be subject to liability under section 1983." *Id.* The court found that this was not the kind of action Section 1983 was intended to reach. *Cf. Chapel Farm Estates, Inc. v. Moerdler*, No. 01-CV-3601(MBM), 2003 WL 21998964, at *6 (S.D.N.Y. Aug. 22, 2003) (holding that lobbying is not state action as

---

[7] Plaintiffs are incorrect – the Legislature's vote on Chapter 482 was not unanimous. *See* Roll Call Vote in New York State Assembly and New York State Senate, 2004 N.Y. Laws Ch. 482, attached as Exhibit 14 to the Chen Decl.

25

Section 1983 "does not afford a remedy for injuries that may be sustained as an incident to private individuals' exercise of their fundamental rights to assemble, petition and associate for the purpose of influencing openly and without force officials of state and local governments.") (citations and quotation omitted); *Concourse Nursing Home v. Engelstein*, No. 95-CV-1666(WK), 1997 WL 672015, at *2-3 (S.D.N.Y. Oct. 29, 1997) (same). The same concerns are implicated here, and serve as additional grounds to deny plaintiffs' efforts to hold the Conservancy Defendants liable for any alleged participation in the legislative process.

The legislative memorandums submitted in support of the Act and the statute itself clearly described what the statute was to do, and there is no allegation, nor could there be, that New York's legislators did not understand what they were enacting or were somehow tricked into enacting a statute they did not intend to enact. The language of a statute merely effectuates what the legislature seeks to do, and the fact that a private party proposes such legislation does not imply an improper interference with the legislative process. Furthermore, the legislation allegedly drafted by the Conservancy's counsel was in fact substantially changed from the proposal to the version eventually enacted. Plaintiffs' allegations that the Conservancy was somehow improperly involved in the legislative process are baseless.

### D. Plaintiffs May Not Bring a Takings Claim Alleging that the Seventh Regiment Has Been Deprived of Its Property Because Only the Owner of an Interest in the Property Can Assert a Claim.

Plaintiffs also attempt to assert takings claims on behalf of the Seventh Regiment, alleging that Chapter 482 transferred control of the Armory from the Regiment to the Conservancy. (Claims 1 and 2, Compl. ¶¶ 70-78.) They also allege that rental revenues from the Armory are rightly the property of the Regiment, and seek a

26

constructive trust on all funds received by the Conservancy, past and future, and an accounting of all Armory revenues and rental incomes. (Claim 6, Comp. ¶¶ 95-100.)

    These claims should be dismissed because plaintiffs do not have standing to bring claims on behalf of the Seventh Regiment. First, as discussed above, the Seventh Regiment is the State. Second, plaintiffs are not alleged to have any ties to the Seventh Regiment. Although the complaint alleges that Plaintiffs Fitzgerald, Wells and Siller are veterans, it does not allege that they have authority to represent the Seventh Regiment. It does not allege that they are members of the Seventh Regiment. (Compl. ¶¶ 3-5.) Indeed, the Disabled American Veterans Department of New York, Inc. is a private, non-profit organization with no official ties to the Seventh Regiment. (Compl. ¶ 6.) Plaintiffs thus do not have standing to bring claims for the taking of the State's property; those claims belong solely to the State. *See U.S. Olympic Committee v. Intelicense Corp., S.A.*, 737 F.2d 263, 268 (2d Cir. 1984) ("Only the owner of an interest in property at the time of the alleged taking has standing to assert that a taking has occurred."); *R & V Dev., LLC v. Town of Islip*, No. 05-CV-5033 (DRH)(MLO), 2007 WL 14334, at *2 (E.D.N.Y. Jan. 3, 2007).

    Furthermore, there has been no taking of property. It was the State which leased the property to the Conservancy, and of course, the State may do what it wants with its own property. Chapter 482 also provides that under the lease with the Conservancy there shall be continuing military use of the Armory for regimental purposes. *See* N.Y. Mil. § 180-a(1)(h). The DMNA and the Seventh Regiment are still in the Armory. DMNA has offices at the Armory, as does the Seventh Regiment, now

the Headquarters 53d Army Liaison Detachment of the New York Army National Guard. Plaintiffs' taking claims on behalf of the Seventh Regiment should be dismissed.[8]

### E. Plaintiffs Fail to State a Claim for the Unconstitutionality of Chapter 482 Because the Use is a Public Use.

Plaintiffs also allege that the alleged transfer of the Armory from the Seventh Regiment to the Conservancy violates the requirement that takings be for a "public use." (Comp. ¶¶ 74-78.) The Public Use Clause, however, only prohibits the taking of private property "for the benefit of another private person without a justifying public purpose." *Rosenthal & Rosenthal v. N.Y. State Urban Dev. Corp.*, 771 F.2d 44, 46 (2d Cir. 1985). Since the Armory is the property of the State, there is no taking of private property subject to the Public Use Clause. Furthermore, the type of use envisioned by the Conservancy – a visual and performing arts center open to the public – is clearly a public use. *See Hotel Dorset Co. v. Trust for Cultural Res. of City of New York*, 46 N.Y.2d 358, 375 (1978) (Breitel, C.J., dissenting) (agreeing with majority that "it is obvious that an expansion of an important museum is a public use for which the grant of eminent domain power may be appropriate. This would be true even if the expansion were accompanied

---

[8] The Complaint cites *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) in support of the claim that the taking of the Armory from the Seventh Regiment is a violation of due process (Claim 1). In that case, a plurality of the Court held that retroactive legislation requiring a former coal operator to fund health benefits for retired miners who had worked for the operator before it left the coal industry violated the Takings Clause. *Id.* at 538. The Court – applying a particular framework used to evaluate economic legislation – found that the legislation at issue imposed severe retroactive liability that could not have been anticipated by the coal operator and that was substantially disproportionate to the coal operator's experience. *Id.* at 529-36. The Court did not address the coal operator's due process claim, *id.* at 537-38, and only Justice Kennedy, in a concurring opinion joined by no other Justices, found that the Due Process framework should be applied, and that the legislation was invalid as violative of the Due Process Clause. *Id.* at 549-50. *Eastern Enterprises* bears no factual similarity to plaintiffs' case and does not support plaintiffs' contention that Chapter 482 should be invalidated as contrary to the Due Process Clause.

by incidental use for revenue producing purposes."); *see also Shoemaker v. U.S.*, 147 U.S. 282, 297 (1893) (park is public use); *In re Condemnation*, 107 Pa. Cmmw. Ct. 235 (Pa.1985) (same); *County of Los Angeles v. Anthony*, 224 Cal. App. 2d 103 (1964) (museum is public use). In fact, the case that plaintiffs cite in support of their claim, *Kelo v. City of New London, Conn.*, 545 U.S. 469 (2005), found that even a taking of real property for use as restaurant, retail and office space was a public use where it was intended to revive an economically depressed and blighted urban area. *Kelo,* 545 U.S. at 483-84. If a shopping and commercial district serves a public purpose, surely a public visual and performing arts center serves it as well.

Indeed, the New York Supreme Court has already determined in this case that the Conservancy's use "will save an irreplaceable State landmark for future generations," "will create an important public cultural center," "will sustain the women's shelter within its walls," "will maintain the entire facilities of the Armory for military use in times of need" and thus that it "is in the public interest and is a public use." *Dalva v. Pataki*, No. 116965/05, Slip Op. at 17 (N.Y. Sup. Ct. March 3, 2006) (emphasis added).

Although plaintiffs contend that the use is private because the Conservancy is a private organization (Compl. ¶¶ 72, 74-75), *Kelo* holds that the sale and lease of condemned land to private developers constitutes a "public use" even if the property is turned over to private organizations. Said the *Kelo* court, "the government's pursuit of a public purpose will often benefit individual private parties…but [t]he public end may be as well served through an agency of private enterprise than through a department of government… We cannot say that public ownership is the sole method of promoting the public purposes of community redevelopment projects." *Id.* at 485-86.

29

Plaintiffs' allegation that the Conservancy will benefit from the state's plan does not make the intended use of the Armory private.

The allegation that the Armory will only be open to members of the public who pay to attend its shows or dine in its restaurants (Compl. ¶¶ 61- 67), while not true, does not make the use an impermissibly private one. Indeed, the Supreme Court "long ago rejected any literal requirement that condemned property be put into use for the general public," holding instead that the "public use" means a use that serves a "public purpose." *Kelo*, 545 U.S. at 479.

The New York State Legislature has found that "*it is in the public interest for the state….to enter into a public/private relationship with a not-for-profit corporation dedicated to the preservation of the armory as a historical, civic and cultural facility for the community to undertake the renovation and operation of the armory.*" 2004 N.Y. Laws Ch. 482, § 1. This decision should be respected. *See Kelo*, 545 U.S. at 482 (courts owe "great respect" to the decisions of state legislature and state courts in discerning local public needs.).

Plaintiffs have failed to show that the alleged taking was for an improper private purpose. Accordingly, their takings claims should be dismissed and their request to have Chapter 482 declared unconstitutional and enjoined denied.[9]

---

[9] Plaintiff also request that this Court enjoin "any attempt by the ESDC to dispose of the Armory's valuable air rights transferred to it by the same statute." (Compl. ¶ 78.) This paragraph is the only mention of air rights in the complaint. Plaintiffs do not explain why this should be enjoined and what standing plaintiffs have to make this request. There is, in fact, currently no proposal to dispose of the air rights, and plaintiffs do not allege that there is. There is nothing to be enjoined and therefore this request should be denied.

### F. Plaintiffs May Not Bring a Claim For the Armory Rental Revenues Because Neither Plaintiffs Nor the Seventh Regiment Was Entitled to Them as a Matter of State Law.

Plaintiffs' claim that Chapter 482 effects a taking of the Armory's rental revenues should also be dismissed because such revenues have never been retained by the trustees of the Armory or any other representative of the Regiment or Armory. Prior to the enactment of Chapter 482, N.Y. Military Law § 183(5), which applied to all of the State's armories, dictated the destination of such revenues. The law provided that "fifty percent of all moneys paid as rent . . . together with all sums paid to cover expenses of heating and lighting, shall be transmitted . . . to the state treasury." N.Y. Military Law § 183(5). The law further provided that "[t]he balance of such moneys paid as rent . . . shall be transmitted to the adjutant general . . . [who] shall then apportion and divide the same to and among all the units of the organized militia located within the state . . . ." *Id.*

Chapter 482 changes that structure by providing that the lessee (in this case the Conservancy):

> shall be required to apply all revenues generated by operations at the Armory to pay or provide for the costs of repairs, restoration, refurbishment, operating, maintenance and programming of the Armory and the uses therein and the activities of the lessee or subsequent lessee with respect thereto.

2004 N.Y. Laws ch. 482, § 3. That change, however, does not constitute a taking of plaintiffs' or the Seventh Regiment's property since under the prior law, they were not entitled to any portion of the Armory's rental revenues. Accordingly, plaintiffs are not entitled to a constructive trust and accounting of the rental revenues.

### G. Plaintiffs Are Not Entitled to a Constructive Trust and Accounting.

31

In addition, constructive trusts and accountings are equitable forms of relief to which plaintiffs are not entitled. Under New York law, a party seeking a constructive trust must ordinarily establish: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereon and (4) unjust enrichment. *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 669 (S.D.N.Y. 2007). The basis for an accounting remedy is the existence of a fiduciary relationship "created by the plaintiff entrusting to the defendant some money or property with respect to which the defendant is bound to reveal his dealings." *Id.* at 668 (citations omitted).

In this case, however, plaintiffs have no relationship, fiduciary or otherwise, to the Conservancy; there were no promises exchanged between the Conservancy and plaintiffs; there was no transfer of assets or funds from the plaintiffs to the Conservancy; and the Conservancy has not been unjustly enriched. Accordingly, plaintiffs are not entitled to either form of relief. *See Richard Greenshields Sec. Inc. v. Lau*, 819 F. Supp. 1246, 1268 (S.D.N.Y. 1993) (dismissing claim for constructive trust where party seeking trust failed to show the existence of a fiduciary duty or that any false or misleading promises were made to induce reliance); *AMP Serv. Ltd. v. Walanpatrias Found.*, 824 N.Y.S.2d 37, 39 (N.Y. App. Div., 1st Dep't 2006) (dismissing action for accounting where there were no allegations from which a fiduciary relationship between plaintiff and defendant with respect to the subject matter of the controversy might be inferred).

### H. Plaintiffs May Not Bring a Claim for Impairment of the 1874/1879 Lease or for Tortious Interference With the Lease Because They Are Not Parties to the Lease.

Plaintiffs have no standing to bring claims for impairment of the 1874/1879 lease between the City and the State of New York or tortious interference with

the lease because they are not parties to the lease. The Court in the *Dalva* Action found that "the question of whether the Armory itself has or will revert to the City by virtue of the reverter clause in the 1874 Lease is a matter between the lessee and the lessor [the State and the City of New York], and not one in which Dalva has shown any right to intrude." *Dalva v. Pataki*, No. 116965/05, Slip Op. at 16 n.4 (N.Y. Sup. Ct. March 3, 2006). Plaintiffs have the same standing problem here. They are neither the City nor the State of New York and their claims for violation of the Contracts Clause, Art. 1, Section 10 of the U.S. Constitution and tortious interference with the Armory lease (Claims 3 and 5) should be dismissed for lack of standing. *See Wells Fargo Bank N.W., N.A. v. Energy Ammonia Transp. Corp.*, No. 01-CV-5861, 2002 WL 1343757, at *1 (S.D.N.Y. June 17, 2002) ("Since . . . defendants are neither parties to, nor third-party beneficiaries of [the contract] they lack standing to bring a claim for tortious interference with that contract."); *see also Morris v. City of Buffalo*, No. 97-CV-0134E(M), 1998 WL 268954 at *2 (W.D.N.Y. Apr. 30, 1998) (to bring a claim based on the Contracts Clause, one must be a party to the contractual relationship).

The claim should also be dismissed because plaintiffs have failed to allege that the Act breaches the 1874/1879 lease. The lease, by its terms, states that the Armory must be used for "the purposes of an Armory and Drill Rooms *or the public purposes of said regiment or in furtherance of such public purposes.*" (1874 Lease.) (emphasis added) As the *Dalva* Court determined, the use of the Armory as a cultural arts center, regiment headquarters, and homeless shelter clearly fulfills public purposes. The Court found that the legislation "will save an irreplaceable State landmark for future generations," "will create an important public cultural center," "will sustain the women's

33

shelter within its walls," "will maintain the entire facilities of the Armory for military use in times of need" and that "[a]ll of these uses will, as set forth in the statement of legislative intent, inure to the "health, safety, welfare, and education of the State of New York" and thus that "the Armory project is *in the public interest* and that State has a substantial interest in its completion." *Dalva v. Pataki*, No. 116965/05, Slip Op. at 17 (N.Y. Sup. Ct. March 3, 2006) (emphasis added).

This finding – that the Armory project is in the public interest because it increases the State's ability to protect its citizens, to make cultural offerings available to its citizens, to provide for the homeless, and to preserve an important historical landmark – is well-supported by case law on what constitutes a public purpose. *See* discussion, Section E, *supra*.

Plaintiffs acknowledge that the Armory has already been used for many years as a venue for art and antique shows and as a homeless shelter, uses that will be continued pursuant to the Act. (Compl. ¶¶ 33-34.) Although plaintiffs' position appears to be that the lease does not permit any portion of the Armory to be used for anything except as an armory and training facility (*Id.* ¶¶ 18, 92-94), plaintiffs have not challenged the use of the Armory as a venue for art and antique shows and as a homeless shelter.

### I.   Plaintiffs May Not Bring a Claim for Violation of the Urban Development Corporation Act

1. Plaintiffs' Claim is a Challenge to the Decision of a State Administrative Procedure and Should Have Been Brought as an Article 78 Proceeding in State Court.

Plaintiffs' claim that the ESDC lease should be voided for "fraud and failure to comply with the UDCA in 'material respects'" is not properly before this Court. Under New York law, when a plaintiff seeks to assert that a determination of a

34

governmental body or public official is "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" and seeks nullification of such action, an Article 78 proceeding – an administrative procedure used to challenge specific agency actions – is the appropriate vehicle to address the claim. *Abiele Contrac., Inc. v. New York City Sch. Constr. Auth.*, 666 N.Y.S.2d 970, 972-73 (N.Y. 1997) (citing N.Y. C.P.L.R. § 7803(3) (McKinney's 2003)). However, New York law vests jurisdiction over Article 78 proceedings solely in the state courts, *see* N.Y.C.P.L.R. § 7804(b) (McKinney's 2003) ("A proceeding under this article shall be brought in the supreme court in the county specified [by statute]."), and district courts sitting in New York have refused to impinge upon that exclusive jurisdiction. *See Blatch v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) ("This [Article 78] claim must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims"); *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003) ("State law does not permit Article 78 proceedings to be brought in federal court, and hence I conclude that I do not have the power to exercise supplemental jurisdiction over [plaintiff's] Article 78 claims.").

The Second Circuit has held that a district court lacks subject matter jurisdiction to hear claims alleging a due process violation of property or liberty when the plaintiff has failed to pursue the alleged underlying constitutional violation in an Article 78 proceeding, and the allegation is that state agencies have engaged in random and unauthorized acts. *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881-82 (2d Cir. 1996); *see also Reyes v. Erickson*, 238 F. Supp. 2d 632, 636 (S.D.N.Y. 2003) (court lacked jurisdiction over § 1983 due process claim brought by

tenants of city-owned apartments challenging transfer of buildings to neighborhood entrepreneurs pursuant to a city program, where plaintiffs failed to seek remedies in Article 78 proceeding). This rule applies here and prohibits plaintiffs from seeking relief before this Court.

       2.     Plaintiffs' Claim is Barred by the Statute of Limitations.

Moreover, at this point, plaintiffs are also barred from bringing their claim in an Article 78 proceeding. Article 78's statute of limitation provides that a proceeding against a body or officer "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents" or "after the respondent's refusal, upon the demand of the petitioner…to perform its duty." N.Y. C.P.L.R. § 217(1) (McKinney's 2003). Plaintiffs challenge the procedure followed by the ESDC to authorize the execution of the lease, arguing that it was in violation of the UDCA. The ESDC's grant of the lease to the Conservancy in November 2006 is the point at which the agency's determination became "final and binding," and therefore the point at which the statute of limitations began to run. Since the lease was granted far more than four months ago, plaintiffs' claim is also time barred. *See Hellenic American Neighborhood Action Comm.*, 101 F.3d at 881 (finding that plaintiff could not "resuscitate its due process claim [through its Section 1983 action] simply because an Article 78 proceeding is now barred by Article 78's four-month statute of limitations" and that plaintiff "was not deprived of due process simply because it failed to avail itself of the opportunity [to bring an Article 78 proceeding].") (quotations and citations omitted).

### J. The Doctrine of Laches Bars All of Plaintiffs' Claims.

The venerable maxim, "equity aids the vigilant, not those who slumber on their rights" is particularly appropriate here. *See* 7A Weinstein, Korn & Miller, New York Civil Practice ¶ 6301.24 (1993 ed.). Laches bars relief when a party is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the [respondent]." *In re Shea & Gould*, 214 B.R. 739, 749 (Bankr. S.D.N.Y. 1997) (quoting *Ivani Contracting Corp.* v. *City of New York,* 103 F.3d 257, 260 (2d. Cir. 1997). Plaintiffs having slept on their rights, plaintiffs' action is now barred by the doctrine of laches.

Plaintiffs have delayed almost three years after the passage of the Act to challenge its constitutionality. Plaintiffs were indisputably aware of the passage of the Act, as plaintiff Fitzgerald was the head of the Fund which brought the Fund Action in and the Chu Action in 2006. Plaintiffs were also undoubtedly aware of the Conservancy's ongoing expenditure of time, effort and money in planning the renovation and restoration and the programming for the visual and performing arts center. Such unreasonable and unwarranted delay, to the detriment of the Conservancy, clearly triggers laches. *See Schulz* v. *Schulz*, 8 N.Y. 2d 336, 348-49 (N.Y. 1993) (holding that constitutional challenge to public financing statute was barred by laches where state had already issued bonds to investors and other nonbond transactions were already carried out); *In re Shea & Gould*, 214 B.R. at 749-50 (denying Trustee's motion to dismiss Chapter 11 case because Trustee could have moved for relief 19 months ago when petition was filed and other parties would be prejudiced by the granting of the motion at that late stage); *Saratoga Vichy Spring Co., Inc.* v. *Lehman*, 625 F.2d 1037, 1041-42 (2d Cir. 1980) (failure of trademark owner to take any affirmative action to protect its rights during time that mark was in process of being revived, when alleged infringer had relied

on acquiescence to enter into business, resulted in its action being barred by laches); *see also New Era Publ'ns Intern., ApS* v. *Henry Holt and Co., Inc.*, 873 F.2d 576, 584-85 (2d Cir. 1989) (denying preliminary injunction barring publication of book alleged to have infringing material where copyright owner had delayed unreasonably until after publisher had printed and shipped thousands of copies).

"The essential element of this equitable defense is delay prejudicial to the opposing party." *In re Barabash's Estate*, 31 N.Y. 2d 76, 81 (N.Y. 1972). Plaintiffs easily could have moved for this same relief long ago. Had plaintiffs timely challenged the Act when it was passed in 2004, the Conservancy would have suspended further action on the project and thus the adverse impact on the Conservancy would have been greatly reduced. Plaintiffs' delay, however, ensures that any relief entered today will wreak significant injury on the Conservancy. Accordingly, laches bars their claims.

## Conclusion

For the foregoing reasons, the Conservancy defendants respectfully submit that their motion to dismiss be granted, and all claims against them in the Complaint be dismissed with prejudice.

Dated:   New York, New York
October 4, 2007

                      PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                      By:  /s/ Lewis R. Clayton
                           Lewis R. Clayton
                           Peggy S. Chen
                           Barbara Llanes

                      1285 Avenue of the Americas
                      New York, New York 10019
                      (212) 373-3000

                      Attorneys for Defendants Wade F.B. Thompson, Elihu Rose, Arie L. Kopelman, Stephen Lash, Edward Klein, Rebecca Robertson, Kirsten Reoch and the Seventh Regiment Armory Conservancy, Inc.