UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KENYON B. FITZGERALD, JR., PETER
SCOVILLE WELLS, SIDNEY SILLER,
and DISABLED AMERICAN
VETERANS DEPARTMENT OF NEW
YORK, INC.,

                Plaintiffs,

              v.

WADE F. B. THOMPSON, ELIHU ROSE,
ARIE L. KOPELMAN, STEPHEN LASH,
EDWARD KLEIN, REBECCA
ROBERTSON, KIRSTEN REOCH,
CHARLES GARGANO, WILLIAM
SHERMAN, CAROL BERENS, JOHN
DOE, MARY ROE and SEVENTH
REGIMENT ARMORY
CONSERVANCY, INC.,

              Defendants.

---

Case No. 07 CIV 6851 (BSJ) (DCF)

## MEMORANDUM OF LAW IN SUPPORT OF THE CONSERVANCY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

Attorneys for Defendants Wade F.B. Thompson,
Elihu Rose, Arie L. Kopelman, Stephen Lash,
Edward Klein, Rebecca Robertson, Kirsten Reoch
and the Seventh Regiment Armory Conservancy,
Inc.

October 4, 2007

## Table of Contents

**Page**

Table of Contents ................................................................................. i

Table of Authorities ........................................................................... iii

Preliminary Statement ........................................................................ 1

Statement of Facts .............................................................................. 5

Argument .......................................................................................... 18

I.      STANDARD ON A MOTION TO DISMISS ....................................... 18

II.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS
       ENTIRETY. ................................................................................. 19

       A.     Plaintiffs May Not Bring Takings Claims Because They Have Not
              Alleged That They Have Exhausted State Remedies to Obtain
              Compensation. ................................................................... 19

       B.     Plaintiffs Fail to Allege Any Violation of a Protectable Right. ............. 20

       C.     Plaintiffs Fail to State a Section 1983 Claim Because They Fail to
              Allege That the Conservancy Defendants Were Acting Under
              Color of State Law. ............................................................ 24

       D.     Plaintiffs May Not Bring a Takings Claim Alleging that the
              Seventh Regiment Has Been Deprived of Its Property Because
              Only the Owner of an Interest in the Property Can Assert a Claim. ......... 26

       E.     Plaintiffs Fail to State a Claim for the Unconstitutionality of
              Chapter 482 Because the Use is a Public Use. ........................... 28

       F.     Plaintiffs May Not Bring a Claim For the Armory Rental Revenues
              Because Neither Plaintiffs Nor the Seventh Regiment Was Entitled
              to Them as a Matter of State Law. ......................................... 31

       G.     Plaintiffs Are Not Entitled to a Constructive Trust and Accounting. ....... 31

       H.     Plaintiffs May Not Bring a Claim for Impairment of the 1874/1879
              Lease or for Tortious Interference With the Lease Because They
              Are Not Parties to the Lease. ................................................ 32

       I.     Plaintiffs May Not Bring a Claim for Violation of the Urban
              Development Corporation Act ............................................... 34

1.      Plaintiffs' Claim is a Challenge to the Decision of a State Administrative Procedure and Should Have Been Brought as an Article 78 Proceeding in State Court. .................................. 34

2.      Plaintiffs' Claim is Barred by the Statute of Limitations. ............ 36

J.     The Doctrine of Laches Bars All of Plaintiffs' Claims............................ 37

Conclusion ............................................................................................................. 39

## Table of Authorities

**Page**

### CASES

*AMP Serv. Ltd. v. Walanpatrias Found.,*
    824 N.Y.S.2d 37, 39 (N.Y. App. Div., 1st Dep't 2006) ........................................ 32

*Abiele Contrac., Inc. v. New York City Sch. Constr. Auth.,*
    666 N.Y.S.2d 970 (N.Y. 1997) ................................................................................ 35

*In re Barabash's Estate*, 31 N.Y.2d 76 (N.Y. 1972) ........................................................ 38

*Bell Atlantic Co. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................................... 18

*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................................ 20

*Blatch v. Hernandez*, 360 F. Supp. 2d 595 (S.D.N.Y. 2005) ........................................... 35

*Cartagena v. City of New York*, 257 F. Supp. 2d 708 (S.D.N.Y. 2003) ........................... 35

*Chapel Farm Estates, Inc. v. Moerdler*, No. 01-CV-3601(MBM),
    2003 WL 21998964 (S.D.N.Y. Aug. 22, 2003) ...................................................... 25

*Chu v. NYS Urban Development Corp et al.,*
    831 N.Y.S.2d 352 (N.Y. Sup. Ct. Sept. 14, 2006) ........................................... 11, 13

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) ....................................... 24

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
    526 U.S. 687, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) ..................................... 19

*Concourse Nursing Home v. Engelstein*, No. 95-CV-1666(WK),
    1997 WL 672015 (S.D.N.Y. Oct. 29, 1997) ........................................................... 26

*In re Condemnation*, 107 Pa.Cmmw. Ct. 235 (Pa.1985) ................................................. 29

*County of Los Angeles v. Anthony*, 224 Cal. App. 2d 103 (1964) .................................... 29

*Dalva v. Pataki et al.,*
    No. 116965/05 (N.Y. Sup. Ct. March 3, 2006) ................................... 7, 29, 33, 34

*Dalva v. Pataki et al.,*
    No. 116965/05 (N.Y. Sup. Ct. Dec. 11, 2006) ................................................ *passim*

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) ......................................................... 28

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) ........................................................... 24

*HBP Associates*, 893 F. Supp. 271 (S.D.N.Y. 1995) ......................................................... 19

*Hellenic American Neighborhood Action Comm.* v. *City of New York*,
    101 F.3d 877 (2d Cir. 1996) ........................................................................... 35, 36

*Hotel Dorset Co.* v. *Trust for Cultural Res. of City of New York*,
    46 N.Y.2d 358 (1978) ............................................................................................ 28

*Iqbal* v. *Hasty*, 490 F.3d 143 (2d Cir. 2007) ..................................................................... 18

*Ivani Contracting Corp.* v. *City of New York*,
    103 F.3d 257 (2d. Cir. 1997) ................................................................................. 37

*Kelo* v. *City of New London, Conn.*, 545 U.S. 469 (2005) .......................................... 29, 30

*Lee* v. *Bd. of Governors of Fed. Reserve Sys.*, 118 F.3d 905 (2d Cir. 1997) .................... 22

*Lugar* v. *Edmonson Oil Co.*, 457 U.S. 922 (1982) ............................................................ 24

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................ 20

*Malmsteen* v. *Berdon, LLP*, 477 F. Supp. 2d 655 (S.D.N.Y. 2007) .................................. 32

*Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ......................................... 18

*Morris* v. *City of Buffalo*, No. 97-CV-0134E(M),
    1998 WL 268954 (W.D.N.Y. Apr. 30, 1998) ....................................................... 33

*New Era Publ'ns Intern., ApS* v. *Henry Holt and Co., Inc.*,
    873 F.2d 576 (2d Cir. 1989) ................................................................................. 38

*New Holland Vill. Condo.* v. *Destaso Enterprises, Ltd.*,
    139 F. Supp. 2d 499 (S.D.N.Y. 2001) .................................................................. 19

*Omnipoint Commc'n Inc.* v. *Comi*,
    233 F. Supp. 2d 388 (N.D.N.Y. 2002) ............................................................ 24, 25

*R & V Dev., LLC* v. *Town of Islip*, No. 05-CV-5033,
    2007 WL 14334 (E.D.N.Y. Jan. 3, 2007) ............................................................ 27

*Reyes* v. *Erickson*, 238 F. Supp. 2d 632 (S.D.N.Y. 2003) ................................................ 35

*Richard Greenshields Sec. Inc.* v. *Lau*, 819 F. Supp. 1246 (S.D.N.Y. 1993) .................. 32

*Rosenthal & Rosenthal* v. *N.Y. State Urban Dev. Corp.*,
    771 F.2d 44 (2d Cir. 1985) ................................................................................... 28

*Saratoga Vichy Spring Co., Inc.* v. *Lehman*, 625 F.2d 1037 (2d Cir. 1980) ................... 37

*Schulz* v. *Schulz*, 8 N.Y.2d 336 (N.Y. 1993) ...................................................... 37

*Schutz* v. *Thorne*, 415 F.3d 1128 (10th Cir. 2005) ............................................ 22

*Seventh Regiment Fund, et al.* v. *Pataki, et al.*,
    179 F. Supp. 2d 356 (S.D.N.Y. 2002)..................................................... 1, 20

*In re Shea & Gould*, 214 B.R. 739 (Bankr. S.D.N.Y. 1997) .............................. 37

*Shoemaker* v. *U.S.*, 147 U.S. 282 (1893) .......................................................... 29

*Spear* v. *Town of West Hartford*, 954 F.2d 63 (2d Cir. 1992) ........................... 24

*Story* v. *Green*, 978 F.2d 60 (2d Cir. 1992) ...................................................... 22

*U.S. Olympic Committee* v. *Intelicense Corp., S.A.*,
    737 F.2d 263 (2d Cir. 1984).................................................................... 27

*Villager Pond, Inc.* v. *Town of Darien*, 56 F.3d 375 (2d Cir.1995)................................... 20

*Wells Fargo Bank N.W., N.A.* v. *Energy Ammonia Transp. Corp.*,
    No. 01-CV-5861, 2002 WL 1343757 (S.D.N.Y. June 17, 2002) ......................... 33

*West 95 Housing Corp.* v. *New York City Dept. of Housing Preservation and
    Development*, No. 01 CIV 1345 SHS, 2001 WL 664628
    (S.D.N.Y. 2001) ...................................................................................... 19

*Williamson County Reg'l Planning Comm'n* v. *Hamilton Bank of Johnson City*,
    473 U.S. 172 (1985)................................................................................. 20

*Women's Emergency Network* v. *Bush*, 323 F.3d 937 (11th Cir. 2003) ........................... 22

## STATUTES AND RULES

Art. 1, § 10 of the U.S. Constitution ................................................................ 16

42 U.S.C. §1983.............................................................................................. 24

Fed. R. Civ. P. 8(a) ....................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ................................................................................. 18

Article I, Section 7 of the New York State Constitution ................................... 19

N.Y. Educ. Law § 216 .................................................................................... 22

N.Y. Mil. Law § 180-a.......................................................................... 3, 10, 21, 27

N.Y. Mil. Law § 182....................................................................................... 10

N.Y. Mil. Law § 183 ...................................................................................... 4, 15, 20, 31

N.Y. Mil. Law § 190 ............................................................................................... 10

N.Y. Gen. Municipal Law § 51 ............................................................................... 13

N.Y. State Finance Law § 123-b ............................................................................. 13

N.Y. Unconsol. Laws § 6252 ................................................................................... 6

1874 N.Y. Laws Ch. 234, § 1 ................................................................................. 15

1879 N.Y. Laws Ch. 57, § 8 ................................................................................... 15

1942 N.Y. Laws Ch. 932, § 182 ............................................................................. 15

2004 N.Y. Laws Ch. 482 ................................................................................ *passim*

N.Y. C.P.L.R. § 217 ............................................................................................... 36

N.Y. C.P.L.R. § 7803 ............................................................................................. 35

N.Y. C.P.L.R. § 7804 ............................................................................................. 35

## MISCELLANEOUS

Mem. in Support, N.Y. State Assembly, 2004 N.Y. Laws Ch. 482 ............................... 6, 8

Mem. of Legis. Rep. of City of New York, 2004 N.Y. Laws Ch. 482 ............................... 8

7A Weinstein, Korn & Miller, New York Civil Practice ¶ 6301.24 (1993 ed.) ............... 37

Defendants Wade F. B. Thompson, Elihu Rose, Arie L. Kopelman, Stephen Lash, Rebecca Robertson, Kirsten Reoch and the Seventh Regiment Armory Conservancy, Inc. (the "Conservancy") (collectively, the "Conservancy Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the complaint in this action.

### Preliminary Statement

This action is the latest in a series of baseless litigations that have attempted to block the restoration and renovation of an important historical site and landmark, the Seventh Regiment Armory (the "Armory"). Although they fail to allege any facts showing a conceivable violation of their purported rights, plaintiffs ask this court to take the extraordinary step of declaring unconstitutional a statute enacted in 2004 by the New York State legislature authorizing a lease of the Armory to the Conservancy, a non-profit organization dedicated to preserving this important property. Indeed, the central claims plaintiffs make here – that the lease of the Armory to the Conservancy constitutes an unconstitutional taking of property – were rejected years ago by this court in a suit brought by one of the plaintiffs in this action. *See Seventh Regiment Fund, et al. v. Pataki*, 179 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2002) (the "Fund Action").

The Armory is a historic landmark on Manhattan's Upper East Side. Built in the nineteenth century for the storied regiment of New York's National Guard, the building features priceless works by renowned nineteenth century artists such as Louis Comfort Tiffany, Stanford White and others. But by 2001, the more-than-125-year-old building had fallen into disrepair after years of neglect. Recognizing the danger that this valuable piece of history would be lost to future generations, the State of New York

requested the assistance of outside parties to restore and renovate the building and put it to use.

The Conservancy, which was formed by prominent philanthropists and preservationists concerned about the deterioration of the Armory, was the only one to respond, submitting a proposal to restore and renovate the Armory and operate it as a center for the visual and performing arts. Its proposal won the overwhelming support of the State and the City of New York, each of which submitted a memorandum in support when the New York State Legislature passed legislation authorizing the Conservancy's lease of the Armory. Despite the obvious benefits of restoration and renovation of the Armory to the City, State, veterans, and the public, and the passage of *three years* since legislation endorsing the project was enacted, plaintiffs -- disgruntled opponents of the renovation of the Armory who style themselves as representatives of a broad class of veterans despite the glaring absence of any other veterans' groups supporting this action -- now seek to derail this important project based on meritless claims.

These claims should be dismissed for many independent reasons. *First*, as Judge Swain unequivocally held in 2002 in the Fund Action, plaintiffs cannot bring a takings claim because they fail to allege that they have exhausted state law remedies. Over that five year period, plaintiffs have taken no action to attempt to assert a state law claim. Their inaction is a clear admission that they have no such claim. Plaintiffs' attempt to exert the same federal constitutional claims here without exhausting state remedies is vexatious.

*Second*, plaintiffs fail to allege facts showing the violation of any conceivable constitutionally protected property right in the Armory. The only

conceivable source of any such right is Section 180-a(3)(c) of the New York Military Law, which gives veterans' groups limited access to the Armory, and then only *on application.* Plaintiffs fail to show, however, how the New York State statute they seek to void interferes with any rights of access to the Armory, and in fact the statute expressly provides for the continuation of access by veterans' groups. Plaintiffs have not alleged that they applied for access to the Armory and were denied, and other veterans' groups have applied for and been granted access. Plaintiffs thus have no standing to assert that their rights have been violated. Furthermore, the Conservancy Defendants were not acting under color of state law, as required for a Section 1983 action.

> *Third*, the takings claims on behalf of the Seventh Regiment are deficient because there is no taking of private property. The Armory, which plaintiffs claim belongs to the Regiment, in fact belongs to the State of New York because the Regiment, a division of the State National Guard, is part of the State. The State may, of course, do what it wants with its property. Furthermore, contrary to plaintiffs' assertions, the use for which the property was allegedly taken is a public, not a private use. The New York Supreme Court has already found that the Conservancy's renovation and restoration project was in the public interest because "[it] will save an irreplaceable State landmark for future generations," "will create an important public cultural center," "will sustain the women's shelter within its walls" and "will maintain the entire facilities of the Armory for military use in times of need, as it has in the past." *See Dalva* v. *Pataki et al.*, No. 116965/05, Slip Op. at 5, (N.Y. Sup. Ct. Dec. 11, 2006), attached as Exhibit 1 to the Declaration of Peggy S. Chen, dated October 4, 2007 ("Chen Decl.").

*Fourth*, plaintiffs' attempt to bring claims on behalf of the City for impairment of and tortious interference with the 1874 lease, and on behalf of the Seventh Regiment for the alleged taking of the Armory and the revenues from rental of the Armory should be dismissed because plaintiffs have no standing to bring them.

*Fifth*, plaintiffs' claim for a constructive trust and accounting of Armory revenues received by the Conservancy should be dismissed because under N.Y. Mil. Law § 183(5), neither plaintiffs nor the Seventh Regiment was entitled to them and because plaintiffs do not allege a fiduciary relationship with the Conservancy.

*Sixth*, plaintiffs' claim that the State failed to follow proper procedures in the Urban Development Corporation Act is barred because the claim is properly brought as an Article 78 proceeding, which cannot be brought in federal court and is barred by the statute of limitations.[1]

*Finally*, plaintiffs' complaint is barred by the doctrine of laches. In the Fund Action, the court found that plaintiffs' claims were not ripe until the state had made a final determination regarding the Armory. Although the state legislature passed a statute authorizing the lease of the Armory to the Conservancy in September of 2004, plaintiffs waited almost three years before bringing this complaint. They have made no attempt to explain their delay. During this time, the Conservancy has signed a lease for the Armory and worked to plan arts projects and the restoration and renovation of the Armory. Granting plaintiffs a declaratory judgment voiding the statute and its lease would devastate these projects.

---

[1]   Carol Berens and William Sherman (the "State Defendants") are also moving to dismiss the complaint. The Conservancy Defendants respectfully join in and adopt the arguments made in the motion to dismiss filed by the State Defendants to the extent applicable to the Conservancy Defendants.

Last year, a veterans' group joined with representatives of a local coop building to file a challenge to the preservation of the Armory, arguing that the project violated New York environmental impact laws. In dismissing that case in September 2006, the state court wrote that "[t]he overall impression left by the diffuse and often strained arguments made in this petition is that petitioners have chosen to use the SEQRA [State Environmental Quality Review Act] process more for the purpose of generating delay and interference than advancing any legitimate environmental interest." The same can be said of plaintiffs' effort here to impede the Armory project – given the plain deficiencies of the complaint, it is clear that this case was brought to generate "delay and interference," rather than remedy a legitimate constitutional violation.

We submit that plaintiffs' complaint should be dismissed in its entirety.

### Statement of Facts

Built in the 1870s for the Seventh Regiment – a regiment of the New York National Guard with a rich history reaching back to the early 1800s – the Seventh Regiment Armory on the Upper East Side of Manhattan is a federal, state and local landmark. (Compl. ¶¶ 28-29.) It was designed by Charles W. Clinton, and decorated by renowned masters of the 19th and early 20th century decorative arts such as Louis Comfort Tiffany, Stanford White and the Herter Brothers (*Id.* ¶¶ 28-29.) Its interiors are a superior example of late Victorian décor (*Id.* ¶ 28), and the Drill Hall of the Armory is said to be the oldest extant "balloon shed" (barrel-vaulted roof supported on exposed trusses) in America. (*Id.* ¶ 31.)

**Request for Proposal**

Yet by the 1990s, the Armory had fallen into serious disrepair. The importance of the landmark building made its restoration and renovation a top priority for

the State of New York and concerned preservationists. The State recognized that "the armory has suffered deterioration in its physical infrastructure and plant in recent decades and that the continued deterioration of the facility must be remedied and reversed," that "the renovation of the armory will require the investment of many millions of dollars and that financial circumstances make such public expenditures very difficult" and that it did not have the expertise necessary to restore and preserve many of the delicate features of the building. *See* 2004 N.Y. Laws Ch. 482, § 1, attached as Exhibit A to the Dalva Action, which is Exhibit 8 to the Chen Decl. The State Division of Military and Naval Affairs ("DMNA") also determined that the Armory was no longer necessary as a training facility for the National Guard, and that "the Armory's current use for training National Guard soldiers can be effectively absorbed by other area armories." Mem. in Support, N.Y. State Assembly, 2004 N.Y. Laws Ch. 482, attached as Exhibit 2 to the Chen Decl.

Accordingly, in July 2000 Governor George Pataki, Major General John H. Fenimore and Charles A. Gargano, acting through the DMNA and the Empire State Development Corporation ("ESDC") – the economic development agency of the State of New York[2] – issued a request for proposals ("RFP") seeking a developer to restore and redevelop the Armory. (*Id.* ¶ 36.)

The Conservancy, a not-for-profit corporation incorporated in 1999 and dedicated to the preservation of the Armory (*Id.* ¶ 44), responded to the RFP in

---

[2]    The ESDC is an arm of the New York State Urban Development Corporation ("UDC"), which was formed by the New York State Urban Development Corporation Act ("UDCA") to eliminate urban blight and encourage the redevelopment of abandoned or dilapidated urban areas by "the undertaking of public and private improvement programs… including the provision of educational, recreational and cultural facilities, and the encouragement of participation in these programs by private enterprise." *See* N.Y. Unconsol. Laws § 6252.

November 2000 with a proposal to restore and renovate the building to the highest standards of preservation and create a cultural center for the arts. (*Id.* ¶ 37); 2004 N.Y. Laws Ch. 482, § 1.

Although the RFP was widely advertised, no other proposals –from plaintiffs or others – were received by the DMNA and ESDC. (Compl. ¶ 49.) As the New York Supreme Court found, there is "no alternative to the [Conservancy's proposal] which would salvage the Armory before it becomes a ruin, no plan for its viable use, and certainly no evidence of the wherewithal to accomplish either goal" other than by acceptance of the Conservancy's proposal, which "provides for the restoration of a valuable resource and a viable plan for its use." *Dalva* v. *Pataki*, No. 116965/05, Slip Op. at 18 (N.Y. Sup. Ct. March 3, 2006), attached as Exhibit 3 to the Chen Decl. The Conservancy's proposal was accepted by the DMNA and ESDC in September of 2001. (Compl. ¶ 37.)

In August of 2004, the New York State Legislature enacted Chapter 482 of the Laws of 2004 ("Chapter 482" or "the Act") to amend the Military Law of the State of New York and the New York State Urban Development Act. As stated in § 1 of Chapter 482, "Statement of legislative findings and purposes," the legislature found that:

> the continued ability to operate the seventh regiment armory for military purposes in times of civil or military emergency is vitally important to the city and state, and that the physical restoration and refurbishment of the armory is necessary and important to preserve this structure for current and future generations of New Yorkers.

2004 N.Y. Laws Ch. 482, § 1. The legislature further found that "the continued use of the armory for cultural events and other civic uses *is beneficial to the health, safety, welfare, and education of the people of the city and the state*, and is consistent with the

armory's purpose as a military facility." *Id.* (emphasis added)  It also found that "*it is in the public interest* for the state . . . to enter into a public/private relationship with a not-for-profit corporation dedicated to the preservation of the armory as a historical, civic and cultural facility for the community to undertake the renovation and operation of the armory." *Id.*

The State and the City of New York both enthusiastically supported the legislation.  The City submitted a memorandum supporting the legislation "which allows for the restoration of an important and historic city landmark without interrupting the operation of a homeless shelter for women."  Mem. of Legis. Rep. of City of New York, 2004 N.Y. Laws Ch. 482, attached as Exhibit 4 to the Chen Decl.  The New York State Assembly also submitted a memorandum in support of the legislation, finding that "major and expensive restoration work is currently needed . . . to prevent this community resource from being lost to future generations."  Mem. in Support, N.Y. State Assembly, 2004 N.Y. Laws Ch. 482.  In furtherance of the Act's stated purposes and with the support of the City of New York, the state legislature passed the Act.  Section 3 of the Act provides that:

> The [ESDC] is hereby authorized to act on behalf of the state and the division of military and naval affairs to enter into a lease or subsequent leases and the management agreement on behalf of the state and the division with a lessee, subsequent lessee or the manager pursuant to the terms of the management agreement in order to accomplish the purposes of this section.  The leasing of the armory to a lessee or subsequent lessee and the entrance into the management agreement and the repair, restoration and refurbishment of the armory and operation thereof by a lessee or subsequent lessee for cultural or other civic uses pursuant to the lease is hereby declared to be a valid use under the city lease, and is undertaken for public purposes.

2004 N.Y. Laws Ch. 482, § 3. The Act became law on September 21, 2004 with the approval of the Governor and is in full force and effect. As discussed below, the constitutionality of the statute was affirmed by the New York Supreme Court in 2006, in a case brought by a single plaintiff, a purported New York taxpayer displeased with Conservancy's project.

Pursuant to the legislation, the Conservancy signed a lease for the Armory on November 14, 2006 and has made great progress in planning arts programs for the Armory and in beginning the restoration and renovation of the Armory. *See* Conservancy Lease, dated Nov. 14, 2006, attached as Exhibit 5 to the Chen Decl. The Conservancy has also respected veterans' right of access to the Armory and has permitted access to the Armory to all the veterans' groups who have requested it. The purported veterans' group here, the Disabled Veterans Department of New York, does not allege that it has ever requested access to the Armory.

**State Ownership of the Armory**

Since its construction, the historic Armory has always been a New York State military installation owned by the State of New York. Contrary to plaintiffs' assertion that the Armory is the property of the "Seventh Regiment," the Armory is the property of the State of New York because the Seventh Regiment is part of the State of New York. In fact, plaintiffs acknowledge that the Armory is subject to the State's current Military Law (Compl. ¶ 40), which, among other things, provides that all armories in the State "shall be under the general charge and control of and shall be regulated by the adjutant general" (N.Y. Mil. Law § 182), head of the DMNA[3], which is

---

[3]   "The division of military and naval affairs shall include the organized militia; the state reserve list; the state retired list; all offices, headquarters, units, forces, commands, arsenals,

part of the Executive Department of the State of New York. The DMNA is in charge of

New York's National Guard, and thus, also in charge of the unit that is the lineal

descendant of the Seventh Regiment, the 107th Corps Support Group of the New York

Army National Guard, *see* 2004 N.Y. Laws Ch. 482 § 1, now part of the Headquarters

53rd Army Liaison Detachment. The Headquarters 53rd Army Liaison Detachment and

the DMNA still maintain their offices in the Armory, and Chapter 482 provides that the

Armory will continue to maintain its use as a military installation under the lease to the

Conservancy. *See* N.Y. Mil. Law § 180-a(1)(h).

**History of Armory Litigation**

Since the State's decision to seek a private partner for the restoration and

renovation of the Armory, there have been a series of actions by a small but vocal set of

opponents of the Conservancy's project. Plaintiffs are for the most part veterans who

assert that that their interests in the Armory are superior to the interests of the State and

the active duty members of the Seventh Regiment, now the 107th Support Group. Not

one of the actions has met with any success. Each court passing on the issue has

recognized the overwhelming State and City interests in having this historic landmark

restored, in creating a public cultural arts center, and in improving this facility of the

State National Guard for military uses, and has also recognized that plaintiffs have

brought suit more for the "purpose of generating delay and interference" than advancing

any legitimate interests. *Chu* v. *NYS Urban Development Corp et al.*, 831 N.Y.S.2d 352,

at *8 (N.Y. Sup. Ct. Sept. 14, 2006).

---

depots, armories, bureaus, agencies, bases, camps, ranges, and other military (including air) and naval activities, property, installations, structures, facilities and functions of the state and all military (including air), naval and civilian personnel who may be serving or employed therein." N.Y. Mil. Law § 190.

In February of 2001, several organizations that purported to be composed of past members of the Seventh Regiment, including the Seventh Regiment Fund (the "Fund") and the Veterans of the Seventh Regiment ("Veterans"), filed a lawsuit in the United States District Court for the Southern District of New York against the Governor, the Adjutant General as head of the DMNA, DMNA, the head of the ESDC, ESDC, Ernst & Young LLP, and the Conservancy (the "Fund Action"). Kenyon Fitzgerald, a plaintiff in this case, was president of the Seventh Regiment Fund and actively directed the litigation. *See* Affidavit of Kenyon B. Fitzgerald, President of the Seventh Regiment Fund, *Seventh Regiment Fund* v. *Pataki*, No. 01-CV-0819 (LTS) (S.D.N.Y. Jan. 18, 2002), dated July 16, 2001, attached as Exhibit 6 to the Chen Decl.

Similar to this case, plaintiffs claimed that the State's RFP and the lease of the Armory to the Conservancy constituted a taking of their property and violated the Fifth Amendment, the Contracts Clause and 28 U.S.C. § 1983. *See* Complaint, *Seventh Regiment Fund* v. *Pataki*, No. 01-CV-0819 (LTS) (S.D.N.Y. Feb. 1, 2001), attached as Exhibit 7 to the Chen Decl. In January of 2002, the Court dismissed the Complaint in its entirety, on two grounds: (1) that their takings claims were not ripe because there had not yet been a final decision on the RFP; and (2) that plaintiffs had failed to show, and could not show, that they had exhausted their remedies from the State of New York. With regard to the second ground, the court stated that "Plaintiffs' failure to pursue remedies under state law precludes the assertion of a takings claim at this juncture.... Defendants contend, and Plaintiffs do not dispute, that New York State provides a remedy under its eminent domain procedures if Plaintiffs have a property interest in the Armory." *See*

*Seventh Regiment Fund,* 179 F. Supp. 2d at 362-63. Plaintiffs did not pursue their takings claims in state court.

On December 6, 2005, David L. Dalva II, a veteran involved in the Fund Action, brought suit as a sole plaintiff, having lost the support of the veterans' groups for further litigation against the Conservancy's project. The sole basis of his action, based on his status as a taxpayer, was that the legislature did not obtain a "home rule message" from the City of New York in support of the Act, as required by the New York State Constitution. *See* Complaint, *Dalva v. Pataki,* No. 116965/05 (N.Y. Sup. Ct. Dec. 6, 2005) (the "Dalva Action"), attached as Exhibit 8 to the Chen Decl. On December 11, 2006, the Court dismissed Dalva's complaint in its entirety, finding that no home rule message is necessary when a law bears "a direct and reasonable relationship to a substantial State concern," and that the Conservancy's renovation and restoration project clearly constituted a substantial state concern because "[t]he legislation will save an irreplaceable State landmark for future generations," "will create an important public cultural center," "will sustain the women's shelter within its walls" and "will maintain the entire facilities of the Armory for military use in times of need, as it has in the past." *See Dalva v. Pataki,* No. 116965/05, Slip Op. at 5 (N.Y. Sup Ct. Dec. 11, 2006).

The Fund and the Veterans then recruited the help of a coop board of a residential building near the Armory in an attempt to block the Conservancy's project through an Article 78 proceeding reviewing the ESDC's determination that the Conservancy's project had no significant environmental impact. *See* Amended Petition, *Chu v. NYS Urban Development Corp.,* 831 N.Y.S.2d 352 (N.Y. Sup. Ct. May 18, 2006) (No. 103638/06) (the "Chu Action"), attached as Exhibit 9 to the Chen Decl. This

proceeding too was unsuccessful. The Court denied the petition and found that the

Armory will continue to "operate as a municipal gathering place in times of emergency,

as required by [Chapter 482]" and that "when planned electrical upgrades and other

improvements are made [as part of the Armory project], the Armory will actually operate

more efficiently as an emergency shelter and staging area." *Chu*, 831 N.Y.S.2d 352, at

\*7. The Court further criticized the Fund and the Veterans for bringing a baseless suit,

stating "[t]he overall impression left by the diffuse and often strained arguments made in

this petition is that petitioners have chosen to use the SEQRA [State Environmental

Quality Review Act] process more for the purpose of generating delay and interference

than advancing any legitimate environmental interest." *Id.* at \*8.

**The Allegations in the Complaint**

Plaintiffs Fitzgerald and Wells allege that they are veterans and purport to

represent a class of all Seventh Regiment veterans[4] (Compl. ¶¶ 3-4), but they are in the

minority of veterans in their opposition to the project. The most significant organization

of Seventh Regiment veterans, the Veterans of the Seventh Regiment, is conspicuously

absent from this suit, as are any other Seventh Regiment veterans' groups. The Veterans

have in fact reconciled their differences with the Conservancy, and now enjoy a good

relationship with the Conservancy and access to the Armory. The glaring lack of support

from the Veterans or the Fund – the organization of which Fitzgerald was at one time

president – demonstrates that plaintiffs do not have the support of other veterans and

---

[4]   Plaintiff Wells also alleges that he brings this action as a "taxpayer of the City of New York." (Compl. ¶ 4.) Wells, however, has not filed a "taxpayer action," which is a procedural vehicle afforded by N.Y. State Finance Law § 123-b with respect to State action, and by N.Y. Gen. Municipal Law § 51 with respect to municipal action. The Complaint does not contain any cause of action that would be considered a taxpayer action.

bring this suit merely as individuals with personal grudges against the Conservancy's project.

Fitzgerald and Wells also allege that they are officers of the 107th Infantry Regiment (Seventh, New York) Historical Society ("Historical Society") (Compl. ¶¶ 3-4), an organization granted a charter by the New York State Education Department in 1964 to collect memorabilia from the Seventh Regiment and establish a museum of the memorabilia (*id.* ¶ 41), but they do not allege that the Historical Society has taken any steps since its chartering in 1964 to establish a museum, collect memorabilia, or to do anything at all.

Sidney Siller, while alleged to be a veteran, is not alleged to be a veteran of the Seventh Regiment. (*Id.* ¶ 5.) He is alleged to be the department adjutant of plaintiff Disabled American Veterans, Department of New York, Inc., a purported veterans' organization, but not one composed of Seventh Regiment veterans or one affiliated in any way with the Seventh Regiment. (*Id.* ¶¶ 5-6.)

Plaintiffs also claim that the purpose of their complaint is to regain access and control of the Armory "for the Regiment and its successor units . . .," but plaintiffs are not the Regiment. Indeed, the New York State National Guard unit that is the Regiment (Headquarters 53d Army Liaison Detachment), does maintain its headquarters in the Armory and uses the Armory to hold meetings and events.

The chief allegation of plaintiffs' complaint, which was filed on July 31, 2007, is that the Act constitutes a taking of both the Seventh Regiment's property, the Armory, and their own right of access to the Armory. They allege that they have a right to access the Armory pursuant to N.Y. Military Law § 183, which provides that on

application, veterans' groups are to be provided with access to the Armory, and that

Chapter 482 now interferes with those rights. (Claim 7, Compl. ¶¶ 101-104.)  They also

allege that as officers of the Historical Society (Compl. ¶¶ 3-4), their rights to maintain a

museum have been infringed upon by Chapter 482 and the lease to the Conservancy

authorized by that Act.  The Historical Society's charter, however, does not confer any

rights on the society to access the Armory and does not specify that the museum must be

located in the Armory.  As described below, plaintiffs fail to show how Chapter 482

interferes with the Historical Society's ability to create a museum or their rights under the

Military Law.

They also allege that the Act and the lease to the Conservancy deprive the

Seventh Regiment of its property – the Armory and the rental revenues from it.  (Claims

1, 2 and 6, Compl. ¶¶ 70-78, 95-100.)  Plaintiffs claim that the Seventh Regiment is the

owner of the Armory (Compl. ¶ 26) because the 1874 and the 1879 leases by the City of

New York were made to the "field officers . . . of the seventh regiment of the national

guard of the State of New York and their successors in office."  1874 N.Y. Laws Ch. 234,

§ 1, attached as Exhibit B to the Dalva Action which is attached as Exhibit 8 to the Chen

Decl.  However, as indicated in the statute, the field officers were, and still are,

representatives of the New York National Guard and thus signed the lease in their

capacity as agents of the State, on behalf of the State.  *See* 2004 N.Y. Laws Ch. 482, § 1.

The 1879 lease also provided that the Armory was to be "subject to the provisions of the

military code relating to armories."  1879 N.Y. Laws Ch. 57, § 8, attached as Exhibit D to

the Dalva Action which is attached as Exhibit 10 to the Chen Decl.  In 1942, the State

assumed the obligation for the upkeep of the Armory.  1942 N.Y. Laws Ch. 932, § 182,

attached as Exhibit 10 to the Chen Decl. The State's control over the Armory is

explicitly stated in Section 1 of Chapter 482 of the Laws of 2004:

> It is further found and declared that the leasehold title to the
> seventh regiment armory is the property of the state under
> an indenture of lease made on September 23, 1874 between
> "the mayor, alderman and commonality of the city of New
> York," as lessors, and "the field officers of the seventh
> regiment of the national guard of the state of New York,"
> as lessees, which field officers were later redesignated as
> the trustees of the seventh regiment armory building
> (Chapter 518 of the Laws of 1893), as amended by an
> indenture of lease dated April 23, 1879.

2004 N.Y. Laws Ch. 482, § 1. Plaintiffs also allege that the lease of the Armory to the

Conservancy is a transfer of the Seventh Regiment's property to a private party that

violates the Public Use clause. (Claim 2, Compl. ¶¶ 74-78.) However, the Armory is the

property of the State, and is still being used by the Seventh Regiment. Thus, there is no

taking. Furthermore, courts have consistently found that a use as a cultural arts center

constitutes a public use.

Plaintiffs further allege that the Act breaches the 1874 and 1879 leases

because the leases provide that the Armory must be used for the purpose of an Armory

and Drill Rooms or else the land reverts back to the City of New York. Therefore,

plaintiffs argue, the Act is a violation of the Contracts Clause, Art. 1, § 10, of the

Constitution. (Claim 3, Compl. ¶¶ 18, 36, 79-81.) Plaintiffs also allege that defendants

tortiously interfered with that lease. (Claim 5, Compl. ¶¶ 92-94.) Plaintiffs, however, are

neither the City nor the Seventh Regiment and thus do not have standing to bring such a

claim. In fact, the City does not believe that the lease has been breached and has

submitted a letter to the Court here reiterating its support of Chapter 482 and the

Conservancy's project. *See* Letter to the Court from Kate D. Levin, dated Oct. 4, 2007,

attached as Exhibit 11 to the Chen Decl. Plaintiffs also mischaracterize the terms of the lease which actually state that the land reverts if the premises are used for any other than "the purpose of an Armory and Drill Rooms *or the public purposes of said regiment or in furtherance of such public purposes.*" 1874 Lease, attached as Exhibit C to the Dalva Action which is attached as Exhibit 8 to the Chen Decl.(emphasis added). The public purposes of the regiment, a division of the State National Guard, are the public purposes of the State. As we note below in Section E, *infra*, the term "public purposes" is defined broadly and includes the use of the Armory as a cultural arts center.

Plaintiffs attempt to bolster their claims by alleging that the Conservancy's counsel drafted the text of Chapter 482. (Compl. ¶ 47-48.) In fact, the language of the statute was reviewed, revised and approved through the normal legislative process. But even accepting plaintiffs' allegations as true, nothing in the complaint remotely supports a cognizable claim. Private parties have the right to advocate for legislation and propose language that effectuates public policy goals. The purpose and effect of Chapter 482 was clearly explained in the legislative history and the language of the statute itself. As the State and City urged in their supporting memoranda, the legislature clearly desired to authorize the lease of the Armory to the Conservancy, and the language of the statute simply achieves that goal.

Finally, plaintiffs allege that defendants violated the Urban Development Corporation Act because the ESDC failed to follow the procedures in the Act in authorizing the lease. (*Id.* ¶¶ 82-91.) This claim should have been brought as an Article 78 claim in state court and is now barred by the statute of limitations.

Based on their meritless claims, plaintiffs request "legal and compensatory equitable damages" in an undisclosed amount (*Id.* ¶¶ 81, 94), exemplary and punitive damages in an amount not less than $30 million (*Id.* ¶ 104), a declaratory judgment declaring Chapter 482 unconstitutional (*Id.* ¶¶ 73, 78, 81), rescission of the lease (*Id.* ¶ 91), a constructive trust and accounting of all funds received by the Conservancy (*Id.* ¶ 99), the appointment of a master to receive the revenues and apply them to the maintenance of the Armory and the "installation and operation of a first-rate military history museum telling the story of America's citizen soldiers" (*Id.* ¶ 100).

**Argument**

## I.    STANDARD ON A MOTION TO DISMISS

When considering a motion to dismiss under Rule 12(b)(6), a court is obliged to accept the factual allegations contained in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Mills* v. *Polar Molecular Corp.*, 12 F. 3d 1170, 1174 (2d Cir. 1993). Pursuant to Fed. R. Civ. P. Rule 8(a) the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff, however, must plead "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Bell Atlantic Co.* v. *Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Iqbal* v. *Hasty*, 490 F. 3d 143, 157-158 (2d Cir. 2007) (holding that, post-*Twombly*, a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

## II.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.

### A.    Plaintiffs May Not Bring Takings Claims Because They Have Not Alleged That They Have Exhausted State Remedies to Obtain Compensation.

Plaintiffs' claims that Chapter 482 constitutes a taking of their property and the Seventh Regiment's property (Claims 1, 2 and 7) are barred because they have failed to allege that they have exhausted state remedies to obtain compensation for their property. It is difficult to fathom how plaintiffs could have overlooked this requirement because this was the ground for dismissal of the complaint in the Fund Action – the litigation Fitzgerald directed when he was president of the Fund.

In dismissing the complaint, Judge Swain held:

> A federal court, moreover, cannot entertain a takings claims under § 1983 unless or until the complaining landowner has been denied an adequate postdeprivation remedy." *City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 721, 119 S. Ct. 1624, 143 L.Ed.2d 882 (1999). *See also HBP Associates*, 893 F. Supp. 271, 277 (S.D.N.Y. 1995) ("To fulfill the . . . requirement that the taking be 'without just compensation,' [plaintiff] must allege that it exhausted state procedures for obtaining just compensation."). Plaintiffs' failure to pursue remedies under state law precludes the assertion of a takings claim at this juncture. *See West 95 Housing Corp.* v. *New York City Dept. of Housing Preservation and Development*, No. 01 CIV 1345 SHS, 2001 WL 664628, at *6 (S.D.N.Y. 2001). Defendants contend, and Plaintiffs do not dispute, that New York State provides a remedy under its eminent domain procedures if Plaintiffs have a property interest in the Armory. . . . *See New Holland Vill. Condo.* v. *Destaso Enterprises, Ltd.*, 139 F. Supp. 2d 499, 504 (S.D.N.Y. 2001) ("[T]he State of New York has not one but two methods for obtaining compensation-by following the procedures set forth in the State's Eminent Domain Procedure Law, or by bringing an action under Article I, Section 7 of the New York State Constitution-both of which have been held to meet Williamson 's requirements.").

*Seventh Regiment Fund* v. *Pataki*, 179 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2002). The Court's opinion is supported by well-settled case law. *See, e.g., Williamson County Reg'l Planning Comm'n* v. *Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985) ("[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."); *Villager Pond, Inc.* v. *Town of Darien,* 56 F.3d 375, 379 (2d Cir.1995) (takings claim is not ripe for federal court review "until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State.").

The Fund Action plaintiffs never brought these claims in state court, and their failure to do so demonstrates their awareness that they had no colorable claims. Plaintiffs in this case have also failed to allege exhaustion of state remedies. It is clear that their filing of the same claims in federal court is merely for the purpose of harassing defendants and interfering with the Conservancy's valuable project.

**B.    Plaintiffs Fail to Allege Any Violation of a Protectable Right.**

To have standing to bring a claim, plaintiffs must allege that they "have suffered an "injury in fact"- an invasion of a judicially cognizable interest which is…concrete and particularized and…actual or imminent, not conjectural or hypothetical." *Bennett* v. *Spear,* 520 U.S. 154, 167 (1997). The party asserting federal jurisdiction bears the burden of establishing standing. *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Plaintiffs fail, however, to allege facts showing that Chapter 482 or the Conservancy lease deprive them of any protectable right or interest.

Plaintiffs allege that they have a right of access to the Armory based on Section 183 of the New York Military Law, which provided that veterans' groups could

have access to the Armory on application to the officer in charge of the Armory. Section

183 no longer applies to the Armory. Access to the Armory is now governed by N.Y.

Mil. Law § 180-a, which Chapter 482 amended to provide veterans' groups access to the

Armory. N.Y. Mil. Law § 180-a(3)(c)(i) provides that:

> *On application* of any of the associations of veterans
> described in paragraph b of subdivision one of such section
> one hundred eighty-three, the lessee or the manager
> pursuant to the terms of the management agreement shall
> provide a proper and convenient room or rooms or other
> appropriate space in the armory where such posts or
> chapters may hold regular and special meetings and
> organizational social events of a private nature, without the
> payment of any charge or expense therefor, provided that
> such use does not interfere with the use by the lessee or the
> manager pursuant to the terms of the management
> agreement, including any use by third parties contracted for
> under subparagraph (ii) of this paragraph. (emphasis added)

N.Y. Mil. Law § 180-a(3)(c)(i). Section 180(a)(3)(c)(i) parallels Section 183, merely

shifting the responsibility of granting access to the Armory from the officer in charge of

the Armory to the lessee of the Armory, the Conservancy.

Contrary to plaintiffs' assertions that Chapter 482 infringes upon their

rights to the Armory, Chapter 482, as demonstrated, expressly requires that the Armory

continue to be made available to veterans' groups. Plaintiffs have not shown and cannot

show how any rights they may have are infringed by Chapter 482 or the lease to the

Conservancy that the statute authorizes. Chapter 482 does not operate to bar veterans'

groups from meeting in and using the Armory, and in fact, veterans' groups continue to

do so.

Moreover, even if Chapter 482 could be construed to limit rights that

plaintiffs enjoyed under Section 183, the Legislature is free to do so. Nothing in state

law, or in the United States Constitution, prohibits New York lawmakers from amending

the State's own statutes. Thus, if Chapter 482 limits plaintiffs' alleged rights under pre-

existing law, it was within the powers of the legislature to do so and such an act is not a

constitutional violation. *See Story* v. *Green*, 978 F.2d 60, 62 (2d Cir. 1992) ("Having

enacted a statute that created... a right, ... the legislature retains the power to enact new

legislation altering or eliminating the right, and that elimination does not contravene the

Due Process or Takings Clauses of the Constitution.").

   Plaintiffs' claim also fails because they have not alleged any violation of

New York Military Law Section 180-a(3)(c)(i) – the complaint does not claim that

plaintiffs have applied for and been denied access to the Armory. Therefore, plaintiffs'

claim should be dismissed for failure to allege injury. *See Lee* v. *Bd. of Governors of*

*Fed. Reserve Sys.*, 118 F.3d 905, 912 (2d Cir. 1997) (holding that plaintiffs lacked

standing to challenge the defendant's allegedly discriminatory credit practices because

they did not allege that they had had suffered discrimination from defendants); *Schutz* v.

*Thorne*, 415 F.3d 1128, 1134-35 (10th Cir. 2005) (plaintiff failed to allege injury by

passage of statute allegedly limiting hunting in certain areas when he failed to show that

he had applied to hunt in those areas and been denied access); *Women's Emergency*

*Network* v. *Bush*, 323 F.3d 937, 946-47 (11th Cir. 2003) (plaintiffs failed to allege that

their First Amendment rights had been violated by specialty license plate law when State

had not rejected plaintiffs' license plate application).

   Plaintiffs also allege that they have been injured because they, as members

of the Historical Society, have been prevented by the lease of the Armory to the

Conservancy from "[establishing] and [operating] a military history museum and

interpretive programs in the Armory's historic spaces for public education." (Compl. ¶ 69.) Plaintiffs have failed to allege that Chapter 482 and the Conservancy's lease infringed upon any of their rights here. Although a charter by the New York State Education Department permits plaintiffs to establish a museum, it does not give them a right to do so. Nor does the charter say that such museum is to be located in the Armory. The charter of the Historical Society states only that one of the purposes of the Historical Society is "to maintain a museum and library for the care and custody [of memorabilia pertaining to the Seventh Regiment]." *See* Constitution and Bylaws, 107[th] Infantry Regiment (Seventh New York) Historical Society, dated October 23, 1964, attached as Exhibit 12 to the Chen Decl. The Historical Society thus has not been injured by the enactment of Chapter 482 or lease of the Armory to the Conservancy.[5]

Moreover, the Historical Society was founded in 1964, and the Conservancy's proposal for the Armory was not granted until 2001. Plaintiffs and the Historical Society had ample time, 37 years in fact, to establish their museum. They have not alleged that during that time they sought to establish a museum in the Seventh Regiment and were denied. In fact, they do not allege that a single step was taken to establish this museum. Only after the DMNA and ESDC granted the Conservancy's proposal to renovate and restore the now dilapidated Armory have plaintiffs come

---

[5]    Plaintiffs have accused the Conservancy defendants of making false statements that the Conservancy has plans for a museum in the Armory. (*See* Compl. ¶ 55-60.) First, defendants had every right to make these statements and there do not appear to be any claims based on these representations. Second, the fact that the Conservancy's charter does not permit it to operate a museum (Compl. ¶ 59), does not render defendants' statements false. Although an organization is required to be chartered as a museum in order to hold collection items, *see* N.Y. Educ. Law § 216, the Conservancy may display objects of historical significance owned by the State of New York without becoming a museum.

forward to assert the Historical Society's alleged right to establish a museum in the

Armory. The failure to allege even a single step taken to establish this museum shows

that this claim is merely pretextual.[6]

### C.    Plaintiffs Fail to State a Section 1983 Claim Because They Fail to Allege That the Conservancy Defendants Were Acting Under Color of State Law.

Plaintiffs fail to state a Section 1983 claim against the Conservancy, a

private, non-governmental, non-profit corporation, and the individual Conservancy

defendants, director and employees of the Conservancy. It is well-established that to

state a claim under 42 U.S.C. §1983 "a plaintiff must allege that he was injured by either

a state actor or a private party acting under color of state law." *Ciambriello* v. *County of*

*Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). A private actor does not act under color of

state law unless "the conduct allegedly causing the deprivation of a federal right [can] be

fairly attributable to the State." *Lugar* v. *Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

Furthermore, "a plaintiff bears the burden of proof to establish that the acts of private

persons or entities constitute state action under section 1983." *Omnipoint Commc'n Inc.*

v. *Comi*, 233 F. Supp. 2d 388, 394 (N.D.N.Y. 2002) (citing *Flagg Bros., Inc.* v. *Brooks*,

436 U.S. 149, 155 (1978)). A merely conclusory allegation that a private entity or

persons acted in concert with a state actor does not suffice to state a §1983 claim against

the private entity. *See Spear* v. *Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).

Plaintiffs contend that defendants, including the Conservancy defendants,

entered into a conspiracy to deprive plaintiffs of their rights in the Armory. More

---

[6]    The disingenuousness of this claim is evidenced by a presentation made by plaintiffs' counsel to a neighborhood group which discusses the use of museum as pretext for litigation. *See* New Armory Initiative Presentation, dated May 30, 2007, attached as Exhibit 13 to the Chen Decl.

specifically, plaintiffs allege that the Conservancy defendants engaged a law firm to write Chapter 482 – passed by the State Legislature – by which possession of the Armory transferred to the Conservancy. (Compl. ¶¶ 47-48.)  Plaintiffs further allege that "[t]he ability of these defendants to have the Legislature unanimously pass complex legislation crafted by their own lawyers in the closing hours of the legislative session, with no debate, demonstrates that these defendants have disproportionate influence and power in the political process."[7]  (*Id.* ¶ 77.)

Proposing and drafting legislation, however, does not constitute state action for purposes of a §1983 claim, because it is the legislature that ultimately "[accepts] Defendants' advice and [enacts] the proposed legislation." *Comi*, 233 F. Supp. 2d at 395 (holding that consultants that drafted the language of a local ordinance regulating construction of communications towers were not state actors even if they were "actively involved in the legislative process"). As the court in *Comi* explained, "[w]here a private actor merely provides professional advice, such advice cannot be considered state action for purposes of section 1983." *Id.* (citation omitted). As the court explained, if it adopted plaintiff's contention that the defendants were state actors, "any private citizen that recommended proposed legislation or drafted proposed legislation that was subsequently declared unconstitutional would be subject to liability under section 1983." *Id.* The court found that this was not the kind of action Section 1983 was intended to reach. *Cf. Chapel Farm Estates, Inc.* v. *Moerdler*, No. 01-CV-3601(MBM), 2003 WL 21998964, at *6 (S.D.N.Y. Aug. 22, 2003) (holding that lobbying is not state action as

---

[7]    Plaintiffs are incorrect – the Legislature's vote on Chapter 482 was not unanimous. *See* Roll Call Vote in New York State Assembly and New York State Senate, 2004 N.Y. Laws Ch. 482, attached as Exhibit 14 to the Chen Decl.

Section 1983 "does not afford a remedy for injuries that may be sustained as an incident to private individuals' exercise of their fundamental rights to assemble, petition and associate for the purpose of influencing openly and without force officials of state and local governments.") (citations and quotation omitted); *Concourse Nursing Home v. Engelstein*, No. 95-CV-1666(WK), 1997 WL 672015, at *2-3 (S.D.N.Y. Oct. 29, 1997) (same). The same concerns are implicated here, and serve as additional grounds to deny plaintiffs' efforts to hold the Conservancy Defendants liable for any alleged participation in the legislative process.

The legislative memorandums submitted in support of the Act and the statute itself clearly described what the statute was to do, and there is no allegation, nor could there be, that New York's legislators did not understand what they were enacting or were somehow tricked into enacting a statute they did not intend to enact. The language of a statute merely effectuates what the legislature seeks to do, and the fact that a private party proposes such legislation does not imply an improper interference with the legislative process. Furthermore, the legislation allegedly drafted by the Conservancy's counsel was in fact substantially changed from the proposal to the version eventually enacted. Plaintiffs' allegations that the Conservancy was somehow improperly involved in the legislative process are baseless.

**D.    Plaintiffs May Not Bring a Takings Claim Alleging that the Seventh Regiment Has Been Deprived of Its Property Because Only the Owner of an Interest in the Property Can Assert a Claim.**

Plaintiffs also attempt to assert takings claims on behalf of the Seventh Regiment, alleging that Chapter 482 transferred control of the Armory from the Regiment to the Conservancy. (Claims 1 and 2, Compl. ¶¶ 70-78.) They also allege that rental revenues from the Armory are rightly the property of the Regiment, and seek a

constructive trust on all funds received by the Conservancy, past and future, and an accounting of all Armory revenues and rental incomes. (Claim 6, Comp. ¶¶ 95-100.)

These claims should be dismissed because plaintiffs do not have standing to bring claims on behalf of the Seventh Regiment. First, as discussed above, the Seventh Regiment is the State. Second, plaintiffs are not alleged to have any ties to the Seventh Regiment. Although the complaint alleges that Plaintiffs Fitzgerald, Wells and Siller are veterans, it does not allege that they have authority to represent the Seventh Regiment. It does not allege that they are members of the Seventh Regiment. (Compl. ¶¶ 3-5.) Indeed, the Disabled American Veterans Department of New York, Inc. is a private, non-profit organization with no official ties to the Seventh Regiment. (Compl. ¶ 6.) Plaintiffs thus do not have standing to bring claims for the taking of the State's property; those claims belong solely to the State. *See U.S. Olympic Committee* v. *Intelicense Corp., S.A.*, 737 F.2d 263, 268 (2d Cir. 1984) ("Only the owner of an interest in property at the time of the alleged taking has standing to assert that a taking has occurred."); *R & V Dev., LLC* v. *Town of Islip*, No. 05-CV-5033 (DRH)(MLO), 2007 WL 14334, at *2 (E.D.N.Y. Jan. 3, 2007).

Furthermore, there has been no taking of property. It was the State which leased the property to the Conservancy, and of course, the State may do what it wants with its own property. Chapter 482 also provides that under the lease with the Conservancy there shall be continuing military use of the Armory for regimental purposes. *See* N.Y. Mil. § 180-a(1)(h). The DMNA and the Seventh Regiment are still in the Armory. DMNA has offices at the Armory, as does the Seventh Regiment, now

the Headquarters 53d Army Liaison Detachment of the New York Army National Guard.

Plaintiffs' taking claims on behalf of the Seventh Regiment should be dismissed.[8]

> **E.    Plaintiffs Fail to State a Claim for the Unconstitutionality of Chapter 482 Because the Use is a Public Use.**

Plaintiffs also allege that the alleged transfer of the Armory from the

Seventh Regiment to the Conservancy violates the requirement that takings be for a

"public use." (Comp. ¶¶ 74-78.) The Public Use Clause, however, only prohibits the

taking of private property "for the benefit of another private person without a justifying

public purpose." *Rosenthal & Rosenthal* v. *N.Y. State Urban Dev. Corp.*, 771 F.2d 44, 46

(2d Cir. 1985). Since the Armory is the property of the State, there is no taking of private

property subject to the Public Use Clause. Furthermore, the type of use envisioned by the

Conservancy – a visual and performing arts center open to the public – is clearly a public

use. *See Hotel Dorset Co.* v. *Trust for Cultural Res. of City of New York*, 46 N.Y.2d 358,

375 (1978) (Breitel, C.J., dissenting) (agreeing with majority that "it is obvious that an

expansion of an important museum is a public use for which the grant of eminent domain

power may be appropriate. This would be true even if the expansion were accompanied

---

[8]    The Complaint cites *Eastern Enterprises* v. *Apfel*, 524 U.S. 498 (1998) in support of the claim that the taking of the Armory from the Seventh Regiment is a violation of due process (Claim 1). In that case, a plurality of the Court held that retroactive legislation requiring a former coal operator to fund health benefits for retired miners who had worked for the operator before it left the coal industry violated the Takings Clause. *Id.* at 538. The Court – applying a particular framework used to evaluate economic legislation – found that the legislation at issue imposed severe retroactive liability that could not have been anticipated by the coal operator and that was substantially disproportionate to the coal operator's experience. *Id.* at 529-36. The Court did not address the coal operator's due process claim, *id.* at 537-38, and only Justice Kennedy, in a concurring opinion joined by no other Justices, found that the Due Process framework should be applied, and that the legislation was invalid as violative of the Due Process Clause. *Id.* at 549-50. *Eastern Enterprises* bears no factual similarity to plaintiffs' case and does not support plaintiffs' contention that Chapter 482 should be invalidated as contrary to the Due Process Clause.

by incidental use for revenue producing purposes."); *see also Shoemaker v. U.S.*, 147

U.S. 282, 297 (1893) (park is public use); *In re Condemnation*, 107 Pa. Cmmw. Ct. 235

(Pa.1985) (same); *County of Los Angeles v. Anthony*, 224 Cal. App. 2d 103 (1964)

(museum is public use). In fact, the case that plaintiffs cite in support of their claim,

*Kelo v. City of New London, Conn.*, 545 U.S. 469 (2005), found that even a taking of real

property for use as restaurant, retail and office space was a public use where it was

intended to revive an economically depressed and blighted urban area. *Kelo*, 545 U.S. at

483-84. If a shopping and commercial district serves a public purpose, surely a public

visual and performing arts center serves it as well.

Indeed, the New York Supreme Court has already determined in this case

that the Conservancy's use "will save an irreplaceable State landmark for future

generations," "will create an important public cultural center," "will sustain the women's

shelter within its walls," "will maintain the entire facilities of the Armory for military use

in times of need" and thus that it "is in the public interest and is a public use." *Dalva v.

Pataki*, No. 116965/05, Slip Op. at 17 (N.Y. Sup. Ct. March 3, 2006) (emphasis added).

Although plaintiffs contend that the use is private because the

Conservancy is a private organization (Compl. ¶¶ 72, 74-75), *Kelo* holds that the sale and

lease of condemned land to private developers constitutes a "public use" even if the

property is turned over to private organizations. Said the *Kelo* court, "the government's

pursuit of a public purpose will often benefit individual private parties...but [t]he public

end may be as well served through an agency of private enterprise than through a

department of government... We cannot say that public ownership is the sole method of

promoting the public purposes of community redevelopment projects." *Id.* at 485-86.

Plaintiffs' allegation that the Conservancy will benefit from the state's plan does not make the intended use of the Armory private.

The allegation that the Armory will only be open to members of the public who pay to attend its shows or dine in its restaurants (Compl. ¶¶ 61- 67), while not true, does not make the use an impermissibly private one. Indeed, the Supreme Court "long ago rejected any literal requirement that condemned property be put into use for the general public," holding instead that the "public use" means a use that serves a "public purpose." *Kelo,* 545 U.S. at 479.

The New York State Legislature has found that "*it is in the public interest for the state....to enter into a public/private relationship with a not-for-profit corporation dedicated to the preservation of the armory as a historical, civic and cultural facility for the community to undertake the renovation and operation of the armory.*" 2004 N.Y. Laws Ch. 482, § 1. This decision should be respected. *See Kelo*, 545 U.S. at 482 (courts owe "great respect" to the decisions of state legislature and state courts in discerning local public needs.).

Plaintiffs have failed to show that the alleged taking was for an improper private purpose. Accordingly, their takings claims should be dismissed and their request to have Chapter 482 declared unconstitutional and enjoined denied.[9]

---

[9]   Plaintiff also request that this Court enjoin "any attempt by the ESDC to dispose of the Armory's valuable air rights transferred to it by the same statute." (Compl. ¶ 78.) This paragraph is the only mention of air rights in the complaint. Plaintiffs do not explain why this should be enjoined and what standing plaintiffs have to make this request. There is, in fact, currently no proposal to dispose of the air rights, and plaintiffs do not allege that there is. There is nothing to be enjoined and therefore this request should be denied.

**F.    Plaintiffs May Not Bring a Claim For the Armory Rental Revenues Because Neither Plaintiffs Nor the Seventh Regiment Was Entitled to Them as a Matter of State Law.**

Plaintiffs' claim that Chapter 482 effects a taking of the Armory's rental revenues should also be dismissed because such revenues have never been retained by the trustees of the Armory or any other representative of the Regiment or Armory.  Prior to the enactment of Chapter 482, N.Y. Military Law § 183(5), which applied to all of the State's armories, dictated the destination of such revenues.  The law provided that "fifty percent of all moneys paid as rent . . . together with all sums paid to cover expenses of heating and lighting, shall be transmitted . . . to the state treasury."  N.Y. Military Law § 183(5).  The law further provided that  "[t]he balance of such moneys paid as rent . . . shall be transmitted to the adjutant general . . . [who] shall then apportion and divide the same to and among all the units of the organized militia located within the state . . . ."  *Id.*

Chapter 482 changes that structure by providing that the lessee (in this case the Conservancy):

> shall be required to apply all revenues generated by
> operations at the Armory to pay or provide for the costs of
> repairs, restoration, refurbishment, operating, maintenance
> and programming of the Armory and the uses therein and
> the activities of the lessee or subsequent lessee with respect
> thereto.

2004 N.Y. Laws ch. 482, § 3.  That change, however, does not constitute a taking of plaintiffs' or the Seventh Regiment's property since under the prior law, they were not entitled to any portion of the Armory's rental revenues.  Accordingly, plaintiffs are not entitled to a constructive trust and accounting of the  rental revenues.

**G.    Plaintiffs Are Not Entitled to a Constructive Trust and Accounting.**

In addition, constructive trusts and accountings are equitable forms of relief to which plaintiffs are not entitled. Under New York law, a party seeking a constructive trust must ordinarily establish: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance thereon and (4) unjust enrichment. *Malmsteen* v. *Berdon, LLP*, 477 F. Supp. 2d 655, 669 (S.D.N.Y. 2007). The basis for an accounting remedy is the existence of a fiduciary relationship "created by the plaintiff entrusting to the defendant some money or property with respect to which the defendant is bound to reveal his dealings." *Id.* at 668 (citations omitted).

In this case, however, plaintiffs have no relationship, fiduciary or otherwise, to the Conservancy; there were no promises exchanged between the Conservancy and plaintiffs; there was no transfer of assets or funds from the plaintiffs to the Conservancy; and the Conservancy has not been unjustly enriched. Accordingly, plaintiffs are not entitled to either form of relief. *See Richard Greenshields Sec. Inc. v. Lau*, 819 F. Supp. 1246, 1268 (S.D.N.Y. 1993) (dismissing claim for constructive trust where party seeking trust failed to show the existence of a fiduciary duty or that any false or misleading promises were made to induce reliance); *AMP Serv. Ltd.* v. *Walanpatrias Found.*, 824 N.Y.S.2d 37, 39 (N.Y. App. Div., 1st Dep't 2006) (dismissing action for accounting where there were no allegations from which a fiduciary relationship between plaintiff and defendant with respect to the subject matter of the controversy might be inferred).

**H.    Plaintiffs May Not Bring a Claim for Impairment of the 1874/1879 Lease or for Tortious Interference With the Lease Because They Are Not Parties to the Lease.**

Plaintiffs have no standing to bring claims for impairment of the 1874/1879 lease between the City and the State of New York or tortious interference with

the lease because they are not parties to the lease. The Court in the *Dalva* Action found that "the question of whether the Armory itself has or will revert to the City by virtue of the reverter clause in the 1874 Lease is a matter between the lessee and the lessor [the State and the City of New York], and not one in which Dalva has shown any right to intrude." *Dalva* v. *Pataki*, No. 116965/05, Slip Op. at 16 n.4 (N.Y. Sup. Ct. March 3, 2006). Plaintiffs have the same standing problem here. They are neither the City nor the State of New York and their claims for violation of the Contracts Clause, Art. 1, Section 10 of the U.S. Constitution and tortious interference with the Armory lease (Claims 3 and 5) should be dismissed for lack of standing. *See Wells Fargo Bank N.W., N.A.* v. *Energy Ammonia Transp. Corp.*, No. 01-CV-5861, 2002 WL 1343757, at *1 (S.D.N.Y. June 17, 2002) ("Since . . . defendants are neither parties to, nor third-party beneficiaries of [the contract] they lack standing to bring a claim for tortious interference with that contract."); *see also Morris* v. *City of Buffalo*, No. 97-CV-0134E(M), 1998 WL 268954 at *2 (W.D.N.Y. Apr. 30, 1998) (to bring a claim based on the Contracts Clause, one must be a party to the contractual relationship).

       The claim should also be dismissed because plaintiffs have failed to allege that the Act breaches the 1874/1879 lease. The lease, by its terms, states that the Armory must be used for "the purposes of an Armory and Drill Rooms *or the public purposes of said regiment or in furtherance of such public purposes.*" (1874 Lease.) (emphasis added) As the *Dalva* Court determined, the use of the Armory as a cultural arts center, regiment headquarters, and homeless shelter clearly fulfills public purposes. The Court found that the legislation "will save an irreplaceable State landmark for future generations," "will create an important public cultural center," "will sustain the women's

shelter within its walls," "will maintain the entire facilities of the Armory for military use in times of need" and that "[a]ll of these uses will, as set forth in the statement of legislative intent, inure to the "health, safety, welfare, and education of the State of New York" and thus that "the Armory project is *in the public interest* and that State has a substantial interest in its completion." *Dalva* v. *Pataki*, No. 116965/05, Slip Op. at 17 (N.Y. Sup. Ct. March 3, 2006) (emphasis added).

This finding – that the Armory project is in the public interest because it increases the State's ability to protect its citizens, to make cultural offerings available to its citizens, to provide for the homeless, and to preserve an important historical landmark – is well-supported by case law on what constitutes a public purpose. *See* discussion, Section E, *supra*.

Plaintiffs acknowledge that the Armory has already been used for many years as a venue for art and antique shows and as a homeless shelter, uses that will be continued pursuant to the Act. (Compl. ¶¶ 33-34.) Although plaintiffs' position appears to be that the lease does not permit any portion of the Armory to be used for anything except as an armory and training facility (*Id.* ¶¶ 18, 92-94), plaintiffs have not challenged the use of the Armory as a venue for art and antique shows and as a homeless shelter.

I.     **Plaintiffs May Not Bring a Claim for Violation of the Urban Development Corporation Act**

1.     Plaintiffs' Claim is a Challenge to the Decision of a State Administrative Procedure and Should Have Been Brought as an Article 78 Proceeding in State Court.

Plaintiffs' claim that the ESDC lease should be voided for "fraud and failure to comply with the UDCA in 'material respects'" is not properly before this Court. Under New York law, when a plaintiff seeks to assert that a determination of a

governmental body or public official is "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" and seeks nullification of such action, an Article 78 proceeding – an administrative procedure used to challenge specific agency actions – is the appropriate vehicle to address the claim. *Abiele Contrac., Inc. v. New York City Sch. Constr. Auth.*, 666 N.Y.S.2d 970, 972-73 (N.Y. 1997) (citing N.Y. C.P.L.R. § 7803(3) (McKinney's 2003)). However, New York law vests jurisdiction over Article 78 proceedings solely in the state courts, *see* N.Y.C.P.L.R. § 7804(b) (McKinney's 2003) ("A proceeding under this article shall be brought in the supreme court in the county specified [by statute]."), and district courts sitting in New York have refused to impinge upon that exclusive jurisdiction. *See Blatch v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) ("This [Article 78] claim must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims"); *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003) ("State law does not permit Article 78 proceedings to be brought in federal court, and hence I conclude that I do not have the power to exercise supplemental jurisdiction over [plaintiff's] Article 78 claims.").

The Second Circuit has held that a district court lacks subject matter jurisdiction to hear claims alleging a due process violation of property or liberty when the plaintiff has failed to pursue the alleged underlying constitutional violation in an Article 78 proceeding, and the allegation is that state agencies have engaged in random and unauthorized acts. *Hellenic American Neighborhood Action Comm.* v. *City of New York*, 101 F.3d 877, 881-82 (2d Cir. 1996); *see also Reyes* v. *Erickson*, 238 F. Supp. 2d 632, 636 (S.D.N.Y. 2003) (court lacked jurisdiction over § 1983 due process claim brought by

tenants of city-owned apartments challenging transfer of buildings to neighborhood entrepreneurs pursuant to a city program, where plaintiffs failed to seek remedies in Article 78 proceeding). This rule applies here and prohibits plaintiffs from seeking relief before this Court.

    2.  Plaintiffs' Claim is Barred by the Statute of Limitations.

    Moreover, at this point, plaintiffs are also barred from bringing their claim in an Article 78 proceeding. Article 78's statute of limitation provides that a proceeding against a body or officer "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents" or "after the respondent's refusal, upon the demand of the petitioner...to perform its duty." N.Y. C.P.L.R. § 217(1) (McKinney's 2003). Plaintiffs challenge the procedure followed by the ESDC to authorize the execution of the lease, arguing that it was in violation of the UDCA. The ESDC's grant of the lease to the Conservancy in November 2006 is the point at which the agency's determination became "final and binding," and therefore the point at which the statute of limitations began to run. Since the lease was granted far more than four months ago, plaintiffs' claim is also time barred. *See Hellenic American Neighborhood Action Comm.*, 101 F.3d at 881 (finding that plaintiff could not "resuscitate its due process claim [through its Section 1983 action] simply because an Article 78 proceeding is now barred by Article 78's four-month statute of limitations" and that plaintiff "was not deprived of due process simply because it failed to avail itself of the opportunity [to bring an Article 78 proceeding].") (quotations and citations omitted).

**J.** · **The Doctrine of Laches Bars All of Plaintiffs' Claims.**

The venerable maxim, "equity aids the vigilant, not those who slumber on their rights" is particularly appropriate here. *See* 7A Weinstein, Korn & Miller, New York Civil Practice ¶ 6301.24 (1993 ed.). Laches bars relief when a party is "guilty of unreasonable and inexcusable delay that has resulted in prejudice to the [respondent]." *In re Shea & Gould*, 214 B.R. 739, 749 (Bankr. S.D.N.Y. 1997) (quoting *Ivani Contracting Corp.* v. *City of New York*, 103 F.3d 257, 260 (2d. Cir. 1997). Plaintiffs having slept on their rights, plaintiffs' action is now barred by the doctrine of laches.

Plaintiffs have delayed almost three years after the passage of the Act to challenge its constitutionality. Plaintiffs were indisputably aware of the passage of the Act, as plaintiff Fitzgerald was the head of the Fund which brought the Fund Action in and the Chu Action in 2006. Plaintiffs were also undoubtedly aware of the Conservancy's ongoing expenditure of time, effort and money in planning the renovation and restoration and the programming for the visual and performing arts center. Such unreasonable and unwarranted delay, to the detriment of the Conservancy, clearly triggers laches. *See Schulz* v. *Schulz*, 8 N.Y. 2d 336, 348-49 (N.Y. 1993) (holding that constitutional challenge to public financing statute was barred by laches where state had already issued bonds to investors and other nonbond transactions were already carried out); *In re Shea & Gould*, 214 B.R. at 749-50 (denying Trustee's motion to dismiss Chapter 11 case because Trustee could have moved for relief 19 months ago when petition was filed and other parties would be prejudiced by the granting of the motion at that late stage); *Saratoga Vichy Spring Co., Inc.* v. *Lehman*, 625 F.2d 1037, 1041-42 (2d Cir. 1980) (failure of trademark owner to take any affirmative action to protect its rights during time that mark was in process of being revived, when alleged infringer had relied

on acquiescence to enter into business, resulted in its action being barred by laches); *see also New Era Publ'ns Intern., ApS* v. *Henry Holt and Co., Inc.*, 873 F.2d 576, 584-85 (2d Cir. 1989) (denying preliminary injunction barring publication of book alleged to have infringing material where copyright owner had delayed unreasonably until after publisher had printed and shipped thousands of copies).

"The essential element of this equitable defense is delay prejudicial to the opposing party." *In re Barabash's Estate*, 31 N.Y. 2d 76, 81 (N.Y. 1972). Plaintiffs easily could have moved for this same relief long ago. Had plaintiffs timely challenged the Act when it was passed in 2004, the Conservancy would have suspended further action on the project and thus the adverse impact on the Conservancy would have been greatly reduced. Plaintiffs' delay, however, ensures that any relief entered today will wreak significant injury on the Conservancy. Accordingly, laches bars their claims.

## Conclusion

For the foregoing reasons, the Conservancy defendants respectfully submit that their motion to dismiss be granted, and all claims against them in the Complaint be dismissed with prejudice.

Dated:  New York, New York
        October 4, 2007

                    PAUL, WEISS, RIFKIND, WHARTON &
                    GARRISON LLP


                    By:  /s/ Lewis R. Clayton
                         Lewis R. Clayton
                         Peggy S. Chen
                         Barbara Llanes

                    1285 Avenue of the Americas
                    New York, New York 10019
                    (212) 373-3000

                    Attorneys for Defendants Wade F.B. Thompson, Elihu
                    Rose, Arie L. Kopelman, Stephen Lash, Edward Klein,
                    Rebecca Robertson, Kirsten Reoch and the
                    Seventh Regiment Armory Conservancy, Inc.