UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENYON B. FITZGERALD, JR., PETER
SCOVILLE WELLS, SIDNEY SILLER,
and DISABLED AMERICAN
VETERANS DEPARTMENT OF NEW
YORK, INC.,

               Plaintiffs,

               v.

WADE F. B. THOMPSON, ELIHU ROSE,
ARIE L. KOPELMAN, STEPHEN LASH,
EDWARD KLEIN, REBECCA
ROBERTSON, KIRSTEN REOCH,
CHARLES GARGANO, WILLIAM
SHERMAN, CAROL BERENS, JOHN
DOE, MARY ROE and SEVENTH
REGIMENT ARMORY
CONSERVANCY, INC.,

               Defendants.

Case No. 07 CIV 6851 (BSJ) (DCF)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
CONSERVANCY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

Attorneys for Defendants Wade F.B. Thompson,
Elihu Rose, Arie L. Kopelman, Stephen Lash,
Edward Klein, Rebecca Robertson, Kirsten Reoch
and the Seventh Regiment Armory Conservancy,
Inc.

November 15, 2007

## **Table of Contents**

**Page**

Table of Contents ................................................................................................................. i

Table of Authorities ......................................................................................................... iii

Preliminary Statement ....................................................................................................... 1

Argument .............................................................................................................................. 2

I.      PLAINTIFFS HAVE NO PROTECTABLE PROPERTY INTEREST IN
        THE ARMORY. ................................................................................................. 4

        A.      The Armory is owned by the State of New York. ...................................... 4

        B.      Plaintiffs do not have a property interest in the Armory and thus do
                not have standing to bring takings claims. ................................................ 6

II.     PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS SHOULD BE
        DISMISSED BECAUSE THEY HAVE FAILED TO DEMONSTRATE
        THAT THEY HAVE EXHAUSTED STATE REMEDIES. ................................. 9

III.    CHAPTER 482 DOES NOT VIOLATE THE PUBLIC USE CLAUSE. ............ 11

IV.     PLAINTIFFS' EQUAL PROTECTION AND BREACH OF FIDUCIARY
        DUTY CLAIMS CANNOT BE ASSERTED FOR THE FIRST TIME IN
        PLAINTIFFS' OPPOSITION. ............................................................................ 13

V.      CHAPTER 482 DOES NOT VIOLATE THE EQUAL PROTECTION
        CLAUSE. ............................................................................................................ 14

VI.     PLAINTIFFS DO NOT HAVE STANDING TO BRING A CLAIM FOR
        TORTIOUS INTERFERENCE WITH THE 1874 AND 1879 LEASES
        BECAUSE THEY ARE NOT PARTIES OR DIRECT BENEFICIARIES
        TO  THE LEASES. .............................................................................................. 16

VII.    PLAINTIFFS DO NOT HAVE STANDING TO BRING A CONTRACT
        CLAUSE CLAIM. .............................................................................................. 18

VIII.   PLAINTIFFS' SECTION 1983 CLAIM AGAINST THE
        CONSERVANCY  DEFENDANTS FAILS BECAUSE PLAINTIFFS
        FAIL TO ALLEGE  STATE ACTION. ................................................................ 19

IX.     PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF. .................... 20

X.      PLAINTIFFS HAVE ABANDONED THEIR CLAIM FOR VIOLATION
        OF THE UDCA. .................................................................................................. 21

XI.    PLAINTIFFS' CLAIMS ARE BARRED BY LACHES. .................................... 22

Conclusion ......................................................................................................... 25

## Table of Authorities

**Page**

### CASES

*Allocco Recycling, Ltd.* v. *Doherty*,
    378 F. Supp. 2d 348 (S.D.N.Y. 2005)....................................................................14

*Anti-Monopoly, Inc.* v. *Hasbro, Inc.*,
    958 F. Supp.895 (S.D.N.Y. 1997) ........................................................................22

*BDG Oceanside, LLC* v. *RAD Termian Corp.*,
    787 N.Y.S.2d 388 (N.Y. App. Div. 2005) ...........................................................16

*Bendix Autolite Corp.* v. *Midwesco Enters.*,
    486 U.S. 888 (1988)..............................................................................................14

*Brown* v. *Legal Foundation of Washington*,
    538 U.S. 216 (2003)..............................................................................................11

*Burns Jackson Miller Summit & Spitzer* v. *Lindner*,
    59 N.Y.2d 314 (1983) ...........................................................................................16

*Campo* v. *N.Y.C. Employees' Ret. Sys.*,
    637 N.Y.S.2d 365 (N.Y. App. Div. 1996) ...........................................................16

*Carrabus* v. *Schneider*,
    119 F. Supp. 2d 221 (E.D.N.Y. 2000) ...................................................................9

*City of Cleburne, Texas* v. *Cleburne Living Ctr.*,
    473 U.S. 432 (1985)..............................................................................................15

*City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999)..............................................................................................11

*Dalva* v. *Pataki*,
    No. 11695/05 (N.Y. Sup. Ct. March 3, 2006)..................................................13, 18

*Dineen* v. *Stramka*,
    228 F. Supp. 2d 447 (S.D.N.Y. 2002)...................................................................22

*Goldstein* v. *Pataki*,
    488 F. Supp. 2d 254 (E.D.N.Y. 2007) ..................................................................15

*Hellenic Neighborhood Action Comm.* v. *City of New York*,
    101 F.3d 877 (2d Cir. 1996).....................................................................................9

*Hudson* v. *Palmer*,
    468 U.S. 517 (1984)..................................................................................9, 10

*Keauhou Master Homeowners Ass'n, Inc.* v. *County of Hawaii*,
    No. 94-17075, 1996 U.S. App. LEXIS 28154 (9th Cir. July 31, 1996) .................4

*Kelo* v. *New London*,
    545 U.S. 469 (2005)..........................................................................11, 12, 13

*Lederman* v. *Giuliani*,
    No. 98-Civ.-2024 (LMM)(JCF), 2007 U.S. Dist. LEXIS 41490 (S.D.N.Y.
    Jun. 5, 2007)..........................................................................................22

*Lee* v. *Bd. of Governors of Fed. Reserve Sys.*,
    118 F.3d 905 (2d Cir. 1997)........................................................................8

*Lee* v. *Burkhart*,
    991 F.2d 1004 (2d Cir. 1993).....................................................................14

*Malmsteen* v. *Berdon, LLP*,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007)..........................................................21

*Mandelblatt* v. *Deyon Stores, Inc.*,
    521 N.Y.S.2d 672 (1st Dept.1987),
    *aff'd*, 794 N.Y.S.2d 282 (N.Y.2005) ..........................................................21

*Marine One, Inc.* v. *Manatee County*,
    898 F.2d 1490 (11th Cir. 1990) ...................................................................8

*Martinez* v. *Sanders*,
    No. 02-Civ.-5624 (RCC), 2004 U.S. Dist. LEXIS 10060 (S.D.N.Y. Jun. 3,
    2004) .....................................................................................................22

*Monroe* v. *Pope*,
    365 U.S. 167 (1961).....................................................................................9

*Morris* v. *City of Buffalo*,
    No. 97-CV-0134E(M), 1998 WL 268954 (W.D.N.Y. Apr. 30, 1998) .................18

*National R.R. Passenger Corp.* v. *Boston and Maine Corp.*,
    503 U.S. 407 (1992)...................................................................................11

*New Holland Vill. Condo.* v. *Destaso Enter., Ltd.*,
    139 F. Supp. 2d 499 (S.D.N.Y. 2001)..........................................................10

*Omnipoint Commc'n Inc.* v. *Comi,*
        233 F. Supp. 2d 388 (N.D.N.Y. 2002) ................................................................19

*R & V Dev., LLC* v. *Town of Islip,*
        No. 05-CV-5033, 2007 WL. 14334 (E.D.N.Y. Jan. 3, 2007) ...................................6

*Seventh Regiment Fund, et al.* v. *Pataki,*
        179 F. Supp. 2d 356 (S.D.N.Y. 2002) ................................................................10

*Shah* v. *Helen Hayes Hosp.,*
        No. 06-4068-CV, 2007 U.S. App. LEXIS 25323 (2d Cir. Oct. 29, 2007).............13

*State of N.C.* v. *U.S.,*
        725 F. Supp. 874 (E.D.N.C. 1989) ......................................................................4

*State* v. *Seventh Regiment Fund, Inc.,*
        262 A.D.2d 205 (1st Dep't 1999) .......................................................................5

*Story* v. *Green,*
        978 F.2d 60 (2d Cir. 1992).................................................................................8

*Tobin* v. *La Guardia,*
        290 N.Y. 119 (1943) ....................................................................................5, 19

*Trenton* v. *New Jersey,*
        262 U.S. 182 (1923)..........................................................................................18

*U.S. Olympic Comm.* v. *Intelicense Corp., S.A.,*
        737 F.2d 263 (2d Cir. 1984)...............................................................................6

*Veterans of Seventh Regiment* v. *Field Officers of Seventh Regiment,*
        14 N.Y.S. 811 (App. Div. First Dep't 1891) ...........................................5, 6, 17, 20

*Village of Willowbrook* v. *Olech,*
        528 U.S. 562 (2000) ........................................................................................14

*Villager Pond Inc.* v. *Town of Darien,*
        56 F.3d 375 (2d Cir. 1995).................................................................................10

*Wells Fargo Bank N.W., N.A.* v. *Energy Ammonia Transp. Corp.,*
        No. 01-CV-5861, 2002 WL. 1343757 (S.D.N.Y. June 17, 2002) .........................16

*Williamson County Reg'l Planning Comm'n* v. *Hamilton Bank of Johnson City,*
        473 U.S. 172 (1985).......................................................................................9, 10

*Wright* v. *Ernst & Young LLP,* 152 F.3d 169 (2d Cir. 1998)...........................................14

## STATUTES AND RULES

42 U.S.C. § 1983 .................................................................................................23

N.Y. Mil. Law § 180-a .................................................................................5, 8, 15

N.Y. Mil. Law. § 182 .........................................................................................5

N.Y. Mil. Law § 183 .................................................................................5, 7, 8, 17

Urban Development Corporation Act,
    1968 N.Y. Laws Ch. 174 ..................................................................................21

2004 N.Y. Laws Ch. 482 ..................................................................................... *passim*

N.Y. C.P.L.R. § 217(1) ........................................................................................22

## MISCELLANEOUS

Restatement (Second) of Torts § 874, comment a .................................................21

2 Moore's Federal Practice § 12.34[2] ..................................................................14

Defendants Wade F.B. Thompson, Elihu Rose, Arie L. Kopelman, Stephen Lash, Rebecca Robertson, Kirsten Reoch and the Seventh Regiment Armory Conservancy, Inc. (the "Conservancy") (collectively, the "Conservancy Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint in this action.

### Preliminary Statement

There are rare cases in which a federal court should take the extraordinary step of invalidating a statute passed by a State's legislature and signed by its Governor on federal constitutional grounds. Plaintiffs' responding papers make it crystal clear that this is not such a case, and that this action was not brought in good faith.

Our opening papers, and those of the Attorney General, discussed in detail the many independent reasons why the complaint should be dismissed in its entirety: among them, plaintiffs have no conceivable right of access to the Armory that has been denied – much less a right to claim that their "property" has been "taken"; the Armory has repeatedly been found to be *public* property of the people of New York, not a fiefdom to be controlled by plaintiffs or any other private group; the New York State Legislature, and a decision of the New York Supreme Court have found unequivocally that the Conservancy's renovation and restoration process serves a vital public purpose; plaintiffs have no colorable claim to be a party to, or beneficiary of, the 1874 and 1879 leases between the City and State regarding the property; and plaintiffs' core constitutional claims have already been rejected by this Court, in a case brought by one of the very same plaintiffs bringing this action.

Rather than confront these barriers to their claims on the merits, plaintiffs' papers read like a cynical parody of civil rights litigation, mocking the important

constitutional principles that federal courts construe and respect. Instead of attempting to show a violation of any constitutionally-protected right, plaintiffs offer meandering quotes from Virgil, Tom Paine and George Washington's diaries, as well as casual defamation of the defendants. Without even a nod to precedent – or the language of the Constitution – they urge this Court to be the first to "recognize constitutionally-protected privileges and immunities of free access to all active historic military sites and monuments for the benefit of America's citizen-soldiers and veterans …. " (Opp. Br. at 8.) Attempting to explain their years of delay in bringing this suit, they argue that their decision to bring the case was made only within the last few weeks – when their history of failed litigation makes clear that they were bitter opponents of renovation of the Armory long before the 2004 legislation was enacted.

Plaintiffs – supported by certain local residents who wish to limit the number of visitors to their neighborhood[1] – are among a small group of individuals who oppose renovation and conservation of the Armory. They are entitled to voice that minority opinion. They are not entitled to maintain the baseless claims alleged in this case. We respectfully submit that the complaint should be dismissed in its entirety.

### Argument

Plaintiffs' claims fall into three broad categories: takings claims (Claims 1, 2 and 7), contract claims (Claims 3 and 5) and claims for equitable relief (Claims 4 and 6). As explained here and also in the Conservancy Defendants' moving brief, the takings claims should be dismissed because plaintiffs have no property interest in the Armory and thus no standing to bring such claims. Plaintiffs have also failed to allege any injury

---

[1] *See* Exhibit 13 to the Declaration of Peggy Chen, dated October 4, 2007 ("Chen Declaration"), also referred to on page 6 of plaintiffs' opposition brief.

based on a statutory right of access because they have failed to allege that they have applied for access to the Armory – as required by the statute – and been denied. Plaintiffs have also failed to allege that they have sought compensation from the state for the alleged taking of their property, and there is no takings violation unless the state has denied just compensation. The Section 1983 claim (Claim 7) should also be dismissed because plaintiffs fail to allege that the Conservancy Defendants acted under color of state law. The Public Use claim (Claim 2) should also be dismissed because Chapter 482, the statute authorizing the alleged taking, serves a public purpose and thus does not violate the Public Use Clause.

Plaintiffs' claims for tortious interference with contract (Claim 5) and for violation of the Contract Clause (Claim 3) should be dismissed because plaintiffs are neither parties to nor third party beneficiaries of the allegedly breached contracts (the 1874 and 1879 Leases) and thus do not have standing to bring these claims. Plaintiffs' Contract Clause claim should also be dismissed the Contract Clause does not apply to agreements between a state and a city of that state.

Plaintiffs make two claims for equitable relief – a claim for a declaratory judgment voiding the ESDC lease for violation of the Urban Development Corporation Act ("UDCA") (Claim 4) and a claim for a constructive trust and accounting (Claim 6). The UDCA claim should be dismissed because it should have been brought in state court as an Article 78 proceeding and is now barred by the statute of limitations. It should also be dismissed because plaintiffs have abandoned this claim by failing to defend it against these arguments in their opposition brief. The claim for a constructive trust and

accounting should be dismissed because there is no fiduciary relationship between plaintiffs and the Conservancy Defendants.

## I.    PLAINTIFFS HAVE NO PROTECTABLE PROPERTY INTEREST IN THE ARMORY.

As demonstrated in our moving brief and here, plaintiffs have no protectable interest in the Armory that conveys standing to bring claims alleging a taking. The Armory is the property of the State of New York, and plaintiffs have not gained a property interest in it by virtue of their status as veterans, the donations of other veterans or the limited statutory access granted on application to certain veterans' groups.

### A.    The Armory is owned by the State of New York.

We argued in our opening brief that there was no taking of private property because the Armory is owned by the State of New York and is therefore public property. *See Keauhou Master Homeowners Ass'n, Inc.* v. *County of Hawaii*, No. 94-17075, 1996 U.S. App. LEXIS 28154, at *3 (9th Cir. July 31, 1996) (giving away or sale of public property is not a taking); *State of N.C.* v. *U.S.*, 725 F. Supp. 874, 876-77 (E.D.N.C. 1989). Plaintiffs contend that the Armory is not public property owned by the State, but private property owned "by the 'Trustees' of the Seventh Regiment for the benefit of the members and veterans of the Regiment." (Opp. Br. at 15.) This position is wholly unsupported by fact and law.

The Seventh Regiment has been part of the New York State militia since its inception. (Compl. ¶¶ 13-14.) It does not exist as a private entity separate from the State and it cannot own the Armory separate from the State. The State's highest court has held that the Armory trustees, the field officers of the Seventh Regiment, "are an agency or instrumentality of the state." *See Tobin* v. *La Guardia*, 290 N.Y. 119, 125

(1943) (citation and quotation omitted); *see also State* v. *Seventh Regiment Fund, Inc.,* 262 A.D.2d 205, 206 (1st Dep't 1999) (holding with regard to the regimental art and artifacts that "even if the [Seventh Regiment] did organize itself into an unincorporated association…, it remains part of the New York State Militia, and, as such, is a branch of the State that is required to hold the subject property in trust for the State"). Because the Seventh Regiment is and always has been part of the State of New York, its field officers signed the 1874 and 1879 leases as representatives of the State, and the State is the owner of the Armory. Indeed, plaintiffs concede that the Armory is a "public armory" no different from any other armory in the State. (Opp. Br. at 17); *see also Veterans of Seventh Regiment* v. *Field Officers of Seventh Regiment,* 14 N.Y.S. 811, 816 (First Dep't 1891). Like all other armories, it is subject to the State's current Military Law (Compl. ¶ 40), and is "under the general charge and control of and shall be regulated by the adjutant general" (N.Y. Mil. Law. § 182). The Seventh Regiment has occupied the Armory since its officers signed the 1874 Lease and its lineal descendant, the 107th Corps Support Group of the New York Army National Guard, now part of the Headquarters 53rd Army Liaison Detachment, still continues to do so. *See* N.Y. Mil. Law § 180-a(1)(h). Furthermore, New York Military Law Section 183(5) required that Armory revenues be submitted to the State, not to the Seventh Regiment. These undisputed facts lead to the unavoidable conclusion that the Armory is a State-owned public armory. The State may do what it wishes with its own property and there is no taking.

**B.    Plaintiffs do not have a property interest in the Armory and thus do not have standing to bring takings claims.**

Plaintiffs offer a whole host of reasons why they have standing to bring takings claims for the alleged taking of a State-owned armory (Opp. Br. at 6-12), all of which are baseless. Plaintiffs do not have standing simply because they allege that life, liberty, and property interests guaranteed by the Fourteenth Amendment have been violated. (Opp. Br. at 7.) The rights to life and liberty guaranteed by the Fourteenth Amendment are not relevant to plaintiffs' standing to bring takings claims alleging that the Seventh Regiment Armory has been improperly transferred to the Conservancy. As the Conservancy Defendants argued in their opening brief, only those with cognizable property interests have standing to bring takings claims. *See U.S. Olympic Comm.* v. *Intelicense Corp., S.A.*, 737 F.2d 263, 268 (2d Cir. 1984) ("Only the owner of an interest in property at the time of the alleged taking has standing to assert that a taking has occurred."); *R & V Dev., LLC* v. *Town of Islip*, No. 05-CV-5033 (DRH)(MLO), 2007 WL 14334, at *2 (E.D.N.Y. Jan. 3, 2007).

Plaintiffs do not have a property interest in the Armory. First, the Armory is not held in trust for them as they claim. (Opp. Br. at 15.) The 1893 legislation, which designated the field officers of the Seventh Regiment trustees of the Armory, charges the trustees with the duty of "maintaining and improving [the Armory building] for the public purposes of [the] Regiment." Plaintiffs are not the Regiment. While they suggest that as veterans, they are simply "inactive" members of the Regiment (Opp. Br. at 35-37), the First Department has already determined that "veterans of the seventh regiment [] are not members of the regiment." *See Veterans of Seventh Regiment*, 14 N.Y.S. at 816. Second, although plaintiffs allege that veterans and Seventh Regiment members donated

funds for the building of the Amory in the 1870s (Opp. Br. at 15), those donations did not create a property interest. *See id.* Furthermore, plaintiffs are not those veterans or Seventh Regiment members. Therefore, the contributions of other veterans and Regiment members have no bearing on whether plaintiffs have a property interest. Third, the Historical Society's charter to form a museum does not give plaintiffs a property interest in the Armory, as a State charter merely gives *permission* to form a museum, not the *right* to do so.[2] The Conservancy Defendants pointed out in their moving brief that the Historical Society's charter does not state that the museum is to be located in the Armory. (Mov. Br. at 22-24). Plaintiffs have failed to respond to our points or demonstrate how the Historical Society, a private organization that, as far as plaintiffs have alleged, has never taken a single step since its founding in 1964 to establish its museum, has never applied for access to the Armory, and has never been inside the Armory, has a cognizable property interest in the Armory.

Even as plaintiffs claim the Armory to be *their* property, they argue for a universal right of "free access" to the Armory because the Armory is public property. (Opp. Br. at 8.) And plaintiffs claim that they have a right to access the Armory under Section 183 of the New York Military Law, which permits veterans' groups access to the State's armories on application to the officer in charge. It is difficult to see how these

---

[2]    Plaintiffs allege that the Historical Society is a "successor [organization]" of the Seventh Regiment. (Opp. Br. at 7.) There is no support for this claim. Plaintiffs have not alleged any official connection between the Seventh Regiment and the Historical Society, which is alleged to be a private organization founded in 1964. (Compl. ¶ 41.) In fact, plaintiffs acknowledge that the successor organization to the Seventh Regiment is the 107th Corps Support Group of the New York Army National Guard. (*See* Opp. Br. at 29, 38); *see also* 2004 N.Y. Laws Ch. 482 § 1.

claimed rights of public access to the Armory could exist if the Armory was indeed private property as plaintiffs also claim.

Section 183 of the N.Y. Military Law does not give plaintiffs a cognizable property interest in the Armory, as it provides only a limited statutory right of access to the Armory *on application*.[3] Since that right is statutory, the State legislature "retains the power to enact new legislation altering or eliminating the right, and that elimination does not contravene the Due Process or Takings Clauses of the Constitution." *See Story* v. *Green*, 978 F.2d 60, 62 (2d Cir. 1992); *see also Marine One, Inc.* v. *Manatee County*, 898 F.2d 1490, 1492 (11th Cir. 1990) (revocation of permits to perform activities on public land are not treated as takings of property). Furthermore, because that access is still available to them, and plaintiffs have not alleged that they have applied for and been denied access to the Armory, plaintiffs have not been injured and do not have standing to assert a claim based on their statutory rights of access. *See Lee* v. *Bd. of Governors of Fed. Reserve Sys.*, 118 F.3d 905, 912 (2d Cir. 1997). Plaintiffs also do not allege that any other veterans' groups have been denied access to the Armory and in fact, other groups have applied for and been granted access.

Plaintiffs also allege a constitutional right of "free access" to the Armory based on their status as veterans under the Privileges and Immunities Clause (Opp. Br. at 8-10), but they have not cited and we have not found a single case finding such a right

---

[3]   Plaintiffs allege that they are challenging the replacement of Section 183 by Military Law Section 180-a. (Opp. Br. at 7-8, 42.) It is unclear why this is relevant as Section 180-a gives plaintiffs the same rights as Section 183: the right to access the Armory *on application*, and changes only the party responsible for granting such access from the officer in charge of the Armory to the Conservancy. *Cf.* N.Y. Mil. Law § 183 *with* N.Y. Mil. Law § 180-a. Plaintiffs have not alleged that they have applied for access to the Armory and been denied, and therefore they have not alleged an injury.

under the Privileges and Immunities Clause.  Contrary to plaintiffs' assertions, veterans

do not necessarily have special privileges under this clause.  *See, e.g.*, *Carrabus* v.

*Schneider*, 119 F.Supp.2d 221, 230 (E.D.N.Y. 2000) (Veterans' preferences in county

employment created by State law were not essential attributes of national citizenship, and

thus did not merit protection under Fourteenth Amendment Privileges and Immunities

Clause).

## II.    PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO DEMONSTRATE THAT THEY HAVE EXHAUSTED STATE REMEDIES.

Plaintiffs argue that they are not required to exhaust state remedies to

pursue their substantive due process claims for a takings violation.  Plaintiffs cannot,

however, rely on the general rule that a § 1983 claim does not need to be exhausted prior

to bringing the claim in federal court[4] because the problem here is that plaintiffs have

failed to state a § 1983 claim in the first place.  As the Supreme Court explained in

*Williamson County Reg'l Planning Comm'n* v. *Hamilton Bank of Johnson City*, 473 U.S.

172 (1985), the Fifth Amendment "does not proscribe the taking of property; it proscribes

the taking *without just compensation*." *Id.* at 194 (emphasis added).  Thus, if a State

provides an adequate procedure for seeking just compensation, a property owner cannot

---

[4]    Plaintiffs cite *Hellenic Neighborhood Action Comm. v. City of New York*, 101 F.3d 877 (2d Cir. 1996) ("HANAC") for the proposition that they are not required to exhaust state remedies to pursue their § 1983 claim. (Opp. Br. at 43.)  Plaintiffs are misreading *HANAC*.  Indeed, the court in *HANAC* determined that plaintiffs in that action could "find little comfort in the general rule that § 1983 allows plaintiffs with federal or constitutional claims to sue in federal court without first exhausting state judicial or administrative remedies," (citing *Monroe* v. *Pope*, 365 U.S. 167, 183 (1961)), because "there *is* no constitutional violation (and no available § 1983 action)" when plaintiffs fail to follow adequate state postdeprivation procedures. *HANAC*, 101 F.3d at 881-82 (emphasis in the original) (citing *Hudson* v. *Palmer*, 468 U.S. 517, 531 (1984)).

claim a takings violation until it has resorted to that procedure and been denied just compensation. *Id.* at 195; *Villager Pond Inc.* v. *Town of Darien*, 56 F.3d 375, 379 (2d Cir. 1995). This is because the State's action is not complete in the sense of causing a constitutional injury "until the State fails to provide adequate compensation for the taking." *Id.* at 195 (citing *Hudson*, 468 U.S. at 531 (1984)).

Another federal court passing on this exact question has already held that New York provides adequate procedures to obtain compensation. *See Seventh Regiment Fund, et al.* v. *Pataki*, 179 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2002) ("Plaintiffs' failure to pursue remedies under state law precludes the assertion of a takings claim at this juncture…. Defendants contend, and Plaintiffs do not dispute, that New York State provides a remedy under its eminent domain procedures if Plaintiffs have a property interest in the Armory.") ("the Fund Action"); *see also New Holland Vill. Condo.* v. *Destaso Enter., Ltd.,* 139 F. Supp. 2d 499, 504 (S.D.N.Y. 2001). Although plaintiffs argue that "the occurrence of other litigation involving particular aspects of the transfer of control of the Armory provides interesting background reading…but has no direct relevancy to this litigation" (Opp. Br. at 3.), the reality is quite the opposite. In the Fund Action, the Court ruled on the very issue raised by plaintiffs here. Kenyon Fitzgerald was the president of the Seventh Regiment Fund – a plaintiff in that action – and directed the litigation. Plaintiffs are thus well aware that a federal district court has already determined that a claim for the alleged taking of the Armory cannot be heard by a federal court until plaintiffs resort to state procedures to seek just compensation. Despite knowing that their claims are not ripe, and in disregard of the federal court's prior ruling, plaintiffs bring the same takings claim here without having resorted to those procedures.

Accordingly, plaintiffs do not have a § 1983 takings claim and this court cannot entertain such a claim. *City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 721 (1999).

## III.    CHAPTER 482 DOES NOT VIOLATE THE PUBLIC USE CLAUSE.

Plaintiffs also fail to address the Conservancy Defendants' argument that there is no violation of the Public Use Clause because the use of the Armory as a cultural center, homeless shelter and emergency military staging area clearly fulfills public uses. (Mov. Br. at 28-30.)  Instead, they assert that *Kelo* v. *New London*, 545 U.S. 469 (2005) holds that a taking violates the Public Use Clause when it involves a "known private party" and Chapter 482's contemplation of the Conservancy's involvement automatically renders the taking an impermissibly private one.  (Opp. Br. at 19.)  This is a red herring and a complete misreading of *Kelo*.

Compliance with the Public Use Clause does not turn on whether a taking involves a known private party; rather the dispositive question is whether the taking "serves a 'public purpose.'"  *See Kelo*, 545 U.S. at 480.  Whether there are known or unknown private entities involved is irrelevant.  In fact, takings involving known private entities were held to have fulfilled a public use.  *See National R.R. Passenger Corp.* v. *Boston and Maine Corp.*, 503 U.S. 407, 422-23 (1992) (taking did not violate public use clause even though the beneficiary of the taking was Amtrak, a for-profit private corporation, because it fulfilled public purpose of facilitating Amtrak's rail service); *Brown* v. *Legal Foundation of Washington*, 538 U.S. 216 (2003) (state's use of interest on IOLTA accounts to pay for legal services provided to the needy qualified as a "public use," even though funds went to the Legal Foundation of Washington, a private, not-for-profit organization).  Far from supporting plaintiffs' position, *Kelo* cited these cases with

approval and specifically recognized that "the government's pursuit of a public purpose will often benefit individual private parties." 545 U.S. at 485. The fact that Chapter 482 authorizes the lease specifically to the Conservancy is irrelevant to the public use analysis.

Plaintiffs also argue that the Conservancy's counsel's alleged drafting of Chapter 482 somehow signals that a private benefit was granted. (Opp. Br. at 19-20.) But as shown in the Conservancy Defendants' moving brief, a private party's proposing and drafting legislation is not improper. (Mov. Br. at 24-26.) And as pointed out in the Conservancy Defendants' moving brief, the legislation that became Chapter 482 was substantially changed from the Conservancy's counsel's proposal to the version eventually enacted. Moreover, the Conservancy's counsel did not pass Chapter 482, the State legislature did. Plaintiffs do not and cannot argue that the legislature was somehow tricked into enacting this statute. And though plaintiffs seek to make hay out of the description of the drafting published on the Conservancy's counsel's website, arguing that it does not mention "'public use' or 'public purpose,'" the announcement clearly states that the Conservancy intends to "open [the building] to the public as a performing and visual arts center." (Complaint Exhibit E.) And the description of the project on a website is beside the point. It is the stated public purposes of the legislation that matter. Chapter 482 clearly states that the purposes of the legislation are to restore and renovate an irreplaceable landmark, to create a public cultural center, and to improve the building for continued military use. *See* 2004 N.Y. Laws Ch. 482, § 1.

Plaintiffs do not address at all our argument that the use of the Armory as a cultural center is a public use (*see* Mov. Br. at 28-31), and concede that the preservation

work that the Conservancy is doing on the Armory building "benefits everyone." (Opp. Br. at 5.) Nor do they address the findings by other courts that Chapter 482 serves a public purpose. *See Dalva* v. *Pataki*, No. 116965/05, Slip Op. at 17 (N.Y. Sup. Ct. March 3, 2006) (determining that the Conservancy's use "will save an irreplaceable State landmark for future generations," "will create an important public cultural center," "will sustain the women's shelter within its walls," "will maintain the entire facilities of the Armory for military use in times of need" and thus that it "is in the public interest and is a public use."). Nor do they address the fact that the New York State Legislature found that Chapter 482 serves a public purpose, 2004 N.Y. Laws Ch. 482, § 1, and that *Kelo* directs courts to give deference to the legislature's determinations. *See Kelo*, 545 U.S. at 482 (courts owe "great respect" to the decisions of state legislature and state courts in discerning local public needs). Plaintiffs' argument that Chapter 482 does not serve a public use is frivolous.

## IV.    PLAINTIFFS' EQUAL PROTECTION AND BREACH OF FIDUCIARY DUTY CLAIMS CANNOT BE ASSERTED FOR THE FIRST TIME IN PLAINTIFFS' OPPOSITION.

In their opposition papers, plaintiffs assert two entirely new claims – that the "taking" of the Armory from them and the Seventh Regiment violates the Equal Protection Clause of the Fourteenth Amendment and that the trustees of the Seventh Regiment breached their fiduciary duty as trustees of the Armory by agreeing "to restrict the military occupancy and use to two offices in an upper floor in the Armory." (Opp. Br. at 39-40). Plaintiffs further allege that "Defendants" caused that breach for their own interest. *Id.*

These claims are not alleged in the Complaint and cannot be introduced by plaintiffs through their opposition to defendants' motions to dismiss. *See Shah* v. *Helen*

13

*Hayes Hosp.*, No. 06-4068-CV, 2007 U.S. App. LEXIS 25323, *4 (2d Cir. Oct. 29, 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.") (citing *Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *see also Bendix Autolite Corp.* v. *Midwesco Enters.*, 486 U.S. 888, 895 (1988) (refusing to evaluate an argument appellate court refused to consider because it was first raised in a reply brief); *Lee* v. *Burkhart*, 991 F.2d 1004, 1010 n.4 (2d Cir. 1993) (declining to consider plaintiff's allegation raised for first time in a reply brief); 2 Moore's Federal Practice § 12.34[2] ("In deciding whether to dismiss . . . , [t]he court may not, for example, take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)"). Accordingly, this Court should not consider plaintiffs' eleventh hour assertion of Equal Protection and breach of trust claims.

## V.    CHAPTER 482 DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE.

Furthermore, plaintiffs' Equal Protection argument is baseless because plaintiffs have not demonstrated that they have been treated differently than others similarly situated without any rational basis for the disparate treatment. *Allocco Recycling, Ltd.* v. *Doherty*, 378 F.Supp.2d 348, 363-64 (S.D.N.Y. 2005) (citing *Village of Willowbrook* v. *Olech*, 528 U.S. 562, 565 (2000)) (per curiam). Plaintiffs cannot state such a claim because they and the Conservancy Defendants are not similarly situated. The Conservancy responded to the ESDC's request for proposals to restore and renovate the Armory. Plaintiffs had every opportunity to do so, but did not. One who fails to

enter a competition is not discriminated against when another wins.[5]    Furthermore, as

plaintiffs have the same right to access the Armory as they had before the passage of

Chapter 482, plaintiffs have not been discriminated against at all.    Chapter 482 expressly

preserves veterans' groups right to access the Armory on application through N.Y. Mil.

Law Section 180-a.    As previously explained, plaintiffs have not alleged that they have

applied for access to the Armory and been denied and have therefore not alleged

discrimination.

"The general rule [for equal protection challenges to legislation] is that

[the] legislation is presumed to be valid and will be sustained if the classification drawn

by the statute is rationally related to a legitimate state interest." *City of Cleburne, Texas* v.

*Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).    As explained above, even if Chapter

482 could be construed to limit plaintiffs' right to access the Armory, it is rationally

related to a legitimate State interest – the preservation of this invaluable landmark – and

thus does not violate the Equal Protection Clause.    *See Goldstein* v. *Pataki*, 488

F.Supp.2d 254, 291(E.D.N.Y. 2007) (dismissing equal protection claim because the

taking was rationally related to a legitimate governmental purpose).

---

[5]    Plaintiffs also assert that they were prevented from restoring the Armory because the
Conservancy, not they, received a $30 million dollar grant for the restoration and
renovation in 2004.  (Opp. Br. at 26.)  This does not state an Equal Protection
violation – the Conservancy received funds to assist with the restoration and
renovation of the Armory in 2004 because their proposal for the Armory had been
chosen by the ESDC in 2001.  As noted above, plaintiffs failed even to take the step
of submitting a proposal.

**VI.  PLAINTIFFS DO NOT HAVE STANDING TO BRING A CLAIM FOR
TORTIOUS INTERFERENCE WITH THE 1874 AND 1879 LEASES
BECAUSE THEY ARE NOT PARTIES OR DIRECT BENEFICIARIES TO
THE LEASES.**

Plaintiffs cannot maintain a tortious interference claim because they are
neither parties nor third-party beneficiaries to the leases.  *See Wells Fargo Bank N.W.,
N.A.* v. *Energy Ammonia Transp. Corp.*, No. 01-CV-5861, 2002 WL 1343757 at *1
(S.D.N.Y. June 17, 2002).  Having seemingly recognized and conceded that they are not
parties to the 1874 and 1879 leases (Opp. Br. at 29-32), plaintiffs now rely on a new,
equally unavailing theory for their tortious interference claim: that they are third-party
beneficiaries of the leases.  Their bald assertion is supported neither by fact nor by law.

Under New York law, a plaintiff not in privity to a contract may prevail on
a contract claim as a third-party beneficiary only upon a showing that: (1) there exists a
valid contract between other parties; (2) the contract was intended for plaintiff's benefit;
and (3) the benefit to the third-party is sufficiently immediate, rather than incidental, to
indicate the assumption by the contracting parties of a duty.  *Burns Jackson Miller
Summit & Spitzer* v. *Lindner*, 59 N.Y.2d 314, 336 (1983).  New York courts require a
clear intent by the contracting parties to benefit a third-party beneficiary, and therefore,
reject most third-party claims.  *See, e.g., BDG Oceanside, LLC* v. *RAD Termian Corp.*,
787 N.Y.S.2d 388, 390 (N.Y. App. Div. 2005) (holding land owner was not third-party
beneficiary to contract between purchaser and seller of neighboring parcel of property);
*Campo* v. *N.Y.C. Employees' Ret. Sys.*, 637 N.Y.S.2d 365 (N.Y. App. Div. 1996)
(holding spouse of deceased retiree was not entitled to retirement death benefits as third-
party beneficiary of pension contract between the deceased and the state).

Plaintiffs first assert that they are intended, direct beneficiaries of the leases because they are "direct organizational descendants and veterans of the party and beneficiary Regiment." (Opp. at 30-31). Plaintiffs, however, provide no explanation as to how they are direct organizational descendants of the Regiment. Indeed, as previously explained, the Regiment was a unit of the New York Army National Guard, and the Regiment's direct organizational descendents are the 107th Corps Support Group of the New York Army National Guard, now part of the Headquarters 53rd Army Liaison Detachment. This unit continues to maintain its headquarters in the Armory. Plaintiffs allege no cognizable association with the 107th Corps Support Group. Moreover, in an undisturbed 1891 decision, the New York Appellate Division held that the organized veterans of the Seventh Regiment have no property rights with regard to the Armory. *Veterans of Seventh Regiment* v. *Field Officers of Seventh Regiment*, 14 N.Y.S. 811, 816 (N.Y. App. Div.1891) (finding that the field officers could not give exclusive use of the veterans' room in the Armory to the Veterans for private use because it violated the 1874 and 1879 leases). Plaintiffs, who possess no organizational ties to the Seventh Regiment or its lineal descendant, cannot claim to possess even greater rights than the Seventh Regiment Veterans.

Plaintiffs' second argument is that they are contemplated by the leases as intended, direct beneficiaries because they were guaranteed access to the Armory under Military Law § 183. At the time of the 1874 and 1879 leases, however, neither Military Law § 183 nor a functional legal equivalent that guaranteed veterans' groups access to the Armory existed. Furthermore, neither the organizational plaintiff, the Disabled American Veterans, Inc., nor the Historical Society was in existence at the time the leases

17

were signed. Plaintiffs therefore cannot claim that their access to the Armory was contemplated at the time the parties entered into the 1874 and 1879 lease.

Furthermore, plaintiffs fail to address the Conservancy Defendants' argument that the 1874 and 1879 leases have not been breached because the Armory, under Chapter 482, will still be used for "the public purposes of said regiment or in furtherance of such public purposes," as contemplated by the leases. *See Dalva* v. *Pataki*, No. 11695/05, Slip Op. at 17 (N.Y. Sup. Ct. March 3, 2006) (recognizing that "the Armory project is in the public interest and that the State has a substantial interest in its completion.").

## VII.    PLAINTIFFS DO NOT HAVE STANDING TO BRING A CONTRACT CLAUSE CLAIM.

Plaintiffs' argument that Chapter 482 violates the Contract Clause is also meritless. First, plaintiffs have no standing to bring a Contract Clause claim. As plaintiffs have already recognized, they were not parties to the 1874 and 1879 leases, and as strangers to the leases, plaintiffs have no standing to bring a claim under the Contract Clause. *See Morris v. City of Buffalo*, No. 97-CV-0134E(M), 1998 WL 268954 at *2 (W.D.N.Y. Apr. 30, 1998). This argument goes unrefuted by plaintiffs.

Moreover, as explained in the State's moving brief (State Br. at 56-57), the Contract Clause does not apply to agreements entered into between a state and a city of the state, *Trenton* v. *New Jersey*, 262 U.S. 182, 188 (1923), and the leases at issue here were entered into between the City and the trustees of the Seventh Regiment acting as instrumentalities of the State. Plaintiffs' only response to this argument is to repeat their previous unsupported and erroneous argument that the 1874 and 1879 leases were not entered into between the City and the State but between the City and the field officers of

18

the Seventh Regiment.  As noted above, the field officers entered into the leases as an

agency or instrumentality of the State and therefore the lease was entered into between

the City and the State. *See Tobin* v. *La Guardia*, 290 N.Y. 119, 125 (1943) (holding that

the Armory trustees (the field officers) "are an agency or instrumentality of the state")

(citation and quotation omitted).  Accordingly, plaintiffs cannot challenge Chapter 482

under the Contract Clause.

## VIII.  PLAINTIFFS' SECTION 1983 CLAIM AGAINST THE CONSERVANCY DEFENDANTS FAILS BECAUSE PLAINTIFFS FAIL TO ALLEGE STATE ACTION.

Plaintiffs fail to demonstrate that they meet one of the necessary elements

to establish a § 1983 federal claim: state action.  Plaintiffs completely disregard the

Conservancy Defendants' argument that plaintiffs have not alleged state action because

they have not shown that the Conservancy Defendants acted under color of state law.

(Mov. Br. at 24-26.)  Rather, plaintiffs misconstrue the Conservancy Defendants'

argument by stating that the Conservancy Defendants are asserting that their "actions in

taking over and exercising control of the Armory…was the equivalent of 'lobbying' and

acting as a 'consultant' to the Legislature.  (Pl. Opp. at 42).  Plaintiffs appear to ignore

the case law cited by the Conservancy Defendants and miss the point of the argument,

that is, that under current case law, the drafting of state legislation is not considered state

action.  *See Omnipoint Commc'n Inc.* v. *Comi*, 233 F. Supp. 2d 388, 394 (N.D.N.Y.

2002).  Plaintiffs fail to respond to this argument, and their inability to demonstrate that

the Conservancy Defendants acted under color of state law requires that their § 1983

claims be dismissed.

## IX.    PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF.

Plaintiffs present two bases for equitable relief in their opposition brief – first, that the trustees breached their fiduciary duty by agreeing "to restrict the military occupancy and use to two offices in an upper floor in the Armory" (Opp. Br. at 39-40) and second, that plaintiffs are entitled to a constructive trust and accounting because the defendants have "usurped the role of the original Trustees of the Armory," and "now stand in their shoes as fiduciaries." (Opp. Br. at 41.)  Both arguments are meritless.

Plaintiffs rely on the Appellate Division's decision in *Veterans of the Seventh Regiment* v. *Field Officers of Seventh Regiment*, 14 N.Y.S. 811 (New York App. Div.1891), to support their claim for breach of trust.  They argue that the lease to the Conservancy is analogous to the attempted assignment of the room to the Veterans organization in *Veterans of the Seventh Regiment*, which was held to violate the 1874 and 1879 Leases. (Opp. Br. at 39-40.)  That decision, however, contravenes plaintiffs' argument. The court there held that the trustees could not assign the Veterans a room in the Armory for its exclusive use because the Veterans, a private non-profit entity, planned to use the Armory for private purposes and the Armory "is a public armory…and is to be used only for public purposes…." *Veterans of the Seventh Regiment*, 14 N.Y.S. at 816.  As demonstrated in Section III above, the use of the Armory as a military headquarters, a visual and performing arts center open to the public, and a homeless shelter is a public use as contemplated by the original leases that entrusted the care of the Armory space to the trustees for "public purposes." (*See* 1874 and 1879 Leases, attached as Exhibits C and E to Exhibit 8 to the Chen Declaration.)  Therefore, the alleged fiduciary duty that the original trustees had under the terms of the leases has not been violated.  In reality, it is plaintiffs who seek to deprive the public of the benefits of the

20

Armory by insisting that the Armory should only be used and accessible to them and other veterans for their private meetings and affairs.

Plaintiffs also have no support for their second argument – that the defendants have "usurped the role of the original Trustees of the Armory," and "now stand in their shoes as fiduciaries." (Opp. Br. at 41.) Under New York law, plaintiffs need to allege that they maintain a fiduciary relationship with the defendant from whom they seek a trust and accounting. *See Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 699 (S.D.N.Y. 2007). "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Mandelblatt v. Deyon Stores, Inc.,* 521 N.Y.S.2d 672, 676 (1st Dept.1987), *aff'd*, 794 N.Y.S.2d 282 (N.Y.2005) (quoting Restatement (Second) of Torts § 874, comment a)). Plaintiffs have alleged no relationship between themselves and the Conservancy, much less a fiduciary one. And plaintiffs have not shown how, even if the Conservancy Defendants were the new trustees to the Armory, that would create a fiduciary relationship between plaintiffs and the Conservancy Defendants. The trustees' duty is to maintain the Armory for the public purposes of the Regiment and as shown above in Section I.B, plaintiffs are not the Regiment. Because plaintiffs fail to allege the basic elements for a constructive trust and accounting, their claim for equitable relief fails.

## X.  PLAINTIFFS HAVE ABANDONED THEIR CLAIM FOR VIOLATION OF THE UDCA.

The Conservancy Defendants argued in their moving brief that plaintiffs' fourth claim for violation of the Urban Development Corporation Act ("UDCA"), 1968 N.Y. Laws Ch. 174, could only be brought as an Article 78 proceeding in the state courts

and was barred by the four-month statute of limitations of N.Y. C.P.L.R. § 217(1).  (Mov. Br. at 34-36.)

Plaintiffs have chosen not to defend their UDCA claim and have simply ignored the Conservancy Defendants' arguments.  The only reference to this claim in their opposition brief is a sentence merely restating the allegations of the Complaint. (Opp. Br. at 28.)  The failure to address the Conservancy Defendants' argument "constitutes abandonment of the issue."  *Anti-Monopoly, Inc.* v. *Hasbro, Inc.*, 958 F.Supp.895, 907 n.11 (S.D.N.Y. 1997);  *see also Martinez* v. *Sanders*, No. 02-Civ.-5624 (RCC), 2004 U.S. Dist. LEXIS 10060, at *8- 9 (S.D.N.Y. Jun. 3, 2004) (Claims not addressed on a motion to dismiss "are deemed abandoned.") (citing *Dineen* v. *Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002) (finding that plaintiff's failure to address claims in opposition papers "enables the Court to conclude that [plaintiff] has abandoned them")); *Lederman* v. *Giuliani*, No. 98-Civ.-2024 (LMM)(JCF), 2007 U.S. Dist. LEXIS 41490 (S.D.N.Y. Jun. 5, 2007) ("claims undefended" must be deemed abandoned). Because plaintiffs have not defended their claim for violation of the UDCA, this claim should be dismissed.

## XI.    PLAINTIFFS' CLAIMS ARE BARRED BY LACHES.

Plaintiffs claim that the filing of the Complaint is timely because it was prompted by three recent events: the disclosure of plans for a restaurant in the Armory, responses by veterans to a May 2007 article in *American Legion* magazine, and the revelation that the Conservancy's counsel drafted Chapter 482, which they allege occurred "within a few weeks of the actual drafting and filing of the Complaint" on July

31, 2007.[6] (Opp. Br. at 5-6.) This claim is disingenuous, as plaintiffs have been opponents of the renovation of the Armory long before these events occurred.

As previously noted, plaintiff Kenyon Fitzgerald, president of the Seventh Regiment Fund, was also a plaintiff in *Seventh Regiment Fund* v. *Pataki*, No. 01-CV-0819 (LTS) (the "Fund Action"), the previous federal action where the crux of the complaint was that the lease of the Armory to the Conservancy was a taking of their property and violated the Fifth Amendment, the Contracts Clause and 42 U.S.C. § 1983. The same claims are made here. Fitzgerald was also a plaintiff as president of the Seventh Regiment Fund in *Chu* v. *NYS Urban Development Corp.*, No. 103638/06 (N.Y. Sup. Ct. May 18, 2006) (the "Chu Action"), where plaintiffs sought to block the development of the Armory through a challenge to the environmental review procedures. Although plaintiffs claim that the prior litigations "have no direct relevancy on this litigation," (Opp. Br. at 3), the litigations clearly demonstrate plaintiffs' history of bitter opposition to the renovation of the Armory that began long before these recent events. Plaintiffs cannot credibly maintain that this litigation was instigated by these three events when one of them had brought the same lawsuit years before these events. In fact, a flyer describing plaintiffs' planning for the litigation belies their claims that these events triggered the filing of this complaint. It demonstrates that plaintiffs had already been contemplating – and attempting to seek community support for – this lawsuit in May 2007, before the occurrence of these events. (*See* Exhibit 13 to the Chen Declaration.)

---

[6]  It is not a new revelation that the Conservancy's counsel had a role in proposing and drafting the language of Chapter 482. This information was known in 2004 when the legislation was passed, and the exhibit plaintiffs cite (Complaint Exhibit E), a page on Paul Weiss's website, was published in 2004.

Moreover, these three events have no impact on plaintiffs' claims.  What plaintiffs oppose is the use of the Armory as a cultural center authorized by Chapter 482, which they allege is a "taking" of their and the Seventh Regiment's property and a breach of the 1874 and 1879 leases.  Their claims arise directly from the enactment of Chapter 482 – a statute passed more than three years ago – and are not affected by these later events.  Because all of the facts underlying plaintiffs' claims were known in 2004, plaintiffs have unacceptably delayed their claims, resulting in prejudice to the Conservancy, which has expended time, effort and money in planning the renovation and restoration and the programming for the visual and performing arts center.  Plaintiff's claims are accordingly barred by laches.

## Conclusion

For the foregoing reasons, the Conservancy Defendants respectfully submit that their motion to dismiss be granted, and all claims against them in the Complaint be dismissed with prejudice.

Dated:   New York, New York
         November 15, 2007

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP


By:   /s/ Lewis R. Clayton_____
      Lewis R. Clayton
      Peggy S. Chen
      Barbara R. Llanes

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Attorneys for Defendants Wade F.B. Thompson, Elihu
Rose, Arie L. Kopelman, Stephen Lash, Edward Klein,
Rebecca Robertson, Kirsten Reoch and the
Seventh Regiment Armory Conservancy, Inc.