**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------- X
                               :

KENYON B. FITZGERALD, JR., PETER  :
SCOVILLE WELLS, SIDNEY SILLER, and :
DISABLED AMERICAN VETERANS        :  **07 CV 6851 (BSJ)**
DEPARTMENT OF NEW YORK, INC.,     :
                               :  **OPINION & ORDER**
Plaintiffs,                  :
                               :
-v-                             :
                               :
WADE F.B. THOMPSON, ELIHU ROSE,   :
ARIE L. KOPELMAN, STEPHEN LASH,   :
EDWARD KLEIN, REBECCA ROBERTSON,  :
KIRSTEN REOCH, CHARLES GARGANO,  :
WILLIAM SHERMAN, CAROL BERGENS,  :
JOHN DOE, MARY ROE and SEVENTH   :
ARMORY CONSERVANCY, INC.,        :
                               :
Defendants.                 :
--------------------------------- X



**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    This action relates to the proposed restoration and
renovation of the historic Seventh Regiment Armory (the
"Armory") located at 643 Park Avenue in Manhattan.
Plaintiffs Kenyon B. Fitzgerald, Jr. ("Fitzgerald"), Peter
Scoville Wells ("Wells"), Sidney Siller ("Siller") and the
Disabled American Veterans Department of New York, Inc.
(collectively, "Plaintiffs") seek declaratory and
injunctive relief invalidating the New York statute
authorizing a lease of the Armory to the Seventh Regiment
Armory Conservancy (the "Conservancy").  Plaintiffs assert

that the enactment and implementation of this statute
violates certain provisions of the Constitution of the
United States and several of the Plaintiffs' rights under
state common law.  In response, Defendants Carol Berens and
William Sherman ("State Defendants"), and Defendants Wade
F.B. Thompson, Elihu Rose, Arie L. Kopelman, Stephen Lash,
Rebecca Robertson, Kirsten Reoch, and the Conservancy (the
"Conservancy Defendants") (collectively, the "Defendants"),
each move to dismiss Plaintiffs' Complaint, pursuant to
Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and
12(b)(6).  For the reasons that follow, the Court GRANTS
their motions.

### BACKGROUND[1]

Plaintiffs Fitzgerald and Wells are veterans of the
Armed Forces of the United States purporting to represent a
class of Seventh Regiment veterans.  (Compl. ¶¶ 3-4.)
Fitzgerald and Wells are also officers of the 107th
Infantry Regiment Historical Society (the "Historical
Society") (Compl. ¶¶ 3-4.), an organization granted a

---

[1]   The following factual allegations are taken from the Complaint and
the exhibits attached thereto.  The Court does not consider the
exhibits and affidavits filed by Defendants unless otherwise noted.  In
determining a motion to dismiss, the Court's review is generally
limited to the Complaint, as well as any documents incorporated by
reference therein.  See U.S. ex. rel. Ellis v. Sheikh, No. 05-CV-6146L,
2008 WL 4761875, at *2 (W.D.N.Y. Oct. 31, 2008); but see Papasan v.
Allain, 478 U.S. 265, 269 (1986) ("[A]lthough this case comes to us on
a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are
not precluded in our review of the complaint from taking notice of
items in the public record.").

charter by the New York State Education Department in 1964
to collect memorabilia from the Seventh Regiment and
establish a museum of such memorabilia (Compl. ¶ 41).
Plaintiff Siller is the Department Adjutant for the
Disabled American Veterans Department of New York, Inc.
(Compl. ¶ 5), a veteran's organization granted use of the
armories in New York (Compl. ¶ 6). Siller is himself a
veteran, although not of the Seventh Regiment. (Compl.
¶ 5.)

Built in the 1870s for the Seventh Regiment – which
traces its provenance to a militia battalion formed in 1824
as the "National Guard" – the Armory is a National Historic
Landmark. (Compl. ¶¶ 12-13.) In an 1873 statute, the New
York State legislature directed the City to lease to field
officers of the Seventh Regiment, and their successors in
office, a plot of ground belonging to the City for "the
public purposes of said regiment." (Compl. ¶ 16.) The
field officers of the Seventh Regiment were authorized and
empowered to accept the lease and the site on behalf of the
Regiment to be thereafter "exclusively used for an armory
and drill rooms by the Regiment." (Compl. ¶ 16.) On
September 23, 1874, pursuant to further State legislation
enacted that year, the City and the field officers entered
into such a lease (the "1874 lease"). (Compl. ¶ 18.) The

3

terms of the lease were extended on April 23, 1879 (the
"1879 lease") "for and during the period the regiment shall
exist and act as a military organization, and desire to
occupy said armory for its lawful purposes."   (Compl.
¶ 19.)

Under a law also passed in 1879, the New York State
legislature authorized the board of officers of the Seventh
Regiment to issue bonds in the name of the Regiment to
complete construction of the Armory building.   (Compl.
¶ 21.)   In order to secure payment of the bonds, the
legislature authorized the board of officers to convey the
leased property and the Armory to "the trustees of the
Seventh Regiment Armory fund" and their successors "in
trust."   (Compl. ¶ 21.)   The bonds, issued and sold in
1879, were redeemed from private monies raised from
donations and several private groups affiliated with
members of the Regiment.   (Compl. ¶ 21-22.)   No State funds
were used in erecting the Armory.   (Compl. ¶ 23.)

By a statute passed in 1893, the field officers of the
Seventh Regiment were designated as Trustees of the Armory
("Trustees").   (Compl. ¶ 24.)   The Trustees are responsible
for holding the Armory solely and exclusively for the
public purposes of the Regiment.   They are also charged
with the duty of maintaining and improving the Armory.

(Compl. ¶ 24, Ex. C.)  In recent years, however, the Armory
has fallen into a state of disrepair.  (Compl. ¶ 35.)

In or about July 2000, without consent or approval of
the Trustees, the Empire State Development Corporation
("ESDC") and the State Division of Military and Naval
Affairs ("DMNA") issued a Request for Proposals ("RFP"),
purporting to seek a developer for the reuse of the Armory.
(Compl. ¶ 36.)  The RFP purported to offer the Armory a
lease to such developer, "without regard to the terms of
the City's lease or the ownership rights of the Regiment."
(Compl. ¶ 36.)  In response to the RFP, the Conservancy, a
not-for-profit corporation organized under the laws of the
State of New York (Compl. ¶ 10), submitted its bid for
restoration of the Armory (Compl. ¶ 37).  On September 9,
2001, ESDC issued a letter designating the Conservancy the
"Preferred Proposer" for the restoration of the Armory.
(Compl. ¶ 37.)

In order to implement the Conservancy's plan, in
August of 2004, the New York State Legislature enacted
Chapter 482 of the Laws of 2004 ("Chapter 482").  (Compl.
¶ 38.)  Chapter 482 amended the Military Law of the State
of New York and the New York State Urban Development Act.
(Compl. ¶ 38.)  Chapter 482 provides, in short, for (1) the
lease of the Armory to the Conservancy for 99 years;

(2) the restoration and preservation of the Armory building; (3) the use of the Armory for civic and cultural events; (4) the continued military character of the Armory; and (5) the continued presence of the women's shelter on the premises. (Compl. ¶ 38, Ex. D.)

Based upon the foregoing facts, the Complaint asserts the following causes of action. Claim One asserts a violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution on the ground that Chapter 482 constitutes a taking of both the Seventh Regiment's property, the Armory's property, and Plaintiffs' right of access to the Armory. (Compl. ¶¶ 70-72.) Claim Two asserts a violation of the Public Use Clause of the Fifth Amendment of the Constitution on the ground that the lease of the Armory to the Conservancy is an improper transfer of the Seventh Regiment's property for the benefit of a known private party, and that the stated public purpose of Chapter 482 is incidental to the private benefits that will be conferred upon the Conservancy. (Compl. ¶¶ 74-77.) Claim Three asserts a violation of the Contracts Clause of the Fifth Amendment of the Constitution on the ground that Chapter 482 did not establish any public purpose to justify cancellation of the City's 1874 and 1879 leases of Armory property to the Regiment and its successor

units.  (Compl. ¶¶ 79-80.)  Claim Four asserts a violation
of section 10 of the New York State Urban Development
Corporation Act (the "UDCA"), which requires the ESDC to
make a finding of need for a civic project in the area in
which the project is to be located.  (Compl. ¶¶ 82-91.)
Claim Five asserts that Defendants tortiously interfered
with the City's 1874 and 1879 leases through "bid rigging,
illegal favoritism and fraud."  (Compl. ¶¶ 92-93.)  Claim
Six asserts a claim for imposition of a constructive trust
and accounting of all funds received by the Conservancy.
(Compl. ¶¶ 95-99.)  Finally, Claim Seven asserts violations
of 42 U.S.C. § 1983 on the ground that Defendants deprived
Plaintiffs of their constitutionally protected statutory
and contractual rights, their rights to expression, their
right of assembly and statutory right of access to the
Armory, and their due process and equal protection rights
under the Fourteenth Amendment of the Constitution.
(Compl. ¶¶ 101-04.)

## DISCUSSION

## I.  Defendants' Challenges

Defendants seek to dismiss Plaintiffs' Complaint on
the grounds that (1) Plaintiffs lack standing to maintain
this action; (2) this Court lacks personal jurisdiction
over several individual Defendants; (3) the Complaint fails

to state a claim under either the Public Use or Contract
Clauses of the Fifth Amendment of the Constitution; (4) a
violation of the UDCA is a state claim that this Court does
not have jurisdiction to adjudicate; (5) the Complaint
fails to state a claim for tortious interference of a
contract under New York law; (6) the Complaint fails to
state a claim for constructive trust; and (7) there is no
independent cause of action alleged under 42 U.S.C. § 1983.[2]
For the reasons that follow, the Court GRANTS Defendants'
motions to dismiss the Complaint in its entirety.

## II. Standing

Article III standing is properly challenged through a
motion to dismiss under Rule 12(b)(1). Alliance for Envtl.
Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88
n.6 (2d Cir. 2006). A district court must generally
establish that a plaintiff has Article III standing first,
before deciding a case on the merits, such as on a Rule
12(b)(6) motion to dismiss. See id. at 85 (citing Steel
Co. v. Citizens for a Better Env't, 523 U.S. 83, 101
(1998)). Standing is challenged on the basis of the
pleadings, and thus the Court accepts as true "all material
allegations of the complaint, and must construe the

---

[2]  The State Defendants and the Conservancy Defendants set forth almost
identical arguments in support of their motions to dismiss. Unless
otherwise noted, the Court discusses both sets of challenges jointly.

complaint in favor of the complaining party." Bldg. &
Constr. Trades Council v. Downtown Dev., Inc., 448 F.3d
138, 144 (2d Cir. 2006).

The doctrine of standing is well established to
require that the party who wishes to bring suit must have
suffered an injury to a legally protected right, an "injury
in fact." Warth v. Seldin, 422 U.S. 490, 95 (1975); Baker
v. Carr, 369 U.S. 186 (1962). "An injury-in-fact must be
'distinct and palpable,' as opposed to 'abstract,' and the
harm must be 'actual or imminent,' not 'conjectural or
hypothetical.'" Denney v. Deutsche Bank AG, 443 F.3d 253,
264 (2d Cir. 2006) (citing Whitmore v. Arkansas, 495 U.S.
149, 155-56 (1990)). Here, Plaintiffs claim that they have
Article III standing on the basis of the Fourteenth
Amendment to the United States Constitution. (Pls.' Opp'n
Mem. to Defs.' Mots. Dismiss ("Pls.' Opp'n"), at 6.)
According to Plaintiffs, their "standing to bring this
action, and to seek relief under each of the seven claims
alleged in the complaint," is rooted in the Due Process
Clause, the Equal Protection Clause, the Privileges and
Immunities Clause, and their substantive due process
rights. (Pls.' Opp'n at 6-12.) The injuries-in-fact
Plaintiffs identify in their Complaint include the denial
of access, control, and use of the Armory for traditional

9

military and related purposes; the prevention of the
establishment and operation of a military history museum
and interpretive program in the Armory's historic spaces
for public education; the denial to veterans organization
members of the right of free use of the Armory for meetings
and gatherings; and the deprivation to City and State
taxpayers of support for publicly-funded cultural
institutions by diverting audience and donor revenues to
the Conservancy and its favored organizations.  (Compl.
¶¶ 69(a)-(d).)

### A.   **Due Process**

Turning first to Plaintiffs' contention that they have
standing to bring this action under the Due Process Clause,
the Court holds that Plaintiffs have no constitutionally
protected right in the Armory sufficient to confer
standing.  Plaintiffs have not been deprived of a life
interest: "lifetime respect, honor, gratitude and
compassion" are not judicially cognizable rights.  (Pls.'
Opp'n at 7.)  Likewise, Plaintiffs have failed to
demonstrate precisely how or in what manner their liberty
interests have been violated.

Plaintiffs allege that they have a liberty right under
the First Amendment to express and associate with other
veterans.  (Pls.' Opp'n at 7.)  Yet, the Court sees no

evidence of an obstruction by Defendants of the rights of
Plaintiffs to express their opinions freely or to associate
with one another.  The factual predicate as presented to
the Court on this point consists of an inability to "tell
the stories of [Plaintiffs] military service, and advocate
and install a military history museum in the Armory."
(Pls.' Opp'n at 7)  Although the Conservancy's charter does
not permit it to operate a museum (Compl. ¶¶ 42, 50, 69),
the Historical Society's charter does not mention the
Armory and does not mandate that any museum of the Seventh
Regiment's memorabilia be located therein (Compl. ¶ 41).
Thus, Plaintiffs have failed to allege a palpable injury on
this ground.

     Furthermore, by the express terms of Chapter 482,
veterans' groups may have access to the Armory on
application to the Conservancy.  Chapter 482 amended
section 183 of the New York Military Law, which provided
that veterans' groups could have access to the Armory on
application to the officer in charge of the Armory.
Chapter 482 merely shifted the responsibility of granting
access to the Armory from the officer in charge of the
Armory to the lessee of the Armory, the Conservancy.
(Conservancy Defs.' Mem. at 21.)  The Complaint does not
allege that the Conservancy has taken any steps

11

affirmatively to restrict applications by veterans groups.
The Complaint also does not allege that Plaintiffs have
made any such application to access the Armory.
Accordingly, Plaintiffs are unable to demonstrate more than
an injury that is merely speculative.[3]  Cf. Laird v. Tatum,
408 U.S. 1, 13-14 (1972) (holding that the mere knowledge
that the army was surveilling civilian political activity
and the fear of detriment if information thus gained were
distributed was not sufficient injury to the plaintiffs'
First Amendment rights because there was no allegation of
specific objective harm, either present or future); Women's
Emergency Network v. Bush, 323 F.3d 937, 946-47 (11th Cir.
2003) (holding that plaintiffs failed to allege that their
First Amendment rights had been violated by a specialty
license plate law when the State had not rejected
plaintiffs' license plate application).

Plaintiffs also assert that Fitzgerald and Wells have
a property interest in the Armory as veterans of the
Seventh Regiment and as representatives of its successor
organizations, including its Historical Society.  (Pls.'

---

[3]  Plaintiffs' additional assertion that they have a constitutional
right to petition the courts for redress of their grievances fails
because no such allegation is contained in their Complaint.  Plaintiffs
may not use their opposition papers to amend the Complaint by including
a new cause of action.  See Shah v. Helen Hayes Hosp., No. 06-4068-CV,
2007 U.S. App. LEXIS 25323, at *4 (2d Cir. Oct. 29, 2007) ("A party may
not use his or her opposition to a dispositive motion as a means to
amend the complaint.") (citing Wright v. Ernst & Young LLP, 152 F.3d
169, 178 (2d Cir. 1998)).

pp'n at 7.)  As an initial matter, the language of Section 1 of Chapter 482 provides a history of the 1874 lease that confirms that the Armory is State property:

> It is also found and declared that leasehold title to the seventh regiment armory <u>is the property of the state</u> under an indenture of lease made on September 23, 1874 between the "mayor, aldermen and commonality of the city of New York" as lessors, and the "field officers of the seventh regiment of the national guard of the state of New York," as lessees, which field officers were later redesignated as the trustees of the seventh regiment armory building . . . , as amended by an indenture of lease dated April 23, 1879.

(Compl., Ex. D. (2004 N.Y. Laws Ch. 482 § 1) (emphasis added)); <u>see also</u> <u>Dalva v. Pataki</u>, No. 116965/05, Slip Op. at 15 (N.Y. Sup. Ct. Mar. 3, 2006) ("The State defendants' argument convinces me that the State is, indeed, the lessee of the Armory, and may, therefore, claim the rights of a lessee.").  Even if the Armory were the property of the Seventh Regiment, however, Fitzgerald and Wells, as veterans, are <u>not</u> representatives of the Regiment and thus have no property interest in the Armory.  <u>Veterans of Seventh Regiment v. Field Officers of Seventh Regiment, et al.</u>, 14 N.Y.S. 811, 815 (N.Y. App. Div. 1891) ("[V]eterans of the seventh regiment . . . are not members of said regiment, and the delegation of power to the field officers of said regiment to exclusively hold and use the property

leased for an armory and drill rooms by said regiment would
ordinarily and naturally exclude the idea of a joint
adventure with other parties.").

     Further, there is no support for Plaintiffs' claim
that the 107th Infantry Regiment Historical Society is a
successor organization of the Seventh Regiment.  (Pls.'
Opp'n at 7.)  Plaintiffs have not alleged any official
connection between the Seventh Regiment and the Historical
Society, which is described in the Complaint as a private
organization founded in 1964.  (Compl. ¶ 41.)  Indeed, the
record evinces that the actual successor organization to
the Seventh Regiment is the 107th Corps Support Group.
(Compl., Ex. D (2004 N.Y. Laws Ch. 482 § 1) ("The 107th
corps support group, a division of the New York state
national guard, is recognized by the department of the army
and the courts of the state of New York as the lineal
descendent of the seventh regiment . . . .").)   Plaintiffs
therefore have not asserted "such a personal stake in the
outcome of the controversy as to assure that concrete
adverseness which sharpens the presentation of issues upon
which the court so largely depends for illumination of
difficult constitutional questions."  Baker, 369 U.S. at
204.

In this same regard, even if Plaintiffs had standing to assert that Chapter 482 and the Conservancy lease violate the Contracts Clause of the Fifth Amendment, it is axiomatic that the Contracts Clause – which provides in pertinent part that "No State shall . . . pass any . . . Law impairing the obligation of Contracts," U.S. Const. art. I, § 10 – is inapplicable to the relationships between states and their municipalities. Trenton v. New Jersey, 262 U.S. 182, 188 (1923) ("The power of the State, unrestrained by the contract clause . . . over the rights and property of cities held and used for "governmental purposes" cannot be questioned."). Moreover, a "city cannot possess a contract with the State which may not be changed or regulated by state legislation." Id. (citing Town of E. Hartford v. Hartford Bridge Co., 51 U.S. 511 (1851)); see also New York v. Richardson, 473 F.2d 923, 929 (2d Cir. 1973) ("[P]olitical subdivisions of a state may not challenge the validity of a state statute under the Fourteenth Amendment"). Applying these principles, Plaintiffs' claim alleging that Chapter 482 impaired a contract between officers of the City of New York and officers of the State National Guard cannot withstand scrutiny.

**B.    Equal Protection Clause**

Although Plaintiffs do not specifically allege equal protection of the laws as a cause of action, Plaintiffs state within their 42 U.S.C. § 1983 claim that, operating under color of state law, Defendants deprived them of "their due process and equal protection rights under the Fourteenth Amendment."  (Compl. ¶ 102 (emphasis added).) The Court finds this sufficient to put Defendants on notice of an equal protection claim.  Plaintiffs' equal protection argument, however, fails.

"Although a plaintiff need not suffer an injury in fact to have standing to assert an Equal Protection Clause claim, because standing is created by the denial of equal treatment resulting from the imposition of a barrier, not the ultimate inability to obtain the benefit, a plaintiff must nonetheless demonstrate that he was able and ready to apply for a disputed program in order to establish standing."  Filozof v. Monroe Comm. College, No. 04-CV-6545L, 2008 WL 4737400, at *9 (W.D.N.Y. Oct. 28, 2008) (citing Gratz v. Bollinger, 539 U.S. 244, 262 (2003)).  As applicable here, Plaintiffs have failed to show that they were "able and ready" to apply to the ESDC's request for proposals to restore and renovate the Armory.  Although Plaintiffs assert that they were prevented from doing so

because the Conservancy, not they, received a monetary grant for proposed restoration and renovation, this does not state an equal protection violation.  (Pls.' Opp'n at 26.)  The Conservancy received the funds because their proposal was selected by ESDC.  Furthermore, Plaintiffs have not alleged that they attempted to apply, or would have applied, for access to the Armory but for the proposed enactment of Chapter 482.  See Clements v. Fashing, 457 U.S. 957 (1982) (noting that plaintiff's standing to challenge a program on Equal protection grounds is not vitiated by plaintiff's failure to attempt participation, if it is alleged that the plaintiff would have done so, had he not been barred by the challenged policy).  Thus, Plaintiffs lack standing to challenge Chapter 482 upon the facts alleged.

### C.   **Privileges and Immunities Clause**

Plaintiffs maintain that they have standing to bring this action based upon the Privileges and Immunities Clause of the Fourteenth Amendment.  (Pls.' Opp'n at 8-10.)  This cause of action is not alleged in Plaintiffs' Complaint and therefore Plaintiffs may not raise the issue for the first time in their opposition papers.  Shah, 2007 U.S. App. LEXIS 25323, at *4.  Even were the Court to consider Plaintiffs' claim, it is without merit.  Contrary to

17

Plaintiffs' assertions, veterans do not necessarily enjoy
special privileges under the Privileges and Immunities
Clause.  See Carrabus v. Schneider, 119 F. Supp. 2d 221,
230 (E.D.N.Y. 2000) (veterans' preferences in county
employment created by State law were not essential
attributes of national citizenship, and thus did not merit
protection under the Fourteenth Amendment Privileges and
Immunities Clause).

### D.    **Substantive Due Process**

Plaintiffs principally argue that their substantive
due process rights have been violated by the improper
transfer of private property from the Armory Trustees to
the Conservancy, in violation of the Takings Clause of the
Fifth Amendment. (Pls.' Opp'n at 14-15.)  The Takings
Clause provides that "private property [shall not] be taken
for public use without just compensation."  U.S. Const.
amend. V.  This language has long been understood to
guarantee that "one person's property may not be taken for
the benefit of another private person without a justifying
public purpose, even though compensation be paid."
Thompson v. Consol. Gas Utils. Corp., 300 U.S. 55, 80
(1937); see also Hawaii Hous. Auth. v. Midkiff, 467 U.S.
229, 245 (1984).  The Fifth Amendment's prohibitions are
applicable to the states through the Fourteenth Amendment.

Phillips v. Washington Legal Found., 524 U.S. 156, 163-64
(1998); Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449
U.S. 155, 160 (1980).

Although Plaintiffs do not allege an outright
usurpation of their private property, similar to takings
claims premised on land use restrictions, the crux of
Plaintiffs' claim is that the enactment of Chapter 482 and
the authorization of the Conservancy lease are inconsistent
with the physical property and use rights they claim.
Seventh Regiment Fund v. Pataki, 179 F. Supp. 2d 356, 361-
62 (S.D.N.Y. 2002).  As explained supra, however,
Plaintiffs do not have a property interest in the Armory.
The Armory is owned by the State, and, assuming that
Plaintiffs have a limited statutory right of access to the
Armory upon application, Plaintiffs have not alleged that
they have applied for and been denied access to the Armory.
Moreover, although veterans and Seventh Regiment members
donated funds for the building of the Armory in the 1870s,
those donations did not create a property interest in the
Armory itself.  Veterans of Seventh Regiment, 14 N.Y.S. at
816.  Because only those with cognizable property interests
have standing to bring takings claims, Plaintiffs lack
standing to raise the alleged substantive due process
claim.  U.S. Olympic Comm. v. Intelicense Corp., S.A., 737

F.2d 263, 268 (2d Cir. 1984) ("Only the owner of an
interest in property at the time of the alleged taking has
standing to assert that a taking has occurred.").

### E.   Other Possible Grounds for Standing

The Complaint includes two other allegations relevant
to the standing inquiry: (1) Plaintiff Wells is a New York
State and City "taxpayer" (Compl. ¶¶ 3-5); and
(2) Plaintiffs were denied access and use of the Armory's
rental proceeds, giving rise to an action for tortious
interference with contract and the imposition of a
constructive trust (Compl. ¶¶ 92, 95-99).

The Complaint alleges that Wells is a New York State
and City "taxpayer" (Compl. ¶¶ 3-5), and attacks Chapter
482 for "[d]epriving City and State taxpayers of support
for publicly-funded cultural institutions by diverting
audience and donor revenues to the Conservancy and its
favored private charities and arts organizations" (Compl.
¶ 69(d)).  This claim would perhaps have merit if pleaded
as a "taxpayer action," which is a procedural vehicle
afforded by New York State Finance Law § 123-b with respect
to State action, and by New York General Municipal Law § 51
with respect to municipal action.  Given that neither
procedural vehicle is mentioned in the Complaint, nor is
such a common-law cause of action included among the seven

20

claims in the Complaint, Plaintiff Wells has no standing to

challenge Chapter 482 or the Conservancy's lease as a New

York State or City taxpayer.   See DaimlerChrysler Corp. v.

Cuno, 547 U.S. 332, 345 (2006) (plaintiffs lacked standing

to challenge a tax break granted by state and local

officials because their interests as taxpayers "in the

moneys of the [government] treasury are too indeterminable,

remote, uncertain and indirect to support standing").

Plaintiffs' tortious interference claim fares no

better.  (Compl. ¶ 92.)  This claim alleges that

"Defendants' wrongful actions caused injury and damages to

plaintiffs by denying them access and use of the Armory and

its rental proceeds."  (Compl. ¶ 92.)  The Armory's rental

proceeds, however, never accrued to Plaintiffs.  Before the

enactment of Chapter 482, the rental proceeds went to DMNA

headquarters, with half the funds paid as rent to the State

Treasury and the other half distributed among the units of

the organized militia located within the state.   N.Y.

Military Law § 183(5).  After the enactment of Chapter 482,

the lessee (in this case, the Conservancy)

> shall be required to apply all revenues generated
> by operations at the Armory to pay or provide for
> the costs of repairs, restoration, refurbishment,
> operating, maintenance and programming of the
> Armory and the uses therein and the activities of
> the lessee or subsequent lessee with respect
> thereto.

(Compl., Ex. D (2004 N.Y. Laws Ch. 482 § 3).)  Because
Plaintiffs have never been entitled to any portion of the
Armory's rental revenues, they cannot establish that they
personally have suffered some actual or threatened injury
as a result of the putatively illegal conduct of
Defendants.  Alliance for Envtl. Renewal, Inc., 436 F.3d at
85.   Accordingly, Plaintiffs lack standing to maintain an
action for tortious interference of contract, or for the
imposition of a constructive trust and a concomitant
accounting, on the basis of denied rental revenues.

### F.    State Law Violation

Even assuming Plaintiffs had standing, their claim
that the Conservancy lease should be voided for "fraud and
failure to comply with the [New York State Urban
Development Act] in material respects" is not properly
before this Court.  (Compl. ¶ 91.)  Under New York law,
when a plaintiff seeks to assert that a determination of a
governmental body or public official is "in violation of
lawful procedure, was affected by an error of law or was
arbitrary and capricious or an abuse of discretion" and
seeks nullification of such action, an Article 78
proceeding is the appropriate vehicle to address the claim.
Abiele Contracting, Inc. v. N.Y. City Sch. Constr. Auth.,

666 N.Y.S.2d 970, 972-73 (N.Y. 1997).  New York law, however, vests jurisdiction over Article 78 proceedings solely in state courts.  N.Y. C.P.L.R. § 7804(b) ("A proceeding under this article shall be brought in the supreme court in the county specified [by statute].").  District courts sitting in New York have refused to impinge upon this exclusive jurisdiction.  See, e.g., Blatch v. Hernandez, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) ("This [Article 78] claim must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims.").  Accordingly, the Court concludes that it lacks jurisdiction to consider Plaintiffs' UDCA claim.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Complaint in its entirety is GRANTED.  The Clerk of the Court is directed to close the case.

**SO ORDERED:**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
          January 5, 2008

23